Case 1:07-cv-00180-JJF     Document 9     Filed 03/26/2007     Page 1 of 3

CLOSED

**U.S. District Court**
**United States District Court for the Western District of Washington (Seattle)**
**CIVIL DOCKET FOR CASE #: 2:07-cv-00398-MJP**
**Internal Use Only**

| | |
|---|---|
| L. G. Philips LCD Co., Ltd. et al v. Tatung Company et al | Date Filed: 03/08/2007 |
| Assigned to: Hon. Marsha J. Pechman | Date Terminated: 03/20/2007 |
| Cause: 28:1331 Fed. Question | Nature of Suit: 890 Other Statutory Actions |
| | Jurisdiction: Federal Question |

**Plaintiff**

**L. G. Philips LCD Co., Ltd.**                          represented by **Ronald C Gardner**
                                                          GARDNER BOND TRABOLSI MCDONALD & CLEMENT
                                                          2200 6TH AVE
                                                          STE 600
                                                          SEATTLE, WA 98121
                                                          206-256-6309
                                                          Fax: FAX 256-6318
                                                          Email: RGARDNER@GARDNERBOND.COM
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Tatung Company**                                        represented by **Stacie Foster**
                                                          YARMUTH WILSDON CALFO
                                                          925 FOURTH AVE
                                                          STE 2500
                                                          SEATTLE, WA 98104
                                                          206-516-3800
                                                          Fax: 206-516-3888
                                                          Email: sfoster@yarmuth.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**Tatung Company of America, Inc.**                       represented by **Stacie Foster**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**Viewsonic Corporation**

**In Re**

**Amazon.com, Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 03/08/2007 | 1 | MOTION for a Protective Order Limiting Scope of Third Party Deposition and Subpoena and Request for Expedited Hearing. ORAL ARGUMENT REQUESTED. Noted for Hearing March 19, 2007, 9:00 AM by Defendants Tatung Company, Tatung Company of America, Inc. (Attachments: # 1 Declaration of Jackson Chang # 2 Proposed Order Granting Defendant's Motion for Protective Order # 3 Certificate of Service).(DB, ) Modified on 3/9/2007 (DB, ). (Entered: 03/09/2007) |
| 03/08/2007 | | Set Oral Argument on 1 MOTION for Protective Order : Motion Hearing set for 3/19/2007 at 09:00 AM (DB, ) (Entered: 03/09/2007) |
| 03/14/2007 | 2 | RESPONSE, by Plaintiff L. G. Philips LCD Co., Ltd., to 1 MOTION for Protective Order. (Attachments: # 1 # 2 Exhibit 2 to Expedited Hearing Opposition# 3 Exhibit 3 to Expedited Hearing Opposition# 4 Exhibit 4 to Expedited Hearing Opposition# 5 Exhibit 5 to Expedited Hearing Opposition# 6 Exhibit 6 to Expedited Hearing Opposition# 7 Exhibit 7 to Expedited Hearing Opposition# 8 Exhibit 8 to Expedited Hearing Opposition)(Gardner, Ronald) (Entered: 03/14/2007) |
| 03/14/2007 | 3 | RESPONSE, by Plaintiff L. G. Philips LCD Co., Ltd., to 1 MOTION for Protective Order. (Attachments: # 1 Exhibit 1 to Protective Order Opposition# 2 Exhibit 2 to Protective Order Opposition# 3 Exhibit 3 to Protective Order Opposition# 4 Exhibit 4 to Protective Order Opposition# 5 Exhibit 5 to Protective Order Opposition# 6 Exhibit 6 to Protective Order Opposition)(Gardner, Ronald) (Entered: 03/14/2007) |
| 03/15/2007 | 4 | The following MINUTE ORDER is made at the direction of the Court and by the Honorable Ricardo S. Martinez: The Court is aware that there has been some confusion with respect to oral argument in this case. The Court acknowledges that oral argument has been requested; HOWEVER, that request has not yet been granted. Such request will be considered by the presiding judge assigned to this case. Accordingly, there is NO oral argument set for March 19, 2007, and this Court apologizes for any confusion. (SES) (Entered: 03/15/2007) |
| 03/15/2007 | | (Court only) ***Deadlines/Hearings terminated. Oral argument is NOT set for March 19, 2007 at 9:00 a.m. before Judge Martinez. (SES) (Entered: 03/15/2007) |

| 03/15/2007 | | Case Reassigned to Judge Marsha J. Pechman. Judge Ricardo S Martinez no longer assigned to the case. (KN, ) (Entered: 03/15/2007) |
| 03/15/2007 | | MINUTE ENTRY: Pursuant to counsels' objections to Motion for Protective Order, case number MS07-30, originally assigned to the Honorable Ricardo S. Martinez, is now assigned a civil case number C07-398 and is reassigned in rotation to the Honorable Marsha J. Pechman. ALL FUTURE PLEADINGS MUST NOW BEAR THE NEWLY ASSIGNED CIVIL CAUSE NUMBER. (KN, ) (Entered: 03/15/2007) |
| 03/19/2007 | 5 | REPLY, filed by Defendants Tatung Company, Tatung Company of America, Inc., TO RESPONSE to 1 MOTION for Protective Order (Foster, Stacie) (Entered: 03/19/2007) |
| 03/19/2007 | 6 | DECLARATION of Charlene L. Oh filed by Defendants Tatung Company, Tatung Company of America, Inc. re 1 MOTION for Protective Order (Attachments: # 1 Exhibit Rough Transcript of Hearing# 2 Exhibit Florida Order# 3 Exhibit Minnesota Order# 4 Exhibit Decl of Donald Fischbach# 5 Exhibit 2-27 Ltr from Ho to Connor# 6 Exhibit 3-5 Meet and Confer email# 7 Exhibit 3-2-07 Ltr to Special Master# 8 Exhibit 3-1-07 Ltr from Ho to Ambrozy)(Foster, Stacie) (Entered: 03/19/2007) |
| 03/19/2007 | 7 | CERTIFICATE OF SERVICE by Defendants Tatung Company, Tatung Company of America, Inc. re 6 Declaration, 5 Reply to Response to Motion. (Foster, Stacie) (Entered: 03/19/2007) |
| 03/20/2007 | 8 | ORDER - The Court orders that this case be transferred to the US District Court for the District of Delaware by Judge Marsha J. Pechman. (MD, ) (Entered: 03/20/2007) |

I hereby certify that the attached is a true and correct copy of the docket on file at the Western District of Washington

BRUCE RIFKIN, Clerk



By ___S/Mary Duett_____
    Deputy Clerk

**ORAL ARGUMENT REQUESTED**

1
2
3
4
5

07-MC-00030-M

6
7

```
——— FILED          ——— ENTERED
——— LODGED         ——— RECEIVED

         MAR 08 2007      DB

              AT SEATTLE
        CLERK U.S. DISTRICT COURT
   WESTERN DISTRICT OF WASHINGTON
                              DEPUTY
```

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

9

10   L.G. PHILIPS LCD CO., LTD,

11                    Plaintiff,

12        v.

13   TATUNG COMPANY, TATUNG
     COMPANY OF AMERICA, INC.,
14   and VIEWSONIC CORPORPORATION,

15                    Defendants.

16

17

**MS 07-0030 RSM**

DEFENDANTS TATUNG COMPANY
AND TATUNG COMPANY OF
AMERICA, INC.'S MOTION FOR A
PROTECTIVE ORDER LIMITING
SCOPE OF THIRD PARTY
DEPOSITION AND SUBPOENA AND
REQUEST FOR EXPEDITED
HEARING

**NOTED FOR HEARING:**
**March 19, 2007, 9:00 a.m.**

18

19

**FRCP 26(C) CERTIFICATE OF COMPLIANCE**

20
21   Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, counsel for

Defendants Tatung Company and Tatung Company of America, Inc. certify that they

22   conferred in good faith with counsel for plaintiff L.G. Philips LCD Co., Ltd. to resolve this

dispute prior to filing this motion and were unsuccessful.

23

24

**BASIS FOR EMERGENCY HEARING**

25       This Motion for Protective Order Limiting Scope of Third Party Deposition and

26   Subpoena (the "Motion for Protective Order") concerns a deposition notice and third-party

MOT. FOR PROT. ORDER LIMITING SCOPE
OF 3RD PARTY DEPOSITION & SUBPOENA &
REQ. FOR EXPEDITED HEARING – Page 1

**YARMUTH WILSDON CALFO PLLC**

FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

1    subpoena issued in this district in connection with a patent infringement lawsuit pending in

2    the United States District Court for the District of Delaware (the "Delaware Action").

3    Defendants respectfully request an expedited hearing and briefing schedule on the

4    Motion for Protective Order for the following reasons:

5    • Discovery cut-off in the Delaware Action is set for March 30, 2007.

6    • Fully aware of the impending discovery cut-off date, Plaintiff waited until the last

7    minute to serve 23 separate third-party subpoenas and deposition notices, issued out

8    of 15 different judicial districts, throughout the country starting in mid-February

9    2007.

10   • On February 27, 2007, Defendants requested that Plaintiff meet and confer about the

11   scope of discovery demanded by Plaintiff in those 23 third-party subpoenas and

12   deposition notices. Following Defendants' February 27, 2007 request, Plaintiff

13   agreed to meet and confer on March 5, 2007.

14   • During the March 5, 2007 meet and confer, Plaintiff refused to limit the scope of the

15   third-party subpoenas and deposition notices in any meaningful way.

16   • Plaintiff's subpoenas demand production of documents by March 5, 2007, and its

17   deposition notices set depositions for March 12, 2007 through March 28, 2007.

18   Because of Plaintiff's last-minute discovery tactics and its failure to meaningfully

19   meet and confer with Defendants, an emergency hearing is necessary to resolve

20   these discovery issues in a timely manner. Pursuant thereto, Defendants

21   respectfully request an emergency hearing.

22   ## I.    INTRODUCTION

23   Defendants Tatung Company and Tatung Company of America (collectively, "the

24   Tatung Defendants") submit this Memorandum of Points and Authorities in support of their

25   Motion for Protective Order Limiting Scope of Third Party Deposition and Subpoena (the

26   "Motion for Protective Order"). The Motion for Protective Order seeks to limit the scope

MOT. FOR PROT. ORDER LIMITING SCOPE
OF 3RD PARTY DEPOSITION & SUBPOENA &
REQ. FOR EXPEDITED HEARING – Page 2

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800  F 206.516.3888

1    of a subpoena and deposition notice served on third-party Amazon.com, Inc.

2    ("Amazon.com").

3         This Motion for Protective Order concerns a deposition notice and third-party

4    subpoena issued in this district in connection with a patent infringement lawsuit pending in

5    the United States District Court for the District of Delaware (the "Delaware Action," C.A.

6    No. 04-343-JJF). For the reasons discussed in greater detail below, the Tatung Defendants'

7    request for a protective order should be granted because the discovery sought by Plaintiff

8    L.G. Philips LCD Co., Ltd. ("LPL") is:

9         1.    A transparent and improper effort by LPL to perform an "end run" around a

10   potentially unfavorable ruling by the Special Master in the Delaware Action concerning the

11   proper scope of LPL's discovery, namely, the Special Master's impending ruling on LPL's

12   motion to compel discovery pertaining to *unaccused* products from the Tatung Defendants

13   and the Tatung Defendants' motion to stay discovery regarding *unaccused* products

14   pending resolution of issues relating to LPL's and its attorneys' violations of Protective

15   Orders in cases pending between the parties;

16        2.    Irrelevant in that it seeks extremely broad categories of communications and

17   information from the Tatung Defendants' customers entirely unrelated to the patents-in-suit

18   or the accused products in the Delaware Action;

19        3.    Not reasonably calculated to lead to the discovery of admissible evidence in

20   the Delaware Action, but instead, is information about the Tatung Defendants' confidential

21   business communications and trade secret information that LPL seeks for ulterior and

22   improper purposes; and

23        4.    Unduly burdensome in that the third-party discovery Plaintiff seeks from

24   Amazon.com and the Tatung Defendants' other customers will require the production of

25   thousands of documents and is calculated to harass the Tatung Defendants' customers,

26

MOT. FOR PROT. ORDER LIMITING SCOPE
OF 3RD PARTY DEPOSITION & SUBPOENA &
REQ. FOR EXPEDITED HEARING  – Page 3

**YARMUTH WILSDON CALFO PLLC**

FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

1  some of whom have already responded to subpoenas issued by LPL during jurisdictional

2  discovery.

## II.    STATEMENT OF FACTS

3

### A.    The Nature Of This Lawsuit.

4  Defendant Tatung sells electronic products including computer monitors and

5  televisions to resellers and retailers worldwide.  Defendant Tatung Company of America, a

6  California corporation, is a reseller of computer monitors and other LCD applications in the

7  United States.  The Tatung Defendants also perform OEM (Original Equipment

8  Manufacturer) services for a number of customers.  LPL and its parent company, LG

9  Electronics, Inc. ("LGE"), compete with the Tatung Defendants in the market of flat display

10  panel products (e.g., LCD monitors, LCD televisions and plasma televisions).

11  Third-party Amazon.com, the recipient of LPL's subpoena and deposition notice, is

12  located in Seattle, Washington and is a customer of the Tatung Defendants.

13  The Tatung Defendants integrate more than 800 models of computer monitors and

14  flat panel display products, referred to collectively as "visual display products."  As OEMs,

15  many of the Tatung Defendants' products are branded and otherwise customer specific; in

16  most instances, the products are made to exacting customer specifications.  Because the

17  monitor business is highly competitive, the particular product design requirements and

18  specifications of the Tatung Defendants' OEM customers, including those of Amazon.com,

19  are extremely valuable trade secrets.  The Tatung Defendants' specific pricing

20  arrangements with customers also are extremely valuable trade secrets.

21  LPL commenced the Delaware Action against the Tatung Defendants on May 27,

22  2004.  In the Delaware Action, LPL has alleged patent infringement claims against the

23  Tatung Defendants based on certain "rear-mount" patents with respect to 20 of its products.

24  The discovery cut-off date in the Delaware Action is March 30, 2007.

25  //

26

MOT. FOR PROT. ORDER LIMITING SCOPE
OF 3RD PARTY DEPOSITION & SUBPOENA &
REQ. FOR EXPEDITED HEARING – Page 4

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
825 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800    F 206.516.3888

**B.    The Tatung Defendants Have Already Provided LPL With Voluminous Discovery Relating to Both Its Accused and Non-Accused Products.**

LPL served its initial discovery requests in the Delaware Action over two years ago. In response to those discovery requests, the Tatung Defendants produced technical specifications and assembly drawings covering approximately 800 models of monitors and flat panel displays they sell. Until November 2006, LPL had accused only one Tatung product of infringing the patents-in-suit. In November 2006, LPL identified two additional accused products. It was not until mid-January 2007 that LPL accused the remaining products.

The Tatung Defendants have expended a great deal of effort to comply with their discovery obligations. Since late January 2007 alone, the Tatung Defendants have produced approximately 15,000 pages of highly confidential documents, including product work instructions, exploded view drawings of products, and sales summaries from 2002 to the present (quarter 1, 2007) containing model, price, and quantity information for *all* of its visual display products; and

In addition, the Tatung Defendants have made available for LPL's inspection, and LPL has examined, disassembled, and photographed more than 40 monitor and television products. Of the hundreds of products for which LPL has been provided technical documents, LPL to date has accused only 20 products of infringing the patents-in-suit.

**C.    LPL's Motion To Compel Further Customer Information Is Pending Before the Special Master.**

In January 2007, LPL filed a motion to compel the production of additional documents such as highly confidential agreements and communications between the Tatung Defendants and their customers relating to *all* of the Tatung Defendants' visual display products including the hundreds of unaccused products. The Tatung Defendants vigorously opposed that motion on the grounds that LPL's requested discovery is not limited in any way to the accused products at issue in the Delaware Action and is instead a transparent

MOT. FOR PROT. ORDER LIMITING SCOPE
OF 3RD PARTY DEPOSITION & SUBPOENA &
REQ. FOR EXPEDITED HEARING – Page 5

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

1   attempt by LPL to obtain highly sensitive business information.  That motion is presently

2   pending before the Special Master.  The parties expect a decision shortly, as discovery cut-

3   off is March 30, 2007.

**D.    LPL Now Seeks the Same Discovery Directly From the Tatung Defendants' Customers.**

In what can only be characterized as a blatant attempt to circumvent a potentially

unfavorable ruling by the Special Master on a motion LPL itself filed, LPL recently served

Amazon.com, as well as two dozen other customers of the Tatung Defendants, with a

subpoena and deposition notice seeking voluminous discovery about highly confidential

customer information on hundreds of products that LPL has *never accused of infringement*.

*See* Exhibit 1.

LPL's extensive and broad-reaching requests for discovery regarding "visual

display products" encompass *all* of the products the Tatung Defendants sell to Amazon.com

and not just the accused products that are the subject of the Delaware Action.  To date, LPL

has failed to provide any legitimate explanation why information on *unaccused* products is

relevant to its patent infringement claims in the Delaware Action.

**III.    LEGAL ARGUMENT**

**A.    The Tatung Defendants Have Standing Under FRCP 26(c) To Move For A Protective Order.**

Rule 26(c) of the Federal Rules of Civil Procedure ("FRCP") provides that "[u]pon

motion *by a party* or by the person from whom discovery is sought, accompanied by a

certification that the movant has in good faith conferred…and for good cause shown… the

court in the district where the deposition is to be taken may make any order which justice

requires to protect a party or person…" (emphasis added).  Ninth Circuit courts have

recognized that this language gives parties to a lawsuit, as well as third-parties themselves,

standing to challenge third-party subpoenas.  *See Portland Gen. Elec. Co. v. U.S. Bank*

*Trust Nat'l Assoc.*, 38 F. Supp. 2d 1202, 1206 n. 3 (D. Or. 1999), *rev'd on other grounds*,

MOT. FOR PROT. ORDER LIMITING SCOPE
OF 3RD PARTY DEPOSITION & SUBPOENA &
REQ. FOR EXPEDITED HEARING  – Page 6

**YARMUTH WILSDON CALFO PLLC**

FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

1   218 F.3d 1085 (9th Cir. 2000) (noting that FRCP 26(c) "expressly gives" a party standing

2   to challenge third party subpoenas); *see also, In re Ashworth, Inc. Securities Litigation,*

3   2002 WL 33009225 at * 1 (S.D. Cal. 2002) (finding that under FRCP 26, defendants have

4   standing to seek a protective order in connection with a third party subpoena); *Springbook*

5   *Lenders v. Northwestern Nat'l Ins. Co.,* 121 F.R.D. 679, 680 (N.D. Cal. 1988) (citing FRCP

6   26(c) for the proposition that "[Defendant] does have standing to object to [Plaintiff's]

7   subpoena of a third party").

8        In meet and confer discussions, LPL has asserted that the Tatung Defendants do not

9   have standing to object to the information sought from third parties. LPL is mistaken and

10  references inapposite authority.[1]

11       Based on the above, the Tatung Defendants, as parties to the Delaware Action,

12  clearly have standing to seek a protective order against LPL's attempts to obtain extremely

13  broad and irrelevant discovery from third-parties.

14       The Tatung Defendants do claim that the topics and documents requested impinge

15  on their trade secrets and other confidential proprietary information.

16  //

17

---

18  [1]    For example, LPL will likely cite *Dart Industries, Inc. v. Liquid Nitrogen Processing* for the
proposition that "unless a party to an action can make claim to some personal right or privilege in respect to
the subject matter of a subpoena duces tecum directed to a nonparty witness, the party to the action has no
19  right to relief under FRCP 45(b) or 30(b)." 50 F.R.D. 286, 291 (D. Del. 1970), *quoting Shepherd v. Castle,* 20
F.R.D. 184, 188 (W.D.Mo. 1957).

20
        *Dart Industries* is inapposite for two reasons. First, that case involved a party's motion to *quash a*
21  *third party subpoena under FRCP 45(b);* here, the Tatung Defendants move for a *protective order pursuant to*
*FRCP 26(c),* which expressly grants parties standing to move the court to limit the scope of, or altogether
22  preclude certain issues from, third party discovery.[1] FRCP 26(c)(4), 26(c)(7). The Tatung Defendants have
chosen not to quash under FRCP 45(b) because they agree that LPL may seek *relevant and appropriate*
23  discovery from third parties; FRCP 26(c) is the more appropriate mechanism to strike a balance between
allowing open discovery and ensuring that such discovery is fairly tailored to the accused products.
24
        Second, unlike the Tatung Defendants, the moving party in *Dart Industries* did not assert any
25  personal privilege with respect to the requested documents. 50 F.R.D. at 291. In fact, the court expressly
"decline[d] to hold that Dart lacks standing to move to quash the subpoena duces tecum on the grounds stated
26  in FRCP 45(b)," averring that Dart's interest "*may be sufficient* to give it standing to move to limit the
production sought here." *Id.*, emphasis added.

MOT. FOR PROT. ORDER LIMITING SCOPE
OF 3RD PARTY DEPOSITION & SUBPOENA &
REQ. FOR EXPEDITED HEARING – Page 7

**Yarmuth Wilsdon Calfo pllc**
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800    F 206.516.3888

1    **B.    Good Cause Supports The Issuance of A Protective Order.**

2       **1.    Legal Standard Governing The Issuance Of Protective Orders.**

3       Pursuant to Federal Rule of Civil Procedure 26(c), "upon a showing of good cause,"

4    the Court may issue a protective order precluding or limiting the scope of discovery in

5    order to protect a party from annoyance, embarrassment, oppression, or undue burden or

6    expense. *See, e.g., Murata Mfg. Co., Ltd. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 178 (N.D. Ill.

7    2006); *see also, Pulsecard, Inc. v. Discover Card Services, Inc.*, 1995 WL 526533 at *14

8    (D. Kan. 1995). The protective order may include limiting the scope of discovery to certain

9    matters, precluding altogether the discovery of certain matters, and ordering that a trade

10   secret or other confidential research, development, or commercial information not be

11   revealed. Fed R. Civ Proc. 26(c)(4), 26(c)(7).

12      In the context of Federal Rule of Civil Procedure 26(c)(7) specifically, "good cause"

13   requires the party seeking the protective order to demonstrate that: (1) the material sought

14   to be protected is confidential, and (2) disclosure will create a competitive advantage for the

15   party. *Pulsecard*, 1995 WL 526533 at * 16, *citing Georgia Television Co. v. TV News

16   Clips of Atltanta*, 718 F. Supp. 939, 953 (N.D. Ga. 1989).

17      **2.    The Requested Discovery Seeks Overly Broad Categories Of
             Communications and Information Completely Unrelated To Claims At**
18           **Issue in The Delaware Action.**

19      A protective order is appropriate because LPL's third-party discovery requests are

20   overly broad and seek information that is not relevant to its claims, nor the Tatung

21   Defendants' defenses, in the Delaware Action. Instead, LPL seeks to obtain, through the

22   guise of "discovery," sensitive and confidential information relating to the Tatung

23   Defendant's business operations that would help LPL gain a competitive advantage.

24      "[D]iscovery may not be had regarding a matter which is not 'relevant to the subject

25   matter involved in the pending action.'" *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d

26   1318, 1323 (Fed. Cir. 1990). Moreover, "[e]*ven if relevant*, discovery is not permitted

MOT. FOR PROT. ORDER LIMITING SCOPE
OF 3RD PARTY DEPOSITION & SUBPOENA &
REQ. FOR EXPEDITED HEARING – Page 8

**YARMUTH WILSDON CALFO PLLC**
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800  F 206.516.3888

1  where no need is shown, or compliance would be unduly burdensome, or where harm to the

2  person outweighs the need of the person seeking discovery of the information." *Id; see*

3  *also, American Standard, Inc. v. Pfizer Inc.*, 828 F.2d 734, 739-42 (Fed. Cir. 1987).

4      In this regard, the case of *Joy Technologies, Inc. v. Flakt, Inc.*, 772 F. Supp. 842 (D.

5  Del. 1991) is instructive, and presents a nearly identical situation to that found here.  In *Joy*

6  *Technologies*, the defendant sought a protective order preventing plaintiff from seeking

7  discovery from *any of the defendant's customers or potential customers* until plaintiff made

8  a showing that the information: (a) was necessary and relevant to the action, and (b) could

9  not be obtained from any other source.  *Id.* at 845.  The court granted the requested

10  protective order, stating:

11        "[I]t is undisputed that [plaintiff] and [defendant] are fierce competitors in
      the technology that is the subject of this lawsuit, and [plaintiff] has not

12        convinced the Court that the same information it seeks from third parties is
      not available from [defendant].  Therefore, unless [plaintiff] can demonstrate

13        that it has a specific need for evidence available only from third party
      customers of [defendant], the Court concludes that [defendant] and its

14        customers are entitled to protection."

15  *Id.* at 849.

16      Similarly, in *Micro Motion, supra*, the plaintiff sought to obtain information from a

17  nonparty competitor that was purportedly relevant to the issue of damages in the underlying

18  patent suit.  The court held that the plaintiff was embarking on a "fishing expedition" with

19  its "merely speculative inquiries in the guise of relevant discovery."  894 F.2d at 1327-28,

20  *see also Visto Corp. v. Smartner Info. Systems, Ltd.*, 2007 WL 218771 at * 5 (N.D. Cal.

21  2007) (granting protective order such that third party did not have to respond to the

22  subpoena).

23      Here, LPL's discovery requests to Amazon.com seek broad categories of documents

24  and information concerning both accused and *unaccused* products that also are not limited

25  as to time period.  Such overly broad discovery requests encompass documents and

26  information that, in reality, have nothing to do with the pending Delaware Action.  Instead,

MOT. FOR PROT. ORDER LIMITING SCOPE
OF 3RD PARTY DEPOSITION & SUBPOENA &
REQ. FOR EXPEDITED HEARING – Page 9

**YARMUTH WILSDON CALFO PLLC**
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800  F 206.516.3888

1   it is readily apparent that LPL seeks to obtain such information about the Tatung

2   Defendants to obtain a competitive advantage over them.

3        It also should be noted that the Tatung Defendants do not seek to prevent LPL from

4   obtaining all third-party discovery being requested in its subpoena and deposition notice.

5   Rather, such third-party discovery should focus on deposition topics and documents

6   *pertaining to the accused products* at issue in the Delaware Action.

7        **3.    The Requested Discovery Seeks Confidential Business Information To
           Which LPL Would Not Otherwise Be Entitled.**
8

9        A protective order also is appropriate because LPL's subpoena and deposition

10  notice seeks disclosure of confidential, proprietary trade secret information belonging to the

11  Tatung Defendants.  Such confidential commercial information warrants special protection

12  under Rule 26(c)(7).  *Micro Motion*, 894 F.2d at 1323, *citing Smith & Wesson v. United

13  States*, 782 F.2d 1074, 1082 (1st Cir. 1986).

14       The Tatung Defendants and LPL are active competitors in the computer monitor

15  business.  Declaration of Jackson Chang ("Chang Decl.") at ¶ 2.  Producing the information

16  and testimony LPL seeks would cause major competitive harm to the Tatung Defendants.

17  Chang Decl. at ¶ 3.  As just one example, LPL designates as a deposition topic: "The

18  scope, nature, and purpose of communications between Amazon.com and [the Tatung

19  Defendants] (a) concerning the sale or marketing… of 'visual display products'

20  manufactured or assembled in whole or in part by or for [the Tatung Defendants]… and (c)

21  communications regarding the market trends for 'visual display products' in the United

22  States."  Another deposition topic concerns purchase "agreements or contracts," "directly or

23  indirectly" between Amazon.com.com and the Tatung Defendants.  These topics are closely

24  guarded by the Tatung Defendants as highly sensitive and confidential business

25  information.  *Id.* at ¶ 4.  The Tatung Defendants' information regarding market trends for its

26  visual display products, for example, is not disclosed publicly; divulging this information

    would likely result in competitors using the information to 1) undercut the Tatung

MOT. FOR PROT. ORDER LIMITING SCOPE
OF 3RD PARTY DEPOSITION & SUBPOENA &
REQ. FOR EXPEDITED HEARING  – Page 10

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

1    Defendants in pricing; 2) deduce the exact specifications required by existing customers;

2    and/or 3) specifically target and lure away Tatung's existing customers. *Id.* at ¶ 7. All of

3    this information is kept secret by the Tatung Defendants. Only authorized personnel have

4    access to the information and information kept on computers are password protected. *Id.* at

5    ¶ 6. The product specifications and features required or purchased by each customer,

6    including Amazon.com, constitute competitive value and maintaining the confidentiality of

7    such information is essential to the fair conduct of this litigation.

       **4.    LPL's Discovery Is Unduly Burdensome And Is Intended to Harass The
            Tatung Defendants' Customers.**

       Ordering compliance with LPL's subpoena would pose an undue and unnecessary

burden and expense on non-party Amazon.com to gather and produce such information and

defend depositions in the requested time frame, particularly given the utter irrelevance of

the majority of requested documents and testimony.

       The Tatung Defendants respectfully submit that LPL's discovery requests have

been interposed solely to harass Amazon.com and aggravate the business relationship

between the Tatung Defendants and their customers.

### IV.    CONCLUSION

       To be clear, the Tatung Defendants do not contest LPL's right to seek discovery

from Amazon.com. They submit, however, that discovery obtained from third-parties must

be *relevant* to this litigation and serve a legitimate purpose. Here, LPL's overly broad and

improper requests do not serve such purposes. Accordingly, the Tatung Defendants

//

//

//

//

MOT. FOR PROT. ORDER LIMITING SCOPE
OF 3RD PARTY DEPOSITION & SUBPOENA &
REQ. FOR EXPEDITED HEARING – Page 11

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

1    respectfully request that the Court issue a protective order limiting discovery from

2    Amazon.com to deposition testimony and documents relating to the accused products.

3

         DATED: March 8, 2007.         **YARMUTH WILSDON CALFO PLLC**

4

5                              By: _____
                               Stacie Foster, WSBA #23397

6                          The IDX Tower
                         925 Fourth Avenue, Suite 2500

7                          Seattle, WA 98104
                         Phone: (206) 516-3800

8                          Fax:    (206) 516-3888

9                          *Of Counsel:*

10                          **GREENBERG TRAURIG LLP**

11                          Frank E. Meredith, Jr.
                         Valerie W. Ho

12                          Mark H. Krietzman
                         Steve P. Hassid

13                          2450 Colorado Avenue, Suite 400E
                         Santa Monica, CA 90404

14                          **RICHARDS LAYTON & FINGER, PA**

15                          Frederick L. Cottrell, III
                         Anne Shea Gaza

16                          One Rodney Square
                         P.O. Box 551

17                          Wilmington, DE 19899

18                          Attorneys for Defendant Tatung Company and
                         Tatung Company of America

19

20

21

22

23

24

25

26

MOT. FOR PROT. ORDER LIMITING SCOPE
OF 3RD PARTY DEPOSITION & SUBPOENA &
REQ. FOR EXPEDITED HEARING – Page 12

**YARMUTH WILSDON CALFO PLLC**
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

471.01 hc084803 3/8/07

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD., | |
| Plaintiff, | |
| v. | Civil Action No. 04-343 (JJF) |
| TATUNG COMPANY, et al., | |
| Defendants. | |

## NOTICE OF FED.R.CIV.P. 30(b)(6) DEPOSITION *DUCES TECUM* AND FED.R.CIV.P. 45 SERVICE OF SUBPOENA (AMAZON.COM, INC.)

TO:

Jeffrey B Bove, Esq.
Jaclyn M. Mason, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

Valerie Ho, Esq.
Mark H. Krietzman, Esq.
Frank C. Merideth, Jr., Esq.
Greenberg Traurig LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404

Scott R. Miller, Esq.
Connolly Bove Lodge & Hutz LLP
355 South Grand Avenue
Suite 3150
Los Angeles, CA 90071

Tracy Roman, Esq.
Raskin Peter Rubin & Simon LLP
1801 Century Park East, Suite 2300
Los Angeles, CA 90067

PLEASE TAKE NOTICE that Plaintiff will take the deposition *duces tecum* of

Amazon.com, Inc.. ("Amazon") pursuant to Fed. R. Civ. P. 30(b)(6), on March 23, 2007. The

deposition will take place at Bank of America Tower, 701 Fifth Avenue, Suite 6630, Seattle WA

981. The deposition will be videotaped and taken before a notary public or court reporter, duly

651704-1

authorized to administer oaths and transcribe the testimony of the deponent(s) and may use technology that permits the real time display of the deposition transcript for attendees who bring a compatible computer. The deposition may continue from day to day until completed if authorized by the Court or stipulated by the parties.

PLEASE ALSO TAKE NOTICE that LG.Philips LCD Co., Ltd. is serving Amazon with a subpoena (the "Subpoena"), a copy of which is attached hereto. The subjects covered in the deposition will include (but are not limited to) the subjects listed on Attachment A to the Subpoena. Pursuant to Fed. R. Civ. P. 30(b)(6), Amazon is required to designate one or more persons to testify at the deposition as to the matters known or reasonably available to Amazon concerning all topics listed in Attachment A to the Subpoena. In addition, the Subpoena requires Amazon to produce at the deposition the documents listed in Attachment B to the Subpoena.

You are invited to attend and cross examine.

February 13, 2007

THE BAYARD FIRM

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk
Ashley B. Stitzer
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-5130

OF COUNSEL:                    rkirk@bayardfirm.com
Gaspare J. Bono                (302) 655-5000
Matthew T. Bailey             Counsel for Plaintiff
Lora A. Brzezynski           LG.PHILIPS LCD CO., LTD.
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
(202) 496-7500

OAO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

### WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD.<br>V.<br>TATUNG COMPANY, et al. | **SUBPOENA IN A CIVIL CASE** |

Case Number:[1]    04-343 (JJF)

TO:    **Amazon.com, Inc.**
**1200 12th Avenue, Suite 1200**
**Seattle, WA 98114**

United States District Court for the District of
Delaware

YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below
[X]    to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

YOU ARE COMMANDED *to appear at the place, date, and time specified below to testify at the taking of a*
[X]    deposition in the above case. (See Attachment A for topics.)

| PLACE OF DEPOSITION<br>Esq. Deposition Services, Bank of America Tower, 701 Fifth Ave, Ste 6630, Seattle WA 98104 | DATE AND TIME<br>March 23, 2007 at 9:00 am. |
|---|---|

YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at
[X]    the place, date, and time specified below (list documents or objects): All documents listed in Attachment B.

| PLACE<br>Mail documents to: McKenna Long & Aldridge LLP, Attn: Shari Klevens<br>c/o Esquire Deposition Services, Bank of America Tower, 701 Fifth Avenue, Ste 6630, Seattle<br>WA 98104 | DATE AND TIME<br>March 5, 2007 at 9:00 a.m. |
|---|---|

[G]    YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated,
the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER=S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR<br>Shari Klevens (Attorney for Plaintiff) *SK Klevens* | DATE<br>February 13, 2007 |
|---|---|
| ISSUING OFFICER=S NAME, ADDRESS AND PHONE NUMBER<br>Shari Klevens<br>McKenna Long & Aldridge LLP<br>1900 K Street, NW<br>Washington, DC 20006<br>Telephone: 202-496-7612 | |

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2)  (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)  (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance,
(ii)   requires a person who is not a party or an officer of a

party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv)   subjects a person to undue burden.

(B) If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii)   requires disclosure of an unretained expert=s opinion or information not describing specific events or occurrences in dispute and resulting from the expert=s study made not at the request of any party, or
(iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)  DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

DC:50459520.1

## ATTACHMENT A: TOPICS TO BE ADDRESSED AT THE DEPOSITION

For purposes of this Attachment, Amazon.com, Inc. should use the following definition for the terms used herein.

A.    "Amazon.com," "you," and "your" as used herein, means Amazon.com, Inc. and all persons or entities acting or purporting to act on your behalf, and any affiliates of Amazon.com, Inc.

B.    "ViewSonic" means Defendant ViewSonic Corporation, and all persons or entities acting or purporting to act on ViewSonic's behalf, and any affiliates of ViewSonic, including, but not limited to, entities, divisions, and affiliates located in Taiwan.

C.    "ViewSonic products" as used herein means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for ViewSonic. This includes all such products, regardless of brand name, and thus includes, but is not limited to, ViewSonic brand products.

D.    "Tatung Company" means Defendant Tatung Company, all persons or entities acting or purporting to act on Tatung Company's behalf, and affiliates of Tatung Company, including but not limited to Tatung Company.

E.    "Tatung Company products" as used herein any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for Tatung Company. This includes all such products, regardless of brand name, and thus includes, but is not limited to, Tatung brand products.

F.    "Tatung America" means Defendant Tatung Company of America, Inc., and all persons or entities acting or purporting to act on Tatung Company of America's behalf, including, but not limited to Tatung Company of America.

G.    "Tatung America products" as used herein means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for Tatung America. This includes all such products, regardless of brand name, and thus includes, but is not limited to, Tatung America brand products.

H.    "TSTI" means Tatung Science and Technology, Inc., and all persons or entities acting or purporting to act on Tatung Science and Technology's behalf, including, but not limited to Tatung Science and Technology.

I.    "TSTI products" as used herein means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for TSTI. This includes all such products, regardless of brand name, and thus includes, but is not limited to, TSTI brand products.

J.    "Affiliate(s)" means any corporation or other entity that controls, is controlled by or is under common control with the identified corporation or entity, including without limitation partnerships, parents, subsidiaries and divisions.

K.    "Visual display products" means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs.

Attachments A to Fed. R. Civ. P. 45 Subpoena

Page 2 of 6

L.    "Communication" means, without limitation, every manner or means of statement, utterance, notation, disclaimer, transfer or exchange of information between two of more persons of any nature whatsoever, by or to whomever, whether oral or written or whether face-to-face, by telephone, email, mail, personal delivery or otherwise, including but not limited to, letters, correspondence, conversations, memoranda, dialogue, discussions, meetings, interviews, consultations, agreements and other understandings.

M.    "Concern" and "concerning" are used in their broadest sense and embrace all matter relating to, referring to, describing, discussing, evidencing or constituting the referenced subject.

N.    "Discuss," "discussing," "relate to" "relating to," "support" or "supporting" means in any way directly or indirectly, in whole or in part, discussing, referring to, regarding, constituting, concerning, about, pertaining to, relating to, reflecting, considering, underlying, modifying, amending, confirming, mentioning, endorsing, evidencing, summarizing, memorializing, describing, discussing, analyzing, evaluating, representing, supporting, qualifying, terminating, revoking, canceling or negating.

O.    "Identify" used in respect to a company or corporate or business entity of any kind means to set forth:

        a.  the full name of the company;

        b.  the full name of the division or office involved, if applicable; and

        c.  the address of the company and of the division or office involved, if applicable.

P.    "Identify" used in respect to a document or thing means:

    a.   to provide a brief description of such document or thing, including date, author, recipients, type, and content or substance;

    b.   to identify the custodian of the document or thing;

    c.   to identify the place where the document or thing may be inspected; and

    d.   if a copy of the document has been supplied to LPL, to so state and specifically identify the copy supplied by reference to production numbers or other identifying information.

Q.     "Identify" used with respect to a natural person means to state:

    a.   the full name;

    b.   the present or last known business and residence addresses;

    c.   the last known employer or job affiliation; and

    d.   the last known occupation and business position or title held.

R.     "Import" or "importation" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

S.     "Make" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

T.     "Offer to sell" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

U.     "Person" means any natural person, firm, association, partnership, corporation, or other form of legal entity.

V.     "Sell" or "sale" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

W.     The use of the singular form of any word includes the plural and vice versa.

The topics to be covered in the deposition include:

Attachments A to Fed. R. Civ. P. 45 Subpoena

Page 4 of 6

1.      The nature of the business relationship and transactions between Amazon.com and Tatung Company, Tatung America, TSTI, and/or ViewSonic relating to the sale, distribution, or importation of visual display products, including but not limited to the agreements between Amazon.com, Tatung Company, Tatung America, TSTI, and/or ViewSonic.

2.      The scope, nature and purpose of communications between Amazon.com and Tatung Company, Tatung America, TSTI, and ViewSonic (a) concerning the sale or marketing in the United States of visual display products manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic, (b) communications regarding any product support assistance or warranties that Tatung Company, Tatung America, TSTI, and/or ViewSonic have provided to Amazon.com, and (c) communications regarding the market trends for visual display products in the United States.

3.      Any agreements or contracts pursuant to which Amazon.com has agreed to purchase Tatung Company's, Tatung America's, TSTI's and/or ViewSonic's visual display products either directly from Tatung Company, Tatung America, TSTI, or ViewSonic or indirectly by purchasing such products from any OEMs.

4.      Amazon.com's activities or efforts related to the distribution or sale of visual display products in the United States manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic.

5.      All channels, distributors, suppliers, and networks through which products made in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic have been shipped, imported, sold, and/or distributed in the United States.

6.    Amazon.com's sales of its visual display products that were manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic, including the quantity and dollar amount of such sales, by product.

7.    The date(s) and location(s) of any in person meetings in the United States between employees or representatives of Amazon.com and of a) Tatung, b) Tatung America, c) TSTI, and/or d) ViewSonic, the identity and job descriptions of participants in such meetings, and the substance of issues discussed or addressed in such meetings.

DC:50459620 1

## ATTACHMENT B: DOCUMENTS TO BE PRODUCED

For purposes of this Attachment, Amazon.com, Inc. should refer to Attachment A for the definition or meaning of terms used herein, which definitions are incorporated herein by reference. In addition, the following definition applies:

A.    "Document" means all types of documents and things embraced within Federal Rules of Civil Procedure 34 and includes, without limitation, any writing and each original, or a copy in the absence of the original, and every copy bearing notes or markings not present on the original or copy, of the following items, however produced or reproduced, namely: books, accounting records of any nature whatsoever, agreements, communications, correspondence, facsimiles, telegrams, cable, telexes, memoranda, recordings, studies, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, diaries, letters, forecasts, statistical statements, graphs, laboratory or engineering reports and records, notebooks, charts, plans, sketches, drawings, video tapes, films, slides, information bearing photographic products of any nature whatsoever, photo-records, microfilms, tape recordings, minutes or records of meetings or conferences, expressions or statements of policy, lists of persons attending meetings or conferences, reports or summaries or interviews, reports or summaries of investigations, opinions or reports of consultants, patent studies, or opinions of counsel, records, reports or summaries of negotiations, sales literature of any nature whatsoever, brochures, catalogues, catalogue sheets, pamphlets, periodicals, advertisements, circulars or trade letters, press releases, trade releases, publicity releases, new product releases, reprints, drafts of any documents, working papers, indices, original or preliminary notes, computer printouts, floppy disks, hard drives, CD-ROM's, magnetic tapes and other data compilations from which

information can be obtained or translated, if necessary by Amazon.com through detection devices into reasonably usable form. The term document also refers to any tangible object other than a document as described above, and includes objects of every kind and nature such as, but not limited to, prototypes, models, and specimens.

The documents to be produced on or before March 5, 2007, include the following:

1.      All documents provided by Tatung Company, Tatung America, TSTI, or ViewSonic to Amazon.com since January 1, 2002 regarding marketing, sales, or business documents or presentation materials and any documents relating to warranties, product support, or service provided by Tatung Company, Tatung America, TSTI, or ViewSonic regarding their visual display products.

2.      Documents provided by Amazon.com to Tatung Company, Tatung America, TSTI, or ViewSonic since January 1, 2002 sufficient to show Amazon.com's market for visual display products, and/or market trends in the United States for visual display products.

3.      Documents sufficient to show the business relationship between Amazon.com and Tatung Company, Tatung America, TSTI, and/or ViewSonic since January 1, 2002, including communications with Tatung Company, Tatung America, TSTI, and/or ViewSonic, notes from meeting with Tatung Company, Tatung America, TSTI, and/or ViewSonic, and documents in which Amazon.com has agreed to purchase visual display products directly from Tatung Company, Tatung America, TSTI, and/or ViewSonic.

4.      All documents from January 1, 2002 by which Amazon.com has agreed to purchase from original equipment manufacturers ("OEMs") any visual display products that Amazon.com had reason to believe were manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic, and documents sufficient to show

Attachments B to Fed. R. Civ. P. 45 Subpoena

Page 2 of 3

that Tatung Company, Tatung America, TSTI, and/or ViewSonic received notice of Amazon.com's agreements to purchase.

5.    Documents sufficient to show Amazon.com's receipt or purchase of visual display products sold, manufactured, shipped, imported, or distributed in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic since January 1, 2002.

6.    Documents sufficient to show the total quantity of visual display products sold, by product, by Amazon.com that were manufactured or assembled in whole or in part by Tatung Company, Tatung America, and/or ViewSonic since January 1, 2002, including separate summaries for (1) Tatung Company products, (2) Tatung America products, (3) TSTI products, and (4) ViewSonic products.

7.    Documents sufficient to show the sales by total dollar value and by quantity of visual display products sold, by product, by Amazon.com that were manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic since January 1, 2002, including separate summaries for (1) Tatung Company products, (2) Tatung America products, (3) TSTI products, and (4) ViewSonic products.

8. Documents sufficient to identify each person Amazon.com has communicated with at Tatung Company, Tatung America, TSTI, and/or ViewSonic.

DC:50459614.1

Attachments B to Fed. R. Civ. P. 45 Subpoena
Page 3 of 3

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on February 13, 2007, he electronically

filed the foregoing document with the Clerk of the Court using CM/ECF, which will send

automatic notification of the filing to the following:

Jeffrey B Bove, Esq.
Jaclyn M. Mason, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

The undersigned counsel further certifies that copies of the foregoing document

were sent by hand to the above counsel and by email and will be sent by first class mail

to the following non-registered participants:

Scott R. Miller, Esq.
Connolly Bove Lodge & Hutz LLP
355 South Grand Avenue
Suite 3150
Los Angeles, CA 90071

Valerie Ho, Esq.
Mark H. Krietzman, Esq.
Frank C. Merideth, Jr., Esq.
Greenberg Traurig LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404

Tracy Roman, Esq.
Raskin Peter Rubin & Simon LLP
1801 Century Park East, Suite 2300
Los Angeles, CA 90067

/s/ Richard D. Kirk (rk922)
Richard D. Kirk

571447-1



**07-MC-00030-DECL**

## DECLARATION OF JACKSON CHANG

I, Jackson Chang, under penalty of perjury, hereby declare and state:

1.     I am the General Manager of Display BU Sales for Tatung Company.

2.     Tatung Company and Tatung Company of America, Inc. (the "Tatung Defendants"), actively compete with L.G. Philips LCD Co., Ltd. ("LPL") and its parent company, LG Electronics, Inc. ("LGE") in the computer monitor business.

3.     Producing the information and testimony LPL seeks would cause major competitive harm to the Tatung Defendants.

4.     The noticed deposition topics are closely guarded by the Tatung Defendants as highly sensitive and confidential business information.

5.     The requested documents also implicate highly sensitive commercial information.

6.     All of this information is kept secret by the Tatung Defendants. Only authorized personnel have access to the information and information kept on computers are password protected.

7.     A third party's disclosure of the requested information would likely result in competitors using the information to 1) undercut the Tatung Defendants in pricing; 2) deduce the exact specifications required by existing customers; and/or 3) specifically target and lure away Tatung's existing customers.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 8, 2007 in Los Angeles, CA.

Jackson Chang

ORIGINAL

1
2
3
4
5
6

**07-MC-00030-PRO**

7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

9

10    LG PHILIPS LCD CO.,

11                          Plaintiff,

12                v.

13    TATUNG CO., TATUNG CO. OF
      AMERICA INC.,
14    and VIEWSONIC CORP.,

15                          Defendants.

16

No. **MS 07 - 0030** RSM

[PROPOSED] ORDER GRANTING
DEFENDANTS' MOTION FOR
PROTECTIVE ORDER

**NOTED FOR HEARING:**
**March 19, 2007, 9:00 a.m.**

17        After hearing oral argument and considering all pleadings and papers filed in

18    support of and in opposition to Defendants' Motion For Protective Order Limiting Scope of

19    Third Party Deposition and Subpoena, the Court finds that good cause exists for granting

20    this motion in full. Accordingly,

21        **IT IS HEREBY ORDERED THAT:**

22        1.    The motion is GRANTED.

23        2.    Any deposition testimony taken from third party Amazon.com, Inc., shall be

24    limited to that testimony relating to the accused products at issue in *L.G. Philips LCD Co.,*

25    *Ltd. v. Tatung Company, et. al.*, C.A. No. 04-343-JJF (United States District Court for the

26    District of Delaware).

[PROPOSED] ORDER GRANTING
DEFENDANTS' MOTION FOR PROTECTIVE
ORDER – Page 1

YARMUTH WILSDON CALFO PLLC

FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

ORIGINAL

1        3.  Any documents produced in response to the subpoena issued on third party

2    Amazon.com, Inc., shall be limited to those documents relating to the accused products at

3    issue in *L.G. Philips LCD Co., Ltd. v. Tatung Company, et. al.*, C.A. No. 04-343-JJF

4    (United States District Court for the District of Delaware).

5

6                                            _____

7                                            United States District Court for the
Western District of Washington

8    Presented By:

9    YARMUTH WILSDON CALFO PLLC

10

11   By Stacie Foster, WSBA #23397

12

13   *Of Counsel:*

14   **GREENBERG TRAURIG LLP**

15   Frank E. Meredith, Jr.
Valerie W. Ho
Mark H. Krietzman

16   Steve P. Hassid
2450 Colorado Avenue, Suite 400E

17   Santa Monica, CA 90404

18   **RICHARDS LAYTON & FINGER, PA**

19   Frederick L. Cottrell, III
Anne Shea Gaza

20   One Rodney Square
P.O. Box 551

21   Wilmington, DE 19899

22

23   Attorneys for Defendants
Tatung Company and
Tatung Company of America, Inc.

24

25

26

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800  F 206.516.3888

1
2
3
4
5

|||||| |||||| ||||| |||||| ||||| ||||| ||||| ||||| |||||
| |||||||| ||||| ||||| ||||| ||||| ||||| ||| |||||

**07-MC-00030-CERT**

___ FILED       ___ ENTERED
___ LODGED      ___ RECEIVED

MAR 0 8 2007    DB

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY

6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

9
10
11
12
13
14
15

LG PHILIPS LCD CO.,

      Plaintiff,

     v.

TATUNG CO., TATUNG CO. OF
AMERICA INC.,
and VIEWSONIC CORP.,

      Defendants.

**MS 07 - 0030** RSM

CERTIFICATE OF SERVICE`

16
17

    I certify that on this day I caused true and correct copies of

18    1.    Defendants Tatung Company and Tatung Company of America, Inc.'s

19  Motion for a Protective Order Limiting Scope of Third Party Deposition and

20  Subpoena and Request for Expedited Hearing;

21    2.    Declaration of Jackson Chang; and

22    3.    [Proposed] Order Granting Defendants' Motion for Protective Order;

23  to be served upon:

24  //

25  //

26  //

ORIGINAL

CERTIFICATE OF SERVICE – Page 1

YARMUTH WILSDON CALFO PLLC

FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800  F 206.516.3888

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**COUNSEL FOR LPL**

Richard D. Kirk
**The Bayard Firm**
222 Delaware Avenue # 900
Wilmington, DE 19899
rkirk@bayardfirm.com

**COUNSEL FOR DEFENDANT
VIEWSONIC CORPORATION**

Jeffrey B. Bove
jbove@cblh.com
James D. Heisman
jheisman@cblh.com
Jaclyn M. Mason
jmason@cblh.com
**Connolly Bove Lodge & Hutz LLP**
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

**COUNSEL FOR DEFENDANT
VIEWSONIC CORPORATION**

Scott R. Miller
smiller@cblh.com
**Connolly Bove Lodge & Hutz LLP**
355 South Grand Avenue, Suite 3150
Los Angeles, CA 90071

**COUNSEL FOR LPL**

Gaspare J. Bono
gbono@mckennalong.com
Rel S. Ambrozy
rambrozy@mckennalong.com
Cass W. Christenson
cchristenson@mckennalong.com
Lora A. Brzezynski
lbrzezynski@mckennalong.com
**McKenna Long & Aldridge LLP**
1900 K Street, N.W.
Washington, DC 20006

**COUNSEL FOR DEFENDANT
VIEWSONIC CORPORATION**

Tracy R. Roman
troman@raskinpeter.com
**Raskin Peter Rubin & Simon LLP**
1801 Century Park East, Suite 2300
Los Angeles, CA 90067

**COUNSEL FOR DEFENDANTS
TATUNG CO. & TATUNG CO. OF
AMERICA**

Frederick L. Cottrell, III
Cottrell@RLF.com
Anne Shea Gaza
Gaza@RLF.com
**Richards Layton & Finger, PA**
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

CERTIFICATE OF SERVICE – Page 2

471.01 hc074801 3/8/07

1

**COUNSEL FOR DEFENDANTS**
2  **TATUNG CO. & TATUNG CO. OF**
**AMERICA**
3

Frank E. Meredith, Jr.
4  meredithf@gtlaw.com
Valerie W. Ho
5  hov@gtlaw.com
Mark H. Krietzman
6  krietzmanm@gtlaw.com
Steve P. Hassid
7  hassids@gtlaw.com
**Greenberg Traurig LLP**
8  2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404
9

10
☒ Via Email
11  ☐ Via Facsimile
☐ Via Federal Express
12  ☐ Via Hand Delivery
☐ Via U.S. Mail
13

14

15        I declare under penalty of perjury under the laws of the State of Washington that the

16  foregoing is true and correct.

17        DATED this 8th day of March, 2007, at Seattle, Washington.

18

19                                                Shelley Meyer
                                                  Legal Assistant
20

21

22

23

24

25

26

CERTIFICATE OF SERVICE – Page 3

The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| L.G. PHILIPS LCD CO., LTD, | No.   MS 07-0030-RSM |
| Plaintiff, | PLAINTIFF L.G.PHILIPS LCD CO., LTD.'S OPPOSITION TO TATUNG'S MOTION FOR EXPEDITED HEARING AND MOTION FOR TELEPHONIC HEARING |
| v. | |
| TATUNG COMPANY, TATUNG COMPANY OF AMERICA, INC., and VIEWSONIC CORPORATION, | **Noted for Hearing** March 19, 2007 at 9:00 a.m. |
| Defendant. | |

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, Plaintiff LG.Philips LCD Co., Ltd. ("LPL") hereby opposes the Request for Expedited Hearing filed by Defendants Tatung Company and Tatung Company of America, Inc. (collectively "Tatung") in relation to the third party subpoena served on Amazon.com, Inc. by LPL.  Ex. 1.  LPL requests that Tatung's motion for expedited hearing be denied and that, in any event, the Court schedule a hearing at a time when LPL's Washington, D.C. counsel is available and allow LPL to participate in the hearing by telephone.

Tatung failed to confer with LPL about possible hearing dates, failed to provide sufficient notice to LPL of its motion, and purposely scheduled numerous such motions around the country on the same day.  This motion involves extensive factual issues, thus necessitating that LPL's Washington, D.C. counsel present argument to the Court.  For these reasons, LPL respectfully requests that it be permitted to appear by telephone or that the hearing date be rescheduled for a date when LPL's counsel may appear and be heard.

PLAINTIFF L.G.PHILIPS LCD CO., LTD.'S
OPPOSITION TO TATUNG'S MOTION FOR
EXPEDITED HEARING AND MOTION FOR
TELEPHONIC HEARING - 1
MS-07-0030 RSM

GARDNER BOND TRABOLSI PLLC
A T T O R N E Y S
2200 SIXTH AVENUE, SUITE 600
SEATTLE, WASHINGTON 98121
TELEPHONE (206) 256-6309
FACSIMILE (206) 256-6318

1

## I.     STATEMENT OF FACTS

2

This matter involves a subpoena issued by LPL in relation to discovery in a patent

3

infringement action pending in the United States District Court in Delaware ("Main Case").

4

On December 27, 2006, LPL served a third party subpoena on Hewlett-Packard Company.

5

On February 13 and 14, 2007, LPL served approximately 23 other third party subpoenas

6

("Subpoenas") on various distributors, retailers, and purchasers of Defendants' products in the

7

United States.  The Subpoenas were issued based on LPL's understanding that these parties,

8

who have current or former business relationships with Tatung and ViewSonic Corporation

9

("ViewSonic"), another Defendant in the underlying case, have documents that are relevant to

10

the instant action, including but not limited to, documents related to purchase and sale of the

11

infringing products in the United States, documents relating to Defendants' efforts to market

12

the infringing products in the United States, documents relating to Defendants' technical

13

specifications, and other important discovery concerning infringement, inducement, damages,

and other issues.[1]  The Subpoenas seek documents and information related solely to the

products at issue in this action.

14

In addition, the Subpoenas requested that all documents be produced by March 5,

15

2007, and that depositions occur between March 12 and March 27, 2007, consistent with the

16

March 30 deadline for third party discovery in this case.  LPL provided notice and copies of

17

the Subpoenas to the Defendants prior to the service of the Subpoenas.  During a telephone

18

conference on January 30, 2007, Tatung indicated for the first time that it intended to file a

19

motion for protective order with respect to the Subpoena directed to Hewlett-Packard, but

20

Tatung never did so.[2]  More than one month later, on March 5, Tatung again threatened to file

21

[1] LPL has also sought the same information and documents, unsuccessfully, from the Defendants.  Defendants
have produced some - but certainly not all – discovery that LPL seeks.  Notably, much of Defendants'

22

production is subject to objections and limitations that LPL disputes and which are the subject of numerous
discovery motions already pending before the Special Discovery Master in the Main Case in the District of
Delaware, as described more fully below.

23

[2] Hewlett-Packard has produced more than 5000 pages of relevant, responsive documents.  Hewlett-Packard's
production belies Tatung's argument that the Subpoenas are burdensome to the third parties, particularly because
the majority of the third parties are smaller entities with far fewer responsive documents.   Moreover, Hewlett-

PLAINTIFF L.G.PHILIPS LCD CO., LTD.'S
OPPOSITION TO TATUNG'S MOTION FOR
EXPEDITED HEARING AND MOTION FOR
TELEPHONIC HEARING - 2
MS-07-0030 RSM

GARDNER BOND TRABOLSI PLLC
A T T O R N E Y S
2200 SIXTH AVENUE, SUITE 600
SEATTLE, WASHINGTON 98121
TELEPHONE (206) 256-6309
FACSIMILE (206) 256-6318

1    additional motions for protective orders with respect to the later served 23 Subpoenas.  In

2    addition, even though Tatung had received the second batch of Subpoenas nearly three weeks

3    earlier, Tatung indicated that some or all of such motions would be made on an *ex parte* basis

4    because of the March 5 return date on some of the Subpoenas, which incidentally was that

5    day.  (*See* Ex. 2, Emails between V. Ho and C. Connor (Mar. 5-7, 2007).)  Tatung claimed to

6    have standing to raise any such objections on behalf of the third parties because it claimed

7    that the Subpoenas pertained to Tatung's still unresolved objections to the scope of discovery

8    in the Main Case.  Tatung never explained why it had waited several weeks before raising its

9    objections, but merely stated that it intended to file its motions on an *ex parte* basis.  *See id.*

10    In an exchange of emails, LPL strenuously objected to Tatung's position that it could file *ex*

11    *parte* motions on any issue in the case, including any issues related to the third party

12    subpoenas served by LPL.  *See id.*  In addition, LPL further reiterated its position that Tatung

13    had no standing to raise objections to the Subpoenas, principally, because Tatung has never

   proved why any documents now in the custody of third parties are confidential, trade secrets,

   or otherwise shielded from discovery.  *See id.*

14        Nonetheless, Tatung evidently began filing its motions on March 9, 2007.  All of the

15    motions filed are nearly identical.  Many of the motions were filed on an *ex parte* basis.  With

16    respect to the remaining motions, which were not technically filed *ex parte*, the motions were

17    served in a questionable manner.  For example, none of the 23 motions were sent to Shari

18    Klevens at McKenna Long & Aldridge, even though Ms. Klevens was the attorney who

19    issued and served all of the Subpoenas at issue (as evident from the face of the Subpoenas).

20    Indeed, even though LPL's counsel sent an email on Friday, March 2, 2007 providing a

21    service list for all documents in the Main Case, Tatung failed to serve motions on the

22    complete list of attorneys included in that list.  As a result, Tatung did not learn of many of

23

Packard's production reveals many "Process Management Plans," even after Tatung denied the existence of such documents and refused to produce them.  Tatung's failure to produce documents adds support for LPL's position that it needs the discovery sought from the third parties.

PLAINTIFF L.G.PHILIPS LCD CO., LTD.'S
OPPOSITION TO TATUNG'S MOTION FOR
EXPEDITED HEARING AND MOTION FOR
TELEPHONIC HEARING - 3
MS-07-0030 RSM

GARDNER BOND TRABOLSI PLLC
A T T O R N E Y S
2200 SIXTH AVENUE, SUITE 600
SEATTLE, WASHINGTON 98121
TELEPHONE (206) 256-6309
FACSIMILE (206) 256-6318

1    the motions until well after they were filed.  Moreover, Tatung served the majority of its

2    motions by regular mail, even though Tatung requested expedited hearings with respect to

3    those motions, ensuring the possibility that the courts would rule before LPL would receive

4    the motions, let alone have an opportunity to respond.  Notably, the facts suggest that Tatung

5    actually went out of its way to make sure that LPL did not receive the motions in a timely

     manner.

6          For example, Tatung served only a few of the motions electronically, and then, even

7    though Shari Klevens was the only attorney to sign LPL's subpoenas, served its motions only

8    on two other LPL attorneys, one of whom Tatung knew to be out of the office defending

9    depositions for the Main Case.  Also, even though Tatung committed to LPL and the Special

10   Master during a hearing on March 12, 2007 that it would provide electronic copies of all

11   motions by the close of business on March 12, 2007, Tatung has so far failed to do so.  *See*

12   Ex. 3, Letter from C. Connor to Tatung's counsel on March 12, 2007, which advises Tatung

     of LPL's additional concerns.

13         As a further example, according to Tatung, it filed a Motion for Protective Order with

14   regard to the Subpoena served on Sensormatic in the Southern District of Florida on March 9,

15   2007.  That motion was served by mail only and received by LPL in the mid-afternoon on

16   Monday, March 12, 2007 (in the afternoon mail delivery).  At 4:30 p.m. that same day, LPL

17   received notice that the Southern District had granted the motion, and the court's order stated

18   that the court reviewed an opposition filed by LPL (evidently using language from a standard

     proposed order).[3]   Ex. 4.  Moreover, Tatung is now trying to capitalize on the Southern

19   District of Florida's mistaken entry of an order in Tatung's favor by encouraging other courts,

20   including this one, to grant Tatung's motions even as LPL is preparing its oppositions.  *See*

21   *e.g.,* Ex. 5.

22         As yet another example of Tatung's failure to provide adequate notice of its motions,

23   _____

[3] LPL has filed a Motion for Reconsideration in the Southern District of Florida, advising the Court that its order was issued before LPL had been given notice of Tatung's motion and before LPL had an opportunity to respond.

PLAINTIFF L.G.PHILIPS LCD CO., LTD.'S
OPPOSITION TO TATUNG'S MOTION FOR
EXPEDITED HEARING AND MOTION FOR
TELEPHONIC HEARING - 4
MS-07-0030 RSM

GARDNER BOND TRABOLSI PLLC
A T T O R N E Y S
2200 SIXTH AVENUE, SUITE 600
SEATTLE, WASHINGTON 98121
TELEPHONE (206) 256-6309
FACSIMILE (206) 256-6318

on March 12, 2007, Tatung sent a letter to Judge Mary L. Cooper in the District of New Jersey and forwarded a copy of Tatung's Motion for Protective Order filed in that court. Tatung copied two of LPL's attorneys on the letter electronically (although not Ms. Klevens), but did not attach the enclosures, even though LPL had not otherwise received those documents at that time. *See* Ex. 6. Moreover, even after LPL reiterated during a hearing in the Main Case that Ms. Klevens and Cormac Connor, also of McKenna Long & Aldridge LLP, should be included on correspondence relating to the third party subpoenas, Tatung had continued to leave them off of new emails enclosing the requested motions. *See* Ex. 7.

Finally, as further evidence of Tatung's conduct with respect to the Motions for Protective Order, not only did Tatung provide untimely and/or no notice of the motions, but Tatung failed to confer with LPL on possible times for the hearing and scheduled several overlapping hearings in multiple jurisdictions. For example, Defendants initially tried to schedule three oral arguments, all on the morning of March 15, 2007, in New Jersey, Massachusetts, and Illinois. These three motions, and many others, were scheduled only a few days after the motions were filed and served by regular U.S. mail, rather than electronically, if at all.[4]

While Tatung filed the Motions for Protective Order, it did so without regard for the fact that several of the third parties had either already produced the requested documents or agreed to produce the requested documents.[5] However, because Tatung contacted the third parties to notify them of Tatung's Motions, several of the third parties have now refused to produce the requested discovery. *See, e.g.* Ex. 8.

---

[4] As Tatung is aware, all of these emergency hearings have been scheduled to occur simultaneously with depositions of Tatung's witnesses. Because LPL's lead trial counsel are busy taking and defending depositions this week, it appears that Tatung strategically filed these requests for expedited hearing in an attempt to prevent LPL from obtaining significant and relevant information it needs from the third parties or to divert LPL's focus from the Tatung depositions.

[5] For example, even after learning that Tatung had filed Motions related to the Subpoenas, a few of the third parties have agreed to produce the requested documents, further undermining Tatung's argument that the Subpoenas are burdensome.

PLAINTIFF L.G.PHILIPS LCD CO., LTD.'S
OPPOSITION TO TATUNG'S MOTION FOR
EXPEDITED HEARING AND MOTION FOR
TELEPHONIC HEARING - 5
MS-07-0030 RSM

GARDNER BOND TRABOLSI PLLC
A T T O R N E Y S
2200 SIXTH AVENUE, SUITE 600
SEATTLE, WASHINGTON 98121
TELEPHONE (206) 256-6309
FACSIMILE (206) 256-6318

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

## II.     ARGUMENT

### A.     Defendants' Request for Expedited Hearing Should Be Denied

Defendants argue that LPL has created the need for expedited hearing by serving its Subpoenas "at the last minute." This is simply not true.[6] Indeed, LPL waited to serve its Subpoenas because, simply put, LPL was hopeful that it would receive the discovery at issue from the Defendants. However, as the discovery deadline quickly approached and Defendants had not provided the requested information, LPL realized it had no choice but to serve the Subpoenas before LPL's opportunity to obtain the discovery was lost. Nonetheless, LPL served the Subpoenas a full six weeks before the deadline for third party discovery. Indeed, in a hearing on March 12, 2007, Tatung conceded that it has not produced all responsive discovery documents and that it would produce additional documents in April 2007, after the deadline for the close of third party discovery.

Contrary to Tatung's suggestion, Tatung has created its own delay and now offers that delay as justification for its expedited relief. Indeed, even though Tatung received the Subpoenas on or about February 13 and 14, it waited more than three weeks to file the instant motion. Tatung's request for an expedited motion would be unnecessary but for Defendants' failure to file this motion when it learned of the scope of the Subpoenas. LPL should not have to pay for Tatung's delay.[7]

### B.     LPL Requests that Any Hearing On This Matter Be Scheduled At a Time When LPL'S Washington, D.C. Counsel Is Available and Requests Leave to Participate By Telephone

Because Tatung filed approximately 23 motions, all with requests for expedited hearing, the various courts have begun to schedule hearings at the same time. Tatung did not

---

[6] While the Scheduling Order in the Main Case sets March 30, 2007 as the close of third party discovery, LPL has twice requested extensions of this deadline. Tatung opposed those requests, which were denied.

[7] In addition, on Friday, March 16, 2007, Special Master Vincent Poppiti in the District of Delaware will consider whether to extend the deadline for third party discovery. If that motion is granted, the deposition can be rescheduled past March 30, 2007 and any alleged need for expedited resolution of this motion will be rendered moot. Also pending before Special Master Poppiti is LPL's request that Tatung be precluded from continuing their blatant interference with appropriate third party discovery.

PLAINTIFF L.G.PHILIPS LCD CO., LTD.'S
OPPOSITION TO TATUNG'S MOTION FOR
EXPEDITED HEARING AND MOTION FOR
TELEPHONIC HEARING - 6
MS-07-0030 RSM

GARDNER BOND TRABOLSI PLLC
A T T O R N E Y S
2200 SIXTH AVENUE, SUITE 600
SEATTLE, WASHINGTON 98121
TELEPHONE (206) 256-6309
FACSIMILE (206) 256-6318

consult with LPL regarding LPL's availability with respect to any of the 23 pending motions prior to its request for expedited hearing.  Consequently, Tatung attempted to schedule at least three hearings (of which LPL knows), all on the morning of March 15, at 9:00 a.m. (in New Jersey), at 9:15 a.m. (in Illinois), and 11:00 a.m. (in Massachusetts).  These hearings, which are just a few examples, are obviously being scheduled to create the most interference, harassment, and burden on LPL's counsel.  Because the various courts presumably are not aware of the other motions pending with respect to the 23 Subpoenas, the hearings being scheduled are at times when LPL is unavailable, primarily due to other hearings scheduled at the same time.  As a result, LPL requests that any hearing on this matter be scheduled, or rescheduled to the extent already placed on the Court's docket, until a time when LPL's Washington, D.C. counsel is available.  In addition, in light of the numerous hearings scheduled within hours of one another in different jurisdictions across the country, LPL requests that its Washington, D.C. counsel be permitted to participate in any hearings by telephone.  If necessary, however, LPL will have local counsel present in person for the hearing.

## III.     CONCLUSION

For the foregoing reasons, LPL requests that Tatung's motion for expedited hearing be denied, and that the Court schedule a hearing at a time when LPL's Washington, D.C. counsel is available.   LPL also requests that its counsel be permitted to participate in the hearing by telephone.

PLAINTIFF L.G.PHILIPS LCD CO., LTD.'S
OPPOSITION TO TATUNG'S MOTION FOR
EXPEDITED HEARING AND MOTION FOR
TELEPHONIC HEARING - 7
MS-07-0030 RSM

GARDNER BOND TRABOLSI PLLC
A T T O R N E Y S
2200 SIXTH AVENUE, SUITE 600
SEATTLE, WASHINGTON 98121
TELEPHONE (206) 256-6309
FACSIMILE (206) 256-6318

1     DATED this 14th day of March 2007.

2                       GARDNER BOND TRABOLSI PLLC

3

4                 By  /s/ Ronald C. Gardner
                    Ronald C. Gardner, WSBA No. 9270

5

6                 *Of Counsel:*

                 **MCKENNA LONG & ALDRIDGE LLP**

7

8                 Shari Klevens
                 1900 K Street, NW
                 Washington, DC 20006

9                 202-496-7207

10               Attorneys for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

PLAINTIFF L.G.PHILIPS LCD CO., LTD.'S
OPPOSITION TO TATUNG'S MOTION FOR
EXPEDITED HEARING AND MOTION FOR
TELEPHONIC HEARING - 8
MS-07-0030 RSM

GARDNER  BOND  TRABOLSI PLLC
A T T O R N E Y S
2200 SIXTH AVENUE, SUITE 600
SEATTLE, WASHINGTON 98121
TELEPHONE (206) 256-6309
FACSIMILE (206) 256-6318

1

<u>**CERTIFICATE OF SERVICE**</u>

2          The undersigned certifies that on March 14, 2007, she electronically filed the

3    foregoing document with the Clerk of the Court using CM/ECF, which will send automatic

4    notification of the filing to the following:

5    **PLAINTIFF L.G.PHILIPS LCD CO., LTD.'S OPPOSITION TO TATUNG'S
     MOTION FOR EXPEDITED HEARING AND MOTION FOR TELEPHONIC**
6    **HEARING**

7

     Stacy Foster
8    Warmuth Wilsdon Calfo PLLC
     sfoster@yarmuth.com
9

10
             Dated: March 14, 2007.
11

12                                          /s/ Jan M. Young
                                            Jan M. Young
13                                          Legal Assistant to Ronald C. Gardner

14

15

16

17

18

19

20

21

22

23

Gardner  Bond  Trabolsi PLLC
A T T O R N E Y S
2200 Sixth Avenue, Suite 600
Seattle, Washington 98121
Telephone (206) 256-6309
Facsimile (206) 256-6318

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD., | |
| Plaintiff, | |
| v. | Civil Action No. 04-343 (JJF) |
| TATUNG COMPANY, et al., | |
| Defendants. | |

**NOTICE OF FED.R.CIV.P. 30(b)(6) DEPOSITION *DUCES TECUM*
AND FED.R.CIV.P. 45 SERVICE OF SUBPOENA
(AMAZON.COM, INC.)**

TO:

Jeffrey B Bove, Esq.
Jaclyn M. Mason, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

Valerie Ho, Esq.
Mark H. Krietzman, Esq.
Frank C. Merideth, Jr., Esq.
Greenberg Traurig LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404

Scott R. Miller, Esq.
Connolly Bove Lodge & Hutz LLP
355 South Grand Avenue
Suite 3150
Los Angeles, CA 90071

Tracy Roman, Esq.
Raskin  Peter Rubin & Simon LLP
1801 Century Park East, Suite 2300
Los Angeles, CA 90067

PLEASE TAKE NOTICE that Plaintiff will take the deposition *duces tecum* of

Amazon.com, Inc.. ("Amazon") pursuant to Fed. R. Civ. P. 30(b)(6), on March 23, 2007.  The

deposition will take place at Bank of America Tower, 701 Fifth Avenue, Suite 6630, Seattle WA

981.  The deposition will be videotaped and taken before a notary public or court reporter, duly

authorized to administer oaths and transcribe the testimony of the deponent(s) and may use technology that permits the real time display of the deposition transcript for attendees who bring a compatible computer.  The deposition may continue from day to day until completed if authorized by the Court or stipulated by the parties.

PLEASE ALSO TAKE NOTICE that LG.Philips LCD Co., Ltd. is serving Amazon with a subpoena (the "Subpoena"), a copy of which is attached hereto.  The subjects covered in the deposition will include (but are not limited to) the subjects listed on Attachment A to the Subpoena.  Pursuant to Fed. R. Civ. P. 30(b)(6), Amazon is required to designate one or more persons to testify at the deposition as to the matters known or reasonably available to Amazon concerning all topics listed in Attachment A to the Subpoena.  In addition, the Subpoena requires Amazon to produce at the deposition the documents listed in Attachment B to the Subpoena.

You are invited to attend and cross examine.

February 13, 2007

THE BAYARD FIRM

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk
Ashley B. Stitzer
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899-5130
rkirk@bayardfirm.com
(302) 655-5000
Counsel for Plaintiff
LG.PHILIPS LCD CO., LTD.

OF COUNSEL:
Gaspare J. Bono
Matthew T. Bailey
Lora A. Brzezynski
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
(202) 496-7500

OAO88 (Rev. 1/94) Subpoena in a Civil Case

# Issued by the
## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF WASHINGTON

LG.PHILIPS LCD CO., LTD.
V.
TATUNG COMPANY, et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]    04-343 (JJF)

TO:    **Amazon.com, Inc.**
**1200 12th Avenue, Suite 1200**
**Seattle, WA 98114**

United States District Court for the District of Delaware

X    YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

X    YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. (See Attachment A for topics.)

| PLACE OF DEPOSITION<br>Esq. Deposition Services, Bank of America Tower, 701 Fifth Ave, Ste 6630, Seattle WA 98104 | DATE AND TIME<br>March 23, 2007 at 9:00 am. |
|---|---|

X    YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): All documents listed in Attachment B.

| PLACE<br>Mail documents to: McKenna Long & Aldridge LLP, Attn: Shari Klevens<br>c/o Esquire Deposition Services, Bank of America Tower, 701 Fifth Avenue, Ste 6630, Seattle<br>WA 98104 | DATE AND TIME<br>March 5, 2007 at 9:00 a.m. |
|---|---|

G    YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER=S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR<br>Shari Klevens (Attorney for Plaintiff) *SKLevens* | DATE<br>February 13, 2007 |
|---|---|

ISSUING OFFICER=S NAME, ADDRESS AND PHONE NUMBER
Shari Klevens
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
Telephone: 202-496-7612

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

DC:50459520 1

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

_____

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance,
(ii)   requires a person who is not a party or an officer of a

party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv)   subjects a person to undue burden.

(B) If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii)   requires disclosure of an unretained expert=s opinion or information not describing specific events or occurrences in dispute and resulting from the expert=s study made not at the request of any party, or
(iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## ATTACHMENT A: TOPICS TO BE ADDRESSED AT THE DEPOSITION

For purposes of this Attachment, Amazon.com, Inc. should use the following definition for the terms used herein.

A.     "Amazon.com," "you," and "your" as used herein, means Amazon.com, Inc. and all persons or entities acting or purporting to act on your behalf, and any affiliates of Amazon.com, Inc.

B.     "ViewSonic" means Defendant ViewSonic Corporation, and all persons or entities acting or purporting to act on ViewSonic's behalf, and any affiliates of ViewSonic, including, but not limited to, entities, divisions, and affiliates located in Taiwan.

C.     "ViewSonic products" as used herein means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for ViewSonic. This includes all such products, regardless of brand name, and thus includes, but is not limited to, ViewSonic brand products.

D.     "Tatung Company" means Defendant Tatung Company, all persons or entities acting or purporting to act on Tatung Company's behalf, and affiliates of Tatung Company, including but not limited to Tatung Company.

E.     "Tatung Company products" as used herein any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for Tatung Company. This includes all such products, regardless of brand name, and thus includes, but is not limited to, Tatung brand products.

F.     "Tatung America" means Defendant Tatung Company of America, Inc., and all persons or entities acting or purporting to act on Tatung Company of America's behalf, including, but not limited to Tatung Company of America.

G.     "Tatung America products" as used herein means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for Tatung America.  This includes all such products, regardless of brand name, and thus includes, but is not limited to, Tatung America brand products.

H.     "TSTI" means Tatung Science and Technology, Inc., and all persons or entities acting or purporting to act on Tatung Science and Technology's behalf, including, but not limited to Tatung Science and Technology.

I.     "TSTI products" as used herein means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for TSTI.  This includes all such products, regardless of brand name, and thus includes, but is not limited to, TSTI brand products.

J.     "Affiliate(s)" means any corporation or other entity that controls, is controlled by or is under common control with the identified corporation or entity, including without limitation partnerships, parents, subsidiaries and divisions.

K.     "Visual display products" means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs.

L.    "Communication" means, without limitation, every manner or means of statement, utterance, notation, disclaimer, transfer or exchange of information between two of more persons of any nature whatsoever, by or to whomever, whether oral or written or whether face-to-face, by telephone, email, mail, personal delivery or otherwise, including but not limited to, letters, correspondence, conversations, memoranda, dialogue, discussions, meetings, interviews, consultations, agreements and other understandings.

M.    "Concern" and "concerning" are used in their broadest sense and embrace all matter relating to, referring to, describing, discussing, evidencing or constituting the referenced subject.

N.    "Discuss," "discussing," "relate to" "relating to," "support" or "supporting" means in any way directly or indirectly, in whole or in part, discussing, referring to, regarding, constituting, concerning, about, pertaining to, relating to, reflecting, considering, underlying, modifying, amending, confirming, mentioning, endorsing, evidencing, summarizing, memorializing, describing, discussing, analyzing, evaluating, representing, supporting, qualifying, terminating, revoking, canceling or negating.

O.    "Identify" used in respect to a company or corporate or business entity of any kind means to set forth:

        a.    the full name of the company;

        b.    the full name of the division or office involved, if applicable; and

        c.    the address of the company and of the division or office involved, if applicable.

P.    "Identify" used in respect to a document or thing means:

    a.   to provide a brief description of such document or thing, including date, author, recipients, type, and content or substance;

    b.   to identify the custodian of the document or thing;

    c.   to identify the place where the document or thing may be inspected; and

    d.   if a copy of the document has been supplied to LPL, to so state and specifically identify the copy supplied by reference to production numbers or other identifying information.

Q.    "Identify" used with respect to a natural person means to state:

    a.   the full name;

    b.   the present or last known business and residence addresses;

    c.   the last known employer or job affiliation; and

    d.   the last known occupation and business position or title held.

R.    "Import" or "importation" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

S.    "Make" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

T.    "Offer to sell" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

U.    "Person" means any natural person, firm, association, partnership, corporation, or other form of legal entity.

V.    "Sell" or "sale" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

W.    The use of the singular form of any word includes the plural and vice versa.

The topics to be covered in the deposition include:

1.      The nature of the business relationship and transactions between Amazon.com and Tatung Company, Tatung America, TSTI, and/or ViewSonic relating to the sale, distribution, or importation of visual display products, including but not limited to the agreements between Amazon.com, Tatung Company, Tatung America, TSTI, and/or ViewSonic.

2.      The scope, nature and purpose of communications between Amazon.com and Tatung Company, Tatung America, TSTI, and ViewSonic (a) concerning the sale or marketing in the United States of visual display products manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic, (b) communications regarding any product support assistance or warranties that Tatung Company, Tatung America, TSTI, and/or ViewSonic have provided to Amazon.com, and (c) communications regarding the market trends for visual display products in the United States.

3.      Any agreements or contracts pursuant to which Amazon.com has agreed to purchase Tatung Company's, Tatung America's, TSTI's and/or ViewSonic's visual display products either directly from Tatung Company, Tatung America, TSTI, or ViewSonic or indirectly by purchasing such products from any OEMs.

4.      Amazon.com's activities or efforts related to the distribution or sale of visual display products in the United States manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic.

5.      All channels, distributors, suppliers, and networks through which products made in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic have been shipped, imported, sold, and/or distributed in the United States.

6.      Amazon.com's sales of its visual display products that were manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic, including the quantity and dollar amount of such sales, by product.

7.      The date(s) and location(s) of any in person meetings in the United States between employees or representatives of Amazon.com and of a) Tatung, b) Tatung America, c) TSTI, and/or d) ViewSonic, the identity and job descriptions of participants in such meetings, and the substance of issues discussed or addressed in such meetings.

DC:50459620 1

## ATTACHMENT B: DOCUMENTS TO BE PRODUCED

For purposes of this Attachment, Amazon.com, Inc. should refer to Attachment A for the definition or meaning of terms used herein, which definitions are incorporated herein by reference. In addition, the following definition applies:

A.  "Document" means all types of documents and things embraced within Federal Rules of Civil Procedure 34 and includes, without limitation, any writing and each original, or a copy in the absence of the original, and every copy bearing notes or markings not present on the original or copy, of the following items, however produced or reproduced, namely: books, accounting records of any nature whatsoever, agreements, communications, correspondence, facsimiles, telegrams, cable, telexes, memoranda, recordings, studies, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, diaries, letters, forecasts, statistical statements, graphs, laboratory or engineering reports and records, notebooks, charts, plans, sketches, drawings, video tapes, films, slides, information bearing photographic products of any nature whatsoever, photo-records, microfilms, tape recordings, minutes or records of meetings or conferences, expressions or statements of policy, lists of persons attending meetings or conferences, reports or summaries or interviews, reports or summaries of investigations, opinions or reports of consultants, patent studies, or opinions of counsel, records, reports or summaries of negotiations, sales literature of any nature whatsoever, brochures, catalogues, catalogue sheets, pamphlets, periodicals, advertisements, circulars or trade letters, press releases, trade releases, publicity releases, new product releases, reprints, drafts of any documents, working papers, indices, original or preliminary notes, computer printouts, floppy disks, hard drives, CD-ROM's, magnetic tapes and other data compilations from which

information can be obtained or translated, if necessary by Amazon.com through detection

devices into reasonably usable form. The term document also refers to any tangible object other

than a document as described above, and includes objects of every kind and nature such as, but

not limited to, prototypes, models, and specimens.

The documents to be produced on or before March 5, 2007, include the following:

1.     All documents provided by Tatung Company, Tatung America, TSTI, or

ViewSonic to Amazon.com since January 1, 2002 regarding marketing, sales, or business

documents or presentation materials and any documents relating to warranties, product support,

or service provided by Tatung Company, Tatung America, TSTI, or ViewSonic regarding their

visual display products.

2.     Documents provided by Amazon.com to Tatung Company, Tatung America,

TSTI, or ViewSonic since January 1, 2002 sufficient to show Amazon.com's market for visual

display products, and/or market trends in the United States for visual display products.

3.     Documents sufficient to show the business relationship between Amazon.com and

Tatung Company, Tatung America, TSTI, and/or ViewSonic since January 1, 2002, including

communications with Tatung Company, Tatung America, TSTI, and/or ViewSonic, notes from

meeting with Tatung Company, Tatung America, TSTI, and/or ViewSonic, and documents in

which Amazon.com has agreed to purchase visual display products directly from Tatung

Company, Tatung America, TSTI, and/or ViewSonic.

4.     All documents from January 1, 2002 by which Amazon.com has agreed to

purchase from original equipment manufacturers ("OEMs") any visual display products that

Amazon.com had reason to believe were manufactured or assembled in whole or in part by or for

Tatung Company, Tatung America, TSTI, and/or ViewSonic, and documents sufficient to show

that Tatung Company, Tatung America, TSTI, and/or ViewSonic received notice of Amazon.com's agreements to purchase.

5.    Documents sufficient to show Amazon.com's receipt or purchase of visual display products sold, manufactured, shipped, imported, or distributed in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic since January 1, 2002.

6.    Documents sufficient to show the total quantity of visual display products sold, by product, by Amazon.com that were manufactured or assembled in whole or in part by Tatung Company, Tatung America, and/or ViewSonic since January 1, 2002, including separate summaries for (1) Tatung Company products, (2) Tatung America products, (3) TSTI products, and (4) ViewSonic products.

7.    Documents sufficient to show the sales by total dollar value and by quantity of visual display products sold, by product, by Amazon.com that were manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic since January 1, 2002, including separate summaries for (1) Tatung Company products, (2) Tatung America products, (3) TSTI products, and (4) ViewSonic products.

8.  Documents sufficient to identify each person Amazon.com has communicated with at Tatung Company, Tatung America, TSTI, and/or ViewSonic.

DC:50459614.1

Attachments B to Fed. R. Civ. P. 45 Subpoena

Page 3 of 3

# CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on February 13, 2007, he electronically

filed the foregoing document with the Clerk of the Court using CM/ECF, which will send

automatic notification of the filing to the following:

Jeffrey B Bove, Esq.
Jaclyn M. Mason, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

The undersigned counsel further certifies that copies of the foregoing document

were sent by hand to the above counsel and by email and will be sent by first class mail

to the following non-registered participants:

Scott R. Miller, Esq.
Connolly Bove Lodge & Hutz LLP
355 South Grand Avenue
Suite 3150
Los Angeles, CA 90071

Valerie Ho, Esq.
Mark H. Krietzman, Esq.
Frank C. Merideth, Jr., Esq.
Greenberg Traurig LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404

Tracy Roman, Esq.
Raskin Peter Rubin & Simon LLP
1801 Century Park East, Suite 2300
Los Angeles, CA 90067

/s/ Richard D. Kirk (rk922)
Richard D. Kirk

571447-1

# EXHIBIT 2

**Connor, Cormac**

| | |
|---|---|
| **From:** | HoV@GTLAW.com |
| **Sent:** | Wednesday, March 07, 2007 6:06 AM |
| **To:** | Connor, Cormac |
| **Cc:** | Christenson, Cass; Ambrozy, Rel; Brzezynski, Lora; MeridethF@GTLAW.com; KrietzmanM@GTLAW.com; HassidS@gtlaw.com |
| **Subject:** | Re: 3/5 meet-and-confer |

Your suggestion that the Tatung Defendants have known about LPL's improper subpoenas since January is wrong. LPL did not serve its various batches of subpoenas until mid to late February. We never met and conferred regarding the subpoenas at issue in January because those subpoenas had not even been issued by LPL at the time. Your resentment aside, the record speaks for itself.

The case law you cite is irrelevant.

We will proceed with our motions.

Valerie Ho
--------------------------
Sent from my BlackBerry Wireless Handheld


----- Original Message -----
From: Connor, Cormac <cconnor@mckennalong.com>
To: Ho, Valerie W. (Shld-LA-LT)
Cc: Christenson, Cass <cchristenson@mckennalong.com>; Ambrozy, Rel
<rambrozy@mckennalong.com>; Brzezynski, Lora <lbrzezynski@mckennalong.com>; Merideth,
Frank (Shld-LA-LT); Krietzman, Mark H. (Shld-LA-IP); Hassid, Steve (Assoc-LA-IP); Ho,
Valerie W. (Shld-LA-LT)
Sent: Tue Mar 06 08:49:18 2007
Subject: RE: 3/5 meet-and-confer

We obviously continue to disagree. LPL will not withdraw or modify its subpoenas as they
are entirely proper and seek relevant material. Further, the subpoenas are not limited to
discovery disputed by Tatung and seek substantial information that is separate and apart
from any motions pending before the Special Master.


Also, your email was the second time yesterday that you insinuated that I am or LPL is
somehow using the meet-and-confer process "merely as a delay tactic." As I told you
during our call yesterday, I resent your baseless insinuation that I am or LPL is acting
in bad faith, particularly as I have been asking you to provide legal authority to support
your demands since at least our meet-and-confer on January 30, more than one month ago.
Now, after your own delay and inaction, you are trying to use the press of our March 30
discovery deadline as an excuse to proceed against LPL on an ex parte basis. Further,
although I specifically requested that you explain why Tatung thinks it should be
permitted to file motions without first providing notice to LPL, you have not done so.
(Your reference to the CDCA local rule concerning the formatting and process by which an
ex parte submission is handled does not suffice.) Tatung is alone responsible for waiting
so long to file the motions it has described and LPL rejects any suggestion that Tatung is
entitled to proceed against any of LPL's subpoenas without providing LPL proper notice and
an opportunity to be heard. If Tatung persists down this path, LPL will seek sanctions
and all appropriate relief against Tatung.


As for the case citations that you have finally provided, I have reviewed your references
and they are distinguishable from our situation in several ways. Tatung's position also
is contrary to settled law. "Unless a party to an action can make claim to some personal
right or privilege in respect to the subject matter of a subpoena duces tecum directed to
a nonparty witness, the party to the action has no right to relief under Rule 45(b) or

30(b)." Dart Industries, Inc. v. Liquid Nitrogen Processing, 50 F.R.D. 286, 291 (D. Del. 1970); see Ponsford v. United States, 771 F.2d 1305, 1308 (9th Cir. 1985) (denying motion to quash for lack of standing); Nova Products, Inc. v. Kisma Video, Inc., 220 F.R.D. 238, 241 (S.D.N.Y. 2004) (denying motion to quash because no showing of personal right or privilege); Oliver B. Cannon and Son, Inc. v. Fidelity and Cas. Co. of New York, 519 F. Supp. 668, 680 (D. Del. 1981) (denying motion to quash because movant failed to prove documents sought were privileged). We do not find that Tatung has any basis to object to the information sought by LPL's subpoenas and, thus, we do not believe that Tatung has standing to move to quash any of LPL's subpoenas.

Further, you have generally objected that the subpoenas seek information that is confidential and not limited to U.S. products. We believe that these objections are unfounded. If you have a more specific proposal for narrowing certain issues, however, please let us know so that we can respond.

Cormac T. Connor

McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
tel. 202-496-7439
fax 202-496-7756
email: cconnor@mckennalong.com

---

From: HoV@GTLAW.com [mailto:HoV@GTLAW.com]
Sent: Monday, March 05, 2007 4:52 PM
To: Connor, Cormac
Cc: Christenson, Cass; Ambrozy, Rel; Brzezynski, Lora; MeridethF@GTLAW.com; KrietzmanM@GTLAW.com; HassidS@gtlaw.com
Subject: RE: 3/5 meet-and-confer

Dear Cormac,

During our meet and confer, you stated that you did not believe the Tatung Defendants have standing to bring motions for protective order in connection with the subpoenas issued by LPL to third party customers of the Tatung Defendants, which seek broad categories of confidential and trade secret information belonging to the Tatung Defendants that do not relate in any way to the accused products or patents-in-suit. In response to your request that we provide authority on this issue, we agreed to do so with the understanding that LPL may reconsider its position upon reviewing the authorities provided. Accordingly, in a good faith attempt to meet and confer and potentially obviate the need to file these motions (and in the hopes that LPL is not using the meet and confer process merely as a delay tactic), we agreed to provide you with the authorities requested on the condition that you inform us by the commencement of business (pacific time) tomorrow as to whether LPL will withdraw or narrow its subpoenas (as identified in my letter).

The authorities the Tatung Defendants are relying on include the following: FRCP 26(c); Visto Corp. v. Smartner Information Systems, Ltd., 2007 WL 218771 (N.D. Cal. 2007); Highland Tank & Mfg. Co. v. PS Int'l, Inc., 227 F.R.D. 374 (W.D. Pa. 2005); Micro Motion, Inc. v. Kane Steel Co., 894 F.2d 1318 (Fed. Cir. 1990); and Joy Technologies, Inc. v. Flakt, Inc., 772 F.Supp. 842, 849 (D.Del. 1991).

If we do not receive confirmation tomorrow morning that LPL is withdrawing or narrowing its subpoenas, we will move forward with the motions/applications for protective order.

As I mentioned during our meet and confer, we will be filing the applications/motions in the courts from which the subpoenas were issued. Due to the return dates of the subpoenas, the Tatung Defendants may not have sufficient time to file regularly noticed

motions under the relevant local rules, and as a result, may have to move on an ex parte basis. See, e.g., Central District of California Local Rule 7-19. We, of course, will provide LPL with the appropriate ex parte notice.

With respect to the issues raised in Cass' email from this weekend, I will respond separately as those issues are completely unrelated to the issues discussed during our meet and confer.

Valerie

-------------------------------

     Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

     The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to postmaster@gtlaw.com <mailto:postmaster@gtlaw.com> .

-------------------------------

From: Connor, Cormac [mailto:cconnor@mckennalong.com]
Sent: Monday, March 05, 2007 12:15 PM
To: Ho, Valerie W. (Shld-LA-LT)
Cc: Christenson, Cass; Ambrozy, Rel; Brzezynski, Lora; Merideth, Frank (Shld-LA-LT); Krietzman, Mark H. (Shld-LA-IP); Hassid, Steve (Assoc-LA-IP); Ho, Valerie W. (Shld-LA-LT)
Subject: 3/5 meet-and-confer


Following up on our 2 pm EST meet-and-confer call today, this email will confirm that you have agreed to provide LPL with legal authority supporting Tatung's stated intention to file motions for protective orders with respect to several of LPL's third party subpoenas. (To that end, you noted that Tatung would not be filing any motions concerning the subpoena issued to CTX.) You said that you would provide that authority within the hour and I agreed to respond as to whether LPL will change its position based on those authorities by approximately noon EST tomorrow.

Additionally, you stated that Tatung intends to file its motions in the relevant courts on an ex parte basis. As I stated on the call, LPL objects to Tatung's efforts to file these motions. If this is the route that Tatung intends to take, please be sure to include citations to legal authority that would support Tatung's filing its proposed motions on an ex parte basis. If, as it seems to be, Tatung's intention is to file these motions without notice to LPL, then LPL strenuously objects. LPL demands that Tatung provide LPL with notice of any motions that it files with respect to any issue in this case, including motions pertaining to third party subpoenas. If you refuse to do so, LPL will raise the matter with the appropriate courts and with the Special Master.

Finally, please let us know where Tatung stands with respect to the discovery deficiencies identified in Cass Christenson's March 4 email to you.

Cormac T. Connor

McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
tel. 202-496-7439
fax 202-496-7756
email: cconnor@mckennalong.com

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from
the law firm of McKenna Long & Aldridge LLP, and are
intended solely for the use of the named recipient or
recipients. This e-mail may contain privileged
attorney/client communications or work product. Any
dissemination of this e-mail by anyone other than an
intended recipient is strictly prohibited. If you are not a
named recipient, you are prohibited from any further
viewing of the e-mail or any attachments or from making any
use of the e-mail or attachments. If you believe you have
received this e-mail in error, notify the sender
immediately and permanently delete the e-mail, any
attachments, and all copies thereof from any drives or
storage media and destroy any printouts of the e-mail or
attachments.


CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from
the law firm of McKenna Long & Aldridge LLP, and are
intended solely for the use of the named recipient or
recipients. This e-mail may contain privileged
attorney/client communications or work product. Any
dissemination of this e-mail by anyone other than an
intended recipient is strictly prohibited. If you are not a
named recipient, you are prohibited from any further
viewing of the e-mail or any attachments or from making any
use of the e-mail or attachments. If you believe you have
received this e-mail in error, notify the sender
immediately and permanently delete the e-mail, any
attachments, and all copies thereof from any drives or
storage media and destroy any printouts of the e-mail or
attachments.
--------------------------------------------------------

    Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS
under Circular 230, we inform you that any U.S. federal tax advice contained in this
communication (including any attachments), unless otherwise specifically stated, was not
intended or written to be used, and cannot be used, for the purpose of (1) avoiding
penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to
another party any matters addressed herein.


    The information contained in this transmission may contain privileged and
confidential information.  It is intended only for the use of the person(s) named above.
If you are not the intended recipient,  you are hereby notified that any review,
dissemination, distribution or duplication of this communication is strictly prohibited.
If you are not the intended recipient, please contact the sender by reply email and
destroy all copies of the original message. To reply to our email administrator directly,
please send an email to postmaster@gtlaw.com.


--------------------------------------------------------

# EXHIBIT 3

| Albany | | New York |
| Atlanta | **McKenna Long** | Philadelphia |
| Brussels | **& Aldridge**LLP | San Diego |
| Denver | Attorneys at Law | San Francisco |
| Los Angeles | 1900 K Street, NW • Washington, DC 20006-1108 | Washington, D.C. |
| | Tel: 202.496.7500 • Fax: 202.496.7756 | |
| | www.mckennalong.com | |

CORMAC T. CONNOR
(202) 496-7439

EMAIL ADDRESS
cconnor@mckennalong.com

March 12, 2007

**VIA EMAIL AND U.S. MAIL**

Valerie W. Ho, Esq.
Greenberg Traurig LLP
2450 Colorado Avenue
Suite 400E
Santa Monica, CA 90404
hov@gtlaw.com

Re:    *LG.Philips LCD Co. v. ViewSonic Corp. et. al.*
       **U.S. District Court Case No. 04-343 JJF**

Dear Valerie:

We learned recently that the Tatung Defendants ("Tatung") have communicated with some, if not all, of the third parties on which LPL has served subpoenas and that, because of these communications, some of those third parties are now refusing to comply with their obligations under the subpoenas. Please immediately produce copies of all correspondence between Tatung and any of the third parties on which LPL has served subpoenas to the extent that those communications pertain to the issues in this case and, particularly, LPL's subpoenas. As you know, we have already submitted a motion seeking expedited review of Tatung's interference with LPL's third party subpoenas, including Tatung's lack of standing to file motions relating to LPL's appropriate third party subpoenas. We intend to raise this issue with the Special Master as soon as possible.

Additionally, although we specifically discussed and objected to Tatung's expressed intent to file motions for protective orders concerning LPL's subpoenas on an *ex parte* basis, you have done so anyway. We also received this afternoon service copies of several such motions that were filed last week, but served on us only via regular mail, even though you are obviously aware of our contact information. One of the principal reasons that we object to Tatung filing its motions without providing proper and prior notice to LPL is that LPL now has no way of knowing when Tatung filed its motions, when Tatung sought to schedule its expedited hearings on those motions, or when LPL must submit any responsive briefing. To further highlight the severity of this problem, you have scheduled three separate hearings – that we know about – for the morning of March 15 in New Jersey, Illinois and Massachusetts. (With respect to the matter in Massachusetts, the clerk there seemed to think that Tatung's hearing request was the result of a stipulation among the parties which, as you know, it was not.)

Valarie W. Ho, Esq.
March 12, 2007
Page 2

Tatung never conferred with us about any hearing dates or times for any of the motions that it has filed. Your motion practice, which did not commence until fully three weeks after LPL served its subpoenas, also happens to coincide with the time that LPL is to begin deposing Tatung's witnesses in California and happens to have commenced with just three weeks remaining in the main fact discovery period. Tatung's efforts to derail LPL's third party discovery by obfuscation and delay are precisely the problems that LPL addressed in its motion to the Special Master on March 9 and LPL will advise the Special Master of these additional developments as soon as possible.

We insist that Tatung immediately provide LPL with a list of all of the subpoenas that it is challenging by filing motions for protective orders and a list of all hearing dates and times that Tatung has unilaterally arranged. Further, we insist that Tatung immediately provide LPL with electronic service copies of everything that it has filed or will file in relation to LPL's third party subpoenas.

Sincerely,

Cormac T. Connor

cc:    Frank Meredith, Esq. (via email)
       Mark Krietzman, Esq. (via email)
       Steve Hassid, Esq. (via email)

DC:50466286.1

# EXHIBIT 4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

L.G. PHILIPS LCD CO., LTD.,

       Plaintiff,

TATUNG COMPANY; TATUNG
COMPANY OF AMERICA, INC.; AND
VIEWSONIC CORPORATION,

       Defendants

Case No. 04-343-JJF (D. Del.)

**07-80223**
**CIV-RYSKAMP**

THIS MATTER having been opened to the Court on motion by defendants, the

Tatung Co. and the Tatung Company of America, Inc., by their attorneys, for a protective

order pursuant to Fed. R. Civ. P. 26(c), limiting the scope of discovery from third party

Sensormatic, Inc. ("Sensormatic"); and plaintiff L.G.Philips LCD Co., Ltd., by their

attorneys, having opposed the motion; and the Court having considered the papers

submitted and the arguments presented; and for good cause shown:

**IT IS HEREBY ORDERED THAT:**

1.      The motion is GRANTED.

2.      Any deposition testimony taken from third party Sensormatic shall be

limited to the accused products at issue in *L.G. Philips LCD Co., Ltd. v. Tatung*

*Company, et. al.*, C.A. No. 04-343-JJF (United States District Court for the District of

Delaware) (the "Delaware Action"). Such deposition testimony shall be subject to the

provisions of the Stipulated Protective Order dated January 24, 2005 entered in the

Delaware Action.

3.      Any documents produced in response to the subpoena by third party

Sensormatic shall be limited to those documents relating to the accused products at issue

in the Delaware Action. Additionally, any documents produced shall be stamped

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER and shall be produced subject

to the Stipulated Protective Order dated January 24, 2005 entered in the Delaware Action,

which is attached hereto as Exhibit 1.

Dated:  March 9, 2007
~~Boca Raton,~~ Florida

United States District Court Judge for the
Southern District of Florida

Copies to:        Richard D. Kirk, Esq. (rkirk@bayardfirm.com)
                  Gaspare J. Bono, Esq. (gbono@mckennalong.com)
                  Jeffrey B. Bove, Esq. (jbove@cblh.com)
                  Tracy R. Roman, Esq. (troman@raskinpeter.com)
                  Scott R. Miller, Esq. (smiller@cblh.com)
                  Frederick L. Cottrell, III, Esq. (Cottrell@RLF.com)
                  Frank E. Merideth, Jr., Esq. (meredith@gtlaw.com)
                  Geoffrey M. Cahen, Esq. (caheng@gtlaw.com)

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2005 JAN 24  AM 9: 45

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

LG PHILIPS LCD CO., LTD ,          )
                                   )
Plaintiff,                         )
                                   )     C A. No. 04-343-JJF
v                                  )
                                   )
TATUNG COMPANY;                    )
TATUNG COMPANY OF AMERICA,         )
INC. and VIEWSONIC CORPORATION,    )
                                   )
Defendants.                        )


## STIPULATED PROTECTIVE ORDER

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the parties stipulate to the following Protective Order, subject to the approval of the Court:

1.     Scope of Protection.

1.1     This Protective Order shall govern any record of information, designated pursuant to Paragraph 2 of this Protective Order, produced in this action, including all designated deposition testimony, all designated testimony taken at a hearing or other proceeding, interrogatory answers, documents and other discovery materials, whether produced informally or in response to interrogatories, requests for admissions, requests for production of documents or other formal method of discovery.

1.2     This Protective Order shall also govern any designated record of information produced in this action pursuant to required disclosures under any federal procedural rule or District of Delaware local rule, and any supplementary disclosures thereto.

1.3     This Protective Order shall apply to the parties and any nonparty from whom discovery may be sought and who desires the protection of this Protective Order (collectively herein referred to as a "party" or the "parties").

2.     Designation.

2.1     Each party shall have the right to designate as confidential and subject to this Protective Order any information produced by it in this action which contains, reflects, or

EXHIBIT
_____1_____

otherwise discloses confidential technical, business or financial information ("CONFIDENTIAL information"). This designation shall be made by stamping or otherwise labeling each page or thing containing confidential information with the legend CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER prior to its production or, if inadvertently produced without such legend, by furnishing written notice to the receiving party that the information shall be considered confidential under this Protective Order. The parties will use reasonable care to avoid designating any documents or information CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER that are generally available to the public.

2.2    Each party shall have the right to designate as restricted to review by those categories of individuals listed in Paragraphs 4.1(a) - 4.1(e) and subject to this Protective Order any information produced in this action which contains, reflects, or otherwise discloses (1) trade secrets, (2) research and development, manufacturing, operational or other highly sensitive technical information, or (3) highly sensitive business related information, such as customer, supplier or financial information (collectively, "HIGHLY SENSITIVE CONFIDENTIAL information"). This designation shall be made by stamping or otherwise labeling each page or thing containing confidential information with the legend HIGHLY SENSITIVE CONFIDENTIAL prior to its production or, if inadvertently produced without such legend, by furnishing written notice to the receiving party that the information shall be considered HIGHLY SENSITIVE CONFIDENTIAL under this Protective Order. To the extent that material is marked HIGHLY SENSITIVE CONFIDENTIAL, such material shall be revealed to or used by limited categories of individuals, as provided for in Paragraph 4.2, and shall not be communicated in any manner, either directly or indirectly, to any person or entity not permitted disclosure pursuant to this Protective Order. Any copies of such material, abstracts, summaries or information derived therefrom, and any notes or other records regarding the contents thereof, shall also be deemed HIGHLY SENSITIVE CONFIDENTIAL, and the same terms regarding confidentiality of these materials shall apply as apply to the originals. Use of this highly restrictive designation is limited to information of the highest sensitivity. The parties will use reasonable care to avoid designating any documents or information HIGHLY SENSITIVE CONFIDENTIAL for which the designating party does not have a good faith belief that the documents or information satisfy the criteria set forth in this Paragraph 2.2. HIGHLY SENSITIVE CONFIDENTIAL information shall be used only for purposes directly related to this action, and for no other purpose whatsoever, except by consent of all of the parties or order of the Court.

2.3    To the extent that any party has, prior to the date that this Order is entered, produced to the other side materials that the producing party has marked with confidentiality designation, all such materials shall be considered to have been designated under this Order as HIGHLY SENSITIVE CONFIDENTIAL unless otherwise agreed by the Parties

3.    Limit On Use And Disclosure Of Designated Information.

3.1     Each party and all persons bound by the terms of this Protective Order shall use any information or document governed by this Protective Order only in connection with the prosecution or defense of this action and for no other purpose, except by consent of the parties or order of the Court. No party or other person shall disclose or release to any person not authorized under this Protective Order any information or document governed by this Protective Order for any purpose, or to any person authorized under this Protective Order for any other purpose.

3.2     It is, however, understood that counsel for a party may give advice and opinions to his or her client in connection with the prosecution or defense of this action based on his or her evaluation of designated confidential information received by the party, provided that such rendering of advice and opinions counsel shall not reveal the content of such information except by prior written agreement with counsel for the producing party.

3.3     The attorneys of record for the parties and other persons receiving information governed by this Protective Order shall exercise reasonable care to ensure that the information and documents governed by this Protective Order are (a) used only for the purposes specified herein, and (b) disclosed only to authorized persons.

4.     Disclosure Of Confidential Material.

4.1     Documents or information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER shall be disclosed by the recipient thereof only to:

(a)     the attorneys who are actively involved in this action that are partners of or employed by the following law firms of record for the parties, and their authorized secretarial, clerical and legal assistant staff: Morris, James, Hitchens & Williams LLP; McKenna, Long & Aldridge LLP; Potter Anderson & Corroon LLP; Bingham McCutchen LLP; Rosethal, Monhait, Gross & Goddess; and Baum & Weems provided that such attorneys shall not be provided access to HIGHLY SENSITIVE CONFIDENTIAL information if such attorneys

(1)     have participated in, directed or supervised any patent prosecution activitiy related to the patents-in-suit or currently participate in, direct or supervise any patent prosecution activity involving (i) flat panel or fllat panel display technology or (ii) technology related or refering to or incorporating flat panels or flat panel displays (collectively, "the Subject Matter"). During the pendency of this litigation and for one year after the full and final conclusion of this litigation, including all appeals, those attorneys at outside counsel for the parties defined above who are provided access to HIGHLY SENSITIVE CONFIDENTIAL materials covered by this order will not participate in, direct or supervise any patent prosecution activity in the United States Patent and Trademark Office or with any patent office outside the United States involving the Subject Matter;

(2)    provide non-legal, business advice or non-legal, business representation or to clients in the flat panel display industry wherein the highly sensitive business-related financial information of any opposing party would be relevant to such non-legal, business advice or non-legal, business representation. During the pendency of this litigation and for one year after the full and final conclusion of this litigation, including all appeals, those attorneys at outside counsel for the parties defined above who are provided access to HIGHLY SENSITIVE CONFIDENTIAL materials covered by this order will not provide non-legal, business advice or non-legal, business representation to clients in the flat panel display industry wherein the highly sensitive business-related information of any opposing party would be relevant to such non-legal, business advice or representation; or

(3)    are related to or have a personal, social relationship with any officer, director or employee of a party

(b)    the Court and Court personnel, as provided in Paragraph 12;

(c)    consultants or experts and their staffs retained by the parties or their attorneys for purposes of this action, who are agreed upon by the parties pursuant to Paragraph 6, who are not employees or otherwise affiliated with any of the parties (except persons scheduled to be deposed by any of the parties pursuant to Rule 30(b)(6), Fed.R.Civ.P.), and who first agree to be bound by the terms of this Protective Order;

(d)    court reporters employed in connection with this action;

(e)    outside copying and computer services necessary for document handling, and other litigation support personnel (e.g., translators, graphic designers and animators);

(f)    One member of LG.Philips LCD, Co., Ltd.'s in-house legal staff, provided that each such individual must first agree to be bound by the terms of this Protective Order;

(g)    One member of Viewsonic Corporation's in-house legal staff, provided that each such individual must first agree to be bound by the terms of this Protective Order;

(h)    One member of Tatung Company's in-house legal staff, provided that each such individual must first agree to be bound by the terms of this Protective Order;

(i)    One attorney of Tatung Company of America, Inc.'s regular out-side counsel, provided that each such individual must first agree to be bound by the terms of this Protective Order;

4.2    Documents or information designated HIGHLY SENSITIVE CONFIDENTIAL shall be disclosed by the recipient thereof only to those categories of individuals listed in Paragraphs 11 4.1(a) - 4.1(e) subject to the restrictions therein.

5.    Redaction

Counsel for a party producing documents may mask ("redact") material deemed exempt from discovery because it is protected from disclosure under the attorney-client privilege or work product immunity afforded by Rule 26(b), Fed.R.Civ.P. However, any document from which material is masked must identify in the masked area that masking or redaction has occurred. The reason for any such masking must be stated on a log to be provided within thirty (30) days after the production of the documents. Sufficient information regarding the masked material must be provided to the other party to enable it to evaluate the legitimacy of the asserted privilege or immunity. The parties reserve the right to pursue categories for redaction in addition to those identified above, by either consent of the parties or order of the Court, to be addressed on a case-by case basis.

6.    Disclosure to Independent Consultants and Identification of Experts.

6.1    If any party desires to disclose information designated CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL to any expert or consultant pursuant to Paragraph 4 above, it must first identify in writing to the attorneys for the producing party each such expert or consultant. The attorney for the producing party shall have ten (10) business days from receipt of such notice to object to disclosure of such information to any of the experts or consultants so identified.

6.2    Such identification shall include the full name and professional address and/or affiliation of the proposed expert or consultant, an up-to-date curriculum vitae identifying at least all other present and prior employments or consultancies of the expert or consultant in the field of flat panel and flat panel display technologies, and a list of the cases in which the expert or consultant has testified at a deposition, an arbitral hearing or trial within the last four years. The parties shall attempt to resolve any objections informally. If the objections cannot be resolved, the party seeking to disclose the CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information to the expert or consultant may move the Court for an Order allowing the disclosure. On any motion challenging the disclosure of such information to an expert or consultant, the burden of proof shall lie with the party objecting to the disclosure to establish that the information should not be disclosed to the expert or consultant. In the event objections are made and not resolved informally, disclosure of information to the expert or consultant shall not be made except by Order of the Court (or to any limited extent upon which the parties may agree).

7.    Agreement Of Confidentiality.

In no event shall any information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL be disclosed to any person authorized pursuant to Paragraph 4, other than (a) the Court and Court personnel, (b) the parties' attorneys identified in Paragraph 4.1(a) and their authorized secretarial and legal assistant staffs, (c) court reporters, and (d) outside copying and computer services necessary for document handling, until such person has executed a written

Confidentiality Undertaking (in the form set forth in Exhibit A hereto) acknowledging and agreeing to be bound by the terms of this Protective Order. Copies of such Confidentiality Undertakings shall be promptly served on the producing party.

8     Related Documents.

Information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL shall include (a) all documents, copies, extracts, and complete or partial summaries prepared from or containing such information; (b) portions of deposition transcripts and exhibits thereto which contain or reflect the content of any such documents, copies, extracts, or summaries; (c) portions of briefs, memoranda or any other papers filed with the Court and exhibits thereto which contain or reflect the content of any such documents, copies, extracts, or summaries; (d) deposition testimony designated in accordance with Paragrapah 9; and (e) testimony taken at a hearing or other proceeding that is designated in accordance with Paragraph 10.

9.     Designation Of Deposition Transcripts.

9.1     Deposition transcripts, or portions thereof, may be designated as subject to this Protective Order either (a) at the time of such deposition, in which case the transcript of the designated testimony shall be marked by the reporter with the appropriate legend (see Paragraph 2.1) as the designating party may direct, or (b) within twenty-one (21) days following the receipt of the transcript of the deposition by providing written notice to the reporter and all counsel of record, in which case all counsel receiving such notice shall mark the copies or portions of the designated transcript in their possession or under their control as directed by the designating party.

9.2     All deposition transcripts not previously designated shall be deemed to be, and shall be treated as, HIGHLY SENSITIVE CONFIDENTIAL until the expiration of the period set forth in Paragraph 9.1, and neither the transcript nor the content of the testimony shall be disclosed by a non-designating party to persons other than those persons named or approved according to Paragraph 4.

9.3     The designating party shall have the right to exclude from a deposition, before the taking of testimony which the designating party designates CONFIDENTIALSUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL and subject to this Protective Order, all persons other than those persons previously qualified to receive such information pursuant to Paragraph 4.

9.4     In addition, to the extent that any document or information that has been designated as either CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL and subject to this Protective Order, such document or information shall not be disclosed to or otherwise used with any witness not currently or previously employed or retained by the producing party during a deposition without at least three (3) calendar days prior notice to the designating party of such potential use in order to permit counsel for the designating party to attend and to take

such action as it deems appropriate to protect the confidentiality of the documents and/or information. Counsel for the parties shall attempt to resolve any objection(s) and they will only seek redress to the Court if no resolution can be reached. However, the receiving party shall not use or otherwise disclose the confidential documents or information subject to such objection at such deposition of a witness not currently or previously employed or retained by the Court has ruled upon any such objection(s), provided that the producing party submits the matter to the Court within three (3) calendar days of the parties being unable to resolve the objection(s).

10.    Designation Of Hearing Testimony Or Argument.

With respect to testimony elicited during hearings and other proceedings, whenever counsel for any party deems that any question or line of questioning calls for the disclosure of CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL information, counsel may designate on the record prior to such disclosure that the disclosure is subject to confidentiality restrictions. Whenever matter designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL is to be discussed in a hearing or other proceeding, any party claiming such confidentiality may ask the Court to have excluded from the hearing or other proceeding any person who is not entitled under this Order to receive information so designated.

11    Disclosure To Author Or Recipient.

Notwithstanding any other provisions of this Order, nothing herein shall prohibit counsel for a party from disclosing a document containing information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL to any person which the document clearly identifies as an author, addressee, or carbon copy recipient of such document, or to any current employee of the producing party who by their testimony indicates they have access to the type of information sought to be disclosed. During deposition or trial testimony, counsel may disclose documents produced by a party to current employees and officers of the producing party who by their testimony indicates they have access to the type of information sought to be disclosed. And regardless of such designation pursuant to this Protective Order, if a document or testimony makes reference to the actual or alleged conduct or statements of a person who is a potential witness, counsel may discuss such conduct or statements with such witness without revealing any portion of the document or testimony other than that which specifically refers to such conduct or statement, and such discussion shall not constitute disclosure in violation of this Protective Order

12.    Designation Of Documents Under Seal.

Any information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL, if filed with the Court, shall be filed under seal and shall be made available only to the Court and to persons authorized by the terms of this Protective Order. The party filing any paper which reflects, contains or includes

any CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information subject to this Protective Order shall file such paper in a sealed envelope, or other appropriately sealed container, which indicates the title of the action, the party filing the materials, the nature of the materials filed, the appropriate legend (see Paragraph 2.1), and a statement substantially in the following form:

This envelope contains documents subject to a Protective Order of the Court. It should be opened only by the Court. Its contents should not be disclosed, revealed or made public except by Order of the Court or written agreement of the parties.

13.     Confidentiality Of Party's Own Documents.

No person may disclose, in public or private, any designated information of another party except as provided for in this Protective Order, but nothing herein shall affect the right of the designating party to disclose to its officers, directors, employees, attorneys, consultants or experts, or to any other person, its own information. Such disclosure shall not waive the protections of this Protective Order and shall not entitle other parties or their attorneys to disclose such information in violation of it, unless by such disclosure of the designating party the information becomes public knowledge (see Paragraph 16). Similarly, the Protective Order shall not preclude a party from showing its own information to its officers, directors, employees, attorneys, consultants or experts, or to any other person, which information has been filed under seal by the opposing party.

14.     Other Protections.

14.1     No person shall use any CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information, or information derived therefrom, for purposes other than the prosecution or defense of this action, including without limitation, for purposes of preparing, filing or prosecuting any patent application, continuation or divisional patent application, reissue patent application or request for re-examination.

14.2     Any party may mark any document or thing containing CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information as an exhibit to a deposition, hearing or other proceeding and examine any witness thereon qualified under the terms of this Protective Order to have access to such designated material.

15.     Challenge To Confidentiality.

15.1 This Protective Order shall not preclude any party from seeking and obtaining, on an appropriate showing, such additional protection with respect to the confidentiality of documents or other discovery materials as that party may consider appropriate. Nor shall any party be precluded from (a) claiming that any matter designated hereunder is not entitled to the protections of this Protective Order, (b) applying to the Court for an Order permitting the disclosure or use of information or documents otherwise prohibited by this Protective Order, or (c) applying for a further Order modifying this Protective Order in any respect. No party shall be obligated to challenge the propriety of any designation, and

failure to do so shall not preclude a subsequent challenge to the propriety of such designation.

15.2    On any motion challenging the designation of any information, the burden of proof shall lie with the producing party to establish that the information is, in fact, CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information. If a party seeks declassification or removal of particular items from a designation on the ground that such designation is not necessary to protect the interests of the party wishing the designated information, the following procedure shall be utilized:

a. The party seeking such declassification or removal shall give counsel of record for the other party written notice thereof specifying the designated information as to which such removal is sought and the reasons for the request; and

b. If, after conferring, the parties cannot reach agreement concerning the matter, then the party requesting the declassification or removal of particular items may file and serve a motion for a further Order of this Court directing that the designation shall be so removed.

16.    Prior Or Public Knowledge.

This Protective Order shall not apply to information that, prior to disclosure, is public knowledge, and the restrictions contained in this Protective Order shall not apply to information that is, or after disclosure becomes, public knowledge other than by an act or omission of the party to whom such disclosure is made, or that is legitimately and independently acquired from a source not subject to this Protective Order.

17.    Limitation Of Protective Order

This Protective Order is not intended to address discovery objections to produce, answer, or respond on the grounds of attorney-client privilege or work product doctrine, or to preclude any party from seeking further relief or protective orders from the Court as may be appropriate under the Federal Rules of Civil Procedure.

18    Other Proceedings.

By entering this order and limiting the disclosure of information in this case, the court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this order who may be subject to a motion to disclose another party's CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information pursuant to this order shall promptly notify that party of the motion so that it may have an opportunity to appear and be heard on whether such information should be disclosed.

19.    Inadvertent Disclosure Of Work Product Or Privileged Information:

Procedure And Waiver.

19.1    If the producing party at anytime notifies the Non-producing party in writing that it has inadvertently produced documents and/or things that are protected from disclosure under attorney-client privilege, work-product immunity, and/or any other applicable privilege or immunity from disclosure, the non-producing party shall return all copies of such documents and/or things to the producing party within five (5) business days of receipt of such notice and shall not further disclose or use such items for any purpose until further order of the Court. Upon being notified by the producing party pursuant to this section, counsel for the non-producing party shall use his or her best efforts to retrieve all copies of the documents at issue.

19.2    The return of any discovery item to the producing party shall not in any way preclude the non-producing party from moving the Court for a ruling that: (a) the document or thing was never privileged or otherwise immune from disclosure; and/or (b) that any applicable privilege or immunity has been waived.

19.3    Inadvertent or unintentional disclosure of information subject to any privilege or immunity during the course of this litigation without proper designation shall not be deemed a waiver of a claim that disclosed information is in fact subject to a privilege or immunity if so designated within ten (10) business days after the producing party actually learns of the inadvertent or unintentional disclosure.

20.    Non-Party Material.

The terms of this Protective Order, as well as the terms of any protective order that may be entered into between a discovering party and third party for the production of information to the discovering party, are applicable to CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information provided by a non-party. Information provided by a non-party in connection with this action and designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL, pursuant to the terms of this Protective Order shall be protected by the remedies and relief provided by this Protective Order.

21.    Return Of Designated Information.

Within thirty (30) days of final termination of this action, unless otherwise agreed to in writing by an attorney of record for the designating party, each party shall assemble and return, or certify destruction of, all materials containing information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL, including all copies, extracts and summaries thereof, to the party from whom the designated material was obtained, except that (a) any documents or copies which contain, constitute or reflect attorney's work product or attorney-client privilege communications, and (b) archive copies of pleadings, motion papers, deposition transcripts, correspondence and written discovery responses may be retained by counsel.

22.    Waiver Or Termination Of Order.

No part of the restrictions imposed by this Protective Order may be waived or terminated, except by written stipulation executed by counsel of record for each designating party, or by an Order of the Court for good cause shown. The restrictions provided for herein shall not terminate upon the conclusion of this action, but shall continue until further Order of this Court.

23.    Modification Of Order; Prior Agreements.

To the extent the terms of this Protective Order conflict with Local Rule 26.2 or with any agreements between the parties regarding the confidentiality of particular documents or information entered into before the date of this Protective Order, the terms of this Protective Order shall govern, except as to those documents and information produced or disclosed prior to the entry of this Protective Order, which documents and information shall continue to be governed by the terms of such prior agreements or by the provisions of Local Rule 26.2, as applicable.

24.    Section Captions.

The title captions for each section of this Protective Order are for convenience only and are not intended to affect or alter the text of the sections or the substance of the

Order.

Dated: December        , 2004

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

LG PHILIPS LCD CO., LTD.,            )
                                     )
Plaintiff,                           )
                                     )    C.A. No. 04-343-JJF
v.                                   )
                                     )
TATUNG COMPANY;                      )
TATUNG COMPANY OF AMERICA,           )
INC. and VIEWSONIC CORPORATION,      )
                                     )
Defendants                           )

## CONFIDENTIALITY UNDERTAKING

I certify that I have read the Protective Order in this action and that I fully understand the terms of the Order. I recognize that I am bound by the terms of that Order, and I agree to comply with those terms. I hereby consent to the personal jurisdiction of the United States District Court, District of Delaware, for any proceedings involving the enforcement of that Order and waive any venue objection with respect to any such proceedings.

EXECUTED this     day of _____, _____.

Name

Affiliation

Business Address

## CERTIFICATE OF SERVICE

I, Jeffrey S. Goddess, hereby certify that on January 24, 2005, I caused two copies of the foregoing document to be served as follows:


(VIA E-MAIL)          Richard D. Kirk, Esquire
                      The Bayard Firm
                      222 Delaware Avenue #900
                      P. O. Box 25130
                      Wilmington, DE 19899
                       Attorneys for Plaintiff L.G. Philips LCD Co., Ltd.

(VIA E-MAIL)          Richard L. Horwitz, Esquire
                      Potter Anderson & Corroon, LLP
                      1313 N. Market Street
                      Hercules Plaza, 6th Floor
                      P. O. Box 951
                      Wilmington, DE 19899

(VIA E-MAIL)          Cass W. Christenson, Esquire
                      McKenna Long & Aldridge LLP
                      1900 K Street, NW
                      Washington, DC 20006

(VIA E-MAIL)          Tracy Roman, Esquire
                      Bingham McCutchen
                      355 S. Grand Ave., 44th Floor
                      Los Angeles, CA 90071


JEFFREY S. GODDESS (No. 630)

# EXHIBIT 5

# Greenberg
# Traurig

Clark P. Russell
(973) 360-7931
russellc@gtlaw.com

March 13, 2007

VIA FEDERAL EXPRESS

Hon. Mary L. Cooper, U.S.D.J.
United States District Court for the District of New Jersey
Clarkson S. Fisher Federal Building and U.S. Courthouse
402 East State Street, Room 5000
Trenton, New Jersey 08608

      Re:    <u>LG. Philips LCD Co., Ltd. v. Tatung Company, et al</u>
             New Jersey District Court No. 3:07-cv-1140

Dear Judge Cooper:

    We represent defendants Tatung Company and Tatung Company of America, Inc.
(the "Tatung Defendants") in the above-referenced matter.

    Please be advised that Judge Riskamp of the Southern District of Florida just
granted the Tatung Defendants their motion for a protective order on nearly identical
facts. A copy is enclosed for your reference.

    Thank you for your courtesies.

                    Respectfully submitted,

                    Clark P. Russell

CPR:cgc
Enclosure
cc:    Richard D. Kirk, Esq. (w/enc., via e-mail)
       Gaspare J. Bono, Esq. (w/enc., via e-mail)
       Jeffrey B. Bove, Esq. (w/enc., via e-mail)
       Frederick L. Cottrell III, Esq. (w/enc., via e-mail)
       Valerie W. Ho, Esq. (w/enc., via e-mail)
       Scott R. Miller, Esq. (w/enc., via e-mail)
       Tracy Roman, Esq. (w/enc., via e-mail)

ALBANY
AMSTERDAM
ATLANTA
BOCA RATON
BOSTON
BRUSSELS*
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON*
LOS ANGELES
MIAMI
MILAN*
NEW JERSEY
NEW YORK
ORANGE COUNTY
ORLANDO
PHILADELPHIA
PHOENIX
ROME*
SACRAMENTO
SILICON VALLEY
TALLAHASSEE
TOKYO*
TYSONS CORNER
WASHINGTON, D.C.
WEST PALM BEACH
ZURICH
*Strategic Alliance
Tokyo - Pricewaterhouse Alliance

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

L.G. PHILIPS LCD CO., LTD.,

    Plaintiff,

TATUNG COMPANY; TATUNG
COMPANY OF AMERICA, INC.; AND
VIEWSONIC CORPORATION,

    Defendants

Case No. 04-343-JJF (D. Del.)

**07-80223**
**CIV-RYSKAMP**

THIS MATTER having been opened to the Court on motion by defendants, the

Tatung Co. and the Tatung Company of America, Inc., by their attorneys, for a protective

order pursuant to Fed. R. Civ. P. 26(c), limiting the scope of discovery from third party

Sensormatic, Inc. ("Sensormatic"); and plaintiff L.G.Philips LCD Co., Ltd., by their

attorneys, having opposed the motion; and the Court having considered the papers

submitted and the arguments presented; and for good cause shown:

**IT IS HEREBY ORDERED THAT:**

1.    The motion is GRANTED.

2.    Any deposition testimony taken from third party Sensormatic shall be

limited to the accused products at issue in *L.G. Philips LCD Co., Ltd. v. Tatung*

*Company, et. al.*, C.A. No. 04-343-JJF (United States District Court for the District of

Delaware) (the "Delaware Action"). Such deposition testimony shall be subject to the

provisions of the Stipulated Protective Order dated January 24, 2005 entered in the

Delaware Action.

3.    Any documents produced in response to the subpoena by third party

Sensormatic shall be limited to those documents relating to the accused products at issue

in the Delaware Action. Additionally, any documents produced shall be stamped

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER and shall be produced subject

to the Stipulated Protective Order dated January 24, 2005 entered in the Delaware Action,

which is attached hereto as Exhibit 1.

Dated: March 9, 2007
Boca Raton, Florida

United States District Court Judge for the
Southern District of Florida

Copies to:    Richard D. Kirk, Esq. (rkirk@bayardfirm.com)
Gaspare J. Bono, Esq. (gbono@mckennalong.com)
Jeffrey B. Bove, Esq. (jbove@cblh.com)
Tracy R. Roman, Esq. (troman@raskinpeter.com)
Scott R. Miller, Esq. (smiller@cblh.com)
Frederick L. Cottrell, III, Esq. (Cottrell@RLF.com)
Frank E. Merideth, Jr., Esq. (meredith@gtlaw.com)
Geoffrey M. Cahen, Esq. (caheng@gtlaw.com)

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2005 JAN 24    AM 9: 45

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LG PHILIPS LCD CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 04-343-JJF |
| v. | ) | |
| | ) | |
| TATUNG COMPANY; | ) | |
| TATUNG COMPANY OF AMERICA, | ) | |
| INC. and VIEWSONIC CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## STIPULATED PROTECTIVE ORDER

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the parties stipulate to the following Protective Order, subject to the approval of the Court:

1.    Scope of Protection.

1.1    This Protective Order shall govern any record of information, designated pursuant to Paragraph 2 of this Protective Order, produced in this action, including all designated deposition testimony, all designated testimony taken at a hearing or other proceeding, interrogatory answers, documents and other discovery materials, whether produced informally or in response to interrogatories, requests for admissions, requests for production of documents or other formal method of discovery.

1.2    This Protective Order shall also govern any designated record of information produced in this action pursuant to required disclosures under any federal procedural rule or District of Delaware local rule, and any supplementary disclosures thereto.

1.3    This Protective Order shall apply to the parties and any nonparty from whom discovery may be sought and who desires the protection of this Protective Order (collectively herein referred to as a "party" or the "parties").

2.    Designation.

2.1    Each party shall have the right to designate as confidential and subject to this Protective Order any information produced by it in this action which contains, reflects, or



EXHIBIT

1

otherwise discloses confidential technical, business or financial information ("CONFIDENTIAL information") This designation shall be made by stamping or otherwise labeling each page or thing containing confidential information with the legend CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER prior to its production or, if inadvertently produced without such legend, by furnishing written notice to the receiving party that the information shall be considered confidential under this Protective Order. The parties will use reasonable care to avoid designating any documents or information CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER that are generally available to the public.

2.2   Each party shall have the right to designate as restricted to review by those categories of individuals listed in Paragraphs 4.1(a) - 4.1(e) and subject to this Protective Order any information produced in this action which contains, reflects, or otherwise discloses (1) trade secrets, (2) research and development, manufacturing, operational or other highly sensitive technical information, or (3) highly sensitive business related informaton, such as customer, supplier or financial information (collectively, "HIGHLY SENSITIVE CONFIDENTIAL information"). This designation shall be made by stamping or otherwise labeling each page or thing containing confidential information with the legend HIGHLY SENSITIVE CONFIDENTIAL prior to its production or, if inadvertently produced without such legend, by furnishing written notice to the receiving party that the information shall be considered HIGHLY SENSITIVE CONFIDENTIAL under this Protective Order. To the extent that material is marked HIGHLY SENSITIVE CONFIDENTIAL, such material shall be revealed to or used by limited categories of individuals, as provided for in Paragraph 4.2, and shall not be communicated in any manner, either directly or indirectly, to any person or entity not permitted disclosure pursuant to this Protective Order. Any copies of such material, abstracts, summaries or information derived therefrom, and any notes or other records regarding the contents thereof, shall also be deemed HIGHLY SENSITIVE CONFIDENTIAL, and the same terms regarding confidentiality of these materials shall apply as apply to the originals. Use of this highly restrictive designation is limited to information of the highest sensitivity. The parties will use reasonable care to avoid designating any documents or information HIGHLY SENSITIVE CONFIDENTIAL for which the designating party does not have a good faith belief that the documents or information satisfy the criteria set forth in this Paragraph 2.2. HIGHLY SENSITIVE CONFIDENTIAL information shall be used only for purposes directly related to this action, and for no other purpose whatsoever, except by consent of all of the parties or order of the Court.

2.3   To the extent that any party has, prior to the date that this Order is entered, produced to the other side materials that the producing party has marked with confidentiality designation, all such materials shall be considered to have been designated under this Order as HIGHLY SENSITIVE CONFIDENTIAL unless otherwise agreed by the Parties

3.   Limit On Use And Disclosure Of Designated Information.

3.1    Each party and all persons bound by the terms of this Protective Order shall use any information or document governed by this Protective Order only in connection with the prosecution or defense of this action and for no other purpose, except by consent of the parties or order of the Court. No party or other person shall disclose or release to any person not authorized under this Protective Order any information or document governed by this Protective Order for any purpose, or to any person authorized under this Protective Order for any other purpose.

3.2    It is, however, understood that counsel for a party may give advice and opinions to his or her client in connection with the prosecution or defense of this action based on his or her evaluation of designated confidential information received by the party, provided that such rendering of advice and opinions counsel shall not reveal the content of such information except by prior written agreement with counsel for the producing party.

3.3    The attorneys of record for the parties and other persons receiving information governed by this Protective Order shall exercise reasonable care to ensure that the information and documents governed by this Protective Order are (a) used only for the purposes specified herein, and (b) disclosed only to authorized persons.

4.    Disclosure Of Confidential Material.

4.1    Documents or information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER shall be disclosed by the recipient thereof only to:

(a)    the attorneys who are actively involved in this action that are partners of or employed by the following law firms of record for the parties, and their authorized secretarial, clerical and legal assistant staff: Morris, James, Hitchens & Williams LLP; McKenna, Long & Aldridge LLP; Potter Anderson & Corroon LLP; Bingham McCutchen LLP; Rosethal, Monhait, Gross & Goddess; and Baum & Weems provided that such attorneys shall not be provided access to HIGHLY SENSITIVE CONFIDENTIAL information if such attorneys

    (1)    have participated in, directed or supervised any patent prosecution activity related to the patents-in-suit or currently participate in, direct or supervise any patent prosecution activity involving (i) flat panel or fllat panel display technology or (ii) technology related or refering to or incorporating flat panels or flat panel displays (collectively, "the Subject Matter"). During the pendency of this litigation and for one year after the full and final conclusion of this litigation, including all appeals, those attorneys at outside counsel for the parties defined above who are provided access to HIGHLY SENSITIVE CONFIDENTIAL materials covered by this order will not participate in, direct or supervise any patent prosecution activity in the United States Patent and Trademark Office or with any patent office outside the United States involving the Subject Matter;

(2)    provide non-legal, business advice or non-legal, business representation or to clients in the flat panel display industry wherein the highly sensitive business-related financial information of any opposing party would be relevant to such non-legal, business advice or non-legal, business representation. During the pendency of this litigation and for one year after the full and final conclusion of this litigation, including all appeals, those attorneys at outside counsel for the parties defined above who are provided access to HIGHLY SENSITIVE CONFIDENTIAL materials covered by this order will not provide non-legal, business advice or non-legal, business representation to clients in the flat panel display industry wherein the highly sensitive business-related information of any opposing party would be relevant to such non-legal, business advice or representation; or

(3)    are related to or have a personal, social relationship with any officer, director or employee of a party

(b)    the Court and Court personnel, as provided in Paragraph 12;

(c)    consultants or experts and their staffs retained by the parties or their attorneys for purposes of this action, who are agreed upon by the parties pursuant to Paragraph 6, who are not employees or otherwise affiliated with any of the parties (except persons scheduled to be deposed by any of the parties pursuant to Rule 30(b)(6), Fed.R.Civ.P.), and who first agree to be bound by the terms of this Protective Order;

(d)    court reporters employed in connection with this action;

(e)    outside copying and computer services necessary for document handling, and other litigation support personnel (e.g., translators, graphic designers and animators);

(f)    One member of LG.Philips LCD, Co., Ltd.'s in-house legal staff, provided that each such individual must first agree to be bound by the terms of this Protective Order;

(g)    One member of Viewsonic Corporation's in-house legal staff, provided that each such individual must first agree to be bound by the terms of this Protective Order;

(h)    One member of Tatung Company's in-house legal staff, provided that each such individual must first agree to be bound by the terms of this Protective Order;

(i)    One attorney of Tatung Company of America, Inc.'s regular out-side counsel, provided that each such individual must first agree to be bound by the terms of this Protective Order;

4 2    Documents or information designated HIGHLY SENSITIVE CONFIDENTIAL shall be disclosed by the recipient thereof only to those categories of individuals listed in Paragraphs 11 4.1(a) - 4.1(e) subject to the restrictions therein.

5.    Redaction

Counsel for a party producing documents may mask ("redact") material deemed exempt from discovery because it is protected from disclosure under the attorney-client privilege or work product immunity afforded by Rule 26(b), Fed.R.Civ.P. However, any document from which material is masked must identify in the masked area that masking or redaction has occurred. The reason for any such masking must be stated on a log to be provided within thirty (30) days after the production of the documents. Sufficient information regarding the masked material must be provided to the other party to enable it to evaluate the legitimacy of the asserted privilege or immunity. The parties reserve the right to pursue categories for redaction in addition to those identified above, by either consent of the parties or order of the Court, to be addressed on a case-by case basis.

6.    Disclosure to Independent Consultants and Identification of Experts

6.1    If any party desires to disclose information designated CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL to any expert or consultant pursuant to Paragraph 4 above, it must first identify in writing to the attorneys for the producing party each such expert or consultant. The attorney for the producing party shall have ten (10) business days from receipt of such notice to object to disclosure of such information to any of the experts or consultants so identified.

6.2    Such identification shall include the full name and professional address and/or affiliation of the proposed expert or consultant, an up-to-date curriculum vitae identifying at least all other present and prior employments or consultancies of the expert or consultant in the field of flat panel and flat panel display technologies, and a list of the cases in which the expert or consultant has testified at a deposition, an arbitral hearing or trial within the last four years. The parties shall attempt to resolve any objections informally. If the objections cannot be resolved, the party seeking to disclose the CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information to the expert or consultant may move the Court for an Order allowing the disclosure. On any motion challenging the disclosure of such information to an expert or consultant, the burden of proof shall lie with the party objecting to the disclosure to establish that the information should not be disclosed to the expert or consultant. In the event objections are made and not resolved informally, disclosure of information to the expert or consultant shall not be made except by Order of the Court (or to any limited extent upon which the parties may agree).

7.    Agreement Of Confidentiality.

In no event shall any information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL be disclosed to any person authorized pursuant to Paragraph 4, other than (a) the Court and Court personnel, (b) the parties' attorneys identified in Paragraph 4.1(a) and their authorized secretarial and legal assistant staffs, (c) court reporters, and (d) outside copying and computer services necessary for document handling, until such person has executed a written

Confidentiality Undertaking (in the form set forth in Exhibit A hereto) acknowledging and agreeing to be bound by the terms of this Protective Order. Copies of such Confidentiality Undertakings shall be promptly served on the producing party.

8    Related Documents.

Information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL shall include (a) all documents, copies, extracts, and complete or partial summaries prepared from or containing such information; (b) portions of deposition transcripts and exhibits thereto which contain or reflect the content of any such documents, copies, extracts, or summaries; (c) portions of briefs, memoranda or any other papers filed with the Court and exhibits thereto which contain or reflect the content of any such documents, copies, extracts, or summaries; (d) deposition testimony designated in accordance with Paragraph 9; and (e) testimony taken at a hearing or other proceeding that is designated in accordance with Paragraph 10.

9.    Designation Of Deposition Transcripts.

9.1    Deposition transcripts, or portions thereof, may be designated as subject to this Protective Order either (a) at the time of such deposition, in which case the transcript of the designated testimony shall be marked by the reporter with the appropriate legend (see Paragraph 2.1) as the designating party may direct, or (b) within twenty-one (21) days following the receipt of the transcript of the deposition by providing written notice to the reporter and all counsel of record, in which case all counsel receiving such notice shall mark the copies or portions of the designated transcript in their possession or under their control as directed by the designating party.

9.2    All deposition transcripts not previously designated shall be deemed to be, and shall be treated as, HIGHLY SENSITIVE CONFIDENTIAL until the expiration of the period set forth in Paragraph 9.1, and neither the transcript nor the content of the testimony shall be disclosed by a non-designating party to persons other than those persons named or approved according to Paragraph 4.

9.3    The designating party shall have the right to exclude from a deposition, before the taking of testimony which the designating party designates CONFIDENTIALSUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL and subject to this Protective Order, all persons other than those persons previously qualified to receive such information pursuant to Paragraph 4.

9.4    In addition, to the extent that any document or information that has been designated as either CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL and subject to this Protective Order, such document or information shall not be disclosed to or otherwise used with any witness not currently or previously employed or retained by the producing party during a deposition without at least three (3) calendar days prior notice to the designating party of such potential use in order to permit counsel for the designating party to attend and to take

such action as it deems appropriate to protect the confidentiality of the documents and/or information. Counsel for the parties shall attempt to resolve any objection(s) and they will only seek redress to the Court if no resolution can be reached. However, the receiving party shall not use or otherwise disclose the confidential documents or information subject to such objection at such deposition of a witness not currently or previously employed or retained by the producing party until the Court has ruled upon any such objection(s), provided that the producing party submits the matter to the Court within three (3) calendar days of the parties being unable to resolve the objection(s).

10.    Designation Of Hearing Testimony Or Argument.

With respect to testimony elicited during hearings and other proceedings, whenever counsel for any party deems that any question or line of questioning calls for the disclosure of CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL information, counsel may designate on the record prior to such disclosure that the disclosure is subject to confidentiality restrictions. Whenever matter designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL is to be discussed in a hearing or other proceeding, any party claiming such confidentiality may ask the Court to have excluded from the hearing or other proceeding any person who is not entitled under this Order to receive information so designated.

11    Disclosure To Author Or Recipient.

Notwithstanding any other provisions of this Order, nothing herein shall prohibit counsel for a party from disclosing a document containing information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL to any person which the document clearly identifies as an author, addressee, or carbon copy recipient of such document, or to any current employee of the producing party who by their testimony indicates they have access to the type of information sought to be disclosed. During deposition or trial testimony, counsel may disclose documents produced by a party to current employees and officers of the producing party who by their testimony indicates they have access to the type of information sought to be disclosed. And regardless of such designation pursuant to this · Protective Order, if a document or testimony makes reference to the actual or alleged conduct or statements of a person who is a potential witness, counsel may discuss such conduct or statements with such witness without revealing any portion of the document or testimony other than that which specifically refers to such conduct or statement, and such discussion shall not constitute disclosure in violation of this Protective Order

12.    Designation Of Documents Under Seal.

Any information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL, if filed with the Court, shall be filed under seal and shall be made available only to the Court and to persons authorized by the terms of this Protective Order. The party filing any paper which reflects, contains or includes

any CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information subject to this Protective Order shall file such paper in a sealed envelope, or other appropriately sealed container, which indicates the title of the action, the party filing the materials, the nature of the materials filed, the appropriate legend (see Paragraph 2.1), and a statement substantially in the following form:

This envelope contains documents subject to a Protective Order of the Court. It should be opened only by the Court. Its contents should not be disclosed, revealed or made public except by Order of the Court or written agreement of the parties.

13.　　Confidentiality Of Party's Own Documents.

No person may disclose, in public or private, any designated information of another party except as provided for in this Protective Order, but nothing herein shall affect the right of the designating party to disclose to its officers, directors, employees, attorneys, consultants or experts, or to any other person, its own information. Such disclosure shall not waive the protections of this Protective Order and shall not entitle other parties or their attorneys to disclose such information in violation of it, unless by such disclosure of the designating party the information becomes public knowledge (see Paragraph 16). Similarly, the Protective Order shall not preclude a party from showing its own information to its officers, directors, employees, attorneys, consultants or experts, or to any other person, which information has been filed under seal by the opposing party.

14.　　Other Protections.

14.1　　No person shall use any CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information, or information derived therefrom, for purposes other than the prosecution or defense of this action, including without limitation, for purposes of preparing, filing or prosecuting any patent application, continuation or divisional patent application, reissue patent application or request for re-examination.

14.2　　Any party may mark any document or thing containing CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information as an exhibit to a deposition, hearing or other proceeding and examine any witness thereon qualified under the terms of this Protective Order to have access to such designated material.

15.　　Challenge To Confidentiality.

15.1 This Protective Order shall not preclude any party from seeking and obtaining, on an appropriate showing, such additional protection with respect to the confidentiality of documents or other discovery materials as that party may consider appropriate. Nor shall any party be precluded from (a) claiming that any matter designated hereunder is not entitled to the protections of this Protective Order, (b) applying to the Court for an Order permitting the disclosure or use of information or documents otherwise prohibited by this Protective Order, or (c) applying for a further Order modifying this Protective Order in any respect. No party shall be obligated to challenge the propriety of any designation, and

failure to do so shall not preclude a subsequent challenge to the propriety of such designation.

15.2   On any motion challenging the designation of any information, the burden of proof shall lie with the producing party to establish that the information is, in fact, CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information. If a party seeks declassification or removal of particular items from a designation on the ground that such designation is not necessary to protect the interests of the party wishing the designated information, the following procedure shall be utilized:

a. The party seeking such declassification or removal shall give counsel of record for the other party written notice thereof specifying the designated information as to which such removal is sought and the reasons for the request; and

b. If, after conferring, the parties cannot reach agreement concerning the matter, then the party requesting the declassification or removal of particular items may file and serve a motion for a further Order of this Court directing that the designation shall be so removed.

16.   Prior Or Public Knowledge.

This Protective Order shall not apply to information that, prior to disclosure, is public knowledge, and the restrictions contained in this Protective Order shall not apply to information that is, or after disclosure becomes, public knowledge other than by an act or omission of the party to whom such disclosure is made, or that is legitimately and independently acquired from a source not subject to this Protective Order.

17.   Limitation Of Protective Order.

This Protective Order is not intended to address discovery objections to produce, answer, or respond on the grounds of attorney-client privilege or work product doctrine, or to preclude any party from seeking further relief or protective orders from the Court as may be appropriate under the Federal Rules of Civil Procedure.

18.   Other Proceedings.

By entering this order and limiting the disclosure of information in this case, the court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this order who may be subject to a motion to disclose another party's CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information pursuant to this order shall promptly notify that party of the motion so that it may have an opportunity to appear and be heard on whether such information should be disclosed.

19.   Inadvertent Disclosure Of Work Product Or Privileged Information:

Procedure And Waiver.

19.1    If the producing party at anytime notifies the Non-producing party in writing that it has inadvertently produced documents and/or things that are protected from disclosure under attorney-client privilege, work-product immunity, and/or any other applicable privilege or immunity from disclosure, the non-producing party shall return all copies of such documents and/or things to the producing party within five (5) business days of receipt of such notice and shall not further disclose or use such items for any purpose until further order of the Court. Upon being notified by the producing party pursuant to this section, counsel for the non-producing party shall use his or her best efforts to retrieve all copies of the documents at issue.

19.2    The return of any discovery item to the producing party shall not in any way preclude the non-producing party from moving the Court for a ruling that: (a) the document or thing was never privileged or otherwise immune from disclosure; and/or (b) that any applicable privilege or immunity has been waived.

19.3    Inadvertent or unintentional disclosure of information subject to any privilege or immunity during the course of this litigation without proper designation shall not be deemed a waiver of a claim that disclosed information is in fact subject to a privilege or immunity if so designated within ten (10) business days after the producing party actually learns of the inadvertent or unintentional disclosure.

20.    Non-Party Material.

The terms of this Protective Order, as well as the terms of any protective order that may be entered into between a discovering party and third party for the production of information to the discovering party, are applicable to CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information provided by a non-party. Information provided by a non-party in connection with this action and designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL, pursuant to the terms of this Protective Order shall be protected by the remedies and relief provided by this Protective Order.

21.    Return Of Designated Information.

Within thirty (30) days of final termination of this action, unless otherwise agreed to in writing by an attorney of record for the designating party, each party shall assemble and return, or certify destruction of, all materials containing information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL, including all copies, extracts and summaries thereof, to the party from whom the designated material was obtained, except that (a) any documents or copies which contain, constitute or reflect attorney's work product or attorney-client privilege communications, and (b) archive copies of pleadings, motion papers, deposition transcripts, correspondence and written discovery responses may be retained by counsel.

22.    Waiver Or Termination Of Order.

No part of the restrictions imposed by this Protective Order may be waived or terminated, except by written stipulation executed by counsel of record for each designating party, or by an Order of the Court for good cause shown. The restrictions provided for herein shall not terminate upon the conclusion of this action, but shall continue until further Order of this Court.

23.    Modification Of Order; Prior Agreements.

To the extent the terms of this Protective Order conflict with Local Rule 26.2 or with any agreements between the parties regarding the confidentiality of particular documents or information entered into before the date of this Protective Order, the terms of this Protective Order shall govern, except as to those documents and information produced or disclosed prior to the entry of this Protective Order, which documents and information shall continue to be governed by the terms of such prior agreements or by the provisions of Local Rule 26.2, as applicable.

24.    Section Captions.

The title captions for each section of this Protective Order are for convenience only and are not intended to affect or alter the text of the sections or the substance of the

Order.

Dated: December        , 2004

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LG PHILIPS LCD CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No 04-343-JJF |
| v. | ) | |
| | ) | |
| TATUNG COMPANY; | ) | |
| TATUNG COMPANY OF AMERICA, | ) | |
| INC. and VIEWSONIC CORPORATION, | ) | |
| | ) | |
| Defendants | ) | |

CONFIDENTIALITY UNDERTAKING

I certify that I have read the Protective Order in this action and that I fully understand the terms of the Order. I recognize that I am bound by the terms of that Order, and I agree to comply with those terms. I hereby consent to the personal jurisdiction of the United States District Court, District of Delaware, for any proceedings involving the enforcement of that Order and waive any venue objection with respect to any such proceedings.

EXECUTED this     day of _____, _____.


Name


Affiliation


Business Address

## CERTIFICATE OF SERVICE

I, Jeffrey S. Goddess, hereby certify that on January 24, 2005, I caused two copies of the foregoing document to be served as follows:

(VIA E-MAIL)               Richard D. Kirk, Esquire
The Bayard Firm
222 Delaware Avenue #900
P. O. Box 25130
Wilmington, DE 19899
Attorneys for Plaintiff L.G. Philips LCD Co., Ltd.

(VIA E-MAIL)               Richard L. Horwitz, Esquire
Potter Anderson & Corroon, LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
P. O. Box 951
Wilmington, DE 19899

(VIA E-MAIL)               Cass W. Christenson, Esquire
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006

(VIA E-MAIL)               Tracy Roman, Esquire
Bingham McCutchen
355 S. Grand Ave., 44th Floor
Los Angeles, CA 90071

JEFFREY S. GODDESS (No. 630)

# EXHIBIT 6

# Greenberg
# Traurig

Clark P. Russell
(973) 360-7931
russellc@gtlaw.com

March 12, 2007

VIA FEDERAL EXPRESS

Hon. Mary L. Cooper, U.S.D.J.
United States District Court for the District of New Jersey
Clarkson S. Fisher Federal Building and U.S. Courthouse
402 East State Street, Room 5000
Trenton, New Jersey 08608

      Re:    In re Notice of Fed.R.Civ.P. 30(b)(6) Deposition Duces Tecum and
                Fed.R.Civ.P. 45 Service of Subpoena on Tyco International, Ltd.

Dear Judge Cooper:

      We represent defendants Tatung Company and Tatung Company of America, Inc. (the "Tatung Defendants") in LG. Philips LCD Co., Ltd. v. Tatung Company, et al., Civil Action No. 04-343 (JJF), a patent infringement matter pending in Federal Court for the District of Delaware. On March 9, 2007, we caused to be e-filed a motion for a protective order (the "Motion"), seeking to limit plaintiff's above-referenced subpoena.

      As requested, enclosed please find a courtesy copy of the Motion, which includes a Civil Cover Sheet, The Tatung Defendants' Memorandum of Law in Support, The Tatung Defendants' Rule 7.1 Statement, Certification of Counsel, Declaration of Jackson Chang, proposed Protective Order and Certificate of Service.

      Thank you for your courtesies.

Respectfully submitted,

Clark P. Russell

CPR:cgc
Enclosures
cc:    Richard D. Kirk, Esq. (w/o encls., via e-mail)
       Gaspare J. Bono, Esq. (w/o encls., via e-mail)
       Jeffrey B. Bove, Esq. (w/o encls., via e-mail)
       Frederick L. Cottrell III, Esq. (w/o encls., via e-mail)
       Valerie W. Ho, Esq. (w/o encls., via e-mail) )
       Scott R. Miller, Esq. (w/o encls., via e-mail)
       Tracy Roman, Esq. (w/o encls., via e-mail)

ALBANY
AMSTERDAM
ATLANTA
BOCA RATON
BOSTON
BRUSSELS*
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON*
LOS ANGELES
MIAMI
MILAN*
NEW JERSEY
NEW YORK
ORANGE COUNTY
ORLANDO
PHILADELPHIA
PHOENIX
ROME*
SACRAMENTO
SILICON VALLEY
TALLAHASSEE
TOKYO*
TYSONS CORNER
WASHINGTON, D.C.
WEST PALM BEACH
ZURICH
*Strategic Alliance
Tokyo Office/Strategic Alliance

LA 126744923 v 1    Greenberg Traurig, LLP | Attorneys at Law | 200 Park Avenue | P.O. Box 677 | Florham Park, NJ 07932 0677
Tel 973.360.7900 | Fax 973.301.8410

www.gtlaw.com

# EXHIBIT 7

## Klevens, Shari

| | |
|---|---|
| **From:** | Dick Kirk [rkirk@bayardfirm.com] |
| **Sent:** | Tuesday, March 13, 2007 11:45 AM |
| **To:** | Anne Shea Gaza; Frank C. Merideth, Jr.; Frederick L. Cottrell; Jaclyn Mason; Jeff Bove; Jim Heisman; JP Hong; Mark Krietzman; Monika Bialas; Scott Miller; Steve Hassid; Tracy Roman; Valerie Ho |
| **Cc:** | Connor, Cormac; Klevens, Shari |
| **Subject:** | FW: Tatung/Philips |
| **Attachments:** | Tatung Mtn for PO.pdf; Tatung Mtn for PO Exh. 1.pdf; Tatung Mtn for PO Exh. 2.pdf; Tatung Mtn for PO Exh. 3.pdf; Tatung Mtn for PO Exh. 4.pdf; Tatung Order re PO.pdf; Tatung Order re PO.pdf; Tatung Cert of Compliance.pdf; Tatung Request for Expedited Hearing.pdf |

Dear counsel:  This email is an example of the problem.  The sender left off the two McKenna Long recipients we mentioned on the call yesterday, Cormac Connor and Shari Klevens.  Nor is this the expanded email list we agreed to last week.  PLEASE update your email lists.

Dick Kirk

---

**From:** foxl@gtlaw.com [mailto:foxl@gtlaw.com]
**Sent:** Monday, March 12, 2007 6:55 PM
**To:** Dick Kirk; gbono@mckennalong.com; rambrozy@mckennalong.com; cchristenson@mckennalong.com; lbrzezynski@mckennalong.com; jbove@cblh.com; jheisman@cblh.com; jmason@cblh.com; troman@raskinpeter.com; Cottrell@RLF.com; Gaza@RLF.com; MeridethF@GTLAW.com; HoV@GTLAW.com; KrietzmanM@GTLAW.com; HassidS@gtlaw.com
**Cc:** WarshawskyK@gtlaw.com
**Subject:** Tatung/Philips

Please see attached documents.

Lisa M. Fox
Secretary to Brian J. Schulman and
André H. Merrett
Greenberg Traurig, LLP
2375 E. Camelback Rd., Ste. 700
Phoenix, AZ  85016
(602) 445-8000
fax (602) 445-8100
foxl@gtlaw.com

---

    Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

    The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient,  you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If

you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to postmaster@gtlaw.com.

-----------------------------------

IRS Circular 230 DISCLOSURE:

Notice regarding federal tax matters: Internal Revenue Service Circular 230 requires us to state herein that any federal tax advice set forth in this communication (1) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties that may be imposed by federal tax laws, and (2) cannot be used in promoting, marketing, or recommending to another person any transaction or matter addressed herein.

-----------------------------------

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

3/14/2007

# EXHIBIT 8

**Klevens, Shari**

**From:**     Piraino, Russ [russ.piraino@tycoelectronics.com]
**Sent:**     Thursday, March 08, 2007 3:06 PM
**To:**       Klevens, Shari
**Subject:**  RE: LG.Philips LCD Co., Ltd. v. Tatung, et al., C.A. No. 04-343-JJF


Shari:

I understand that Phillips intends to file a motion for protective order
with regard to this subpoena.  In light of this, Tyco will await the
disposition of this motion by the court before providing any material in
response to the subpoena.  Thank you.

Russ Piraino

-----Original Message-----
From: Klevens, Shari [mailto:sklevens@mckennalong.com]
Sent: Thursday, March 01, 2007 3:27 PM
To: Piraino, Russ
Subject: LG.Philips LCD Co., Ltd. v. Tatung, et al., C.A. No. 04-343-JJF

Dear Russ:
This email is a follow up to our discussion this afternoon regarding
Plaintiff LG.Philips LCD Co., Ltd.'s ("LG") third party subpoena
("Subpoena") to Tyco International, Ltd. ("Tyco") in the referenced action.
I understand that your investigation related to the Subpoena has revealed
that Tyco does not merely resell products purchased from Tatung and
ViewSonic, but rather that any Tatung and/or ViewSonic products are
incorporated into a limited number of custom-made products manufactured and
sold by Tyco.  I further understand that such purchases account for less
than 1% of Tyco's overall products sold.
In light of the above, LG is willing to limit its document requests if Tyco
is willing to fully comply with the Subpoena as limited to the
following:
1. A sales summary consisting of a printout from Tyco's sales database.
The summary should reflect the purchase price, brand name, model number,
quantity, and sales price of the products sold by Tyco and a sales summary
showing all of this information for the products purchased by Tyco from
each defendant.  These documents should also show the correlation between
the Tatung or ViewSonic model number and Tyco's model numbers.
2. All contracts, supply agreements, and licenses between Tyco and Tatung
or ViewSonic.
3. Documents related to the technical specifications, manufacturing, or
assembly of Tatung and ViewSonic products, including any drawings and/or
narrative descriptions of same.
4. Documents sufficient to identify OEMs or ODMs that manufactured Tyco's
products incorporating visual display products manufactured by Tatung or
Viewsonic, agreements or other documents that mention Tatung or ViewSonic
between Tyco and any OEMs, and documents sufficient to show that Tatung or
ViewSonic had knowledge of such agreements (such as correspondence with
Tatung or ViewSonic).
5. Documents relating to product support or service on Tyco's visual
display products provided by Tatung or ViewSonic through a warranty or

1

otherwise, including documents reflecting warranties provided by Tatung or ViewSonic, and documents reflecting any type of repair assistance or help desk assistance, including setting up repair centers in the US.

As we discussed, we agree to extend Tyco's deadline for producing the requested documents until March 12, 2007. Further, after a review of the documents produced by Tyco in response to the Subpoena, we will determine whether a deposition, currently scheduled on March 19, will be necessary. We are hopeful that a deposition will not be required, especially if we can obtain an affidavit from Tyco in lieu of deposition testimony.

Please contact me if you have any further questions.

Regards,
Shari


Shari L. Klevens
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
tel 202.496.7612
fax 202.496.7756


CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from the law firm of McKenna Long & Aldridge LLP, and are intended solely for the use of the named recipient or recipients. This e-mail may contain privileged attorney/client communications or work product. Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachments.

1

2

3

4

5

The Honorable Ricardo S. Martinez

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

8  L.G. PHILIPS LCD CO., LTD,                           No.  MS 07-0030-RSM

9                               Plaintiff,              PLAINTIFF L.G.PHILIPS LCD CO., LTD.'S
                                                        OPPOSITION TO TATUNG'S MOTION FOR
10             v.                                       PROTECTIVE ORDER

11  TATUNG COMPANY, TATUNG
    COMPANY OF AMERICA, INC., and                       **Noted for Hearing**
12  VIEWSONIC CORPORATION,                              March 19, 2007 at 9:00 a.m.

13                               Defendant.

14        Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, Plaintiff LG.Philips

15  LCD Co., Ltd. ("LPL") hereby opposes the Motion for Protective Order filed by Defendants

16  Tatung Company and Tatung Company of America, Inc. (collectively "Tatung") with respect

17  to the third party subpoena served by LPL on Amazon.com, Inc. (*See* Ex. 1.)  LPL requests

18  that the Court exercise its discretion to transfer the instant motion to the United States District

19  Court for the District of Delaware.  In the alternative, LPL requests that the Court deny the

    Motion and allow LPL to proceed with necessary and appropriate third party discovery.

20        This Motion for Protective Order has not been filed by the party who received the

21  subpoena from LPL.  Rather, Tatung, a defendant in the underlying case, in a blatant attempt

22  to interfere with this and other proper subpoenas, has filed this motion in an effort to prevent

23  third parties from producing what LPL knows will be extensive evidence against Tatung of

    both infringement and inducement to infringe the patents in the underlying suit.  Further,

PLAINTIFF L.G.PHILIPS LCD CO., LTD.'S
OPPOSITION TO TATUNG'S MOTION FOR
PROTECTIVE ORDER - 1
- MS 07-0030-RSM

GARDNER BOND TRABOLSI PLLC
A T T O R N E Y S
2200 SIXTH AVENUE, SUITE 600
SEATTLE, WASHINGTON 98121
TELEPHONE (206) 256-6309
FACSIMILE (206) 256-6318

Tatung's efforts are designed to prevent LPL from obtaining necessary third party discovery prior to the deadline of March 30, 2007. LPL has filed a motion with the Special Discovery Master in the underlying case seeking an order that prevents Tatung from taking such actions and also seeking an extension of third party discovery due to Tatung's improper conduct.

## I.    STATEMENT OF FACTS

This discovery dispute arises out of a patent infringement action pending in the United States District Court for the District of Delaware ("Main Case"). LPL is the owner of U.S. Patent No. 6,498,718 ("the '718 Patent") and U.S. Patent No. 6,501,641 ("the '641 Patent") (collectively, the "Patents-in-Suit"), which relate to mounting systems used in visual display products such as liquid crystal display ("LCD") computer monitors, laptop computers, and televisions. LPL has asserted patent infringement claims against Tatung and ViewSonic Corporation ("ViewSonic") (collectively, the "Defendants"). The Defendants manufacture visual display products, which LPL alleges utilize LPL's patented techniques. Among its claims, LPL alleges that Defendants have induced other parties, including the party to whom the instant Subpoena was served, to infringe LPL's patents.[1]

On December 27, 2006, LPL served a third party subpoena on Hewlett-Packard Company. On February 13 and 14, 2007, LPL served approximately 23 other third party subpoenas ("Subpoenas") on various distributors, retailers, and purchasers of Defendants' products in the United States. The Subpoenas were issued based on LPL's understanding that

---

[1] "A person induces infringement under § 271(b) by actively and knowingly aiding and abetting another's direct infringement." *C. R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 675 (Fed. Cir. 1990). If the defendant has knowledge of the patent, then upon a showing that defendant "had intent to induce the specific acts constituting infringement, intent additionally to cause an infringement can be presumed." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1379 (Fed. Cir. 2005). A jury could conclude that e-mails between a foreign defendant and a U.S. company "represent product support" showing that the defendant was aware of potentially infringing activities in the U.S. by the U.S. company and that the defendant "intended to encourage those activities." *Id.* at 1379-80. *See also Minnesota Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1305 (Fed. Cir. 2002) (evidence did not support finding of no inducement where defendant was aware of patents and supplied infringing products to customers "with instructions on how they were to be used, which, when followed, would lead to infringement."); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1351 (Fed. Cir. 2001) (defendant's acts in connection with selling infringing audio chips, manufactured in Singapore and sold to customer that resold to the U.S. PC market, constituted active inducement).

GARDNER BOND TRABOLSI PLLC
A T T O R N E Y S
2200 SIXTH AVENUE, SUITE 600
SEATTLE, WASHINGTON 98121
TELEPHONE (206) 256-6309
FACSIMILE (206) 256-6318

these parties, who have current or former business relationships with Tatung and ViewSonic, have documents that are relevant to the instant action, including but not limited to, documents related to purchase and sale of the infringing products in the United States, documents relating to Defendants' efforts to market the infringing products in the United States, and other important discovery concerning infringement, inducement, damages, and other issues.[2]  While a small handful of these third parties were served with subpoenas during the jurisdictional phase of this case, the new subpoenas are broader in several respects.  First, the jurisdictional subpoenas did not seek documents related to ViewSonic, which are sought in the present Subpoenas.  Second, the jurisdictional subpoenas were limited in most of their categories to sales of products in Delaware, rather than throughout the United States.  In addition, the Subpoenas include three categories that did not appear at all in the jurisdictional subpoenas. *See* Ex. 1, paragraphs 1, 2, and 8 in Attachment B.  Moreover, and perhaps most importantly, some of the parties that received both subpoenas produced very few, if any, documents in response to the jurisdictional subpoenas, and likely have additional responsive documents created since the first subpoena was served.

Based on information available to LPL and LPL's belief, the third parties are likely to have information showing that the Defendants have imported, sold, and used their products in the United States, activities which infringe upon LPL's U.S. patents and which support LPL's claims of direct infringement or inducement of infringement.  Thus, the third parties are likely to have documents pertaining to communications, business coordination efforts, contracts or other agreements between itself and the Defendants pertaining to Defendants' products and sales of those products in the United States.  The employees of the third parties are likely to have knowledge of the manner in which the third party conducted business with the Defendants and their customers in the United States.  The employees of the third parties are

---

[2] LPL has also sought the same information and documents, unsuccessfully, from the Defendants.  Defendants have produced some - but certainly not all – discovery that LPL seeks.  Notably, much of Defendants' production is subject to objections and limitations that LPL disputes and which are the subject of related discovery motions already pending before the Special Discovery Master in the Main Case in the District of Delaware, as described more fully below.

PLAINTIFF L.G.PHILIPS LCD CO., LTD.'S
OPPOSITION TO TATUNG'S MOTION FOR
PROTECTIVE ORDER - 3
- MS 07-0030-RSM

**Gardner Bond Trabolsi** pllc
A T T O R N E Y S
2200 Sixth Avenue, Suite 600
Seattle, Washington 98121
Telephone (206) 256-6309
Facsimile (206) 256-6318

1    also likely to have knowledge of the methods and practices and any coordination efforts

2    related to the third parties' acquisition of infringing LCD components from the Defendants.

3    All of this information will assist LPL in evaluating its patent infringement and inducement

4    claims against the Defendants and will enable LPL to verify whether the Defendants' own

5    document productions and deposition testimony have been complete and accurate.  *See*

6    *generally MEMC Elec. Materials, Inc., v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369,

7    1379-80 (Fed. Cir. 2005) (discussing factors evidencing inducement to infringe on patents).

8            In addition, the Subpoenas requested that all documents be produced by March 5,

9    2007, and that depositions occur between March 12 and March 27, 2007, consistent with the

10   March 30 deadline for third party discovery in this case.  LPL provided notice and copies of

11   the Subpoenas to the Defendants prior to the service of the Subpoenas.  During a telephone

12   conference on January 30, 2007, Tatung indicated for the first time that it intended to file a

13   motion for protective order with respect to the Subpoena directed to Hewlett-Packard, but

14   Tatung never did so.[3]  More than one month later, on March 5, Tatung again threatened to file

15   additional motions for protective orders with respect to the later served 23 Subpoenas.  In

16   addition, even though Tatung had received the second batch of Subpoenas nearly three weeks

17   earlier, Tatung indicated that some or all of such motions would be made on an *ex parte* basis

18   because of the upcoming return dates on the Subpoenas, which incidentally was that same

19   day.  (*See* Ex. 2, Emails between V. Ho and C. Connor (Mar. 5-7, 2007).)  Tatung claimed to

20   have standing to raise any such objections on behalf of the third parties because it claimed

21   that the Subpoenas pertained to Tatung's still unresolved objections to the scope of discovery

22   in the Main Case.  Tatung never explained why it had waited several weeks before raising its

---

[3] To date, Hewlett-Packard has produced more than 5000 pages of relevant, responsive documents.  Hewlett-Packard's agreement to produce and subsequent production belies Tatung's argument that the Subpoenas are burdensome to the third parties, particularly because the majority of the third parties are smaller entities with far fewer responsive documents.    Moreover, Hewlett-Packard produced many "Process Management Plans," documents that LPL asserts are essential to its infringement claims.  Incredibly, Tatung denied the existence of such documents and refused to produce them in response to numerous requests from LPL.  Tatung's failure to produce these documents underscores how critical it is for LPL to obtain the discovery that is being sought from the third parties.

PLAINTIFF L.G.PHILIPS LCD CO., LTD.'S
OPPOSITION TO TATUNG'S MOTION FOR
PROTECTIVE ORDER - 4
- MS 07-0030-RSM

GARDNER BOND TRABOLSI PLLC
A T T O R N E Y S
2200 SIXTH AVENUE, SUITE 600
SEATTLE, WASHINGTON 98121
TELEPHONE (206) 256-6309
FACSIMILE (206) 256-6318

objections, but merely stated that it intended to file its motions on an *ex parte* basis. *See id.* In an exchange of emails, LPL strenuously objected to Tatung's position that it could file *ex parte* motions on any issue in the case, including any issues related to the third party subpoenas served by LPL. *See id.* In addition, LPL further reiterated its position that Tatung had no standing to raise objections to the Subpoenas, principally, because Tatung has never proved why any documents now in the custody of third parties are confidential, trade secrets, or otherwise shielded from discovery. *See id.*

Nonetheless, Tatung filed the instant Motion, along with approximately 22 other Motions related to the various Subpoenas served by LPL. Tatung filed the Motions for Protective Order without regard for the fact that several of the third parties had either already produced the requested documents or agreed to produce the requested documents with objection. Indeed, several third parties have agreed to produce the requested documents even after learning that Tatung had filed Motions related to the Subpoenas, which further undermines Tatung's arguments in its Motion. Nonetheless, due to Tatung's interference and improper motions, there are also certain third parties who have now refused to produce the requested discovery <u>after they had already agreed to comply with the subpoenas</u>. *See, e.g.* Ex. 3.

## II.  **ARGUMENT**

Under Rule 26(c), Tatung bears the burden of establishing that a protective order should be granted. *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). To meet its burden, " the party seeking the protective order must show good cause by demonstrating a particular need for protection. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *See id; United States v. Garrett*, 571 F.2d 1323, 1326, n. 3 (5th Cir. 1978) (requiring "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements"); *General Dynamics Corp. v. Selb Mfg. Corp.*, 481 F.2d 1204, 1212 (8th Cir.1973), cert. denied, 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974); 8 C. Wright & A. Miller,

**GARDNER BOND TRABOLSI PLLC**
A T T O R N E Y S
2200 SIXTH AVENUE, SUITE 600
SEATTLE, WASHINGTON 98121
TELEPHONE (206) 256-6309
FACSIMILE (206) 256-6318

Federal Practice and Procedure § 2035 (1970 & Supp.1985). Moreover, it is clear that the harm described by the movant must be significant, not a mere trifle. *See, e.g., Joy v. North*, 692 F.2d 880, 894 (2d Cir.1982) (refusing protective order where proponent's only argument in its favor was the broad allegations that the disclosure of certain information would "injure the bank in the industry and local community"), cert. denied sub nom. *Citytrust v. Joy*, 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983). Tatung has failed to meet its high burden with respect to this Motion.

### A.    The Court Should Exercise Its Discretion to Transfer Tatung's Motion to the District of Delaware

The Court has the authority to transfer Defendants' Motion for Protective Order to the District of Delaware. *See Devlin v. Transportation Communications International Union*, 2000 WL 249286, *1 (S.D.N.Y. 2000) (stating that there is ample authority for the court from which a subpoena issues to transfer any motions relating to that subpoena back to the court where the main case is pending); *Digital Equipment Corp.*, 949 F.2d 228, 231 (8th Cir. 1991) (holding that while the court initially has exclusive jurisdiction to rule on the objections, it may in its discretion remit the matter to the court in which the action is pending).[4]

As explained above, all 23 motions filed by LPL are nearly identical. Yet, by having the Motions heard in 15 or more different jurisdictions, the parties risk that inconsistent opinions will be rendered. Moreover, the hearings on all of these motions will be very time consuming and will further interfere with LPL's attempts to finalize discovery in the Main Case, in which depositions of Tatung's witnesses are currently being taken. In light of these issues, and the other related discovery issues currently pending in the Main Case as described below, a decision in this Court would have to be made in a vacuum, without the benefit of entering a global decision related to all 23 nearly identical motions. Indeed, this Court should not attempt to decide these issues in a vacuum without the benefit of knowing the history of

---

[4] *See also* Fed.R.Civ.P. 26(c), advisory committee's note. The Advisory Committee's Note to Rule 26(c) (Protective Orders) explains: The subdivision recognizes the power of the court in the district where a deposition is being taken to make protective orders...The court in the district where the deposition is being taken may, and frequently will, remit the deponent or party to the court where the action is pending.

PLAINTIFF L.G.PHILIPS LCD CO., LTD.'S
OPPOSITION TO TATUNG'S MOTION FOR
PROTECTIVE ORDER - 6
- MS 07-0030-RSM

**GARDNER BOND TRABOLSI PLLC**
A T T O R N E Y S
2200 SIXTH AVENUE, SUITE 600
SEATTLE, WASHINGTON 98121
TELEPHONE (206) 256-6309
FACSIMILE (206) 256-6318

1   complex discovery disputes and facts at issue between the parties in the Main case.  Thus, for

2   the reasons cited above, LPL requests that the Court formally transfer this dispute back to the

3   District of Delaware, the court where the Main Case is pending, so that all 23 motions and

4   oppositions can be heard en masse.

       **B.**     **Tatung Lacks Standing to Challenge the Subpoenas**

5        Tatung does not have standing to raise any objections to LPL's Rule 45 subpoenas.

6   Rule 45(c) provides protection to persons "subject to subpoenas."  Indeed, "[u]nless a party to

7   an action can make claim to some personal right or privilege in respect to the subject matter of

8   a subpoena duces tecum directed to a nonparty witness, the party to the action has no right to

9   relief under Rule 45(b) or 30(b)."  *Dart Industries, Inc. v. Liquid Nitrogen Processing*, 50

10  F.R.D. 286, 291 (D. Del. 1970); *see Ponsford v. United States*, 771 F.2d 1305, 1308 (9th Cir.

11  1985) (denying motion to quash for lack of standing); *Nova Products, Inc. v. Kisma Video,

12  Inc.*, 220 F.R.D. 238, 241 (S.D.N.Y. 2004) (denying motion to quash because no showing of

13  personal right or privilege); *Oliver B. Cannon and Son, Inc. v. Fidelity and Cas. Co. of New

14  York*, 519 F. Supp. 668, 680 (D. Del. 1981) (denying motion to quash because movant failed

15  to prove documents sought were privileged).  Tatung attempts to distinguish the *Dart* decision

16  on two grounds.  First, Tatung argues that the motion in *Dart* was premised on Rule 45(c),

17  rather than Rule 26(c), which was relied upon by Tatung.  However, the standards for

18  protective orders under both rules are the same.  *See* Advisory Committee Notes to the 1970

19  Amendment to Rule 45 (the "scope of discovery through a subpoena is the same as that

20  applicable to Rule 34 and other discovery rules.")  Thus, Rule 45 clearly incorporates the

21  standards set forth in Rule 26.

22       Tatung also attempts to distinguish *Dart* on the ground that the moving party in *Dart*

23  did not assert any personal privilege in the requested documents.  Similarly however, in this

case, while Tatung has stated, in a conclusory manner, that it has a personal stake in the

documents to be produced, Tatung has failed to provide any particularized facts or evidence to

support its conclusions.  Such statements are insufficient for Tatung to meet its burden in

PLAINTIFF L.G.PHILIPS LCD CO., LTD.'S
OPPOSITION TO TATUNG'S MOTION FOR
PROTECTIVE ORDER - 7
- MS 07-0030-RSM

**GARDNER BOND TRABOLSI PLLC**
A T T O R N E Y S
2200 SIXTH AVENUE, SUITE 600
SEATTLE, WASHINGTON 98121
TELEPHONE (206) 256-6309
FACSIMILE (206) 256-6318

1    establishing that it is entitled to a Protective Order.  *Cipollone*, 785 F.2d at 1121.  Namely,

2    Tatung has failed to explain why it would be burdensome <u>to Tatung</u> for a third party to

3    produce the requested information.  In addition, while Tatung argues that its alleged

4    confidential documents are stored in a secure facility, Tatung fails to explain how it can assert

5    the alleged confidentiality of such information that it has <u>voluntarily</u> disclosed to its

6    customers, particularly where Tatung evidently has <u>no confidentiality agreement in place to</u>

7    <u>protect the information</u>.  In addition, Tatung fails to explain why the Protective Order entered

8    in the Main Case, which governs the use and disclosure of confidential information, does not

9    adequately protect the information to be produced by the third parties.  Indeed, by Tatung's

10   own admission, it has already produced documents designated as "Highly Sensitive

11   Confidential" in the Main Case under the Protective Order.  Yet, Tatung's arguments suggest

12   that such a course of action is not good enough for the third parties, even though the

13   Protective Order clearly applies to non-parties as well.  Ex. 4.  Tatung's argument that LPL

14   seeks such information "to obtain a competitive advantage over them" is unfounded,

15   inappropriate, and frankly, would not even be possible since documents marked "Highly

16   Sensitive Confidential" cannot even be disclosed to LPL and can only be seen by outside

17   counsel.  *See* Ex. 4 at ¶ 2.2.  LPL strongly disputes Tatung's contention that it has ever

18   violated a Protective Order in this or any other cases.  Moreover, Tatung has no evidence to

19   support its contention that LPL may be in violation of the patent prosecution bar, and

20   Tatung's accusations on this point are misplaced and offensive.

21         Here, Tatung has not identified any particular harm that would necessitate a Protective

22   Order.  Moreover, Tatung has no basis to object to the information sought by LPL's

23   subpoenas and, thus, does not have standing to move for a Protective Order with respect to

     any of LPL's subpoenas.  As such, Tatung has evidently filed these motions solely to delay

     and impede LPL's discovery efforts.

PLAINTIFF L.G.PHILIPS LCD CO., LTD.'S
OPPOSITION TO TATUNG'S MOTION FOR
PROTECTIVE ORDER - 8
- MS 07-0030-RSM

GARDNER BOND TRABOLSI PLLC
A T T O R N E Y S
2200 SIXTH AVENUE, SUITE 600
SEATTLE, WASHINGTON 98121
TELEPHONE (206) 256-6309
FACSIMILE (206) 256-6318

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

**C.    Tatung's Motion Is Nothing More Than An Attempt to Interfere With LPL's Legitimate Third Party Discovery**

Tatung's interference with valid third party discovery is inappropriate and is nothing more than an attempt to delay the third party discovery until after the March 30, 2007 discovery deadline. Indeed, on March 7, 2007, LPL received a telephone message from Sensormatic, who had previously agreed to produce the documents requested in the Subpoena. In that message, Sensormatic stated that Tatung told Sensormatic that it planned to move for a protective order. Sensormatic further expressed concern about being in the middle of the dispute between the parties regarding the Subpoena. As a result, Sensormatic has not produced documents yet despite its earlier agreement to do so. On March 8, 2007, LPL received correspondence from Tyco Electronics Corp. ("Tyco"), who LPL had also served with a Subpoena. (*See* Ex. 3.) Prior to that date, Tyco had also agreed to produce documents in response to the Subpoena. In the correspondence on March 8, however, Tyco stated that, "I understand that [Tatung] intends to file a motion for protective order with regard to this subpoena. In light of this, Tyco will await the disposition of this motion by the court before providing any material in response to the subpoena." (Id.) These communications clearly show that Tatung's motions are delaying LPL's legitimate discovery in this action. Because Tatung waited until now to file motions pertaining to subpoenas served almost one month ago, it is also clear that Tatung is using its motions as a way to prevent LPL from obtaining third party discovery prior to the March 30 deadline.

Tatung's decision to wait almost one month to file its motions for protective order and Tatung's disruptive communications with third parties are tactics that Tatung has used before in the Main Case and in at least one prior patent infringement case. In the Main Case, during the jurisdictional discovery phase, "Tatung failed to appear for depositions on multiple occasions, failed to produce witnesses prepared to testify on noticed and relevant topics, and failed to respond to interrogatories and requests for production of documents," which forced LPL to waste its resources just to prove that Tatung's products are sold in Delaware. (Ex. 5,

PLAINTIFF L.G.PHILIPS LCD CO., LTD.'S
OPPOSITION TO TATUNG'S MOTION FOR
PROTECTIVE ORDER - 9
- MS 07-0030-RSM

**GARDNER BOND TRABOLSI PLLC**
A T T O R N E Y S
2200 SIXTH AVENUE, SUITE 600
SEATTLE, WASHINGTON 98121
TELEPHONE (206) 256-6309
FACSIMILE (206) 256-6318

1  Report & Recomms. at 9 (Aug. 16, 2005) (imposing sanctions on Tatung).)  Ultimately, after

2  the Special Discovery Master in the Main Case reviewed Tatung's pattern of delay and

3  discovery abuse, Tatung withdrew its jurisdictional defense.  (*See generally id.*)

4          Tatung has also taken steps to disrupt third party discovery in at least one other case.

5  *See Safer Display Technology, Ltd. v. Tatung Co.*, 227 F.R.D. 435 (E.D. Va. 2004) (copy

   attached hereto).  In that case, represented by the same counsel as in the Main Case, Tatung

6  engaged in similar delays before it finally withdrew its jurisdictional defense.  *See Safer*

7  *Display*, 227 F.R.D. at 437.  Notably, in *Safer Display*, Tatung worked diligently to impede

8  third party discovery by contacting and attempting to dissuade third parties from producing

9  discovery, (*see* Ex. 6 at 9-10), and filing motions for protective orders for which Tatung

10 lacked standing, (*see id.* at 10-11).

11         As Tatung is aware, all of these emergency hearings have been scheduled to occur

   simultaneously with depositions of Tatung's witnesses.  Because LPL's lead trial counsel are

12 busy taking and defending depositions this week, it appears that Tatung strategically filed

13 these requests for expedited hearing in an attempt to prevent LPL from obtaining significant

14 and relevant information it needs from the third parties or to divert LPL's focus from the

15 Tatung depositions.  Tatung's continuing pattern of dilatory tactics and improper interference

16 with LPL's discovery efforts should not be allowed to continue.

17         **D.      LPL Has Been Unsuccessful In Obtaining the Discovery It Seeks From the
                 Defendants, Who Have Refused to Produce the Requested Documents**

18         LPL needs the discovery that it seeks from the third parties because the fact discovery

19 in the Main Case will close on March 30, 2007 and because Tatung has not cooperated with

20 LPL's discovery efforts.  Indeed, Tatung misrepresents the volume and the sufficiency of its

21 document production to date.  Although LPL's discovery requests were served on November

22 29, 2005, Tatung has refused to fully comply with those requests by, among other things,

23 imposing unreasonable limitations and conditions on their production.  LPL filed motions to

   compel in the Main Case that addressed issues common to all Defendants in the Main Case in

PLAINTIFF L.G.PHILIPS LCD CO., LTD.'S
OPPOSITION TO TATUNG'S MOTION FOR
PROTECTIVE ORDER - 10
- MS 07-0030-RSM

GARDNER BOND TRABOLSI PLLC
A T T O R N E Y S
2200 SIXTH AVENUE, SUITE 600
SEATTLE, WASHINGTON 98121
TELEPHONE (206) 256-6309
FACSIMILE (206) 256-6318

1   September, October, November, and December 2006 and in January, February, and March

2   2007.  Most of these issues have not yet been resolved and many of those unresolved issues

3   relate directly to Tatung's instant Motion for Protective Order.  For instance, although Tatung

4   has identified over 300 potentially infringing products, it only produced about 60 technical

5   drawings and then claimed, without explaining their calculations, that this fractional

6   production covered as much as 96% of their products.  Additionally, after telling LPL for

7   months that it had produced all technical documents, Tatung has only recently revealed, but

8   not yet fully produced, additional categories of critically relevant technical drawings.  Tatung

9   has informed LPL that it will complete its supplemental production in April, which is well

10   after the March 30 deadline for third party discovery.

11        Tatung argues that the third parties should not be required to produce documents, in

12   part, because Tatung has objected to the scope of LPL's requests.  Tatung correctly notes that

13   the Special Discovery Master in the Main Case has not yet ruled on these issues.  This is

14   precisely the reason that LPL seeks discovery from the third parties.  Tatung has refused to

15   produce relevant documents and the Special Discovery Master has not ruled on Tatung's

16   objections or on LPL's motions to compel that production.  Notably, the subpoena itself is not

17   limited to documents relating to Tatung in the possession of the third party as the subpoena

18   also seeks documents relating to ViewSonic, another defendant in the Main case who has not

19   objected to these subpoenas.  All fact discovery, including third party discovery, in the Main

20   Case closes on March 30, 2007.  After that date, LPL will not be able to seek further

21   discovery from any third party.  Thus, in order to compile all relevant evidence and properly

22   prepare its case for trial, LPL needs discovery from the third parties so that it can test the

23   sufficiency and completeness of Tatung's own production.

        There have been no rulings in the Main Case that would limit LPL's ability to obtain

   the scope of discovery that it seeks from the third parties.  Indeed, contrary to Tatung's

   statement that the Special Discovery Master's "impending ruling" will be favorable to Tatung,

   neither party can predict in whose favor the Special Discovery Master will rule.  Although

PLAINTIFF L.G.PHILIPS LCD CO., LTD.'S
OPPOSITION TO TATUNG'S MOTION FOR
PROTECTIVE ORDER - 11
- MS 07-0030-RSM

GARDNER  BOND  TRABOLSI PLLC
A T T O R N E Y S
2200 SIXTH AVENUE, SUITE 600
SEATTLE, WASHINGTON 98121
TELEPHONE (206) 256-6309
FACSIMILE (206) 256-6318

1  Tatung resists LPL's discovery in the Main Case, that resistance does not, by itself, erect

2  roadblocks to LPL's discovery from third parties. LPL properly seeks discovery from Tatung

3  about all potentially infringing products because only Tatung can provide LPL with

4  information that would identify infringing products out of Tatung's total of over 850 different

   products.

5

6  **E.    The Scope of the Subpoena is Reasonable, And In Any Event, Tatung's
           Objections are Misplaced**

7          In its Motion, Tatung argues that any discovery should be limited to the accused

8  products. This, however, is precisely why LPL issued the Subpoenas. In its Complaint, LPL

9  identified to Tatung an example of a product that LPL alleged to infringe the Patents-in-Suit.

10 However, because Tatung makes hundreds of products, most of which are sold under brand

11 names belonging to third parties, LPL has no way to know, without Tatung's assistance,

12 which of Tatung's hundreds of products use infringing technology. LPL's attempts to obtain

   information regarding Defendants' products has been ongoing since November 2005.

13 However, the Defendants have objected to producing documents that would enable LPL to

14 identify those products, and continue to resist LPL's efforts to this day. In fact, during a

15 hearing on March 12, 2007, Tatung conceded that it has not produced all such documents and

   that it would produce additional documents in April 2007, _after_ the deadline for the close of

16 third party discovery.

17         In light of the Delaware Court's Scheduling Order, requiring that third party discovery

18 be completed by March 30, Tatung's efforts to limit the scope of LPL's subpoena to products

19 that have been accused of infringement will artificially narrow the scope of the subpoena to

20 products that are currently accused, even though that list will likely expand in April, after LPL

21 finally receives Tatung's supplemental document production.

22         In addition, Tatung's objections to the scope of the Subpoena are misplaced.

   Specifically, objections based on burden or scope of a Subpoena should be made by the party

23 upon whom the Subpoena is served. As the burden will not be borne by Tatung, Tatung does

PLAINTIFF L.G.PHILIPS LCD CO., LTD.'S
OPPOSITION TO TATUNG'S MOTION FOR
PROTECTIVE ORDER - 12
- MS 07-0030-RSM

GARDNER BOND TRABOLSI PLLC
A T T O R N E Y S
2200 SIXTH AVENUE, SUITE 600
SEATTLE, WASHINGTON 98121
TELEPHONE (206) 256-6309
FACSIMILE (206) 256-6318

not have standing to raise that issue.  To the extent that Tatung believes that the documents produced by third parties are not relevant to the litigation, or exceed the bounds of admissible evidence, Tatung can raise those arguments in advance of trial.  *See Cook v. Rockwell Intern. Corp.*, 935 F.Supp. 1452, 1465 (D.Colo. 1996) ("Defendants had no standing to object to the breadth of the order [with respect to third party subpoena] but were restricted to appropriate objections as to relevance and admissibility before trial.")  Notably, Tatung filed the Motions for Protective Order without regard for the fact that several of the third parties had either already produced the requested documents or agreed to produce the requested documents with objection.  As the party to whom the Subpoena was served has not filed a Motion for Protective Order with respect to the breadth of the Subpoena, Tatung's objection on that basis should be denied.

## III.    CONCLUSION

For the foregoing reasons, LPL requests that the Court exercise its discretion to transfer the instant motion to the United States District Court for the District of Delaware.   In the alternative, LPL requests that the Court deny the Motion and allow LPL to proceed with necessary third party discovery.

DATED this 14th day of March 2007.

GARDNER BOND TRABOLSI PLLC


By  /s/ Ronald C. Gardner
    Ronald C. Gardner, WSBA No. 9270

*Of Counsel:*

**MCKENNA LONG & ALDRIDGE LLP**

Shari Klevens
1900 K Street, NW
Washington, DC 20006
202-496-7207

Attorneys for Plaintiff

PLAINTIFF L.G.PHILIPS LCD CO., LTD.'S
OPPOSITION TO TATUNG'S MOTION FOR
PROTECTIVE ORDER - 13
- MS 07-0030-RSM

GARDNER BOND TRABOLSI PLLC
A T T O R N E Y S
2200 SIXTH AVENUE, SUITE 600
SEATTLE, WASHINGTON 98121
TELEPHONE (206) 256-6309
FACSIMILE (206) 256-6318

1

## CERTIFICATE OF SERVICE

2      The undersigned certifies that on March 14, 2007, she electronically filed the

3   foregoing document with the Clerk of the Court using CM/ECF, which will send automatic

4   notification of the filing to the following:

5   **PLAINTIFF L.G.PHILIPS LCD CO., LTD.'S OPPOSITION TO TATUNG'S MOTION FOR PROTECTIVE ORDER**

6

Stacy Foster
7   Warmuth Wilsdon Calfo PLLC
sfoster@yarmuth.com

8

9
      Dated: March 14, 2007.
10

11                                    /s/ Jan M. Young
                                     Jan M. Young
12                                    Legal Assistant to Ronald C. Gardner

13

14

15

16

17

18

19

20

21

22

23

PLAINTIFF L.G.PHILIPS LCD CO., LTD.'S
OPPOSITION TO TATUNG'S MOTION FOR
PROTECTIVE ORDER - 14
- MS 07-0030-RSM

GARDNER  BOND  TRABOLSI PLLC
A T T O R N E Y S
2200 SIXTH AVENUE, SUITE 600
SEATTLE, WASHINGTON 98121
TELEPHONE (206) 256-6309
FACSIMILE (206) 256-6318

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD., | |
| Plaintiff, | |
| v. | Civil Action No. 04-343 (JJF) |
| TATUNG COMPANY, et al., | |
| Defendants. | |

**NOTICE OF FED.R.CIV.P. 30(b)(6) DEPOSITION *DUCES TECUM*
AND FED.R.CIV.P. 45 SERVICE OF SUBPOENA
(AMAZON.COM, INC.)**

TO:

Jeffrey B Bove, Esq.
Jaclyn M. Mason, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

Valerie Ho, Esq.
Mark H. Krietzman, Esq.
Frank C. Merideth, Jr., Esq.
Greenberg Traurig LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404

Scott R. Miller, Esq.
Connolly Bove Lodge & Hutz LLP
355 South Grand Avenue
Suite 3150
Los Angeles, CA 90071

Tracy Roman, Esq.
Raskin  Peter Rubin & Simon LLP
1801 Century Park East, Suite 2300
Los Angeles, CA 90067

PLEASE TAKE NOTICE that Plaintiff will take the deposition *duces tecum* of

Amazon.com, Inc.. ("Amazon") pursuant to Fed. R. Civ. P. 30(b)(6), on March 23, 2007.  The

deposition will take place at Bank of America Tower, 701 Fifth Avenue, Suite 6630, Seattle WA

981.  The deposition will be videotaped and taken before a notary public or court reporter, duly

651704-1

authorized to administer oaths and transcribe the testimony of the deponent(s) and may use technology that permits the real time display of the deposition transcript for attendees who bring a compatible computer.  The deposition may continue from day to day until completed if authorized by the Court or stipulated by the parties.

PLEASE ALSO TAKE NOTICE that LG.Philips LCD Co., Ltd. is serving Amazon with a subpoena (the "Subpoena"), a copy of which is attached hereto.  The subjects covered in the deposition will include (but are not limited to) the subjects listed on Attachment A to the Subpoena.  Pursuant to Fed. R. Civ. P. 30(b)(6), Amazon is required to designate one or more persons to testify at the deposition as to the matters known or reasonably available to Amazon concerning all topics listed in Attachment A to the Subpoena.  In addition, the Subpoena requires Amazon to produce at the deposition the documents listed in Attachment B to the Subpoena.

You are invited to attend and cross examine.

February 13, 2007

THE BAYARD FIRM

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk
Ashley B. Stitzer
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899-5130
rkirk@bayardfirm.com
(302) 655-5000
Counsel for Plaintiff
LG.PHILIPS LCD CO., LTD.

OF COUNSEL:
Gaspare J. Bono
Matthew T. Bailey
Lora A. Brzezynski
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
(202) 496-7500

651704-1

OAO88 (Rev. 1/94) Subpoena in a Civil Case

# Issued by the
## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF WASHINGTON

LG.PHILIPS LCD CO., LTD.                    **SUBPOENA IN A CIVIL CASE**
        V.
TATUNG COMPANY, et al.

Case Number:[1]    04-343 (JJF)

TO:    **Amazon.com, Inc.**
       **1200 12th Avenue, Suite 1200**
       **Seattle, WA  98114**

United States District Court for the District of Delaware

X  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
|  | DATE AND TIME |

X  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. (See Attachment A for topics.)

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
| Esq. Deposition Services, Bank of America Tower, 701 Fifth Ave, Ste 6630, Seattle WA 98104 | March 23, 2007 at 9:00 am. |

X  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): All documents listed in Attachment B.

| PLACE | DATE AND TIME |
| --- | --- |
| Mail documents to: McKenna Long & Aldridge LLP, Attn:  Shari Klevens c/o Esquire Deposition Services, Bank of America Tower, 701 Fifth Avenue, Ste 6630, Seattle WA 98104 | March 5, 2007 at 9:00 a.m. |

G  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER=S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR | DATE |
| --- | --- |
| Shari Klevens (Attorney for Plaintiff) *SKlevens* | February 13, 2007 |

ISSUING OFFICER=S NAME, ADDRESS AND PHONE NUMBER
Shari Klevens
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
Telephone: 202-496-7612

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

DC:50459520.1

AO88  (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|

**SERVED**

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance,
(ii)    requires a person who is not a party or an officer of a

party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)    requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv)    subjects a person to undue burden.

(B) If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii)    requires disclosure of an unretained expert=s opinion or information not describing specific events or occurrences in dispute and resulting from the expert=s study made not at the request of any party, or
(iii)    requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

DC:50459520.1

## ATTACHMENT A: TOPICS TO BE ADDRESSED AT THE DEPOSITION

For purposes of this Attachment, Amazon.com, Inc. should use the following definition for the terms used herein.

A.     "Amazon.com," "you," and "your" as used herein, means Amazon.com, Inc. and all persons or entities acting or purporting to act on your behalf, and any affiliates of Amazon.com, Inc.

B.     "ViewSonic" means Defendant ViewSonic Corporation, and all persons or entities acting or purporting to act on ViewSonic's behalf, and any affiliates of ViewSonic, including, but not limited to, entities, divisions, and affiliates located in Taiwan.

C.     "ViewSonic products" as used herein means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for ViewSonic.  This includes all such products, regardless of brand name, and thus includes, but is not limited to, ViewSonic brand products.

D.     "Tatung Company" means Defendant Tatung Company, all persons or entities acting or purporting to act on Tatung Company's behalf, and affiliates of Tatung Company, including but not limited to Tatung Company.

E.     "Tatung Company products" as used herein any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for Tatung Company.  This includes all such products, regardless of brand name, and thus includes, but is not limited to, Tatung brand products.

Attachments A to Fed. R. Civ. P. 45 Subpoena

Page 1 of 6

F.    "Tatung America" means Defendant Tatung Company of America, Inc., and all persons or entities acting or purporting to act on Tatung Company of America's behalf, including, but not limited to Tatung Company of America.

G.    "Tatung America products" as used herein means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for Tatung America. This includes all such products, regardless of brand name, and thus includes, but is not limited to, Tatung America brand products.

H.    "TSTI" means Tatung Science and Technology, Inc., and all persons or entities acting or purporting to act on Tatung Science and Technology's behalf, including, but not limited to Tatung Science and Technology.

I.    "TSTI products" as used herein means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for TSTI. This includes all such products, regardless of brand name, and thus includes, but is not limited to, TSTI brand products.

J.    "Affiliate(s)" means any corporation or other entity that controls, is controlled by or is under common control with the identified corporation or entity, including without limitation partnerships, parents, subsidiaries and divisions.

K.    "Visual display products" means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs.

L.      "Communication" means, without limitation, every manner or means of statement, utterance, notation, disclaimer, transfer or exchange of information between two of more persons of any nature whatsoever, by or to whomever, whether oral or written or whether face-to-face, by telephone, email, mail, personal delivery or otherwise, including but not limited to, letters, correspondence, conversations, memoranda, dialogue, discussions, meetings, interviews, consultations, agreements and other understandings.

M.      "Concern" and "concerning" are used in their broadest sense and embrace all matter relating to, referring to, describing, discussing, evidencing or constituting the referenced subject.

N.      "Discuss," "discussing," "relate to" "relating to," "support" or "supporting" means in any way directly or indirectly, in whole or in part, discussing, referring to, regarding, constituting, concerning, about, pertaining to, relating to, reflecting, considering, underlying, modifying, amending, confirming, mentioning, endorsing, evidencing, summarizing, memorializing, describing, discussing, analyzing, evaluating, representing, supporting, qualifying, terminating, revoking, canceling or negating.

O.      "Identify" used in respect to a company or corporate or business entity of any kind means to set forth:

    a.  the full name of the company;

    b.  the full name of the division or office involved, if applicable; and

    c.  the address of the company and of the division or office involved, if applicable.

P.      "Identify" used in respect to a document or thing means:

      a.   to provide a brief description of such document or thing, including date, author, recipients, type, and content or substance;

      b.   to identify the custodian of the document or thing;

      c.   to identify the place where the document or thing may be inspected; and

      d.   if a copy of the document has been supplied to LPL, to so state and specifically identify the copy supplied by reference to production numbers or other identifying information.

Q.     "Identify" used with respect to a natural person means to state:

      a.   the full name;

      b.   the present or last known business and residence addresses;

      c.   the last known employer or job affiliation; and

      d.   the last known occupation and business position or title held.

R.     "Import" or "importation" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

S.     "Make" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

T.     "Offer to sell" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

U.     "Person" means any natural person, firm, association, partnership, corporation, or other form of legal entity.

V.     "Sell" or "sale" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

W.     The use of the singular form of any word includes the plural and vice versa.

The topics to be covered in the deposition include:

Attachments A to Fed. R. Civ. P. 45 Subpoena

1.    The nature of the business relationship and transactions between Amazon.com and Tatung Company, Tatung America, TSTI, and/or ViewSonic relating to the sale, distribution, or importation of visual display products, including but not limited to the agreements between Amazon.com, Tatung Company, Tatung America, TSTI, and/or ViewSonic.

2.    The scope, nature and purpose of communications between Amazon.com and Tatung Company, Tatung America, TSTI, and ViewSonic (a) concerning the sale or marketing in the United States of visual display products manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic, (b) communications regarding any product support assistance or warranties that Tatung Company, Tatung America, TSTI, and/or ViewSonic have provided to Amazon.com, and (c) communications regarding the market trends for visual display products in the United States.

3.    Any agreements or contracts pursuant to which Amazon.com has agreed to purchase Tatung Company's, Tatung America's, TSTI's and/or ViewSonic's visual display products either directly from Tatung Company, Tatung America, TSTI, or ViewSonic or indirectly by purchasing such products from any OEMs.

4.    Amazon.com's activities or efforts related to the distribution or sale of visual display products in the United States manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic.

5.    All channels, distributors, suppliers, and networks through which products made in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic have been shipped, imported, sold, and/or distributed in the United States.

6.    Amazon.com's sales of its visual display products that were manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic, including the quantity and dollar amount of such sales, by product.

7.    The date(s) and location(s) of any in person meetings in the United States between employees or representatives of Amazon.com and of a) Tatung, b) Tatung America, c) TSTI, and/or d) ViewSonic, the identity and job descriptions of participants in such meetings, and the substance of issues discussed or addressed in such meetings.

DC:50459620 1

## ATTACHMENT B: DOCUMENTS TO BE PRODUCED

For purposes of this Attachment, Amazon.com, Inc. should refer to Attachment A for the definition or meaning of terms used herein, which definitions are incorporated herein by reference. In addition, the following definition applies:

A.     "Document" means all types of documents and things embraced within Federal Rules of Civil Procedure 34 and includes, without limitation, any writing and each original, or a copy in the absence of the original, and every copy bearing notes or markings not present on the original or copy, of the following items, however produced or reproduced, namely: books, accounting records of any nature whatsoever, agreements, communications, correspondence, facsimiles, telegrams, cable, telexes, memoranda, recordings, studies, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, diaries, letters, forecasts, statistical statements, graphs, laboratory or engineering reports and records, notebooks, charts, plans, sketches, drawings, video tapes, films, slides, information bearing photographic products of any nature whatsoever, photo-records, microfilms, tape recordings, minutes or records of meetings or conferences, expressions or statements of policy, lists of persons attending meetings or conferences, reports or summaries or interviews, reports or summaries of investigations, opinions or reports of consultants, patent studies, or opinions of counsel, records, reports or summaries of negotiations, sales literature of any nature whatsoever, brochures, catalogues, catalogue sheets, pamphlets, periodicals, advertisements, circulars or trade letters, press releases, trade releases, publicity releases, new product releases, reprints, drafts of any documents, working papers, indices, original or preliminary notes, computer printouts, floppy disks, hard drives, CD-ROM's, magnetic tapes and other data compilations from which

information can be obtained or translated, if necessary by Amazon.com through detection devices into reasonably usable form. The term document also refers to any tangible object other than a document as described above, and includes objects of every kind and nature such as, but not limited to, prototypes, models, and specimens.

The documents to be produced on or before March 5, 2007, include the following:

1.     All documents provided by Tatung Company, Tatung America, TSTI, or ViewSonic to Amazon.com since January 1, 2002 regarding marketing, sales, or business documents or presentation materials and any documents relating to warranties, product support, or service provided by Tatung Company, Tatung America, TSTI, or ViewSonic regarding their visual display products.

2.     Documents provided by Amazon.com to Tatung Company, Tatung America, TSTI, or ViewSonic since January 1, 2002 sufficient to show Amazon.com's market for visual display products, and/or market trends in the United States for visual display products.

3.     Documents sufficient to show the business relationship between Amazon.com and Tatung Company, Tatung America, TSTI, and/or ViewSonic since January 1, 2002, including communications with Tatung Company, Tatung America, TSTI, and/or ViewSonic, notes from meeting with Tatung Company, Tatung America, TSTI, and/or ViewSonic, and documents in which Amazon.com has agreed to purchase visual display products directly from Tatung Company, Tatung America, TSTI, and/or ViewSonic.

4.     All documents from January 1, 2002 by which Amazon.com has agreed to purchase from original equipment manufacturers ("OEMs") any visual display products that Amazon.com had reason to believe were manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic, and documents sufficient to show

Attachments B to Fed. R. Civ. P. 45 Subpoena

that Tatung Company, Tatung America, TSTI, and/or ViewSonic received notice of Amazon.com's agreements to purchase.

5.     Documents sufficient to show Amazon.com's receipt or purchase of visual display products sold, manufactured, shipped, imported, or distributed in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic since January 1, 2002.

6.     Documents sufficient to show the total quantity of visual display products sold, by product, by Amazon.com that were manufactured or assembled in whole or in part by Tatung Company, Tatung America, and/or ViewSonic since January 1, 2002, including separate summaries for (1) Tatung Company products, (2) Tatung America products, (3) TSTI products, and (4) ViewSonic products.

7.     Documents sufficient to show the sales by total dollar value and by quantity of visual display products sold, by product, by Amazon.com that were manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic since January 1, 2002, including separate summaries for (1) Tatung Company products, (2) Tatung America products, (3) TSTI products, and (4) ViewSonic products.

8.  Documents sufficient to identify each person Amazon.com has communicated with at Tatung Company, Tatung America, TSTI, and/or ViewSonic.

DC:50459614.1

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on February 13, 2007, he electronically

filed the foregoing document with the Clerk of the Court using CM/ECF, which will send

automatic notification of the filing to the following:

Jeffrey B Bove, Esq.
Jaclyn M. Mason, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

The undersigned counsel further certifies that copies of the foregoing document

were sent by hand to the above counsel and by email and will be sent by first class mail

to the following non-registered participants:

Scott R. Miller, Esq.
Connolly Bove Lodge & Hutz LLP
355 South Grand Avenue
Suite 3150
Los Angeles, CA 90071

Valerie Ho, Esq.
Mark H. Krietzman, Esq.
Frank C. Merideth, Jr., Esq.
Greenberg Traurig LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404

Tracy Roman, Esq.
Raskin Peter Rubin & Simon LLP
1801 Century Park East, Suite 2300
Los Angeles, CA 90067

/s/ Richard D. Kirk (rk922)
Richard D. Kirk

571447-1

# EXHIBIT 2

**Connor, Cormac**

| | |
|---|---|
| **From:** | HoV@GTLAW.com |
| **Sent:** | Wednesday, March 07, 2007 6:06 AM |
| **To:** | Connor, Cormac |
| **Cc:** | Christenson, Cass; Ambrozy, Rel; Brzezynski, Lora; MeridethF@GTLAW.com; KrietzmanM@GTLAW.com; HassidS@gtlaw.com |
| **Subject:** | Re: 3/5 meet-and-confer |

Your suggestion that the Tatung Defendants have known about LPL's improper subpoenas since January is wrong. LPL did not serve its various batches of subpoenas until mid to late February. We never met and conferred regarding the subpoenas at issue in January because those subpoenas had not even been issued by LPL at the time. Your resentment aside, the record speaks for itself.

The case law you cite is irrelevant.

We will proceed with our motions.

Valerie Ho
--------------------------
Sent from my BlackBerry Wireless Handheld


----- Original Message -----
From: Connor, Cormac <cconnor@mckennalong.com>
To: Ho, Valerie W. (Shld-LA-LT)
Cc: Christenson, Cass <cchristenson@mckennalong.com>; Ambrozy, Rel <rambrozy@mckennalong.com>; Brzezynski, Lora <lbrzezynski@mckennalong.com>; Merideth, Frank (Shld-LA-LT); Krietzman, Mark H. (Shld-LA-IP); Hassid, Steve (Assoc-LA-IP); Ho, Valerie W. (Shld-LA-LT)
Sent: Tue Mar 06 08:49:18 2007
Subject: RE: 3/5 meet-and-confer

We obviously continue to disagree. LPL will not withdraw or modify its subpoenas as they are entirely proper and seek relevant material. Further, the subpoenas are not limited to discovery disputed by Tatung and seek substantial information that is separate and apart from any motions pending before the Special Master.


Also, your email was the second time yesterday that you insinuated that I am or LPL is somehow using the meet-and-confer process "merely as a delay tactic." As I told you during our call yesterday, I resent your baseless insinuation that I am or LPL is acting in bad faith, particularly as I have been asking you to provide legal authority to support your demands since at least our meet-and-confer on January 30, more than one month ago. Now, after your own delay and inaction, you are trying to use the press of our March 30 discovery deadline as an excuse to proceed against LPL on an ex parte basis. Further, although I specifically requested that you explain why Tatung thinks it should be permitted to file motions without first providing notice to LPL, you have not done so. (Your reference to the CDCA local rule concerning the formatting and process by which an ex parte submission is handled does not suffice.) Tatung is alone responsible for waiting so long to file the motions it has described and LPL rejects any suggestion that Tatung is entitled to proceed against any of LPL's subpoenas without providing LPL proper notice and an opportunity to be heard. If Tatung persists down this path, LPL will seek sanctions and all appropriate relief against Tatung.


As for the case citations that you have finally provided, I have reviewed your references and they are distinguishable from our situation in several ways. Tatung's position also is contrary to settled law. "Unless a party to an action can make claim to some personal right or privilege in respect to the subject matter of a subpoena duces tecum directed to a nonparty witness, the party to the action has no right to relief under Rule 45(b) or

1

30(b)." Dart Industries, Inc. v. Liquid Nitrogen Processing, 50 F.R.D. 286, 291 (D. Del. 1970); see Ponsford v. United States, 771 F.2d 1305, 1308 (9th Cir. 1985) (denying motion to quash for lack of standing); Nova Products, Inc. v. Kisma Video, Inc., 220 F.R.D. 238, 241 (S.D.N.Y. 2004) (denying motion to quash because no showing of personal right or privilege); Oliver B. Cannon and Son, Inc. v. Fidelity and Cas. Co. of New York, 519 F. Supp. 668, 680 (D. Del. 1981) (denying motion to quash because movant failed to prove documents sought were privileged). We do not find that Tatung has any basis to object to the information sought by LPL's subpoenas and, thus, we do not believe that Tatung has standing to move to quash any of LPL's subpoenas.

Further, you have generally objected that the subpoenas seek information that is confidential and not limited to U.S. products. We believe that these objections are unfounded. If you have a more specific proposal for narrowing certain issues, however, please let us know so that we can respond.

Cormac T. Connor

McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
tel. 202-496-7439
fax 202-496-7756
email: cconnor@mckennalong.com

---

From: HoV@GTLAW.com [mailto:HoV@GTLAW.com]
Sent: Monday, March 05, 2007 4:52 PM
To: Connor, Cormac
Cc: Christenson, Cass; Ambrozy, Rel; Brzezynski, Lora; MeridethF@GTLAW.com; KrietzmanM@GTLAW.com; HassidS@gtlaw.com
Subject: RE: 3/5 meet-and-confer

Dear Cormac,

During our meet and confer, you stated that you did not believe the Tatung Defendants have standing to bring motions for protective order in connection with the subpoenas issued by LPL to third party customers of the Tatung Defendants, which seek broad categories of confidential and trade secret information belonging to the Tatung Defendants that do not relate in any way to the accused products or patents-in-suit. In response to your request that we provide authority on this issue, we agreed to do so with the understanding that LPL may reconsider its position upon reviewing the authorities provided. Accordingly, in a good faith attempt to meet and confer and potentially obviate the need to file these motions (and in the hopes that LPL is not using the meet and confer process merely as a delay tactic), we agreed to provide you with the authorities requested on the condition that you inform us by the commencement of business (pacific time) tomorrow as to whether LPL will withdraw or narrow its subpoenas (as identified in my letter).

The authorities the Tatung Defendants are relying on include the following: FRCP 26(c); Visto Corp. v. Smartner Information Systems, Ltd., 2007 WL 218771 (N.D. Cal. 2007); Highland Tank & Mfg. Co. v. PS Int'l, Inc., 227 F.R.D. 374 (W.D. Pa. 2005); Micro Motion, Inc. v. Kane Steel Co., 894 F.2d 1318 (Fed. Cir. 1990); and Joy Technologies, Inc. v. Flakt, Inc., 772 F.Supp. 842, 849 (D.Del. 1991).

If we do not receive confirmation tomorrow morning that LPL is withdrawing or narrowing its subpoenas, we will move forward with the motions/applications for protective order.

As I mentioned during our meet and confer, we will be filing the applications/motions in the courts from which the subpoenas were issued. Due to the return dates of the subpoenas, the Tatung Defendants may not have sufficient time to file regularly noticed

motions under the relevant local rules, and as a result, may have to move on an ex parte basis.  See, e.g., Central District of California Local Rule 7-19.  We, of course, will provide LPL with the appropriate ex parte notice.

With respect to the issues raised in Cass' email from this weekend, I will respond separately as those issues are completely unrelated to the issues discussed during our meet and confer.

Valerie

------

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient,  you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to postmaster@gtlaw.com <mailto:postmaster@gtlaw.com> .

------

From: Connor, Cormac [mailto:cconnor@mckennalong.com]
Sent: Monday, March 05, 2007 12:15 PM
To: Ho, Valerie W. (Shld-LA-LT)
Cc: Christenson, Cass; Ambrozy, Rel; Brzezynski, Lora; Merideth, Frank (Shld-LA-LT); Krietzman, Mark H. (Shld-LA-IP); Hassid, Steve (Assoc-LA-IP); Ho, Valerie W. (Shld-LA-LT)
Subject: 3/5 meet-and-confer

Following up on our 2 pm EST meet-and-confer call today, this email will confirm that you have agreed to provide LPL with legal authority supporting Tatung's stated intention to file motions for protective orders with respect to several of LPL's third party subpoenas. (To that end, you noted that Tatung would not be filing any motions concerning the subpoena issued to CTX.)  You said that you would provide that authority within the hour and I agreed to respond as to whether LPL will change its position based on those authorities by approximately noon EST tomorrow.

Additionally, you stated that Tatung intends to file its motions in the relevant courts on an ex parte basis.  As I stated on the call, LPL objects to Tatung's efforts to file these motions.  If this is the route that Tatung intends to take, please be sure to include citations to legal authority that would support Tatung's filing its proposed motions on an ex parte basis.  If, as it seems to be, Tatung's intention is to file these motions without notice to LPL, then LPL strenuously objects.  LPL demands that Tatung provide LPL with notice of any motions that it files with respect to any issue in this case, including motions pertaining to third party subpoenas.  If you refuse to do so, LPL will raise the matter with the appropriate courts and with the Special Master.

Finally, please let us know where Tatung stands with respect to the discovery deficiencies identified in Cass Christenson's March 4 email to you.

Cormac T. Connor

McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
tel. 202-496-7439
fax 202-496-7756
email: cconnor@mckennalong.com

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from
the law firm of McKenna Long & Aldridge LLP, and are
intended solely for the use of the named recipient or
recipients. This e-mail may contain privileged
attorney/client communications or work product. Any
dissemination of this e-mail by anyone other than an
intended recipient is strictly prohibited. If you are not a
named recipient, you are prohibited from any further
viewing of the e-mail or any attachments or from making any
use of the e-mail or attachments. If you believe you have
received this e-mail in error, notify the sender
immediately and permanently delete the e-mail, any
attachments, and all copies thereof from any drives or
storage media and destroy any printouts of the e-mail or
attachments.


CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from
the law firm of McKenna Long & Aldridge LLP, and are
intended solely for the use of the named recipient or
recipients. This e-mail may contain privileged
attorney/client communications or work product. Any
dissemination of this e-mail by anyone other than an
intended recipient is strictly prohibited. If you are not a
named recipient, you are prohibited from any further
viewing of the e-mail or any attachments or from making any
use of the e-mail or attachments. If you believe you have
received this e-mail in error, notify the sender
immediately and permanently delete the e-mail, any
attachments, and all copies thereof from any drives or
storage media and destroy any printouts of the e-mail or
attachments.
--------------------------------------------------------

    Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS
under Circular 230, we inform you that any U.S. federal tax advice contained in this
communication (including any attachments), unless otherwise specifically stated, was not
intended or written to be used, and cannot be used, for the purpose of (1) avoiding
penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to
another party any matters addressed herein.


    The information contained in this transmission may contain privileged and
confidential information.  It is intended only for the use of the person(s) named above.
If you are not the intended recipient,  you are hereby notified that any review,
dissemination, distribution or duplication of this communication is strictly prohibited.
If you are not the intended recipient, please contact the sender by reply email and
destroy all copies of the original message. To reply to our email administrator directly,
please send an email to postmaster@gtlaw.com.

--------------------------------------------------------

# EXHIBIT 3

**Klevens, Shari**

| | |
|---|---|
| **From:** | Piraino, Russ [russ.piraino@tycoelectronics.com] |
| **Sent:** | Thursday, March 08, 2007 3:06 PM |
| **To:** | Klevens, Shari |
| **Subject:** | RE: LG.Philips LCD Co., Ltd. v. Tatung, et al., C.A. No. 04-343-JJF |

Shari:

I understand that Phillips intends to file a motion for protective order with regard to this subpoena. In light of this, Tyco will await the disposition of this motion by the court before providing any material in response to the subpoena. Thank you.

Russ Piraino

-----Original Message-----
From: Klevens, Shari [mailto:sklevens@mckennalong.com]
Sent: Thursday, March 01, 2007 3:27 PM
To: Piraino, Russ
Subject: LG.Philips LCD Co., Ltd. v. Tatung, et al., C.A. No. 04-343-JJF

Dear Russ:
This email is a follow up to our discussion this afternoon regarding Plaintiff LG.Philips LCD Co., Ltd.'s ("LG") third party subpoena ("Subpoena") to Tyco International, Ltd. ("Tyco") in the referenced action. I understand that your investigation related to the Subpoena has revealed that Tyco does not merely resell products purchased from Tatung and ViewSonic, but rather that any Tatung and/or ViewSonic products are incorporated into a limited number of custom-made products manufactured and sold by Tyco. I further understand that such purchases account for less than 1% of Tyco's overall products sold.
In light of the above, LG is willing to limit its document requests if Tyco is willing to fully comply with the Subpoena as limited to the following:
1. A sales summary consisting of a printout from Tyco's sales database. The summary should reflect the purchase price, brand name, model number, quantity, and sales price of the products sold by Tyco and a sales summary showing all of this information for the products purchased by Tyco from each defendant. These documents should also show the correlation between the Tatung or ViewSonic model number and Tyco's model numbers.
2. All contracts, supply agreements, and licenses between Tyco and Tatung or ViewSonic.
3. Documents related to the technical specifications, manufacturing, or assembly of Tatung and ViewSonic products, including any drawings and/or narrative descriptions of same.
4. Documents sufficient to identify OEMs or ODMs that manufactured Tyco's products incorporating visual display products manufactured by Tatung or Viewsonic, agreements or other documents that mention Tatung or ViewSonic between Tyco and any OEMs, and documents sufficient to show that Tatung or ViewSonic had knowledge of such agreements (such as correspondence with Tatung or ViewSonic).
5. Documents relating to product support or service on Tyco's visual display products provided by Tatung or ViewSonic through a warranty or

1

otherwise, including documents reflecting warranties provided by Tatung or
ViewSonic, and documents reflecting any type of repair assistance or help
desk assistance, including setting up repair centers in the US.
As we discussed, we agree to extend Tyco's deadline for producing the
requested documents until March 12, 2007. Further, after a review of the
documents produced by Tyco in response to the Subpoena, we will determine
whether a deposition, currently scheduled on March 19, will be necessary.
We are hopeful that a deposition will not be required, especially if we can
obtain an affidavit from Tyco in lieu of deposition testimony.
Please contact me if you have any further questions.
Regards,
Shari


Shari L. Klevens
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
tel 202.496.7612
fax 202.496.7756


CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from
the law firm of McKenna Long & Aldridge LLP, and are
intended solely for the use of the named recipient or
recipients. This e-mail may contain privileged
attorney/client communications or work product. Any
dissemination of this e-mail by anyone other than an
intended recipient is strictly prohibited. If you are not a
named recipient, you are prohibited from any further
viewing of the e-mail or any attachments or from making any
use of the e-mail or attachments. If you believe you have
received this e-mail in error, notify the sender
immediately and permanently delete the e-mail, any
attachments, and all copies thereof from any drives or
storage media and destroy any printouts of the e-mail or
attachments.

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

144

| | | |
|---|---|---|
| LG.PHILIPS LCD CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 04-343-JJF |
| v. | ) | |
| | ) | |
| TATUNG COMPANY; | ) | |
| TATUNG COMPANY OF AMERICA, | ) | |
| INC. and VIEWSONIC CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## PROTECTIVE ORDER FOR JURISDICTIONAL DISCOVERY

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the Court hereby enters the following Protective Order:

1.    Scope of Protection.

1.1    The Court is adopting this Order solely for purposes of jurisdictional discovery. This Order is entered without prejudice to the right of any party to seek a permanent and different protective order.  This Protective Order shall govern any record of information, designated pursuant to Paragraph 2 of this Protective Order, produced in this action, including all designated deposition testimony, all designated testimony taken at a hearing or other proceeding, interrogatory answers, documents and other discovery materials, whether produced informally or in response to interrogatories, requests for admissions, requests for production of documents or other formal method of discovery.

1.2    This Protective Order shall also govern any designated record of information produced in this action pursuant to required disclosures under any federal procedural rule or District of Delaware local rule, and any supplementary disclosures thereto.

1.3    This Protective Order shall apply to the parties and any nonparty from whom discovery may be sought and who desires the protection of this Protective Order (collectively herein referred to as a "party" or the "parties").

2.      Designation.

2.1     Each party shall have the right to designate as confidential and subject to this Protective Order any information produced by it in this action which contains, reflects, or otherwise discloses confidential technical, business or financial information ("CONFIDENTIAL information"). This designation shall be made by stamping or otherwise labeling each page or thing containing confidential information with the legend CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER prior to its production or, if inadvertently produced without such legend, by furnishing written notice to the receiving party that the information shall be considered confidential under this Protective Order. The parties will use reasonable care to avoid designating any documents or information CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER that are generally available to the public.

2.2     Each party shall have the right to designate as restricted to review by those categories of individuals listed in Paragraphs 4.1(a) - 4.1(e) and subject to this Protective Order any information produced in this action which contains, reflects, or otherwise discloses (1) trade secrets, (2) research and development, manufacturing, operational or other highly sensitive technical information, or (3) highly sensitive business related informaton, such as customer, supplier or financial information (collectively, "HIGHLY SENSITIVE CONFIDENTIAL information"). This designation shall be made by stamping or otherwise labeling each page or thing containing confidential information with the legend HIGHLY SENSITIVE CONFIDENTIAL prior to its production or, if inadvertently produced without such legend, by furnishing written notice to the receiving party that the information shall be considered HIGHLY SENSITIVE CONFIDENTIAL under this Protective Order. To the extent that material is marked HIGHLY SENSITIVE CONFIDENTIAL, such material shall be revealed to or used by limited categories of individuals, as provided for in Paragraph 4.2, and shall not be communicated in any manner, either directly or indirectly, to any person or entity not permitted disclosure pursuant to this Protective Order. Any copies of such material, abstracts, summaries or information derived therefrom, and any notes or other records regarding the contents thereof, shall also be deemed HIGHLY SENSITIVE CONFIDENTIAL, and the same terms regarding confidentiality of these materials shall apply as apply to the originals. Use of this highly restrictive designation is limited to information of the highest sensitivity. The parties will use reasonable care to avoid designating any documents or information HIGHLY SENSITIVE CONFIDENTIAL for which the designating party does not have a good faith belief that the documents or information satisfy the criteria set forth in this Paragraph 2.2. HIGHLY SENSITIVE CONFIDENTIAL information shall be used only for purposecs directly related to this action, and for no other purpose whatsoever, except by consent of all of the parties or order of the Court.

2.3     To the extent that any party has, prior to the date that this Order is entered, produced to the other side materials that the producing party has marked with confidentiality designation, all such materials shall be considered to have been designated under this Order as HIGHLY SENSITIVE CONFIDENTIAL unless otherwise agreed by the Parties.

3.    Limit On Use And Disclosure Of Designated Information.

3.1    Each party and all persons bound by the terms of this Protective Order shall use any information or document governed by this Protective Order only in connection with the prosecution or defense of this action and for no other purpose, except by consent of the parties or order of the Court. No party or other person shall disclose or release to any person not authorized under this Protective Order any information or document governed by this Protective Order for any purpose, or to any person authorized under this Protective Order for any other purpose.

3.2    It is, however, understood that counsel for a party may give advice and opinions to his or her client in connection with the prosecution or defense of this action based on his or her evaluation of designated confidential information received by the party, provided that such rendering of advice and opinions counsel shall not reveal the content of such information except by prior written agreement with counsel for the producing party.

3.3    The attorneys of record for the parties and other persons receiving information governed by this Protective Order shall exercise reasonable care to ensure that the information and documents governed by this Protective Order are (a) used only for the purposes specified herein, and (b) disclosed only to authorized persons.

4.    Disclosure Of Confidential Material.

4.1    Documents or information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER shall be disclosed by the recipient thereof only to:

(a)    the attorneys who are actively involved in this action that are partners/members of or employed by the following law firms of record for the parties, and their authorized secretarial, clerical and legal assistant staff: The Bayard Firm; McKenna, Long & Aldridge LLP; Potter Anderson & Corroon LLP; Bingham McCutchen LLP; Rosethal, Monhait, Gross & Goddess; and Baum & Weems provided that such attorneys shall not be provided access to HIGHLY SENSITIVE CONFIDENTIAL information if such attorneys

    (1)    have participated in, directed or supervised any patent prosecution activitiy related to the patents-in-suit or currently participate in, direct or supervise any patent prosecution activity involving (i) flat panel or flat panel display technology or (ii) technology related or refering to or incorporating flat panels or flat panel displays (collectively, "the Subject Matter"). During the pendency of this litigation and for one year after the full and final conclusion of this litigation, including all appeals, those attorneys at outside counsel for the parties defined above who are provided access to HIGHLY SENSITIVE CONFIDENTIAL materials covered by this order will not participate in, direct or supervise any patent prosecution activity in the United States Patent and

Trademark Office or with any patent office outside the United States involving the Subject Matter;

(2)    provide non-legal, business advice or non-legal, business representation or to clients in the flat panel display industry wherein the highly sensitive business-related financial information of any opposing party would be relevant to such non-legal, business advice or non-legal, business representation. During the pendency of this litigation and for one year after the full and final conclusion of this litigation, including all appeals, those attorneys at outside counsel for the parties defined above who are provided access to HIGHLY SENSITIVE CONFIDENTIAL materials covered by this order will not provide non-legal, business advice or non-legal, business representation to clients in the flat panel display industry wherein the highly sensitive business-related information of any opposing party would be relevant to such non-legal, business advice or representation; or

(3)    are related to or have a personal, social relationship with any officer, director or employee of a party

(b)    the Court and Court personnel, as provided in Paragraph 12;

(c)    consultants or experts and their staffs retained by the parties or their attorneys for purposes of this action, who are agreed upon by the parties pursuant to Paragraph 6, who are not employees or otherwise affiliated with any of the parties (except persons scheduled to be deposed by any of the parties pursuant to Rule 30(b)(6), Fed.R.Civ.P.), and who first agree to be bound by the terms of this Protective Order;

(d)    court reporters employed in connection with this action;

(e)    outside copying and computer services necessary for document handling, and other litigation support personnel (e.g., translators, graphic designers and animators);

(f)    One member of LG.Philips LCD, Co., Ltd.'s in-house legal staff, provided that each such individual must first agree to be bound by the terms of this Protective Order;

(g)    One member of Viewsonic Corporation's in-house legal staff, provided that each such individual must first agree to be bound by the terms of this Protective Order;

(h)    One member of Tatung Company's in-house legal staff, provided that each such individual must first agree to be bound by the terms of this Protective Order;

(i)    One attorney of Tatung Company of America, Inc.'s regular out-side counsel, provided that each such individual must first agree to be bound by the terms of this Protective Order;

4.2     Documents or information designated HIGHLY SENSITIVE CONFIDENTIAL shall be disclosed by the recipient thereof only to those categories of individuals listed in Paragraphs 11 4.1(a) - 4.1(e) subject to the restrictions therein.

5.     Redaction.

Counsel for a party producing documents may mask ("redact") material deemed exempt from discovery because it is protected from disclosure under the attorney-client privilege or work product immunity afforded by Rule 26(b), Fed.R.Civ.P. However, any document from which material is masked must identify in the masked area that masking or redaction has occurred. The reason for any such masking must be stated on a log to be provided within thirty (30) days after the production of the documents. Sufficient information regarding the masked material must be provided to the other party to enable it to evaluate the legitimacy of the asserted privilege or immunity. The parties reserve the right to pursue categories for redaction in addition to those identified above, by either consent of the parties or order of the Court, to be addressed on a case-by case basis.

6.     Disclosure to Independent Consultants and Identification of Experts.

6.1     If any party desires to disclose information designated CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL to any expert or consultant pursuant to Paragraph 4 above, it must first identify in writing to the attorneys for the producing party each such expert or consultant. The attorney for the producing party shall have ten (10) business days from receipt of such notice to object to disclosure of such information to any of the experts or consultants so identified.

6.2     Such identification shall include the full name and professional address and/or affiliation of the proposed expert or consultant, an up-to-date curriculum vitae identifying at least all other present and prior employments or consultancies of the expert or consultant in the field of flat panel and flat panel display technologies, and a list of the cases in which the expert or consultant has testified at a deposition, an arbitral hearing or trial within the last four years. The parties shall attempt to resolve any objections informally. If the objections cannot be resolved, the party seeking to disclose the CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information to the expert or consultant may move the Court for an Order allowing the disclosure. On any motion challenging the disclosure of such information to an expert or consultant, the burden of proof shall lie with the party objecting to the disclosure to establish that the information should not be disclosed to the expert or consultant. In the event objections are made and not resolved informally, disclosure of information to the expert or consultant shall not be made except by Order of the Court (or to any limited extent upon which the parties may agree).

7.     Agreement Of Confidentiality.

In no event shall any information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL be disclosed to any

person authorized pursuant to Paragraph 4, other than (a) the Court and Court personnel, (b) the parties' attorneys identified in Paragraph 4.1(a) and their authorized secretarial and legal assistant staffs, (c) court reporters, and (d) outside copying and computer services necessary for document handling, until such person has executed a written Confidentiality Undertaking (in the form set forth in Exhibit A hereto) acknowledging and agreeing to be bound by the terms of this Protective Order. Copies of such Confidentiality Undertakings shall be promptly served on the producing party.

8.      Related Documents.

Information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL shall include (a) all documents, copies, extracts, and complete or partial summaries prepared from or containing such information; (b) portions of deposition transcripts and exhibits thereto which contain or reflect the content of any such documents, copies, extracts, or summaries; (c) portions of briefs, memoranda or any other papers filed with the Court and exhibits thereto which contain or reflect the content of any such documents, copies, extracts, or summaries; (d) deposition testimony designated in accordance with Paragrapah 9; and (e) testimony taken at a hearing or other proceeding that is designated in accordance with Paragraph 10.

9.      Designation Of Deposition Transcripts.

9.1     Deposition transcripts, or portions thereof, may be designated as subject to this Protective Order either (a) at the time of such deposition, in which case the transcript of the designated testimony shall be marked by the reporter with the appropriate legend (see Paragraph 2.1) as the designating party may direct, or (b) within twenty-one (21) days following the receipt of the transcript of the deposition by providing written notice to the reporter and all counsel of record, in which case all counsel receiving such notice shall mark the copies or portions of the designated transcript in their possession or under their control as directed by the designating party.

9.2     All deposition transcripts not previously designated shall be deemed to be, and shall be treated as, HIGHLY SENSITIVE CONFIDENTIAL until the expiration of the period set forth in Paragraph 9.1, and neither the transcript nor the content of the testimony shall be disclosed by a non-designating party to persons other than those persons named or approved according to Paragraph 4.

9.3     The designating party shall have the right to exclude from a deposition, before the taking of testimony which the designating party designates CONFIDENTIALSUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL and subject to this Protective Order, all persons other than those persons previously qualified to receive such information pursuant to Paragraph 4.

9.4     In addition, to the extent that any document or information that has been designated as either CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL and subject to this Protective Order, such

document or information shall not be disclosed to or otherwise used with any witness not currently or previously employed or retained by the producing party during a deposition without at least three (3) calendar days prior notice to the designating party of such potential use in order to permit counsel for the designating party to attend and to take such action as it deems appropriate to protect the confidentiality of the documents and/or information. Counsel for the parties shall attempt to resolve any objection(s) and they will only seek redress to the Court if no resolution can be reached. However, the receiving party shall not use or otherwise disclose the confidential documents or information subject to such objection at such deposition of a witness not currently or previously employed or retained by the producing party until the Court has ruled upon any such objection(s), provided that the producing party submits the matter to the Court within three (3) calendar days of the parties being unable to resolve the objection(s).

10.    Designation Of Hearing Testimony Or Argument.

With respect to testimony elicited during hearings and other proceedings, whenever counsel for any party deems that any question or line of questioning calls for the disclosure of CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL information, counsel may designate on the record prior to such disclosure that the disclosure is subject to confidentiality restrictions. Whenever matter designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL is to be discussed in a hearing or other proceeding, any party claiming such confidentiality may ask the Court to have excluded from the hearing or other proceeding any person who is not entitled under this Order to receive information so designated.

11.    Disclosure To Author Or Recipient.

Notwithstanding any other provisions of this Order, nothing herein shall prohibit counsel for a party from disclosing a document containing information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL to any person which the document clearly identifies as an author, addressee, or carbon copy recipient of such document, or to any current employee of the producing party who by their testimony indicates they have access to the type of information sought to be disclosed. During deposition or trial testimony, counsel may disclose documents produced by a party to current employees and officers of the producing party who by their testimony indicates they have access to the type of information sought to be disclosed. And regardless of such designation pursuant to this Protective Order, if a document or testimony makes reference to the actual or alleged conduct or statements of a person who is a potential witness, counsel may discuss such conduct or statements with such witness without revealing any portion of the document or testimony other than that which specifically refers to such conduct or statement, and such discussion shall not constitute disclosure in violation of this Protective Order.

12.    Designation Of Documents Under Seal.

Any information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL, if filed with the Court, shall be filed under seal and shall be made available only to the Court and to persons authorized by the terms of this Protective Order. The party filing any paper which reflects, contains or includes any CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information subject to this Protective Order shall file such paper in a sealed envelope, or other appropriately sealed container, which indicates the title of the action, the party filing the materials, the nature of the materials filed, the appropriate legend (see Paragraph 2.1), and a statement substantially in the following form:

This envelope contains documents subject to a Protective Order of the Court. It should be opened only by the Court. Its contents should not be disclosed, revealed or made public except by Order of the Court or written agreement of the parties.

13.    Confidentiality Of Party's Own Documents.

No person may disclose, in public or private, any designated information of another party except as provided for in this Protective Order, but nothing herein shall affect the right of the designating party to disclose to its officers, directors, employees, attorneys, consultants or experts, or to any other person, its own information. Such disclosure shall not waive the protections of this Protective Order and shall not entitle other parties or their attorneys to disclose such information in violation of it, unless by such disclosure of the designating party the information becomes public knowledge (see Paragraph 16). Similarly, the Protective Order shall not preclude a party from showing its own information to its officers, directors, employees, attorneys, consultants or experts, or to any other person, which information has been filed under seal by the opposing party.

14.    Other Protections.

14.1    No person shall use any CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information, or information derived therefrom, for purposes other than the prosecution or defense of this action, including without limitation, for purposes of preparing, filing or prosecuting any patent application, continuation or divisional patent application, reissue patent application or request for re-examination.

14.2    Any party may mark any document or thing containing CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information as an exhibit to a deposition, hearing or other proceeding and examine any witness thereon qualified under the terms of this Protective Order to have access to such designated material.

15.    Challenge To Confidentiality.

15.1 This Protective Order shall not preclude any party from seeking and obtaining, on an appropriate showing, such additional protection with respect to the confidentiality of

documents or other discovery materials as that party may consider appropriate. Nor shall any party be precluded from (a) claiming that any matter designated hereunder is not entitled to the protections of this Protective Order, (b) applying to the Court for an Order permitting the disclosure or use of information or documents otherwise prohibited by this Protective Order, or (c) applying for a further Order modifying this Protective Order in any respect. No party shall be obligated to challenge the propriety of any designation, and failure to do so shall not preclude a subsequent challenge to the propriety of such designation.

15.2    On any motion challenging the designation of any information, the burden of proof shall lie with the producing party to establish that the information is, in fact, CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information. If a party seeks declassification or removal of particular items from a designation on the ground that such designation is not necessary to protect the interests of the party wishing the designated information, the following procedure shall be utilized:

a. The party seeking such declassification or removal shall give counsel of record for the other party written notice thereof specifying the designated information as to which such removal is sought and the reasons for the request; and

b. If, after conferring, the parties cannot reach agreement concerning the matter, then the party requesting the declassification or removal of particular items may file and serve a motion for a further Order of this Court directing that the designation shall be so removed.

16.    Prior Or Public Knowledge.

This Protective Order shall not apply to information that, prior to disclosure, is public knowledge, and the restrictions contained in this Protective Order shall not apply to information that is, or after disclosure becomes, public knowledge other than by an act or omission of the party to whom such disclosure is made, or that is legitimately and independently acquired from a souree not subject to this Protective Order.

17.    Limitation Of Protective Order.

This Protective Order is not intended to address discovery objections to produce, answer, or respond on the grounds of attorney-client privilege or work product doctrine, or to preclude any party from seeking further relief or protective orders from the Court as may be appropriate under the Federal Rules of Civil Procedure.

18.    Other Proceedings.

By entering this order and limiting the disclosure of information in this case, the court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this order who may be subject to a motion to disclose another party's CONFIDENTIAL or HIGHLY

SENSITIVE CONFIDENTIAL information pursuant to this order shall promptly notify that party of the motion so that it may have an opportunity to appear and be heard on whether such information should be disclosed.

19.    Inadvertent Disclosure Of Work Product Or Privileged Information: Procedure And Waiver.

19.1    If the producing party at anytime notifies the Non-producing party in writing that it has inadvertently produced documents and/or things that are protected from disclosure under attorney-client privilege, work-product immunity, and/or any other applicable privilege or immunity from disclosure, the non-producing party shall return all copies of such documents and/or things to the producing party within five (5) business days of receipt of such notice and shall not further disclose or use such items for any purpose until further order of the Court. Upon being notified by the producing party pursuant to this section, counsel for the non-producing party shall use his or her best efforts to retrieve all copies of the documents at issue.

19.2    The return of any discovery item to the producing party shall not in any way preclude the non-producing party from moving the Court for a ruling that: (a) the document or thing was never privileged or otherwise immune from disclosure; and/or (b) that any applicable privilege or immunity has been waived.

19.3    Inadvertent or unintentional disclosure of information subject to any privilege or immunity during the course of this litigation without proper designation shall not be deemed a waiver of a claim that disclosed information is in fact subject to a privilege or immunity if so designated within ten (10) business days after the producing party actually learns of the inadvertent or unintentional disclosure.

20.    Non-Party Material.

The terms of this Protective Order, as well as the terms of any protective order that may be entered into between a discovering party and third party for the production of information to the discovering party, are applicable to CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information provided by a non-party. Information provided by a non-party in connection with this action and designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL, pursuant to the terms of this Protective Order shall be protected by the remedies and relief provided by this Protective Order.

21.    Return Of Designated Information.

Within thirty (30) days of final termination of this action, unless otherwise agreed to in writing by an attorney of record for the designating party, each party shall assemble and return, or certify destruction of, all materials containing information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL, including all copies, extracts and summaries thereof, to the party from

whom the designated material was obtained, except that (a) any documents or copies which contain, constitute or reflect attorney's work product or attorney-client privilege communications, and (b) archive copies of pleadings, motion papers, deposition transcripts, correspondence and written discovery responses may be retained by counsel.

22.    Waiver Or Termination Of Order.

No part of the restrictions imposed by this Protective Order may be waived or terminated, except by written stipulation executed by counsel of record for each designating party, or by an Order of the Court for good cause shown. The restrictions provided for herein shall not terminate upon the conclusion of this action, but shall continue until further Order of this Court.

23.    Modification Of Order; Prior Agreements.

To the extent the terms of this Protective Order conflict with Local Rule 26.2 or with any agreements between the parties regarding the confidentiality of particular documents or information entered into before the date of this Protective Order, the terms of this Protective Order shall govern, except as to those documents and information produced or disclosed prior to the entry of this Protective Order, which documents and information shall continue to be governed by the terms of such prior agreements or by the provisions of Local Rule 26.2, as applicable.

24.    Section Captions.

The title captions for each section of this Protective Order are for convenience only and are not intended to affect or alter the text of the sections or the substance of the Order.

/ / /

25.    Duration.

This Protective Order's duration is to the end of jurisdictional discovery; the obligations hereunder are continuing unless and until otherwise modified by the Court.

Dated: ~~January~~ Febru 3    , 2005

Hon. Joseph J. Farnan, Jr.
United States District Judge

Approved as to form:

Richard D. Kirk (Del. Bar No.  922)
The Bayard Firm
222 Delawre Ave., Ste. 900
P.O. Box 25130
Wilmington, Delaware 19899
Tel: 302-655-5000
Fax: 302-658-6395

Attorneys for LG.Philips LCD Co., Ltd.

Jeffrey S. Goddess (Del. Bar No. 630)
Rosethal, Monhait, Gross & Goddess
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, Delaware 19899-1070
Tel: 302-656-4433
Fax: 302-658-7567

Attorneys for Tatung Company and
Tatung Company of America

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LG Philips LCD Co., Ltd., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 04-343-JJF |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| Tatung Co., Tatung Company of | ) | |
| America Inc., and Viewsonic Corp., | ) | |
| | ) | |
| Defendants. | ) | |

## STIPULATION AND ORDER

IT IS HEREBY STIPULATED AND AGREED, subject to order of the Court, by and between counsel for the parties, that the Protective Order For Jurisdictional Discovery, dated February 3, 2005 (D.I. 144), is amended as follows:

4.      Disclosure of Confidential Material.

4.1      Documents or information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER shall be disclosed by the recipient thereof only to:

(a)      the attorneys who are actively involved in this action that are partners/members of or employed by the following law firms of record for the parties, and their authorized secretarial, clerical and legal assistant staff: The Bayard Firm; McKenna, Long & Aldridge LLP; Potter, Anderson & Corroon LLP; Bingham McCutchen LLP; Richards, Layton & Finger, P.A.; Greenberg Traurig, LLP provided that such attorneys shall not be provided access to HIGHLY SENSITIVE CONFIDENTIAL information if such attorneys

Notwithstanding the foregoing, all other provisions of the Protective Order for Jurisdictional Discovery (D.I. 144), including provisions both obligating and protecting Tatung Company's and Tatung Company of America, Inc.'s former counsel, Rosenthal, Monhait, Gross & Goddess and Baum & Weems, shall remain in full force and effect.

To the extent the Protective Order For Jurisdictional Discovery is or may still be in effect, Defendants Tatung Co. and Tatung Company of America Inc., and their respective counsel at Richards, Layton and Finger, P.A. and Greenberg Traurig, LLP, hereby expressly agree to be bound by the terms of the Protective Order For Jurisdictional Discovery for any documents or information that is or may be designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER and/or HIGHLY SENSITIVE CONFIDENTIAL now and in the future.


/s/ Richard L. Horwitz
Richard L. Horwitz (#2246)
rhorwitz@potteranderson.com
David E. Moore (#3983)
dmoore@potteranderson.com
Potter Anderson & Corroon LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19899
Telephone: (302) 984-6027
Facsimile: (302) 658-1192
  Attorneys for Defendant
  Viewsonic Corp.

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Anne Shea Gaza (#4093)
gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
  Attorneys for Defendants Tatung Co. and
  Tatung Company of America Inc.

2

*/s/ Richard D. Kirk* _____
Richard D. Kirk (#922)
rkirk@bayardfirm.com
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
Telephone: (302) 429-4208
Facsimile: (302) 658-6395
  *Attorneys for Plaintiff LG*
  *Philips LCD Co.*

Dated: January __, 2006


        SO ORDERED this _____ day of _____, 2006.



                        _____
                        Hon. Joseph J. Farnan, Jr.

# EXHIBIT 5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LG.PHILIPS LCD CO., LTD.,                  :
                                           :
                     Plaintiff,            :
                                           :
          v.                               :          Civil Action No. 04-343 JJF
                                           :
TATUNG CO., TATUNG COMPANY                 :
OF AMERICA, INC.,                          :
                                           :
                     Defendants.           :

### SPECIAL MASTER'S REPORT AND RECOMMENDATIONS
### ON MOTION OF LG.PHILIPS LCD CO., LTD. FOR DISCOVERY
### SANCTIONS AGAINST THE TATUNG DEFENDANTS;

### SANCTIONS RECOMMENDED

This matter comes before me, as Special Master, on the motion of plaintiff LG.Philips

LCD Co., Ltd. ("LPL") for the imposition of sanctions against defendants Tatung Co. ("Tatung

Taiwan") and the Tatung Company of America, Inc. ("Tatung America" and, together with

Tatung Taiwan, "Tatung" or the "Tatung Defendants") in connection with certain jurisdictional

discovery ordered by the Court.

The Special Master recommends that LPL's motion for sanctions be **GRANTED**, as set

forth herein.

### BACKGROUND

This is a patent infringement case brought by LPL against, *inter alia*, the Tatung

Defendants alleging infringement of United States Patent Nos. 6,498,718 and 6,501,641 that

relate to assembly mountings for flat panel display monitors used in such products as liquid

crystal display ("LCD") and plasma televisions, and computer monitors. D.I. 1. The complaint

asserts grounds for jurisdiction over the Tatung Defendants on the basis of actual purchases in

Delaware of equipment manufactured by Tatung that allegedly infringe the patents-in-suit. *Id.*

In lieu of answering the complaint, the Tatung Defendants jointly moved to dismiss for

lack of personal jurisdiction, insufficient process and insufficient service of process and, in the

alternative, to quash service. D.I. 16-17. Tatung's joint motion (the "Tatung Motion") was

supported by the declaration of Tatung's counsel, Robert C. Weems, D.I. 19, as well as by the

sworn declarations of David Shan-Juh Chang on behalf of Tatung Taiwan, D.I. 20, and Robin

Tsou and Edward Chen on behalf of Tatung America, D.I. 19 at Exh. 3 and D.I. 21.

In response to the Tatung Motion, LPL moved for leave to conduct jurisdictional

discovery of the Tatung Defendants. D. I. 34-35. On November 17, 2004 the Court granted

LPL's request for jurisdictional discovery, set a 90-day deadline of February 15, 2005 for its

completion, and reset the original Scheduling Order deadlines. D.I. 88. The Court also issued

orders (i) providing that no further motions could be filed by the parties until the Court resolved

the Tatung Motion, D.I. 93; and (ii) reserving the Court's decision on the Tatung Motion until

after completion of the jurisdictional discovery, D.I. 94. Shortly thereafter, LPL served

jurisdictional discovery upon each of the Tatung Defendants, in the form of interrogatories,

requests for production of documents, and notices of depositions. D.I. 98, 99, 102-103.

**Jurisdictional Discovery Disputes Before the Court**

Notwithstanding the Court's order that no further motions be filed by the parties until the

Court resolved the Tatung Motion, the record discloses that the parties sought the Court's

attention with numerous discovery disputes following entry of that order. For example, on

December 20, 2004, Tatung America sent a letter to the Court seeking leave to file a motion for a

protective order to quash deposition notices issued on December 2, 2004 by LPL for depositions

scheduled for December 22, 2004 and mid-January 2005. Tatung America refused to appear for

the Rule 30(b)(6) deposition scheduled in two days, arguing that its request to file a motion for a

protective order had the same effect as an actual motion and therefore excused its requirement to

appear, pursuant to Local Rule 30.2. D.I. 128 at 1, n.1. A volley of letters followed, D.I. 107-

108, prompting the Court to schedule *sua sponte* a date to hear what the Court deemed would be

LPL's motion to compel and request for sanctions, and to require additional briefing. D.I. 126-

30.

At the hearing held on January 24, 2005, the Court took steps to get the jurisdictional

discovery back on track. The record of that hearing establishes that – although almost 60 days

had elapsed since LPL propounded its jurisdictional discovery – the Tatung Defendants had yet

to respond to outstanding interrogatory requests, had failed to produce any responsive documents

whatsoever, and had refused to appear at scheduled depositions. In the words of LPL's counsel:

> [D]efendant Tatung Company of America has refused to appear for
> four depositions in this matter on two separate occasions. As a
> result of that, Your Honor, and as a result of their inadequate
> responses to interrogatories and document requests, **we really
> have no jurisdictional discovery at this point** two months after
> this Court ordered Tatung Company of America and Tatung
> Company to provide jurisdictional discovery.

D.I. 132 at 4:9-19 (emphasis added).

The tack taken by the Tatung Defendants has been to object to and seek to quash all of

the jurisdictional discovery sought by LPL, arguing primarily that the scope of LPL's discovery

exceeded the permissible scope of jurisdictional discovery and that neither the provisions of

Local Rule 26.2 nor the protective order proposed by LPL were adequate to protect Tatung's

confidential information. In the words of Tatung's counsel:

> There are two fundamental problems with plaintiff's discovery.
> They are: (1) plaintiff's refusal of a confidentiality order, such as
> the one approved by Judge Jordan [in another case] and (2)

3

> plaintiff's refusal to specify with some reasonable particularity its
> 30(b)(6) deposition categories, so that the designee(s) can be
> identified and prepared to testify [on behalf of] the company with
> answers other than an embarrassing (and potentially damaging) "I
> don't know."

D.I. 128 at pp. 1-2.

The Court first addressed and resolved the parties' impasse over the proposed terms of a

protective order to protect confidential information disclosed during discovery, by obtaining

LPL's agreement that it could live with the terms proposed by Tatung for the limited period of

jurisdictional discovery.[1]　D.I. 132 at pp. 10-22.　The Court rejected Tatung's objections to the

scope of discovery, by expressly determining that the deposition topics listed in the Rule

30(b)(6) deposition notices issued by LPL were within the permissible scope of jurisdictional

discovery and were specific enough to permit Tatung to designate corporate designee(s).　D.I.

132 at 38:4-8 and 42:2-5.

The Court then directed that the noticed depositions go forward, and attempted to provide

reassurance to Tatung that the deposition questioning would stay within the scope of the noticed

topics by providing a mechanism for handling objections by the Tatung Defendants to any

deposition questioning that may exceed the permissible scope.　D.I. 132 at 36:12-24; 37:1-24;

and 38:1-3.　The Court also directed that "all the documents relative to the declarations that you

---

[1]　The impasse between the parties centered on Tatung's demand that certain of LPL's counsel be restricted from
prosecuting patents during the pendancy of this litigation, to avoid risk to confidential information that Tatung might
disclose during discovery.　In the Special Master's view, the provisions of Local Rule 26.2 adequately address this
concern prior to the entry of a tailored protective order, especially given the narrow focus of jurisdictional discovery.
Local Rule 26.2 provides as follows:

> If any documents are deemed confidential by the producing party and the parties
> have not been able to agree on an appropriate protective order, until a protective
> order is in effect, disclosure should be limited to members and employees of the
> firm of trial counsel who have entered an appearance, and, where appropriate,
> have been admitted *pro hac vice*.　**Such persons are under an obligation to
> keep such documents confidential and to use them only for the purposes of
> litigating the case.**　(Emphasis added).

Simply stated, jurisdictional discovery should not have been delayed in order to await the entry of a tailored
protective order.

cited and answers to interrogatories that are incomplete ought to . . . be given over [by Tatung] by the end of this week, the very first part of next week." D.I. 132 at 56:17-21. The Court addressed LPL's request for sanctions with a clear cautionary note:

> I'm going to monitor what we have to do to keep this case moving. And at some point if I make a judgment that one side is recalcitrant and the other is acting in good faith, then **I [will] go all the way back and award fees and costs.**

D.I. 132 at 61:5-15 (emphasis added).

Following the hearing, the Court issued written orders that provided (i) for entry of the restrictive form of protective order requested by the Tatung Defendants, but modified to limit its duration to the jurisdictional discovery period; and (ii) that the depositions related to jurisdictional discovery go forward, with instruction that "If [the Tatung] Defendants believe [LPL's] examination exceeds the issues of jurisdiction, [Tatung] may object and instruct the witness not to answer. [LPL] may then file a motion to compel on the objected-to question." D.I. 133.

Within a few weeks, LPL found it necessary to again burden the Court when Tatung Taiwan also refused to appear for noticed depositions. LPL moved for leave to file an expedited motion to compel jurisdictional discovery from the Tatung Defendants and for a third extension of the jurisdictional discovery period. D.I. 154. This prompted an additional round of letters and email to the Court, D.I. 163-64, 166-67. The Tatung Defendants then filed a request for the appointment of a special master, together with a motion for a protective order. D.I. 168. LPL opposed the appointment of a special master and renewed its request for sanctions. D.I. 169.

By order dated February 17, 2005, the Court referred the pending discovery issues to the Special Master Panel for assignment of a special master, with the Honorable Joseph J. Farnan, Jr. noting:

> I believed that the rulings and instructions I provided to the parties at the January 24, 2005 hearing would avoid further conflict on the pending discovery matters. I apparently was wrong. As explained at the January 24 hearing, **this Court lacks the resources to manage overly contentious discovery disputes** effectively. Therefore, in the circumstances presented in this case, I find appointment of a special master pursuant to Federal Rule of Civil Procedure 53(a)(1)(c) to be warranted. Absent an appropriate finding by the master or me, the costs shall be shared equally.

D.I. 174 (emphasis added). By order dated February 25, 2005, I was appointed Special Master in this matter. D.I. 178.

## Jurisdictional Discovery Disputes Before Special Master

The additional submissions to and proceedings before the Special Master were not docketed as part of the official record in this case and, therefore, merit summarization and explication for the Court's and parties' consideration of the Special Master's Report and Recommendations.

On March 9, 2005, the Special Master conducted a teleconference with counsel for all parties, including defendant Viewsonic Corporation ("Viewsonic"), to discuss the procedural steps for bringing discovery disputes before the Special Master.[2] The teleconference then turned to the outstanding jurisdictional discovery issues, and Viewsonic was excused from the remainder of the teleconference. The Special Master continued the teleconference with LPL and Tatung to specifically discuss the outstanding jurisdictional discovery disputes. A hearing date on the discovery issues was set for March 30, 2005, and a schedule was set for written submissions by the parties prior to the hearing.

---

[2] The procedures agreed upon during the teleconference were later memorialized in the Special Master's March 11, 2005 Order for Initial Discovery Disputes.

After reviewing the parties' respective written submissions,[3] the Special Master conducted a lengthy hearing on March 30, 2005 to consider the arguments of LPL and the Tatung Defendants on the outstanding discovery disputes. At that hearing, the Special Master made rulings primarily with respect to the dispute over the counting of interrogatories.[4]

Because time constraints prevented the Special Master from fully addressing the parties' arguments as to the other categories of discovery during the March 30, 2005 hearing, the Special Master and parties agreed to continue the hearing to a later date. Following a teleconference with the parties on April 4, 2005, the Special Master set April 20, 2005 as the date for continuing the hearing and clarified that the hearing would address the remaining disputes as they related to depositions, answers to interrogatories, document production, extension of the jurisdictional discovery period, and sanctions.

On April 19, 2005, one day before the continued hearing date with the Special Master, Tatung America and Tatung Taiwan filed their respective answers to LPL's Complaint, in which each contested the jurisdiction of this Court. D.I. 186-187. One day later – at the start of the April 20, 2005 continued hearing before the Special Master – the Tatung Defendants consented by stipulation to the jurisdiction of this Court, D.I. 188, thereby mooting further consideration of Tatung's objections to the remaining jurisdictional discovery and LPL's motion to extend the period for jurisdictional discovery.

---

[3] As a preliminary matter, the Special Master notes that the parties collectively submitted to the Special Master thousands of pages of materials on their jurisdictional discovery disputes, most without correlation to the case docket, and many as mere attachments from which the Special Master had to glean and organize the facts. In *Brown v. SAP America, Inc.*, C.A. No. 98-507 at *1 (D. Del., March 3, 2004) (Robinson, C. J.) [available as 2004 WL 502221], this Court declined to address discovery motion submissions that totaled 1939 pages as too "voluminous [a] record in connection with motions ostensibly devoid of any material issues of fact."

However, in an attempt to keep the jurisdictional discovery on track and to properly consider the parties' positions on the issue of sanctions, the Special Master has reviewed and considered the complete submissions of both parties, requiring a considerable investment of time. The Court's inclination that sanctions should "go all the way back," if appropriate, necessitated review of select docket items including D.I. 16-17, 19-21, 25, 23-40, 47, 62, 93-94, 98-99, 105, 107-09, 123-26, 128-133, 144, 154, 163-64, 168-89, 174, 178, and 186-88.

[4] The Special Master's rulings with respect to the interrogatories are summarized *infra* at pages 19 to 28.

Accordingly, the Special Master turns to, and addresses herein, LPL's motions for sanctions.

## DISCUSSION

*Our system of discovery was designed to increase the likelihood that justice will be served in each case, not to promote principles of gamesmanship and deception in which [the party] who hides the ball most effectively wins the case.* Abrahamsen v. Tran-State Express, Inc., 92 F.3d 425, 428-29 (6th Cir. 1996).

I.    **Analysis – Imposition of Sanctions**

Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 37(d) provides, in pertinent part:

> If a party . . . or a person designated under Rule 30(b)(6) . . . to testify on behalf of a party fails (1) to appear before the officer who is to take the deposition, after being served with a proper notice, or (2) to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories, . . . the court in which the action is pending on motion may make such orders in regard to the failure as are just, **and among others it may take any action [for sanctions] authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of [Rule 37]** . . . **In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure unless the court finds that the failure was substantially justified** or that other circumstances make an award of expenses unjust.
>
> **The failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable** unless the party failing to act has a pending motion for a protective order as provided by Rule 26(c).

Fed. R. Civ. P. 37(d) (emphasis added).

On November 17, 2004, this Court granted LPL's request for jurisdictional discovery and set a 90-day deadline for its completion. At the hearing held on January 24, 2005 on what the Court deemed to be LPL's motion to compel, the Court determined that the categories of

8

discovery identified by LPL in its 30(b)(6) deposition notices to the Tatung Defendants were within the permissible scope of the jurisdictional discovery previously ordered by the Court.

Based on the written submissions of the parties and the conduct of the March 30, 2005 hearing before the Special Master, the Special Master concluded then, and concludes now, that throughout the jurisdictional discovery period LPL exercised good faith and extraordinary effort in attempting to "meet and confer" to resolve Tatung's objections to the discovery sought. In this regard, the record before the Special Master discloses numerous efforts by LPL to support its positions to Tatung with relevant authority, and to address Tatung's objections – including, at times, with offers of compromise and to narrow the discovery sought – each and all vain attempts to persuade Tatung that discovery should go forward.

The record also discloses that, in contrast, the Tatung Defendants demanded capitulation instead of compromise. Tatung unilaterally blocked discovery by asserting layers of objections not supportable under relevant law. Notwithstanding the Court's express findings and prior orders, the Tatung Defendants continued to obstruct LPL from taking jurisdictional discovery through the March 30, 2005 hearing before the Special Master. Specifically, Tatung failed to appear for depositions on multiple occasions, failed to produce witnesses prepared to testify on noticed and relevant topics, and failed to respond to interrogatories and requests for production of documents on the same and/or similar topics.[5]

---

[5]  In their briefing before the Special Master, the Tatung Defendants repeatedly attempt to excuse their actions by recharacterizing the jurisdictional discovery dispute:

> Although necessarily framed as a jurisdictional issue, in practicality the entire dispute was completely avoidable by a change of venue from Delaware to California.

*See, e.g.,* May 20, 2005 Letter Brief from Jeffrey S. Goddess, Esquire, to Special Master at p. 1. This characterization is curious given that the Tatung Defendants never filed motions to transfer venue; they filed only motions to dismiss for lack of jurisdiction. D.I. 16-17. Consequently, the Special Master finds it difficult to ascribe any other motive to the Tatung Defendants' recalcitrance other than their hope that the period set by Court order for jurisdictional discovery would expire and operate to deprive LPL of an opportunity to obtain evidence needed to support a finding of personal jurisdiction.

The Special Master therefore concludes, for the reasons discussed below, that sanctions are just and appropriate pursuant to Fed. R. Civ. P. 37 where, as here, LPL made good faith efforts to obtain the discovery without court action and where the Tatung Defendants' failed to comply with their discovery obligations without substantial justification.

## A.    Failure to Appear for Depositions

### 1.    Legal Standard

This Court's standard for deposition practice under Rule 30(b)(6) of the Federal Rules of Civil Procedure is well settled:

> The Federal Rules of Civil Procedure allow for a broad scope of discovery that is not limited to admissible evidence, but evidence that is reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). Rule 30(b)(6) provides that after receiving a notice of deposition, the corporation should "designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf." Fed. R. Civ. P. 30(b)(6). Additionally, the deponent has a "duty of being knowledgeable on the subject matter identified as the area of inquiry." *Alexander v. Federal Bureau of Investigation*, 186 F.R.D. 148, 151 (D.D.C. 1999).

*Novartis Pharmaceuticals Corp. v. Abbott Laboratories*, 203 F.R.D. 159, 162 (D.Del. 2001); *accord, Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, No. Civ. A. 00-083 at *3 (D.Del., Feb. 18, 2005) (Farnan, J.) [available as 2005 WL440621].

### 2.    Tatung America's Failure to Appear

On November 17, 2004, the Court ordered a 90-day period of jurisdictional discovery. D.I. 88. Shortly thereafter, LPL noticed a Rule 30(b)(6) deposition of Tatung America, scheduled for December 22, 2004. LPL also noticed additional depositions of Tatung America employees for mid-January. Two days before the noticed Rule 30(b)(6) deposition, Tatung America – under a Court order directed to both sides that they were not to file any motions regarding the jurisdictional discovery – sought leave to file a motion for a protective order and

refused to appear for both the Rule 30(b)(6) deposition and the depositions scheduled for mid-January. D.I. 128.

Tatung then failed to appear for properly noticed depositions, relying upon its own assumption that its request for leave to file a protective order had the same effect as an actual motion, and excused its requirement to appear at the depositions pursuant to Local Rule 30.2. D.I. 128 at p.1, n.1. The Court had previously barred both parties from filing any discovery motions until it decided Tatung's motion to dismiss on jurisdictional grounds, D.I. 93, in order to avoid the delay attendant to just such motions and permit the completion of discovery within the 90-day period allotted. In the face of this prohibition, the Special Master concludes that Tatung proceeded at its own peril and should not be permitted the benefit of the safe harbor created by Local Rule 30.2.

Moreover, a motion for a protective order is governed by Rule 26(c) which provides, in pertinent part "[u]pon motion by a party . . . **for good cause shown** . . . the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c) (emphasis added). Good cause requires a specific showing that, absent the protective order, the movant would suffer "a clearly defined and serious injury." *Glenmede Trust Company v. Thompson*, 56 F. 3d 476, 483 (3d Cir. 1995); *accord Emory v. AstraZeneca Pharmaceuticals,* Civ. A. No. 02-1466 at *1 (D. Del. Sept. 4, 2003) (Farnan, J.) [available as 2003 WL 22136301]; and *Visx Inc. v. LazerSight Inc.*, Civ. A. No. 99-789 at *1-2 (D. Del. Jan. 20, 2001) (Farnan, J.) [available as 2001 WL 34367297].

At the January 24, 2005 hearing on LPL's motion to compel, the Tatung Defendants were clearly unable to show the clearly defined and serious injury necessary to meet the requisite showing of good cause. In addressing Tatung's objections, the Court expressly determined that

11

all of the deposition topics noticed by LPL were within the permissible scope of jurisdictional

discovery, D.I. 132 at 38:4-8, and each of them provided the requisite specificity. *Id.* at 42:2-5

("I think the topics are specific enough that it should be readily apparent what type of person has

to come as a designee.").

The Court also flatly rejected Tatung's arguments that depositions of certain of its senior

management – so called "apex" depositions – should not go forward. Since an order barring a

litigant from taking a deposition would constitute extraordinary relief, the party seeking such a

protective order bears the burden of proving that the proposed deponent has nothing to

contribute. *See, e.g., Speadmark, Inc. v. Federated Department Stores, Inc.*, 176 F. R. D. 116,

118 (S.D.N.Y. 1997). This is true even if the proposed deponent is a busy person. *Naftchi v.

New York University Medical Center*, 172 F.R.D. 130, 132 (S.D.N.Y. 1997).

Tatung's argument that its executives lacked knowledge relating to jurisdiction was, in

the Special Master's view, nothing short of specious in light of the fact that several of them –

namely David Shan-Juh Chang on behalf of Tatung Taiwan and Robin Tsou and Edward Chen

on behalf of Tatung America – had submitted sworn declarations in support of the Tatung

Defendants' respective motions to dismiss on jurisdictional grounds. Accordingly, the Court

directed that the depositions go forward. D.I. 132 at 56:22-23 ("these depositions ought to be

rescheduled"); *See also, Scutellaro v. Walt Disney World Co., Inc.*, Civ. A. No. 92-671, *slip op.*

at 6 (D.Del. July 14, 1993) (holding that if a senior executive "has knowledge of matters relevant

to the instant suit, his position will not protect him from being deposed").

Following the January 24, 2005 hearing, and consistent with the Court's guidance and

rulings, LPL renoticed the Rule 30(b)(6) and other depositions of Tatung America witnesses.

Three depositions went forward on February 7-9, 2005. The deposition excerpts submitted to the

Special Master disclose, in the Special Master's view, a pattern by Tatung's counsel to disrupt, obfuscate and avoid proper discovery during those depositions.[6] The Special Master offers just a few examples:

**(a)** Tatung America failed to produce a Rule 30(b)(6) designee prepared to respond to certain information within the noticed deposition topics:

> Q:  What other retail distribution centers – to what other retail distribution centers does Tatung America ship Hewlett Packard and Compaq products from Compton?
>
> A:  Other than the fact that I can place a couple of them in Texas, **I don't know.**
>
> Q:  You can't identify any others then?
>
> A.  I'm **unable to identify any.**
>
> Q.  Do you know if there are any other retail distribution centers, besides the Wal-Mart and Sam's Club?
>
> A.  I think **it's easy to speculate that there are many others.**
>
> Q.  But do you know whether there are additional ones that you just can't identify?
>
> A.  Yeah **I know there are others**, sure.
>
> Q.  Do you have any idea how many, whether it's 10, more than 10, less that 10?  Can you give me any range?
>
> A.  I'm pretty sure it's more than 10.
>
> Q.  Do you know if it's more than 20?
>
> A.  No, **I don't know** for sure.
>
> Q.  Do you know in what states any of the other retail distribution centers are located, besides Texas?
>
> A.  I'm sorry, **I don't know** any other specific locations.
>
> LPL COUNSEL:  Mr. Weems, I assume that for information Mr. Sun is not able to provide, Tatung America will provide another witness as soon as Mr. Sun is finished testifying to provide that information.
>
> TATUNG COUNSEL:  No, Mr. Sun has been prepared on all these topics and as to what he can remember today and what he can't remember today.
>
> LPL COUNSEL:  Well does Tatung America intend to produce documents then that would provide this information?
>
> TATUNG COUNSEL:  I'm not here to be interrogated, Mr. Christenson.  You can spend your time asking questions of the witness.
>
> LPL COUNSEL:  Okay.  I'll take that as a "no."

---

[6] Although Tatung has designated these deposition transcripts as "Highly Confidential," the Special Master does not consider any of the information in the deposition excerpts contained herein to warrant a "confidential" designation.

13

Transcript of February 9, 2005 Deposition of Andrew Sun ("Sun Deposition") at 25:5-25 to

26:1-19 (emphasis added).

**(b)**     Tatung's counsel disrupted the flow of depositions with frequent requests for recess

(some within minutes of the start of depositions)[7] and by inserting frequent and improper

objections, such as the following:

> Q.   What is the Rancho Dominguez facility called?  Or what type
>       of facility does Tatung America have in Rancho Dominguez?
> TATUNG COUNSEL:  **Objection, vague**.
> Q.   You can answer.
> A.   It's called – we call it C plant.

Sun Deposition at 17:5-11.

> Q.   So all of the Hewlett Packard and Compaq personal computers
>       served at that facility are manufactured by Tatung Company?
> TATUNG COUNSEL:  **Objection, calls for speculation**.
> LPL COUNSEL:  I'm just trying to clarify, I think that's what he
>       said.  But you tell me.
> A.   Yeah, essentially all of them.

Sun Deposition at 18:10-17 (emphasis added).

> Q.   In 2004 were all of the computer monitors distributed out of
>       that facility LCD monitors?
> A.   No.  Some of them were CRT.
> Q.   Approximately what percentage in 2004 were LCD monitors?
> A.   I couldn't give you a good estimate.  I'd say the majority of
>       them are LCDs.
> Q.   So more than 50 percent?
> TATUNG COUNSEL:  **Objection.  Asked and answered**.
> THE DEPONENT:     Yeah, I think more than half of them are
>       LCDs.

Sun Deposition at 37:7-17 (emphasis added).

> Q.   Mr. Sun, do you agree that the distribution center in Arlington
>       distributes products?
> A.   It prepares products for distribution.

---

[7]  The "need to break" was asserted by both attorneys representing Tatung and, thus, appears to be tactical rather
than motivated by any other need.

14

> Q. And specifically for distribution to retail distribution centers.
> Right?
> TATUNG COUNSEL: **Objection. Argumentative.**
> Q. You can answer
> TATUNG COUNSEL: **And calls for speculation.**

Sun Deposition at 38:5-13 (emphasis added).

> Q. What type of operation does Tatung Company have in El
> Paso?
> TATUNG COUNSEL: **Objection. Calls for speculation.**

Sun Deposition at 89:23-25 to 90:1 (emphasis added).

> Q. For 2004 how much revenue did Tatung America derive from
> LCD products sold or delivered in Delaware?
> TATUNG COUNSEL: **Objection**. Scope, post complaint sales
> **aren't relevant** for the jurisdictional inquiry.
> THE DEPONENT:    I'm afraid I don't know.
> Q. Since January 1, 2000 how much revenue has Tatung America
> derived from L17AMTN monitors sold or delivered in
> Delaware?
> TATUNG COUNSEL: **Objection**, time, and times prior to the
> issuance of the patent, prior to the filing of the complaint **are
> not relevant**.

Sun Deposition at 108:25 to 109:1-11 (emphasis added).

**(c)**    Tatung counsel also engaged in an abusive "tag team" approach, with more than one

attorney asserting objections:

> Q. And my understanding at that time was you told me there were
> no such operations. And I want to be very sure I understand
> whether Tatung Company has any other operations in the
> United States beside [t]he El Paso Texas facility that you just
> mentioned.
> TATUNG COUNSEL (#1):   Could we have the question read
> back?
> TATUNG COUNSEL (#2): **Objection**.
> LPL COUNSEL: Well, actually that wasn't a question. I was
> leading up to a question.
> But the question is, does Tatung Company have any business
> locations in the United States other than El Paso Texas.
> TATUNG COUNSEL (#1): Now let's have the full question read
> back with its pre-preamble.
> (Record read)

15

> TATUNG COUNSEL (#2): And I **object** to the extent it mischaracterizes prior testimony. I'm going to **object** that the prior record speaks for itself. I'm going to **object** that the question is unintelligible and confused.
> And subject to that, you can answer, if you can.
> THE DEPONENT: Other than the El Paso warehouse, I don't know of any other Tatung Company operations in the United States.

Sun Deposition at 94:24-25 to 95:1-24 (emphasis added).

> Q: Do you know whether Tatung Company has manufactured LCD products for ViewSonic Corporation since January 1, 2000.
> TATUNG COUNSEL (#1): **Asked and Answered**. You can answer again, sir.
> TATUNG COUNSEL (#2): And I just want to further note . . . Mr. Baum may not be aware of it, **ViewSonic counsel has specifically objected to the subpoenas issued to it**. Or actually I guess the notice or document request, something of that sort that was issued to it within the last 24, 48 hours. **So based on Viewsonic's objection, I think we have an obligation to instruct.**
> TATUNG COUNSEL (#1): And we'll consider your questions as you ask them and keep that objection in mind.
> So can we have the last question read back, please?
> (The reporter reads back the question as follows:
> "Q. Do you know whether Tatung Company has manufactured LCD products for Viewsonic Corporation since January 1, 2000?")
> THE DEPONENT: I don't know.

Sun Deposition at 134:18-25 to 135:1-14 (emphasis added).

**(d)** Tatung's counsel used objections to improperly coach deponents during their testimony:

> Q. If you wanted to find out where those retail distribution centers for those various companies are located, how would you do that? Are there documents that you would be able to review that would give you that information?
> TATUNG COUNSEL: **Objection**. **Argumentative**. The witness has already testified they don't do the distribution part. They do the boxing.
> LPL COUNSEL: I object to speaking objections that coach the witness. That's improper. The record will reflect whatever the testimony was. And there's a question pending.

Sun Deposition at 40:21-25 to 41:1-7 (emphasis added).

> Q.  Does Tatung America keep copies of the monthly sales reports?
> A.  We can always get the number from the computer.
>
> **TATUNG COUNSEL:  Listen to the question, Robin.  He asked you if Tatung keeps copies.  He didn't ask if you can you always get --**

Transcript of February 7, 2005 Deposition of Robin Tsou ("Tsou Deposition") at 39:17-22.

> Q.  Does Tatung America have lists of customers, for computer monitors?
> TATUNG COUNSEL:  Asked and answered.
> THE DEPONENT:  We don't have a customer list, but we can trace –
> TATUNG COUNSEL:  **He asked you if you have a customer list.**

Tsou Deposition at 41:4-10 (emphasis added).

Finally, the Special Master notes that the February 2005 depositions of Tatung America had to be conducted without benefit of Tatung America's response to the interrogatories and document production propounded by LPL more than two months earlier.  Although the Court had directed both Tatung Defendants at the January 24, 2005 hearing that responses to the interrogatories and responsive documents should be produced before any depositions went forward, Tatung America stood on its objection to the interrogatory count and did not provide further interrogatory responses.  Tatung America produced only 46 pages of responsive documents although, as will be discussed later herein, deposition testimony disclosed that other responsive documents clearly existed.

3.    **Tatung Taiwan's Failure to Appear**

On January 20, 2005, LPL noticed seven depositions of Tatung Taiwan, namely: one pursuant to Fed. R. Civ. P. 30(b)(6); one of David Shan-Juhn Chang, whose declaration supported Tatung Taiwan's jurisdictional challenge; one of Wen Yen K. Lin, President of Tatung

Taiwan and an officer of Tatung America, who had spoken publicly about Tatung's global

operations; and four of other employees of Tatung Taiwan. The depositions were noticed for

Taipei, Taiwan during the period of February 15-18, with four short depositions scheduled for

one day.

     LPL's counsel confirmed the depositions by letter dated January 21, 2005, stating:

> **These foreign depositions will require us to incur substantial**
> **pre-paid, non-refundable expense.** Already, [Taiwan America]
> has caused substantial inconvenience and costs to be incurred
> (including, for example, attorney fees and travel costs). We will
> ask the Court for relief at the appropriate time, including, but not
> limited to, full reimbursement. Similarly, we expect [Tatung
> Taiwan] to fulfill its obligation to attend these depositions and, if
> necessary, we will look to you and/or [Tatung Taiwan] to
> reimburse us for any expense that we incur as a result of further
> misconduct.

January 21, 2005 Letter from Cass W. Christenson, Esquire, to Robert C. Weems, Esquire

(emphasis added). By letter dated January 27, 2005, LPL's counsel confirmed Tatung Taiwan's

request for interpreters fluent in Mandarin Taiwanese for these depositions.

     The record before the Special Master reflects that Tatung requested that LPL postpone

the Taiwan depositions during a conversation with LPL's counsel on February 9, 2005. In a

February 10, 2005 letter from LPL's counsel to Tatung's counsel, LPL declined to postpone the

depositions, but suggested a compromise that might avoid the need for "apex" depositions:

> [W]e cannot accommodate your request to postpone the
> depositions considering Tatung's unjustified refusal to produce any
> documents. Additionally, we are convinced that the only way we
> will ever obtain the information we need (and you are required to
> produce) is to depose the individuals we have noticed, just like we
> had to do with Tatung America. As you know, these depositions
> have been noticed since January 20 and the document requests and
> interrogatories to Tatung were served at the end of November,
> 2004. Moreover, we have already purchased airplane tickets,
> contracted with a court reporter and an interpreter, and booked
> conference rooms and hotel rooms. All of those have strict
> cancellation policies. **In the spirit of cooperation, however, we**

> **are willing to reschedule the depositions of W.S. Lin, K.Y.
> Lang, and A.C. Wang [the three "apex" deponents], currently
> scheduled for Tuesday, February 15, to Saturday February 19,
> if Tatung Company agrees to produce the documents
> referenced in our motion to compel on Tuesday, February 15
> at 9:00 a.m. at our counsel's hotel where they will be staying in
> Taiwan. Depending on the content of the documents and
> whether the deponents for the remaining depositions noticed
> for next week are forthright, including whether Tatung's
> 30(b)(6) witness is adequately prepared, we may be in a
> position to decide that the depositions of these three individuals
> are unnecessary.**

February 10, 2005 Letter from Lora A. Brzezynski, Esquire, to Robert C. Weems, Esquire

(emphasis added).

Approximately 20 days after the depositions had been renoticed, counsel for the Tatung

Defendants advised LPL's counsel by letter dated February 11, 2005 – the day before LPL's

counsel was set to depart for Taiwan for the depositions – that Tatung Taiwan and its employees

would not appear for the depositions:

> Due to the present unresolved discovery issues, [LPL's] changing
> position on document production, and your refusal to defer
> overseas deposition until such matters have been worked out, we
> have been compelled to move for a protective order and to ask the
> Court to appoint a special master. Accordingly, **we will not be
> producing deponents in Taiwan until such matters are resolved**
> either by agreement or with the involvement of the Court.[8]

February 11, 2005 Letter from Robert C. Weems, Esquire to Lora A. Brzezynski, Esquire

(emphasis added). As of the date of the March 30, 2005 hearing with the Special Master, Tatung

Taiwan had not made any deponents available to LPL.

The Special Master finds that, against this backdrop, the claims by the Tatung Defendants

of good cause and substantial justification ring hollow, and the Special Master concludes that,

---

[8]  According to counsel for LPL: "Tatung never objected to the location or dates of these depositions. Tatung also
did not object to the Rule 30(b)(6) topics (the same topics that the Court had approved for Tatung America's
deposition) until *after* refusing to appear for the depositions." March 18, 2005 Letter from Richard D. Kirk, Esquire,
to Vincent J. Poppiti, Special Master (emphasis in original).

pursuant to Fed. R. Civ. P. 37(d), sanctions are appropriate for the repeated failure of the Tatung

Defendants to appear for depositions, and for obstructive tactics at the depositions at which they

did appear.  In this regard, the Special Master finds that Tatung wielded its unilateral and last

minute refusals to appear at depositions like the tactical weapons of delay the Special Master

determines them to be.  The Special Master therefore recommends that Tatung pay LPL's

reasonable expenses caused by its failure to appear for and its obstruction of depositions,

including attorney fees and Special Master fees.  Fed. R. Civ. P. 37(d); *Haraway v. NASCAR,*

*Inc.*, 213 F.R.D. 161, 165-66 (D.Del. 2003) (awarding defendants attorneys' fees and costs for

plaintiff's failure to appear at deposition).

**B.**    **Failure to Respond to Interrogatories**

    **1.**    **Legal Standard**

Pursuant to Federal Rule of Civil Procedure 33(b):

> **Each interrogatory shall be answered separately and fully in
> writing under oath**, unless it is objected to, in which event the
> objecting party shall state the reasons for objection and shall
> answer to the extent the interrogatory is not objectionable . . . **All
> grounds for and objection to an interrogatory shall be stated
> with specifity.  Any ground not stated in a timely objection is
> waived** unless the party's failure to object is excused by the court
> for good cause shown.

Fed. R. Civ. P. 33(b)(1)(4) (emphasis added).   Under Rule 37, "an evasive or incomplete

disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." Fed.

R. Civ. P. 37(a)(3).  When a party fails to comply with the provisions of Rule 33, "the court . . .

may make such orders in regard to the failure as are just."  *Woulard v. Brown*, No. Civ. A. 01-

350 JJF at *1-2 (D.Del. Feb. 24, 2004) (Farnan, J.) [available at 2004 WL 758358] (quoting Fed.

R. Civ. P. 37(d)).

## 2.     The Tatung Defendants' Failure to Respond

On November 29, 2004, LPL served twenty (20) interrogatories upon each of the Tatung Defendants. D.I. 98. Although there are a few differences between the interrogatories served on Tatung Taiwan and Tatung America, the parties agree that the sets of interrogatories propounded on each Tatung defendant are substantially similar in substance. *See, e.g.*, March 30, 2005 Transcript at 58:17-18 (Counsel for Tatung Defendants: "they're almost certainly identical").

The Tatung Defendants responded respectively to the interrogatories propounded by LPL on or about January 5, 2005. D.I. 113. Their responses are noteworthy in their similarities and by their stunning lack of response. Each Tatung Defendant objected to every interrogatory, asserting primarily boilerplate objections. Additionally, the Tatung Defendants argued that, when subparts are counted, LPL's interrogatories exceeded the maximum of 50 interrogatories permitted under Local Rule 26.1. Each Tatung Defendant renumbered the interrogatories posed by LPL's first four interrogatories into more than 50 subparts, and thereafter rested on its objection to count in refusing to further respond to interrogatories 5-20. Relying upon its boilerplate objections and its objections as to count, Tatung Taiwan did not answer any interrogatories. Tatung America partially answered only two interrogatories (Nos. 2 and 4), relying upon the selfsame objections.

At the January 24, 2005 hearing before Judge Farnan, the Court had made clear that the Tatung Defendants should respond to LPL's interrogatories before LPL's depositions of Tatung America and Tatung Taiwan – then scheduled for February 15 to 18 – took place:

> Interrogatories and documents, you're absolutely correct, should be resolved before deposition practice occurs. And we're focused on [late] February . . . **That's material that the party seeking deposition wants to have before they start the deposition . . . if there [are] interrogatories that are properly served, they need to be responded to,** and the same with documents.

21

D.I. 132 at 49:14-19 and 50:6-11 (emphasis added). The Court directed that "all . . . answers to interrogatories ought to . . . be given over by the end of this week, the very first part of next week." D.I. 132 at 56:17-21.

By directing Tatung to respond to LPL's interrogatories, the Court – in the Special Master's view – impliedly rejected Tatung's argument, suggested by *Moore's Federal Practice*, that it could preserve its objections to supernumerary interrogatories by answering (or objecting) up to the numerical limit and asserting boilerplate objections to the remainder without answering.[9] Notwithstanding the Court's direction, the Tatung Defendants did not supplement or further respond to LPL's interrogatories, and stood on their boilerplate objections and objections to count. On February 7, 2005, LPL requested leave to file an expedited motion to compel jurisdictional discovery, D.I. 154, and the issues involving several discovery disputes – including the disputed interrogatory count – were ultimately brought before the Special Master.

In this regard, the Special Master examined the primary authority relied upon by the Tatung Defendants in challenging LPL's interrogatory count, that being *Kendall v. GES Exposition Services, Inc.*, 174 F.R.D. 684 (D. Nev. 1997). According to the *Kendall* court:

> The Court therefore holds that **interrogatory subparts are to be counted as part of but one interrogatory for the purpose of [Local Rule 33-1(b)] if they are logically or factually subsumed within and necessarily related to the primary question** . . . [T]he more difficult question is determining whether the subparts are "logically or factually subsumed within and necessarily related to the primary question." . . . Probably the best test of whether subsequent questions, within a single interrogatory, are subsumed and related, is to **examine whether the first question is primary and subsequent questions are secondary to the primary question.** Or, can the subsequent question stand alone? Is it independent of the first question? **Genuine subparts should not be counted as separate interrogatories. However, discrete or separate questions should be counted as separate**

---

[9]   7 Moore's Federal Practice § 33.30[1]. *But see, id.* at § 33.171 ("Unstated grounds for objections normally are waived.").

> **interrogatories, notwithstanding that they are joined by a conjunctive word and may be related.**

174 F.R.D. at 685-86 (emphasis added).

After reviewing the interrogatory count urged by Tatung against the standard articulated in Tatung's own authority, the Special Master concluded that the position of the Tatung Defendants on the disputed interrogatory count was not supported by *Kendall*. Accordingly, at the hearing held on March 30, 2005, the Special Master ruled as follows with respect to the disputed interrogatory count:

> First interrogatory [,] I need not read it. The first is counted as two by both Tatung defendants. I consider it to be **one** seeking the identity of those individuals who assisted with the Tatung defendants' discovery responses.

March 30, 2005 Transcript at 58:22-24 and 59:1-2 (emphasis added).

> Interrogatory No. 2, Tatung counts No. 2 as 12 interrogatories. I'm satisfied that it is legitimately considered to be **one** interrogatory requesting information on products manufactured, imported into, purchased, offered for sale and/or sold by Tatung in Delaware or [,] as to the Tatung company [,] in the United States.

*Id*. at 58:17-23 (emphasis added).

> Interrogatory No. 3 Tatung counts as 12. I'm also satisfied that that is legitimately **one** seeking information on Tatung's manufacture, importation, purchase, offer for sale, and/or sale of a particular line that is visual display products in the United States.

*Id*. at 59:1 and 60:1-5 (emphasis added).

> [Interrogatory] No. 4 Tatung counts as 32 interrogatories. The Tatung defendants. I'm satisfied it is legitimately considered to be **one** seeking information on the amount of money made by the defendant[s] from the sale of its products and/or services in Delaware.

*Id*. at 60:6-10 (emphasis added).

> [Interrogatory] No. 5, I would note that No. 5 was neither answered nor counted by Tatung because the interrogatories that I

23

have just discussed with you have exceeded 25 by Tatung's count.
I'm satisfied No. 5 is **one** aimed at determining how much money
each Tatung defendant realized from the import, sale, or shipment
of products intended for the United States market.

*Id*. at 60:11-17 (emphasis added).

[Interrogatory] No. 6, I'm satisfied that that is also legitimately **one**
aimed at identifying each work location in the United States where
Tatung has employed people since January the 1st 2000.

*Id*. at 60:18-21 (emphasis added).

[Interrogatory No.] 7 is **one** requesting information for each work
location identified by Tatung's response to interrogatory No. 6.

*Id*. at 60:24 and 61:1-2 (emphasis added).

[Interrogatory No.] 8 is **one** aimed at quantifying Tatung's
revenues from the United States.

*Id*. at 61:3-4 (emphasis added).

[Interrogatory No. 9] is legitimately **one** aimed at identifying
Tatung customers of visual display products in the U.S. as to
Tatung America and related information.

*Id*. at 61:9-11 (emphasis added).

[Interrogatory No.] 10 is legitimately **one** aimed at identifying
shipments of Tatung visual display products to the U.S. as to
Tatung America and related information.

*Id*. at 61:12-14 (emphasis added).

[Interrogatory No.] 11 is **one** aimed at identifying, including by
person as to Tatung America, Tatung's shipments and delivery of
products or services in Delaware and related information.

*Id*. at 61:15-18 (emphasis added).

[Interrogatory No.] 12 is **one** aimed at identifying Tatung's U.S.
distributors.

*Id*. at 61:19-20 (emphasis added).

[Interrogatory No.] 13 is **one** seeking the identity of Tatung's
distribution network and channels through which its visual display

24

products are distributed throughout the United States or to the United States or to Delaware.

*Id.* at 61:21-24 (emphasis added).

Interrogatory No. 14 I consider to be **four** separate interrogatories seeking information concerning the chain of distribution as to four discrete products, all of which were offered or purchased through different retail channels.

*Id.* at 62:1-5 (emphasis added).

[Interrogatory No.] 15 I consider to be **four** in that it seeks each step in the chain of distribution by which four separate discrete pieces of equipment arrived in Delaware.

*Id.* at 62:6-9 (emphasis added).

[Interrogatory No.] 16 I consider to be **two** in that it seeks, first, all of Tatung's products available for purchase through the Internet and, second, the identity of Web site vendors authorized to sell Tatung's visual display products.

*Id.* at 62:10-14 (emphasis added).

[Interrogatory No.] 17 is **one** seeking reports generated by Tatung with respect to the distribution, shipment, and sale of its visual display products in or to the United States.

*Id.* at 62:15-18 (emphasis added).

[Interrogatory No.] 18 is **one** asking that Tatung delineate its contacts with Delaware.

*Id.* at 62:19-20 (emphasis added).

[Interrogatory No.] 19 is **one** asking Tatung to identify any affirmative steps it's taken to prevent its products from reaching the Delaware market.

*Id.* at 62:21-23 (emphasis added).

[Interrogatory No.] 20 is **one** requesting the brand names and related information for Tatung visual display products manufactured, marketed, imported, distributed and/or sold in the United States.

*Id.* at 62:24 and 63:103 (emphasis added).

Accordingly, the Special Master concluded that the interrogatories propounded by LPL to each Tatung Defendant totaled 27, well within the 50 interrogatories permitted under Local Rule 26.1(b).  LPL then pressed for an order requiring the Tatung Defendants to respond to the interrogatories within a two-week period.

Having lost on the count issue, the Tatung Defendants requested that the Special Master proceed to consider their other objections to the interrogatories.  In Tatung's view, it couldn't object with specifity to certain of the interrogatories until the primary issue of count was resolved.  March 30, 2005 Transcript at 72:1-6 ("until we have a resolution of the issue of the counting, again, it's not possible because we don't know exactly where and how we have to be looking.").

LPL argued, with supporting authority, that to the extent other specific objections had not been raised in the Tatung Defendants' responses, those objections had been waived.  March 30, 2005 Transcript at pp. 64-70, and 90:16-19.  Tatung requested an opportunity to submit contrary authority, *Id.* at 92:2-7, and the Special Master set a schedule for written submissions.  *Id.* at 96:13-22.  Thereafter, the Special Master received a March 31, 2005 submission from Tatung's counsel stating he had been mistaken about the legal support for Tatung's position.  On April 1, 2005, LPL renewed its request to compel the Tatung Defendants to respond to the outstanding interrogatories.  However, the Special Master's further consideration of discovery issues relating to the interrogatories was mooted by the April 20, 2005 stipulation by the Tatung Defendants that, *inter alia*, consents to the jurisdiction of this Court.  D.I. 188.

In turning to the issue of sanctions, the Special Master concludes that sanctions are appropriate for the unjustified failure of the Tatung Defendants to respond to interrogatories.  It is undisputed that the Court ordered jurisdictional discovery on November 17, 2004 and set a 90-

day period (until February 15, 2005) for its completion. It is also undisputed that LPL

propounded jurisdictional interrogatories upon the Tatung Defendants on or about November 29,

2005. Finally, it is undisputed that the Tatung Defendants refused to respond to interrogatories

on the basis of boilerplate objections and/or their objections as to count.

Tatung participated in the January 24, 2005 hearing before the Court with the knowledge

that the Court considered it to be a hearing on a motion by LPL to compel discovery responses

from Tatung. At that hearing, the Court directed that any incomplete responses to interrogatories

should be submitted by Tatung to LPL within a week. It also cautioned Tatung that it was

subject to sanctions if it mistakenly relied upon its objections to interrogatory count:

> [T]hat rule has been around so long, lawyers ought to be able to
> count . . . but **if it's a counting problem, you better be sure
> you're going to win it** by a standard beyond a reasonable doubt,
> . . . and if you're arguing over whether [their] subparts are really
> questions, just think about that for a minute. That's even kind of a
> waste of a special master's time, **unless they're really playing
> with you. And then they're going to get sanctioned.** Not [just
> Tatung], but anybody that's fighting that kind of a thing on that
> kind of basis, you know, they're not going to do well.

D.I. 132 at 51:7-12; 52:10-24, and 53:1 (emphasis added). The Special Master concluded at the

March 30, 2005 hearing that Tatung's position – of counting the first four interrogatories

propounded by LPL as numbering in excess of 50 interrogatories – was not an argument

supported by even Tatung's own authority.

Pursuant to Rule 33, a party's answers or objections to interrogatories must be served

within 30 days. Fed. R. Civ. P. 33(b)(3). Objections to interrogatories must be stated

specifically and with particularity so that the objection can be reviewed and understood by both

the opposing party and the Court. Fed. R. Civ. P. 33(b)(4); *Josephs v. Harris Corp.*, 677 F. 2d

985, 992 (3d Cir. 1982) ("[T]he mere statement by a party that the interrogatory was 'overly

broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection to

an interrogatory. On the contrary, the party resisting discovery 'must show specifically how . . . each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive'") (citation omitted). *See also, Walker v. Lakewood Condo. Owners Assoc.*, 186 F.R.D. 584, 587 (C.D. Cal. 1999) ("Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all"). The Special Master concludes that the Tatung Defendants' objections to interrogatories were classic boilerplate and completely fail to meet the specificity test.

Having considered the parties' written submissions on the issue of sanctions, the Special Master concludes that sanctions are appropriate, pursuant to Fed. R. Civ. P. 37(d), where the failure of the Tatung Defendants to properly respond to interrogatories was neither substantially justified nor supported by relevant authority. The Special Master therefore recommends that Tatung pay LPL's reasonable expenses caused by its failure to respond to LPL's interrogatories, including attorney fees and Special Master fees. Fed. R. Civ. P. 37(d); s*ee also, Haraway,* 213 F.R.D. at 165-66 (noting "courts have readily awarded sanctions against individuals who have in some measure complied with Rule 37(d) but have violated the basic requirement of the Rule to cooperate in discovery."); *Woulard,* 2004 WL758358 at *1-2 (applying Rule 37(d) to sanction plaintiff who failed to respond to interrogatories or produce discovery).

**C.    Failure to Produce Requested Documents**

**1.    Legal Standard**

Pursuant to Federal Rule of Civil Procedure 34(b):

> The party upon whom the request is served **shall serve a written response within 30 days after the service of the request . . . The response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for the objection shall be stated. If objection is made to part of an item or category, the part shall be specified and inspection**

**permitted of the remaining parts.** The party submitting the request may move for an order under Rule 37(a) with respect to any objection to or other failure to respond to the request or any part thereof, or any failure to permit inspection as requested.

**A party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request.**

Fed. R. Civ. P. 34(b) (emphasis added). Under Rule 37 "an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(3). When a party fails to comply with the provisions of Rule 34, "the court . . . may make such orders in regard to the failure as are just." *Woulard*, 2004 WL 758358 at *1-2 (quoting Fed. R. Civ. P. 37(d)).

### 2.    The Tatung Defendants' Failure to Produce

On November 29, 2004, LPL served requests for production of documents upon each of the Tatung Defendants. D.I. 98. The Tatung Defendants responded only by asserting boilerplate objections to the production requests, and failed to produce any documents when they served their objections to LPL on or about January 5, 2005. D.I. 113.

At the January 24, 2005 hearing with the Court, counsel for LPL – emphasizing the importance of certain of those documents to scheduled depositions – urged the Court to compel the production of responsive documents:

> *LPL Counsel*:    [W]e have served interrogatories, and we also served document requests in early December. And as of today, Your Honor, we haven't received a single document. Obviously, it would facilitate the deposition if I had in advance some of the documents. For example, Your Honor, one of the reasons I gave you [copies of the declarations submitted in support of Tatung's jurisdictional challenge] is that they refer in their declarations to records that they relied upon to put forth the facts, which include things like they are selling $132 million of product in the U.S. . . . that's in their own papers. So they've put those numbers in the

papers. They have also said those are based on specific records that they've reviewed, yet I don't have those records.

Your Honor, I would like to have those records before I take these depositions.

*Tatung Counsel*: Sounds like it's something he should have. . . He should have those documents.

*The Court*: Interrogatories and documents, you['re] absolutely correct, should be resolved before deposition practice occurs. And we're focused on [late] February . . . That's material that the parties seeking deposition wants to have before they start the deposition . . . If there's interrogatories that are properly served, they need to be responded to, **and the same with documents. . . . You've got to give them up.**

*Tatung's Counsel*: **We'll absolutely give them up.**

D.I. 132 at pp. 48-50 (emphasis added). The Court concluded with the following direction to Tatung: "It seems to me that all the documents relative to the declarations that [LPL] cited . . . ought to be able to be given over by the end of this week, the very first part of next week." *Id*. at 56:17-21.

On January 27, 2005, counsel for LPL confirmed that Tatung's counsel had agreed to forward to LPL by January 31 "all of the documents that the Tatung defendants agreed to produce and their responses to the request for documents and all of the documents discussed at the January 24, 2005 hearing." January 27, 2005 letter from Cass W. Christenson, Esquire to Robert C. Weems, Esquire. Tatung America subsequently produced only 46 pages of documents; Tatung Taiwan produced nothing. By letter dated February 3, 2005, LPL's counsel confirmed that he had been advised that counsel for Tatung was "not aware of any intention to produce further documents." In response, LPL advised that it would file a motion to compel unless it received assurance that all responsive documents would be produced. February 3, 2005 letter from Cass W. Christenson, Esquire to Robert C. Weems, Esquire. Roadblocked again,

LPL moved on February 7, 2005 for leave to file an expedited motion to compel jurisdictional

discovery from the Tatung Defendants, including a request to compel the production of

documents. D.I. 154.

While LPL's second motion to compel was pending, the re-noticed depositions of Tatung

America proceeded without any further document production by either of the Tatung

Defendants. During those depositions, witnesses identified the existence of documents that had

not been produced, and that clearly appear to be responsive to LPL's requests for production.

For example:

> Q:  So is it your understanding that the document marked TUS 36
>       and TUS 37 does not include any sales or shipments to
>       Delaware for any time after December 31, 2003?
> A:   That's how it appears to me.
> Q.  And is it your testimony that you've reviewed a **sales tax
>       report that shows sales and shipments of products to
>       Delaware for the period that includes 2004**?
> TATUNG COUNSEL:  Objection. Asked and answered.
> THE DEPONENT:  Yeah, my recollection is not that clear but
>       that's what I recall.
> LPL  COUNSEL:    And [addressing Tatung counsel], as I
>       understand Tatung America's position, Tatung America does
>       not intend to provide that document during this deposition.
>       Is that right?
> TATUNG  COUNSEL:    You can ask your [next] questions,
>       counsel.

Sun Deposition at 107:24-25 to 108:1-15 (emphasis added).

> Q.  Let's talk about the records that Tatung America keeps with
>       respect to product sales.
>       Does Tatung America have documents that show how many
>       LCD monitors it sells each month?
> A.   Yes.
> Q.  What are those documents called?
> A.   **Mon[th]ly sales report**.
> Q.  Who prepares the monthly sales report?
> A.   I.T. room.
> Q.  Did you say I.T. room?
> A.   Yes.

Q. And is that based on information in Tatung America's database?
A. Yes.
Q. Does the report then go to you, Mr. Tsou, as manager?
A. Yes, I will have the report.
Q. You receive the monthly sales reports?
A. Yes.

Tsou Deposition at 38:18-25 to 39:1-11 (emphasis added).

Q. What **information is included in the monthly sales report**?
A. The **models** and the **customers** and the **quantity**.
Q. Does it give a **dollar amount**?
A. Yes.
Q. When you say "models," would an example of a model be the L17AMTN?
A. That's one of the models.
Q. So from the monthly sales report can you determine how many of a particular model were sold each month?
A. Yes.
Q. How far back do the monthly sales reports go?
A. I don't know.
Q. Since the time that you have been a Sales Manager, have there always been monthly sales reports?
A. Yes.

Tsou Deposition at 44:1-17 (emphasis added).

Q. How can you trace customers, of monitors?
A. Through the computer system.
Q. Does Tatung America have documents that show where products were shipped?
   Let me ask it again. Let me ask it again, more specifically. Does Tatung America have **documents showing where computer monitors are shipped**?
A. Yes.

Tsou Deposition at 41:17-24 (emphasis added).

Q. Are you familiar with any documents called inventory reports?
A. Our inventory report?
Q. Yes, at Tatung America.
A. Yes.
Q. What is an inventory report?
A. To show the products we have on hand.
Q. Would that include computer monitor products?
A. Yes.

32

> Q.  So **inventory reports would show the computer monitor products that Tatung America has available in its inventory for sale**?
>
> A.  Yes.
>
> Q.  Who prepares inventory reports?  Well, first of all, are inventory reports prepared on a regular basis at Tatung America?
>
> A.  Yes.
>
> Q.  How often?
>
> A.  Every week.

Tsou Deposition at 65:19-22 to 66:1-12 (emphasis added).

As of the March 30, 2005 hearing held before the Special Master, Tatung Taiwan had still not produced any documents whatsoever.  Tatung America had not produced any additional documents to supplement its 46 page production.  According to counsel for LPL, although additional responsive documents were identified during depositions of Tatung America employees, these responsive documents were never produced:

> The depositions went forward with essentially − I was essentially in the dark without documents or interrogatory responses.  [I] proceeded with the depositions which I had to do because we were unable to obtain an agreement from [Tatung's] counsel to extend our discovery period.  So we had a February 22 cutoff.  Again, there was a sense of urgency to try to complete all this discovery.  **[Tatung] would agree neither to provide additional time for discovery, nor to provide additional discovery.**
>
> We proceeded with the depositions and during the three depositions, which were on consecutive dates, February 7th, 8th, and 9th, I repeatedly asked during those depositions when **witnesses would identify documents that were on-site,** that [could we] take a break and the witness be permitted to obtain documents.  I was consistently rebuked and **no further documents were produced during those depositions.**

March 30, 2005 Transcript at 23:10-15, 20-24 and 24:1-3 (emphasis added).

LPL's counsel further represented that, while its motion to compel was pending, LPL sought to revolve the impasse by voluntarily paring down the categories of their document

33

requests from approximately 42 categories to approximately 18 categories of documents "just to get the most minimum necessary information as quickly and efficiently as we could." March 30, 2005 Transcript at p. 24. In response to this offer, Tatung countered that it would agree only to create a special report that produced information with respect to only those models of Tatung equipment that LPL accused of infringement. However, Tatung's counteroffer was conditional on LPL's agreement to severely restrict or forego all other jurisdictional discovery, including depositions. The "catch 22" of Tatung's counteroffer was that, without the additional discovery from Tatung, LPL could not identify for Tatung all of the accused products necessary to permit the creation of a meaningful report. *Id.* at pp. 27-31. The impasse manufactured by the Tatung Defendants therefore continued unabated, with LPL counsel representing to the Special Master at the March 30, 2005 hearing:

> We are now four months into jurisdictional discovery. We have **essentially no interrogatory answers, we have 46 pages of documents from Tatung America, zero documents from Tatung Company, and we have got no deposition testimony from Tatung Company**.

March 30, 2005 Transcript at 34:7-10 (emphasis added).

Pursuant to Rule 34, a party must produce documents for inspection within 30 days after the service of the request. Fed. R. Civ. P. 34(b). It is undisputed that throughout the pendency of the jurisdictional discovery period, Tatung Taiwan refused to produce any documents whatsoever responsive to LPL's document request. Tatung America produced only 46 pages of responsive documents. It is clear from the transcript of the parties' January 24, 2005 hearing before the Court that the Court did not expressly excuse the Tatung Defendants' duty to produce documents for inspection. To the contrary, the Court expressly instructed Tatung:

> That's material that the party seeking deposition wants to have before they start the deposition. So as a general matter if [there

are] interrogatories that are properly served, they need to be responded to, and **the same with documents**. And we all agree.

D.I. 132 at 50:6-12 ((emphasis added).

In addition to those documents the Special Master ordered produced at the March 30, 2005 hearing, it is clear to the Special Master that, at a minimum, the documents reviewed by those who submitted declarations in support of Tatung Taiwan's motion to dismiss on jurisdictional grounds would have been within a subset of documents responsive to LPL's document production requests. *See* D.I. 20. It is also clear from the Special Master's review of the transcripts of the depositions of Tatung America and its employees that certain documents reviewed by declarants – as well as other documents responsive to LPL's document requests – exist, but were not produced. *See supra* at pp. 29-31 (citing, e.g., sales tax report that shows sales and shipments of product to Delaware for period including 2004; monthly sales reports, computer shipment reports, inventory reports, and reports of transactions with third party vendors).

Therefore, having considered the parties' written submission on the issue of sanctions, the Special Master concludes that sanctions are appropriate, pursuant to Fed. R. Civ. P. 37(d), where the failure of the Tatung Defendants to properly produce documents for inspection was neither substantially justified nor supported by relevant authority.[10] The Special Master therefore recommends that Tatung pay LPL's reasonable expenses caused by its failure to respond to LPL's document requests, including attorney fees and Special Master fees. Fed. R. Civ. P. 37(d); *Haraway*, 213 F.R.D. at 165, 66 (noting "courts have readily awarded sanctions against individuals who have in some measure complied with Rule 37(d) but have violated the basic

---

[10] The Special Master does not pause in this regard even though several of the document requests were "fine tuned" during the course of the March 30, 2005 hearing. The effort in this regard is something that the Tatung Defendants could have forestalled had they made a good faith effort to meet and confer. In this regard, the Special Master concludes they did not.

requirement of the Rule to cooperate in discovery"); *Novartis Pharmaceuticals*, 203 F.R.D. at

164 (finding production of only domestic sales and marketing documents to be "inadequate to

satisfy burden under Rule 26(b) to produce all relevant, non-privileged documents); *Woulard*,

2004 WL 758358 at *1-2 (applying Rule 37(d) to sanction plaintiff who failed to respond to

interrogatories or produce discovery); and *Liafail, Inc. v. Learning 2000, Inc.*, C.A. Nos. 01-599,

01-678 at *3 (D.Del. Dec. 23, 2002) (Sleet, J.) [available as 2002 WL 31954396] ("where the

nature of the alleged breach of a discovery obligation is the non-production of evidence, the

court has brought discretion in fashioning an appropriate sanction.").

**D.    Sanctions are Warranted**

For the foregoing reasons, the Special Master concludes that the persistent failures of the

Tatung Defendants to comply with their discovery obligations – without substantial justification

and unsupported by relevant legal authority – has unfairly burdened judicial resources, including

this Court's scheduling orders for both jurisdictional discovery and the management of this case.

Additionally, the Tatung Defendants' failures to appear at depositions, failures to respond to

interrogatories, and failures to produce documents responsive to document requests have

prejudiced LPL by forcing it to incur unnecessary attorney fees, expenses and delay.    The

Special Master therefore recommends:

(1)    that sanctions be assessed against the Tatung Defendants, jointly and severally,

for the unreimbursed expenses and reasonable costs, including attorney fees, incurred by LPL in

(i) preparing for any noticed deposition for which a deponent did not appear; (ii) preparing

papers in support of its motions to compel and/or for sanctions; (iii) preparing papers in

opposition to motions by the Tatung Defendants for protective orders; (iv) preparing for and

attendance at the January 24, 2005 hearing before the Court; (v) preparing papers submitted to

the Special Master on the jurisdictional discovery disputes; (vi) preparing for and attendance at

the March 30, 2005 hearing before the Special Master; (vii) preparing for and participation in the April 4, 2005 teleconference with the Special Master; (viii) preparing for and attendance at the April 20, 2005 aborted hearing before the Special Master; and (ix) upon application, such other and further costs and expenses as may be reasonable and just;

    **(2)**    that LPL **not later than August 26, 2005** submit to the Special Master, by affidavit, a summary of the unreimbursed expenses and costs for which it seeks reimbursement pursuant to subparagraph (1) above, with detail sufficient to permit assessment of the reasonableness of such costs (detail that would implicate either the attorney-client or work product privilege may be submitted for *in camera* review);

    **(3)**    that the Tatung Defendants, jointly and severally, pay all amounts due as sanctions to LPL within thirty (30) days of a determination by the Special Master that the amounts for which LPL seeks reimbursement are reasonable; and

    **(4)**    that sanctions be imposed against the Tatung Defendants, jointly and severally, in the amount of LPL's *pro rata* share of the costs for the Special Master's services in connection with the jurisdictional discovery phase, so that the Tatung Defendants will pay 100% of such costs.

    **These findings and recommendations will become a final order of the Court after the Special Master has ruled on the reasonableness of the amount of sanctions, unless objection is timely taken in accordance with the provisions of Fed. R. Civ. P. 53(g)(2).**

**II.**    <u>**Analysis – Assessment of Sanctions**</u>

    Having concluded that the imposition of sanctions is warranted, the Special Master turns to the issue of whether the recommended sanctions should be imposed against the Tatung Defendants, their counsel or both. Fed. R. Civ. P. 37(d). In this regard, the Special Master is mindful of the opinion issued in *Safer Display Technology, Ltd. v. Tatung Company and Tatung*

*Co. of America, Inc.*, No. Civ. A. 2:04CV154 (E.D. Va. Dec. 29, 2004) (Doumar, D. J.) [available as 2004 WL 3330838], and the underlying case record (herein after, the "Virginia Action"). LPL has referenced the Virginia Action for judicial notice in several of its motions before the Court and submissions to the Special Master.

This Court, where appropriate, has taken judicial notice of facts in the public record. *See, e.g., In re Delmarva Securities Litigation*, 794 F. Supp. 1293, 1299 (D.Del. 1992) ("this Court is free to take judicial notice of certain facts that are of public record if they are provided to the Court by the parties seeking to have them considered"); *accord, PHP Liquidating, LLC v. Robbins PHP Liquidating*, 291 B.R. 592, 602 n. 7 (D.Del. 2003).

Facts of the type contained in judicial case records and opinions are particularly appropriate for judicial notice. As reasoned by Judge Stapleton of the Third Circuit: "it is not seriously questioned that that filing of documents in the case record provides competent evidence of certain facts – that a specific document was filed, that a party took a certain position, that certain judicial findings, allegations, or admissions were made." *Nantucket Investors II v. California Federal Bank (In re Indian Palms Associates, Ltd.)*, 61 F. 3d 197, 205 (3d Cir. 1995). *See also, Furnari v. Warden, Allenwood Federal Correctional Institution*, 218 F. 3d 250, 255 (3d. Cir. 2000) (taking judicial notice of affidavit submitted by government attorney in an unrelated trial that described a witness as unreliable); and *Capital City & Trust v. Kroh (In re George P. Kroh)*, 88 B.R. 987, 988-89 (Bankr. W. D. Mo. 1988) (taking judicial notice of findings of fact and conclusions of law entered in adversary actions against other parties by the same debtor as "highly relevant evidence of [debtor's] plan and scheme to obtain loans using false financial statements," as well as of the debtor's intent).

Accordingly, the Special Master takes judicial notice of certain of the findings of facts and conclusions of law made by the presiding judge in the Virginia Action on the basis that the opinion is a matter of public record that is available and verifiable in the public records of the United States District Court for the Eastern District of Virginia, as well as by computer through the Westlaw and other legal research databases. Judicial notice of the Virginia Action is taken solely for the purpose of determining against whom sanctions should properly be imposed.

In the Virginia Action, a patentee (Safer Display Technology, Ltd.) brought an infringement action against the same corporate entities referenced as Tatung Taiwan and Tatung America in the instant case. The similarities do not end there:

- In both the Virginia Action and the instant action, Tatung Taiwan filed motions to dismiss for lack of personal jurisdiction.[11]

- In both the Virginia Action and the instant case, declarations by David Shan-Juh Chang supported the motions of Tatung Taiwan to dismiss the litigations on jurisdictional grounds.[12]

- In both the Virginia Action and the instant case, declarations by Robin Tsou also supported motions to dismiss litigations on jurisdictional grounds.[13]

- In both the Virginia Action and the instant case, the Courts ordered a limited period of jurisdictional discovery.[14]

---

[11] In the Virginia Action, *see* 2004 WL 3330838 at *1. In the Delaware action, *see* D.I. 16.

[12] In the Virginia Action, *see* D.I. 8, 10 and 16 on civil docket for case 2:04-CV-00154-RGD (E.D. Va.). In the Delaware action, *see* D.I. 20.

[13] In the Virginia Action, *see* D.I. 105 on civil docket for case 2:04-CV-00154-RGD (E.D. Va.). In the Delaware action, *see* D.I. 19, Exh. 3.

[14] In the Virginia Action, *see* 2004 WL 3330838 at **1-2 (60-day period of jurisdictional discovery). In the Delaware action, *see* D.I. 88 (ordering a 90-day period of jurisdictional discovery, scheduled to end on February 15, 2005).

- In both cases, the limited periods for jurisdictional discovery were prolonged by multiple discovery objections and/or disputes.[15]

- In both cases, the "meet and confer" communications between counsel did not further resolution of the discovery disputes but, rather, served to prolong the jurisdictional discovery period.[16]

- In both cases, the patent holders were forced to file motions to compel Tatung Defendants to respond to basic discovery.[17]

- In both cases, Tatung Taiwan insisted that depositions of its employees be noticed for Taiwan, but allowed none of the noticed depositions to go forward.[18]

- In both cases, Tatung Taiwan refused to go forward with the noticed deposition of David Shan-Juh Chang, whose declaration supported its motions to dismiss on jurisdictional grounds.[19]

- In both cases, the Tatung Defendants avoided going forward with noticed depositions just days before they were scheduled, by filing motions for protective orders.[20]

- In both cases, jurisdictional discovery went nowhere as the close of the jurisdictional discovery periods approached.[21]

---

[15] In the Virginia Action, see 2004 WL 3330838 at *2. In the Delaware action, see supra at pp. 2-7.

[16] In the Virginia Action, see 2004 WL 3330838 at *2 ("amicability and communication between counsel for the parties has deteriorated significantly, which has also prolonged the jurisdictional discovery period"). In the Delaware action, see infra at p. 41.

[17] In the Virginia Action, see D.I. 116 passim. In the Delaware Action, see supra at pp. 3-7.

[18] In the Virginia Action, see D.I. 116 at pp. 12-14. In the Delaware action, see supra at pp. 17-19.

[19] In the Virginia Action, see D.I. 116 at pp. 12-13. In the Delaware action, see supra at pp. 17-19.

[20] In the Virginia Action, see D.I. 116 at pp. 13-14. In the Delaware action, see pp. 2-7.

[21] In the Virginia Action, see D.I. 116 at p. 13. In the Delaware Action, see D.I. 132 at p. 4:13-19.

- In both cases – after burdening the Court and patent holders with substantial costs and delays – Tatung Taiwan belatedly agreed to consent to the jurisdiction of the courts.[22]

There is, however, at least one significant difference between the Virginia Action and the instant case. In the instant case, the Tatung Defendants are jointly represented by entirely different counsel than represented the Tatung Defendants in the Virginia Action.[23] It does not appear from the docket sheets in either action that any individual attorney appeared for the Tatung Defendants in both cases.

The marked similarity in the conduct of the Tatung Defendants during jurisdictional discovery in both cases cannot, in the Special Master's view, be attributed to advice of counsel. For that reason, the Special Master concludes that the Tatung Defendants are the architects of their own ill-conceived discovery strategy. It is particularly disappointing that the Tatung Defendants determined to follow that strategy in this case, even after similar conduct had been subject to the consideration of sanctions in the Virginia Action. As succinctly noted by the Honorable Robert G. Doumar in the Virginia Action:

> The Stalingrad Defense, in which the proponent tries to wear down the adversary until he succumbs to the depths of a longsome, frigid winter, cannot be implemented without severe costs to the proponent himself.

2004 WL 3330838 at *1. The Special Master agrees. Accordingly, the Special Master concludes that the sanctions recommended herein be assessed against – and only against – the Tatung Defendants, jointly and severally.

---

[22] In the Virginia Action, see D.I. 110 on docket 2:04-cv-00154 and 2004 WL 3330838 at **5-11. In the Delaware action, see D.I. 188.

[23] In the Virginia Action, the Tatung Defendants were represented by attorneys from various offices of the law firm of Greenberg & Traurig LLP. In the Delaware action, the Tatung Defendants are represented by lead counsel Robert C. Weems, Esquire, of the Law Offices of Baum & Weems and by Delaware co-counsel Jeffrey S. Goddess, Esquire, of the law firm Rosenthal Monhait Gross & Goddess, P.A.

## END NOTE

The Special Master would be remiss at the close of this chapter if several observations with respect to the course of jurisdictional discovery were not made.

**First**, it is clear to the Special Master that the discovery disputes between the parties were capable of reasonable resolution in accordance with controlling law and without burdening the Court's time. It is fair to say that the "meet and confer" process between counsel was an abject failure in moving issues towards resolution. Rather, the process served to further entrench the parties in their respective positions and to unnecessarily prolong jurisdictional discovery. Primary among the reasons for this failure was an abrogation of the duty to comply with the rules that govern litigation in this Court, coupled with a breakdown in the civility and professionalism in the communications between counsel.

**Second**, it is a privilege for an attorney to be admitted to practice *pro hac vice* before the Delaware District Court. In the opinion of the Special Master, it is a privilege that can and should be withdrawn if attorneys so admitted fail to comply with the applicable rules of the Court, and to conduct themselves with the civility and professionalism required of members of the Delaware bar.

**Third**, going forward – to avoid the risk of sanctions in a form beyond mere monetary sanctions – the Special Master cautions counsel to rethink their game plan and resolve not to engage in the conduct that so tainted the jurisdictional discovery in this case.

ENTERED this 16th day of August, 2005.

Vincent J. Poppiti (DSBA No. 100614)
Special Master

# EXHIBIT 6

RECEIVED

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF VIRGINIA

### (Norfolk Division)

FILED

DEC 2 3 2004

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

| | |
|---|---|
| SAFER DISPLAY TECHNOLOGY, LTD., | ) |
| | ) |
| Plaintiff, | ) Civil Action No.: 2:04cv154 |
| v. | ) Judge Robert G. Doumar |
| | ) |
| TATUNG COMPANY and | ) Pursuant to Local Rule 5 and the Protective |
| TATUNG CO. OF AMERICA, INC. | ) Order Entered on September 28, 2004, the |
| | ) Declaration of Douglas Weinstein and |
| Defendants. | ) Attachments Thereto are Filed Under Seal. |
| | ) |
| | ) |

## PLAINTIFF SAFER'S SUBMISSION REGARDING COURT'S HEARING FOR DECEMBER 29, 2004 ON TATUNG'S MOTION FOR LEAVE TO WITHDRAW ITS JURISDICTIONAL CHALLENGE

### I.    Introduction

Tatung's litigation tactics have needlessly driven up litigation costs since July. It should be sanctioned for its tactics and ordered to pay Safer's attorney fees.

In attempting to have this case dismissed for lack of personal jurisdiction, Tatung never denied that its accused computer monitors were sold in Virginia. Instead, it put Safer to the burden of proving sales of Tatung monitors in Virginia—sales that would be expected from a multibillion-dollar company that annually sells hundreds of millions of dollars of products in the United States.

In refusing to submit to the jurisdiction of this court, Tatung forced Safer to pursue jurisdictional discovery from defendants and from third party distributors and sellers, and then Tatung obstructed Safer's efforts to collect that discovery. While Tatung did finally submit to the jurisdiction of this Court, it did so only after consuming significant resources of the Court

116

and the parties, and on the eve of depositions ordered by the Court. In a final display of hubris, Tatung has attempted to shift blame to Safer for the unnecessary wheel spinning and litigation costs that resulted directly from Tatung's litigation tactics.

On December 22, 2004, Safer discovered evidence indicating that Tatung-Taiwan was the exclusive manufacturer for North America for at least two different monitors for a national computer vendor whose monitors are undeniably sold in Virginia, which means that Tatung's jurisdictional challenge was apparently not brought in good faith.[1] Judge Doumar explicitly warned Tatung that "if all they are doing is running up the costs" with their jurisdictional challenge, "then they're going to pay for it." That is precisely what Tatung has done, despite the Court's express warning, and despite its exclusive North American supply contract with the nationwide computer vendor. Accordingly, Tatung should be ordered to pay Safer's attorneys' fees.

## II.    Background

### A.    The Parties

Plaintiff Safer Display Technology, Ltd. ("Safer") is the owner of U.S. Patent No. 4,270,145 ("the '145 patent") which covers, *inter alia,* computer monitors with on-screen display features. (Complaint (Dkt. No. 1) ¶ 13.) At least 28 corporations have taken a license to practice the valuable on-screen display features covered by the '145 patent, including Sony, Toshiba, Samsung, Sharp, NEC, JVC, LG Electronics, and Phillips Magnavox. In its Complaint, Safer alleges that Tatung Company ("Tatung-Taiwan") and Tatung Company of America, Inc. ("Tatung-U.S.") infringed, or induced others to infringe, the '145 patent by selling and importing

---

[1] Safer has no reason or evidence to believe that this manufacturing contract was cancelled and/or not fulfilled. Safer thus concludes that the exclusive manufacturing relationship indeed existed. In fact, confidential discovery from Tatung-Taiwan and third parties all indicates that Safer is entirely correct in this conclusion. (See Weinstein Decl. ¶¶ 3-17.)

into the U.S. Tatung-Taiwan's computer monitors with on-screen display features during 1998 and 1999. (*Id.* ¶¶ 11, 13.)

Defendant Tatung-Taiwan is a multibillion-dollar manufacturer and self-described "worldwide leader in the design and manufacturing of a vast array of digital consumer products." (www.tatung.com.) Tatung-Taiwan's website lists its subsidiary, Tatung-U.S., as one of its worldwide business locations. (Neal Decl. Supporting Safer's Opposition to Tatung-Taiwan's Motion to Dismiss ("Neal Decl.") (Dkt. No. 11), ¶ 8.) Tatung-Taiwan is a 50% owner of Tatung-U.S., and Tatung-Taiwan's General Manager is also one of the four directors of Tatung-U.S. (*Id.* ¶ 6.) During the years 1998 and 1999 at issue in this lawsuit, Tatung-Taiwan sold over $498,000,000 and $380,000,000 in products into the United States. (*Id.* ¶ 11.) Furthermore, Tatung-Taiwan has sold and continues to sell large numbers of monitors to computer distributors, including Compaq and Hewlett-Packard. (Weinstein Decl. ¶¶ 8, 10, 17.). These computer distributors place their names and model numbers on the monitors and then sell them nationwide, including in Virginia, through national distribution channels.

A large part of Tatung-Taiwan's jurisdictional challenge has been its assertion that, although it admittedly sells its monitors to national computer vendors such as Compaq and Hewlett-Packard, it supposedly did not know whether its monitors were sold in Virginia because it was possible that there were additional monitors made by other manufacturers that were similarly rebranded and resold by Compaq and Hewlett-Packard. Indeed, counsel for Tatung-Taiwan specifically argued that to Judge Bradberry on December 1, 2004 (Weinstein Decl. Tab 33, at 16:9-13 ("we don't know how many manufacturers Hewlett-Packard or Compaq have other than Tatung").) That statement is contradicted by evidence indicating that Tatung-Taiwan

was the exclusive North American manufacturer for a national computer distributor in 1998.

(This confidential relationship is discussed in the Weinstein Decl. ¶¶ 3-17, submitted under seal.)

**B.    Tatung's- Taiwan's Sales of Infringing Monitors in the U.S. is Evident From its Application For FCC Authorization**

In addition, according to the Federal Communications Commission ("FCC"), the U.S.

agency responsible for regulating electronic devices including monitors, Tatung-Taiwan applied

for and obtained FCC authorization for certain of its monitors.  (Weinstein Decl. ¶ 18.)  There

would be no reason for Tatung-Taiwan to seek FCC approval for its monitors if Tatung-Taiwan

did not intend for its monitors to be sold in the U.S.  (*Id.*)

Furthermore, Safer has recently learned from information from the FCC that Tatung-

Taiwan applied for authorization to sell Compaq MV700 color monitors with on-screen display

functions during the applicable time period (1998-99).  (Weinstein Decl. ¶¶ 18-23.)  Safer has

further learned from documents recently produced by Circuit City, Ingram Micro, and Office

Depot that these companies had significant sales of Compaq MV700 monitors in Virginia during

the applicable period.  (The specific numbers of monitors sold by these companies are

confidential and discussed in the supporting Weinstein Declaration (¶¶ 10-16), submitted under

seal.)

Safer was on the brink of taking depositions to prove that these Compaq MV700

monitors were manufactured by Tatung-Taiwan, and was pursuing similar jurisdictional

information from Hewlett-Packard, when Tatung-Taiwan abruptly moved to withdraw its

jurisdictional challenge on December 9, 2004.  (Dkt. No. 108.)  And as explained above,

approximately two weeks later, Safer discovered evidence that Tatung-Taiwan was an exclusive

manufacturer for North America for at least two monitors sold nationally and in Virginia.

4

**C.    Tatung-Taiwan's Challenge to Personal Jurisdiction Lacked a Good Faith Basis**

Tatung-Taiwan's deadline to respond to Safer's complaint was extended by a stipulated order to July 15, 2004. (Dkt. No. 4). On that date, Tatung-Taiwan filed its Motion to Dismiss, contending—despite its exclusive manufacturing relationship for North America with a national computer vendor, sales of hundreds of million dollars of its consumer electronics products in the U.S., its sales to nationwide vendors like Compaq and Hewlett-Packard, and its 50% ownership and managerial control over Tatung-U.S.—that this Court supposedly lacks personal jurisdiction over Tatung-Taiwan. (Dkt. Nos. 6 and 7.) Tellingly, Tatung-Taiwan did not argue in its papers that its monitors were *not* sold in Virginia, even though Tatung-Taiwan was legally obligated to reasonably investigate whether its defense was valid (see Argument at pp. 17-18 below). Furthermore, Tatung-Taiwan could not argue in good faith that its monitors were not sold in Virginia because it knows, at a bare minimum, that (1) it was the exclusive manufacturer for North America for a national computer vendor in 1998, and (2) that its monitors were sold by Compaq and Hewlett-Packard in nationwide distribution channels to retailers such as Circuit City, Best Buy, and Office Depot, who sell monitors in Virginia. Finally, it defies reason that a sophisticated, global, multi-billion dollar company like Tatung-Taiwan would not know where its monitors and other products are sold in the United States.

Despite its duty to investigate its jurisdictional defense, Tatung-Taiwan argued instead that this action should be dismissed because Safer, without the benefit of any discovery, could not yet prove that accused monitors had been sold in Virginia.[2]    Tatung-Taiwan's motion to

---

[2] In opposing Tatung-Taiwan's motion to dismiss for alleged lack of personal jurisdiction, which was filed prior to jurisdictional discovery, Safer explained that this Court has personal jurisdiction over Tatung-Taiwan for at least two reasons summarized very briefly here. First, the exercise of personal jurisdiction comports with traditional notions of fair play and

dismiss was heard by Judge Doumar on August 25, 2004. The Court rejected Tatung-Taiwan's argument that this case should be dismissed without discovery, noting that "defendant really knows what they're doing, what they're selling, not the plaintiff." (Weinstein Decl. Tab 32 at 33:21-22.) Judge Doumar similarly noted that "the facts establishing jurisdiction are mostly in the knowledge of the defendant, not in the knowledge of the plaintiff." (*Id.* at 16:22-24.) Accordingly, the Court deferred deciding Tatung-Taiwan's motion and granted Safer a limited 60 day period to take jurisdictional discovery. The Court stated that, under the Federal Circuit's *Beverly Hills Fan* decision, Tatung-Taiwan would be found subject to personal jurisdiction if its allegedly infringing monitors had been sold in Virginia. (*Id.* at 33:10-12; 37:15-18.) Judge Doumar warned Tatung-Taiwan that a "Stalingrad defense" would be unacceptable (*Id.* at 40:3-11) and that the Court wanted to "get to what is the real issue in the case." (*Id.* at 9:9-10.)

Judge Doumar also warned Tatung-Taiwan as follows: "Let me be very frank with you. If all [Tatung-Taiwan is] doing is running up the costs, then they're going to have to pay for it." (*Id.* at 26:3-4.) Endeavoring to focus on the "real issues," the Court asked Tatung-Taiwan's counsel whether he was wasting time with jurisdictional discovery because "the fact of the matter is [Safer] could find out how many products were being sold by each of your defendants here, and they could find out which products were sold to whom. It just -- if they're going to turn up with the same answer, *aren't we wasting our time?*" (*Id.* at 11:24-12:3, emphasis added.) Four months later, the answer is a resounding "Yes." Tatung-Taiwan's jurisdictional challenge

substantial justice under a "stream of commerce" analysis. (S. Opp. to Mot. Dismiss at 5-9 (Dkt. 11), citing *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994).) Second, Safer explained that this Court has personal jurisdiction over Tatung-Taiwan because Tatung-U.S. is the agent of Tatung-Taiwan, Tatung-Taiwan exerts control over Tatung-U.S., and the conceded jurisdiction over Tatung-U.S. in Virginia for selling products in Virginia, including those made by Tatung-Taiwan. (*Id.* at 9-11; Tatung's Rebuttal Brief in Support of Defendant's Motion for Protective Order (Dkt. No. 42) at 3 ("Tatung U.S. submitted to personal jurisdiction in Virginia as it conducts business in Virginia.").)

has been a colossal and completely unnecessary waste of time and resources for the Court, Safer, and at least nine third parties.

**D.    Tatung-Taiwan Repeatedly Attempted to Obstruct Jurisdictional Discovery and Depositions of Witnesses From Taiwan**

As Safer previously explained to the Court, finding proof that Tatung-Taiwan monitors were sold in Virginia from third party documents was originally a difficult, multi-step process for Safer because Tatung-Taiwan sells its monitors to branded computer vendors, such as Compaq, who place their own names and model numbers on the monitors before they are sold by retailers such as Office Depot. For Safer to prove that sales of Compaq monitors by Office Depot in Virginia were in fact sales of Tatung-Taiwan manufactured monitors required it to "connect the links" and compare various records from Tatung-Taiwan to the branded vendor to the retailer, which was complicated by the fact that, prior to the date that Tatung-Taiwan withdrew its motion to dismiss, none of the documents received from third party monitor vendors and retailers have specifically identified or tracked Tatung-Taiwan as the manufacturer of rebranded monitors sold in Virginia. Indeed, Tatung-Taiwan acknowledged the difficulty of this task at the time, going so far as to argue that "connecting the links is a hopeless endeavor" because the third party documents produced so far do not contain Tatung-Taiwan's own product numbers. (Tatung-Taiwan's Mem. Supporting to Withdraw its Motion to Dismiss (Dkt. 108) at 6.)

For this reason, and also because Safer had not yet received sufficient documents from third parties to take their depositions (Weinstein Decl. Tab 33 at 10:17-11:2; 17:23-19:1), Safer had for months been trying to schedule depositions with knowledgeable witnesses from Tatung-Taiwan. Safer has always believed that people in charge of Tatung-Taiwan's sales and marketing—as opposed to the manager of personnel who was selected to submit a terse

declaration supporting Tatung-Taiwan's motion to dismiss—*must* know where the monitors rebranded by Compaq and others are being sold throughout the U.S.[3] Given that Safer had only one 60 day shot at taking jurisdictional discovery, however, it had no choice but to pursue information from third parties as well, including Viewsonic, Compaq, Hewlett-Packard, Best Buy, Office Depot, and Wal-Mart. As explained more fully below, Tatung-Taiwan's counsel have repeatedly stalled and refused to produce witnesses from Taiwan, and once they were ordered by Judge Bradberry to promptly produce witnesses from Taiwan, Tatung-Taiwan withdrew its jurisdictional challenge. Tatung-Taiwan's counsel have also impeded and delayed discovery from third parties, including Safer's attempts to obtain from Compaq its contracts with Tatung-Taiwan. All the while, Tatung-Taiwan has tried to take advantage of the very delays it caused by arguing that personal jurisdiction must not exist because of the time it has taken Safer to collect the evidence. The Court should see this gameplaying for what it is.

On August 27, 2004, two days after the hearing on Tatung-Taiwan's motion to dismiss, Safer served jurisdictional document requests and interrogatories on Tatung-Taiwan and Tatung-U.S. On August 31, 2004, Safer served third party subpoenas seeking relevant jurisdictional documents and testimony from third parties designed to uncover Tatung-Taiwan's distribution network and sales into Virginia. These subpoenas generally sought documents and testimony in mid- to late-September and early October (i.e., well within the 60 day frame).[4] Specifically,

---

[3] The same is apparently not true for employees of Tatung-U.S. because they claim that they do not sell to HP, and presumably other branded vendors. (Supp. Decl. of D. S. J. Chang Supporting Tatung Co.'s Mtn. to Dismiss (Dkt. No. 10), ¶ 5.) Indeed, it appears from discovery from Tatung-U.S. that it sells to much smaller vendors, including in Virginia, than the national vendors like Compaq, Hewlett-Packard, and Viewsonic.

[4] Because Judge Doumar also ordered at the August 25 hearing that Safer could take merits discovery as well as jurisdictional discovery, Safer also pursued merits discovery during this time frame from both defendants and third parties. (Weinstein Decl. Tab 33 at 33:3-5.) Judge Bradberry reviewed that transcript and confirmed that that was the order on October 27,

Safer initially served third party subpoenas on Best Buy, Wal-Mart, eMachines, Office Depot, CompUSA, Circuit City, and Viewsonic.

> **1.    Tatung-Taiwan Acted to Dissuade Third Parties From Producing Subpoenas From Discovery**

Tatung-Taiwan moved quickly to block these discovery efforts by Safer. First, on September 9 and 10, 2004, Tatung-Taiwan wrote individually to the third parties subpoenaed by Safer and falsely told them that there were "ongoing negotiations with plaintiff's counsel concerning the scope and propriety of the subpoenas" (Weinstein Decl. Tab 16), an obvious attempt to dissuade the third parties from producing any discovery. Tatung-Taiwan's letters further attempted to obstruct discovery by stating that there was an "increasing likelihood" that Tatung-Taiwan would move for a protective order. (*Id.*) Safer promptly admonished Tatung-Taiwan that (1) there had been no negotiations regarding the third party subpoenas, (2) Tatung-Taiwan had no standing to challenge the subpoenas, and (3) "your letters have impeded the progress of discovery, and we request that you cease further actions that delay our rightful discovery of these documents." (Weinstein Decl. Tab 17.)

Unfortunately, however, the damage had been done. For example, although Compaq located some contracts with Tatung-Taiwan, counsel for Tatung-Taiwan first instructed Compaq that they should not be produced because Tatung-Taiwan had filed a (meritless) motion seeking to limit discovery to televisions, even though monitors and not televisions were specifically

---

2004. (*Id.* Tab 34 at 39:12-23.) Although the Court subsequently limited discovery to jurisdictional issues on November 16 (*Id.* Tab 35 at 27:13-19), before that date the Court had expressly permitted Safer and defendants to pursue merits discovery. Accordingly, rather than have to take jurisdictional discovery now and merits discovery later from the same witnesses, Safer originally sought merits discovery from the same witnesses from whom Safer was also seeking jurisdictional discovery. Although Tatung-Taiwan has repeatedly tried to make an issue out of this, Tatung-Taiwan has no basis for complaint given the two express orders from the Court, and given that Tatung-Taiwan inundated Safer with merits interrogatories, document requests, and requests for admissions during the same time period.

accused of infringing in the complaint (discussed in section D.2 below).  Later, apparently after

its meritless motion was denied, Tatung-Taiwan instructed Compaq that the contracts were

supposedly not responsive to the subpoena because they were executed prior to 1998.  (Ottinger

Decl. ¶ 6.)  In subsequent follow-up efforts by Safer's counsel, however, Compaq advised that

the contracts were automatically renewed or renewable on an annual basis, and that they were

apparently operative during the relevant 1998-99 timeframe.  (*Id.*)  Still later, Tatung-Taiwan

told Compaq that the contracts should not be produced because Tatung-Taiwan was withdrawing

its jurisdictional challenge.  (*Id.* ¶ 7.)  (Despite these admonitions from Tatung-Taiwan's

counsel, Compaq eventually produced these contracts on December 22, 2004, nearly two weeks

after Tatung-Taiwan moved to withdraw its jurisdictional challenge.  The content of these

confidential documents is discussed in the Weinstein Declaration at ¶¶ 6-8.)

In addition, in its letter to Wal-Mart, Tatung-Taiwan's counsel went so far as to say that

one of his partners "will be in your offices next week on another matter but will touch base with

you." (Weinstein Decl. Tab 16.)  Very soon thereafter, Wal-Mart sent Safer a certification that it

had no responsive documents.  (Weinstein Decl. Tab 18.)  Interestingly, Wal-Mart later retracted

that certification and, in late November, produced responsive documents after Safer sent a

second deposition subpoena seeking testimony regarding Wal-Mart's efforts to locate responsive

documents.  (*Id.* Tabs 20 and 21.)

### 2.    Tatung-Taiwan Also Blocked Third Party Discovery By Filing a Meritless Motion for a Protective Order

Tatung-Taiwan's letters and communications with the subpoenaed third parties also

delayed jurisdictional discovery because the third parties delayed producing documents until

after the resolution of Tatung-Taiwan's motion for protective order.  (Weinstein Decl. Tab 33 at

17:23-19:1.)  On September 17, 2004, soon after it wrote to the third parties, Tatung-Taiwan

filed a motion for protective order asking the Court to, *inter alia,* completely preclude third party depositions until further notice. (Mem. Supporting Tatung's Motion for Protective Order (Dkt. No. 27) at 2.) Tatung-Taiwan also moved to block discovery regarding accused products. That is, Tatung-Taiwan tried to completely prevent discovery of monitors and limit discovery to televisions, even though monitors are expressly accused of infringing in Safer's complaint and televisions are not. (*Id.*) The Court predictably denied these meritless requests when the motion was finally heard on October 27,[5] but during the pendency of that motion, Tatung-Taiwan blocked discovery for approximately two months because the subpoenaed third parties delayed producing their documents until after the resolution of the motion. (Weinstein Decl. Tab 33 at 17:23-19:1.) For instance, as of November 10, the only documents received from third parties was a single spreadsheet from Office Depot, and these were produced only after Office Depot was informed of the denial of Tatung-Taiwan's meritless motion. (*Id.* Tab 22.) On December 1, just eight days before Tatung-Taiwan dropped its jurisdictional challenge, Safer's counsel reported to the Court that, finally, "we're getting documents from those third parties now" and that Safer had also received documents from Wal-Mart. (*Id.* Tab 33 at 10:20-23.)

### 3.    Tatung-Taiwan's Inadequate Document Production

Tatung-Taiwan blocked jurisdictional discovery on other fronts as well. For instance, as of October 5, 2004, Tatung-Taiwan had produced only 14 documents, and none of them sufficiently identified all of the sales and shipments of Tatung-Taiwan video monitors or customers of Tatung-Taiwan, among other deficiencies. (Weinstein Decl. Tab 23.) On October

---

[5] Tatung-Taiwan disingenuously tries to give the impression that it prevailed in its first motion for a protective order because the Court slightly narrowed the time frame from which documents would be produced in discovery. Given that the Court rejected Tatung-Taiwan's primary tactical requests to block discovery from third parties and discovery regarding monitors (the accused products), the motion can only be viewed as a failure.

15, Safer was forced to file a motion for an expedited hearing on its motion to compel because

defendants had failed and refused to comply with even the most basic discovery requests (e.g.,

sales and import records, and the manuals and technical documents relating to on-screen

display). (Dkt. No. 48.) Although Tatung-Taiwan later produced summary documents showing

sales to certain computer vendors at a high level (Weinstein Decl. ¶ 17 and Tab 10), these are

insufficient because they lack the underlying documents' detail regarding key internal numbers

for tracking models such as serial numbers. Although Defendants also subsequently produced

approximately 7000 pages of documents, nearly all of these were asserted prior art that had

absolutely no relevance to jurisdiction. (Weinstein Decl. Tab 24 at 2.)

### 4. Tatung-Taiwan Refused to Produce Knowledgeable Witnesses from Taiwan

Tatung-Taiwan also repeatedly stalled and refused to produce Tatung-Taiwan witnesses

for deposition. On September 23, Safer served notices for depositions in early October of David

Shun-Juh Chang, the Tatung-Taiwan employee who submitted two declarations supporting its

motion to dismiss, as well as a notice for a Rule 30(b)(6) deposition of Tatung-Taiwan. These

depositions were set in October in the offices of Safer's counsel in Washington, D.C. Tatung-

Taiwan objected and demanded that the depositions proceed in Taiwan. Safer's counsel

promptly agreed to travel to Taiwan but, because only two inches of documents had been

received from Tatung-Taiwan, Safer suggested pushing the depositions back approximately one

week to October 20. (Weinstein Decl. Tab 25.) Tatung-Taiwan's counsel, apparently surprised

by Safer's agreement to travel to Taiwan and in search of another excuse, refused to produce the

witnesses in Taiwan on October 20. (*Id.* Tab 26.) Tatung-Taiwan now complained that it would

be too expensive to take the depositions in Taiwan until after defendants' document production

was completed, and that the depositions should not be heard until the Court had ruled on

defendants' motion for a protective order (which was denied two weeks later, as explained above). (*Id.* at 2.) Tatung-Taiwan's counsel requested that the depositions be pushed back a "few weeks" into November. (*Id.*)

Thus, by mid-October, Safer's attempts to obtain jurisdictional discovery were going nowhere, thanks to Tatung-Taiwan. The 60 day period ordered by Judge Doumar would close in less than two weeks. Safer kept trying, however, and on October 14 it noticed depositions in Taiwan for five Tatung-Taiwan witnesses recently identified as knowledgeable in Tatung-Taiwan's responses to Safer's interrogatories. Specifically, Safer noticed the depositions of (1) O. Shaih and Jerry Huang (each identified by Tatung-Taiwan as responsible for sales, marketing, and distribution, and relevant to the stream of commerce jurisdiction analysis); and (2) W.S. Lin, K.Y. Lang, and A.C. Wang (each identified by Tatung-Taiwan as serving on the board of management of Tatung-Taiwan and Tatung-U.S., and relevant to the agency jurisdiction analysis). On October 22, Tatung-Taiwan refused to produce these individuals. (Weinstein Decl. Tab 27.) Although Tatung-Taiwan stated that it would "attempt" to provide a corporate designee to testify regarding a handful of the topics requested by Safer (*id.* at 2), Tatung-Taiwan offered no dates for any depositions. Instead, Tatung-Taiwan filed a second motion for protective order on October 26 (Tatung's Motion to Limit Depositions (Dkt. 57)), and counsel for Tatung-Taiwan refused to schedule depositions in Taiwan until after Tatung-Taiwan's second motion for protective order was heard. (Weinstein Decl. Tab 28 at 2 ("We will not travel to Taiwan until after our motion has been heard.").) This was the same stall tactic that counsel had used while Tatung-Taiwan's first motion for protective order was pending.

Tatung-Taiwan's counsel also insisted that third party depositions be taken before the Tatung-Taiwan witnesses (Weinstein Decl. Tab 29), even though Tatung-Taiwan knew (1) that it

had blocked discovery from third parties with its earlier letters and communications, so that Safer was not yet in a position depose the third parties, and (2) that linking sales of Tatung-Taiwan's monitors with the third party documents alone is an extremely difficult task. Tatung-Taiwan also stated that it would not make any Tatung-Taiwan witnesses available until January or February of 2005 (*id.*), which Safer explained was unacceptable, particularly given that the deposition notices had been pending for months and the Court's admonition to speed the pace of jurisdictional discovery. (*Id.* Tab 30.)

Tatung-Taiwan continued to refuse to produce any witnesses from Taiwan until Magistrate Judge Bradberry's December 1, 2004, order that Tatung-Taiwan witnesses must appear for deposition within the month of December. (Weinstein Decl. Tab 33 at 30:3-4.) Eight days later, Tatung-Taiwan filed a motion seeking leave to withdraw its motion to dismiss. (Dkt. No. 107.) Tatung-Taiwan's stated reasons for moving to withdraw its jurisdictional challenge were clearly pretextual and not supported by the record, as evidenced by the Court's subsequent order that Tatung-Taiwan support its motion by citations to the record. (Dkt. No. 109.)

It is plain that Tatung-Taiwan moved to withdraw the challenge because Safer, after months of effort, was finally getting an opportunity to depose witnesses from Taiwan and was on the verge of proving that Tatung-Taiwan's monitors had been sold in Virginia. For instance, Safer was planning to extensively question Tatung-Taiwan witnesses regarding, *inter alia*, the Compaq MV700 monitor it manufactured for Compaq and its warranty and return records from retailers in Virginia. Safer was also corresponding with Compaq and requesting that its contracts with Tatung-Taiwan be produced when Tatung-Taiwan moved to withdraw its challenge.

**E.     Defendant's Allegations that Safer Was Driving Up Costs Are Baseless**

Defendants have repeatedly but baselessly argued that Safer has attempted to drive up costs in this litigation.  Nothing could be further from the truth.  Safer, as the plaintiff in this case, has every interest in achieving a prompt and cost-effective resolution of defendants' infringement.  Indeed, Safer has agreed upon licenses with 28 parties, including former co-defendant Jean.  Tatung-Taiwan, on the other hand, has an incentive to delay and complicate these proceedings as it did with its jurisdictional challenge.

As explained in Safer's opposition to defendants' second motion for a protective order (Dkt. 72 at 1-4), until November 16, the Court had *twice* expressly stated that both parties could take merits discovery along with jurisdictional discovery, and defendants themselves had served Safer with interrogatories, document requests, and requests for admissions directed to the merits of this case.  Once Judge Doumar subsequently limited discovery to jurisdictional issues, however, Safer obviously agreed to abide by that Order (Weinstein Decl. Tab 33 at 19:19-23), yet Tatung-Taiwan is still arguing about Safer's earlier efforts to obtain merits discovery as a red herring.  Furthermore, Safer did not set 27 or 28 depositions in this case as defendants have alleged, as explained in our papers.  (Dkt. 72 at 1.)  Defendants double dipped in arriving at that number by including depositions noticed in other consolidated cases, including the now settled case against Jean.  In truth, Safer noticed seven depositions for Tatung-Taiwan (one 30(b)(6), five individuals identified by Tatung-Taiwan as knowledgeable in response to interrogatories, and a Tatung-Taiwan employee relevant to the agency analysis), and two for Tatung-U.S. (one 30(b)(6) and one individual identified by Tatung-U.S. as knowledgeable in response to interrogatories).  In addition, Safer noticed six potential depositions of third parties in the event that they would be needed to prove sales in Virginia, but Safer has not yet received sufficient

documents from those third parties and is not ready to take their depositions now. (Weinstein Decl. Tab 33 at 10:17-11:2; 17:23-19:1.)

Importantly, Safer has always told defendants that it might not need to take all of these noticed depositions, and that it would stop once it discovered proof of sales in Virginia, as Safer's counsel confirmed to the Court. (Weinstein Decl. Tab 33 at 4:14-5:3; 10:17-11:2.) As Judge Bradberry pointed out, there were really no more than eight depositions at issue in early December (*Id.* at 11:3-8), and Safer has always needed to proceed with the Tatung-Taiwan witnesses first.

It was also made clear by Judge Bradberry that jurisdictional depositions and discovery would not proceed endlessly as Tatung-Taiwan pretends, but rather that jurisdictional discovery would stop once solid evidence of jurisdiction was discovered. (Weinstein Decl. Tab 33 at 25:1-26:7; 30:3-10; 31:16-25; 39:14-25.) But given the tight time constraints and Tatung-Taiwan's efforts to stymie discovery, Safer had no choice but to notice these potential depositions up front and proceed until it uncovered undisputable evidence of sales in Virginia.

Furthermore, Tatung-Taiwan has driven up the costs in this case with extensive motion practice. In addition to the meritless motions to block discovery of third parties and of accused monitors described above, it also filed a motion for summary judgment asserting that Safer did not own the patent-in-suit. Although the motion was unfounded and summarily denied by Judge Doumar, Safer nevertheless was forced to respond to this theoretically dispositive motion in writing and in Court. Tatung-Taiwan also filed another motion to "correct" an already correct order that was summarily denied by Magistrate Judge Bradberry, but Safer again had to respond and appear in Court to oppose that motion.

III.    **Argument**

A.    **Tatung-Taiwan Should be Sanctioned for Unreasonably and Vexatiously Multiplying These Proceedings**

As explained above, Tatung-Taiwan has wasted an enormous amount of time and money by raising its unsupported jurisdictional challenge and by continuously interfering with Safer's attempts to obtain jurisdictional discovery from defendants and third parties.  This Court has multiple sources of authority to sanction Tatung-Taiwan's unsupported, dilatory, vexatious, and wasteful litigation tactics, including (1) its inherent authority (*Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 45-46 (1991) (courts have inherent authority to sanction attorneys and parties who have shown "bad faith by delaying or disrupting the litigation" or who have "acted in bad faith, vexatiously, wantonly, or for oppressive reasons")); (2) Rule 11 of the Federal Rule of Civil Procedure; and (3) 28 U.S.C. § 1927 (party's attorney may be ordered to pay opposing party's attorneys' fees if he "multiplies the proceedings in any case so unreasonably and vexatiously").

Although the Court may *sua sponte* order sanctions against a party or attorney under Rule 11 (Fed. R. Civ. P. 11(c)(1)(B)), Safer is apparently precluded from moving for sanctions under that Rule because Tatung-Taiwan has withdrawn its jurisdictional challenge, even though the evidence indicates that the defense was unsupported (Weinstein Decl. at ¶¶ 4-23) and after so much time and money has been wasted over the issue.  Fed. R. Civ. P. 11(C)(1)(A).  Regardless, Safer may and does move for sanctions, including attorneys' fees, under the Court's inherent power and § 1927, for the many reasons explained above.

Moreover, Tatung-Taiwan had an affirmative duty to reasonably investigate its allegation of no personal jurisdiction before wasting months of time and money litigating the issue, and failure to do so is itself a basis for sanctions.  *Continental Air Lines, Inc. v. Group Sys. Int'l Far East, Ltd.,* 109 F.R.D. 594, 597-600 (C.D. Cal. 1986); *Ortho Pharm. Corp. v. Sona Dist., Inc.,*

117 F.R.D. 170, 171-72 (S.D. Fla. 1986).  Thus, even if Tatung-Taiwan can somehow explain

the newly discovered evidence indicating that Tatung-Taiwan was the exclusive manufacturer

for North America for at least two different monitors for a national computer vendor whose

monitors are undeniably sold in Virginia, Tatung-Taiwan should nevertheless be sanctioned for

failing to investigate its asserted defense.

**IV.    Conclusion**

Safer respectfully requests that the Court sanction Tatung-Taiwan by, among other

things, an award of attorneys' fees incurred in opposing Tatung-Taiwan's motion to dismiss for

lack of jurisdiction and all of the related discovery disputes, motion practice, and hearings that

have flowed therefrom.  Safer conservatively estimates and represents that Tatung-Taiwan's

tactics have cost many tens of thousands of dollars of attorney time.  Safer respectfully requests

that, if deemed necessary, the Court allow Safer a reasonable period of time to make an

evidentiary showing to support its request for attorneys' fees.  Safer also suggests that the Court

should order that Tatung-Taiwan pay a sanction to the Court due to the considerable time and

effort that the Court has had to expend over Tatung-Taiwan's unreasonably duplicative litigation

tactics.

Dated:  December 23, 2004

Respectfully submitted,

John M. Ryan (Va. Bar No. 4301)
Richard H. Ottinger (Va. Bar No. 38842)
VANDEVENTER BLANK LLP
500 World Trade Center
Norfolk, VA  23510
(757) 446-8600

Laura P. Masurovsky (Va. Bar. No. 32379)
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, L.L.P.
1300 I Street, N.W.
Washington, D.C.  20005-3315
(202) 408-4000

Roger D. Taylor
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, L.L.P.
3200 SunTrust Plaza
303 Peachtree Street, N.E.
Atlanta, GA   30308
(404) 653-6400

Attorneys for Plaintiff,
Safer Display Technology, Ltd.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that as of the date noted below the original or a true copy of the foregoing pleading was served in the manner indicated upon all parties herein, or their counsel of record, as follows:

| | |
|---|---|
| Stephen E. Noona | Manner of Service: |
| Kristan B. Burch | _____     First Class US Mail |
| Kaufman & Canoles, PC | _____  Overnight Delivery |
| 150 W. Main Street | _____  Facsimile |
| Norfolk, VA 23510 | _____  Electronically |
| *Counsel for Tatung Company, Tatung Co. of* | __X__  Hand Delivery |
| *America, Inc..* | _____  Other: _____ |

Mark L. Hogge
Kathryn L. Clune
Greenberg Traurig, LLP
800 Connecticut Avenue, Suite 500
Washington, D.C. 20006
*Counsel for Tatung Company, Tatung Co. of America, Inc..*

Manner of Service:
___X__ First Class US Mail
_____ Overnight Delivery
_____ Facsimile
___X__ Electronically (w/o attachments)
_____ Hand Delivery
_____ Other: _____

Mark Krietzman
Greenberg Traurig LLP
2450 Colorado Ave., Suite 400 E
Santa Monica, CA 90404
(310) 586-7700
*Counsel for Tatung Company, Tatung Co. of America, Inc..*

Manner of Service:
___X__ First Class US Mail
_____ Overnight Delivery
_____ Facsimile
___X__ Electronically (w/o attachments)
_____ Hand Delivery
_____ Other: _____

Rolf Marshall
Preston Gates Ellis & Rouvelas Meeds, LLP
1735 New York Avenue, N.W., Suite 500
Washington, D.C. 20006
*Counsel for Envision Peripherals, Inc.*

Manner of Service:
___X__ First Class US Mail
_____ Overnight Delivery
_____ Facsimile
_____ Electronically
_____ Hand Delivery
_____ Other: _____

Michael J. Bettinger
Ralph Alldredge
Preston Gates & Ellis, LLP
55 Second Street, Suite 1700
San Francisco, California 94105
*Counsel for Envision Peripherals, Inc.*

Manner of Service:
___X__ First Class US Mail
_____ Overnight Delivery
_____ Facsimile
_____ Electronically
_____ Hand Delivery
_____ Other: _____

Done this date: December 23, 2004

Of Counsel

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

HON. MARSH J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

LG PHILIPS LCD CO.,

               Plaintiff,

     v.

TATUNG CO., TATUNG CO. OF
AMERICA INC.,
and VIEWSONIC CORP.,

               Defendants.

No.  C07-0398

REPLY TO LPL'S OPPOSITION TO
THE TATUNG DEFENDANTS'
MOTION FOR PROTECTIVE ORDER

REPLY TO LPL'S OPPOSITION TO THE
TATUNG DEFENDANTS' MOTION FOR
PROTECTIVE ORDER
NO. C07-0398

## I.    INTRODUCTION

On March 16, 2007, the Special Master in the District of Delaware, in which this case is pending (the "Main Case"), stated his intention to limit discovery to only accused products.  Plaintiff LPL should not be permitted to circumvent the Special Master's impending ruling by seeking via third party subpoenas the very information that that the Special Master has determined it is not entitled to obtain.

Moreover, LPL never addresses one salient issue - why confidential customer information relating to hundreds of *unaccused* products is remotely relevant to this case. Instead, LPL resorts to frivolous arguments and accusations in an attempt to mislead the Court and to obfuscate the real issue.  Simply put, under well established case law, a patentee like LPL has no right to embark on a fishing expedition by issuing subpoenas to an accused infringer's customers for confidential information that is not relevant to the case.

Accordingly, the Tatung Defendants respectfully request that this Court either grant their motion for protective order limiting the scope of discovery sought from their customers to the accused products, or transfer this motion to the District of Delaware.  In light of the Special Master's statements at the March 16 hearing, it would be more efficient for this Court to simply grant the motion, thereby immediately allowing third party depositions regarding the *accused* products to proceed.

## II.    ARGUMENT

**A.    The Special Master In The Main Case Stated That He Will Limit Discovery To The Accused Products.**

On March 16, 2007, in a telephonic hearing in the Main Case, the Special Master indicated that he will rule in the Tatung Defendants' favor and will limit discovery to the products specifically accused by LPL of infringing the Patents-in-Suit.  He further stated that he will issue written recommendations shortly.

> SPECIAL MASTER POPPITI: . . .You can expect, and I said it to you last week, but, quite frankly, I wasn't able to turn to it and get to it this week, you will get a finding and recommendation.  It's important that it be as

REPLY TO LPL'S OPPOSITION TO THE
TATUNG DEFENDANTS' MOTION FOR
PROTECTIVE ORDER
NO. C07-0398 – Page 1

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

1    careful -- they all should be careful -- but in more depth in terms of its
analysis of dealing with the issue accused/unaccused. But by virtue of what
2    has been going on, **I am telling you that the discovery is going to be,
absent something earth shattering that I consider in the next number of
3    days, it's going to be limited to accused products.**

4    Now, perhaps I should have done that earlier, and I will even go so far as to
suggest, by perhaps doing it earlier in terms of giving you an indication or an
5    inclination on the record, you would have been able to, perhaps, discuss the
issue in a meet and confer more meaningfully, and you would have had the
6    opportunity and **you now may have that opportunity to share a Special
Master's inclination with other jurisdictions that you will be working in.**

7

8    (Rough Transcript of Hearing at 19-20 at Exh. A (emphasis added).)[1]

9    The Special Master further noted that LPL had provided no authority for the

10   proposition that he could order the Tatung Defendants to withdraw their motions for

11   protective order. (*Id.* at 11-12.)

12   **B.    The Court Should Grant The Tatung Defendants' Motion Or Transfer The
Motion To The District Of Delaware.**

13   The Tatung Defendants have no objections to transferring the motion to the

14   Delaware Court. In fact, the Tatung Defendants originally had proposed to LPL that the

15   motions be consolidated before the Special Master in the Main Case, *but LPL refused,*

16   contending that the Special Master's rulings would not be binding on third parties. (*See id.*

17   at 8 & 17.) In light of LPL's refusal to have the motions heard by the Delaware Court, it is

18   beyond hypocritical for LPL to now complain that the Tatung Defendants filed their

19   motions in 15 different districts.

20   However, in light of the Special Master's statements at the March 16 hearing, the

21   Tatung Defendants believe it would be more efficient for this Court to simply grant the

22   Tatung Defendants' motion and limit the discovery sought from the third party customer to

23   accused products. That is what the Special Master will do if the motion were transferred to

24   his Court and that is presumably why he wanted to give the parties the "opportunity to share

25

26   _____

[1] All Exhibits are attached to the Declaration of Charlene L. Oh ("Oh Decl.").

REPLY TO LPL'S OPPOSITION TO THE
TATUNG DEFENDANTS' MOTION FOR
PROTECTIVE ORDER
NO. C07-0398 – Page 2

YARMUTH WILSDON CALFO PLLC

FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

1    a Special Master's inclination with other jurisdictions that you will be working in."

2    Granting the motion now would allow the parties to immediately proceed with third party

3    depositions regarding products at issue.

4    **C.**     **Other Districts Have Granted The Tatung Defendants' Motions.**

5         On March 12, 2007, the Southern District of Florida granted the Tatung Defendants'

6    motion regarding the subpoena issued to Sensormatic, Inc. (Order at Exh. B.) The Court

7    barred discovery relating to unaccused products.[2] On March 15, 2007, the District of

8    Minnesota stayed discovery from Best Buy, Co., Inc. regarding unaccused products pending

9    a ruling from the Special Master. (Order at Exh. C.) On March 15, 2007, the District of

10    New Jersey issued a similar ruling with respect to the Tyco International, Ltd. subpoena.[3]

11    **D.**     **The Tatung Defendants Have Standing To Seek A Protective Order Under**
**Federal Rule Of Civil Procedure 26(c).**

12

13         While acknowledging that the Tatung Defendants' motion is filed pursuant to *Rule*

14    *26(c)*, LPL nevertheless resorts to citing inapposite case law under *Rule 45* for the

15    proposition that the Tatung Defendants do not have standing to file this motion. The Tatung

16    Defendants have repeatedly informed LPL (including during the meet and confer) that their

17    motions are made pursuant to Rule 26(c). However, LPL has continued to deliberately

18    misconstrue the Tatung Defendants' position in order to manufacture a non-existing

19    standing argument.[4]

20    ───────────────

[2] LPL has filed a motion for reconsideration with the Florida Court. The Tatung Defendants will oppose this
21    motion.

[3] The District of New Jersey has not yet issued an order. On March 16, 2007, the Northern District of
22    California denied the Tatung Defendants' motion regarding LPL's subpoena to Safeway. The Tatung
Defendants intend to file a motion for reconsideration based on the Special Master's statements at the March
23    16, 2007 hearing.

[4] For example, LPL states in its opposition that the Tatung Defendants are asserting objections "on behalf of
24    the third parties," which is a complete mischaracterization of the Tatung Defendants' motions. The Tatung
Defendants have never claimed to raise objections *on behalf of third parties*; the Tatung Defendants have only
25    raised objections on *their own behalf*, in order to protect their confidential and trade secret information, as
well as information entirely irrelevant to this case, from being disclosed to a competitor. As a party in the
action whose confidential information is being sought by way of subpoenas issued to third parties, the Tatung
26    Defendants clearly have standing to file motions for protective order. *See, e.g.*, Fed. R. Civ. Proc. 26(c);

REPLY TO LPL'S OPPOSITION TO THE
TATUNG DEFENDANTS' MOTION FOR
PROTECTIVE ORDER
NO. C07-0398 – Page 3

Yarmuth Wilson Calfo pllc
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800  F 206.516.3888

**E.     LPL Should Not Be Allowed To Embark On A Fishing Expedition.**

The parties have been proceeding with discovery regarding the accused products. The Special Master has already stated his intention to bar discovery regarding unaccused products. LPL should not be permitted to circumvent the Special Master's ruling by obtaining from the Tatung Defendants' customers the very information it could not get in the Main Case. While LPL attempts to mislead the Court by suggesting that its subpoena only seeks information "related to purchase and sale of the infringing products in the United States," its subpoena in fact seeks confidential technical information, negotiations, correspondence, agreements and pricing information regarding every "visual display product" sold or offered for sale by the Tatung Defendants. As such, the subpoena improperly seeks to delve into the confidential business relationships between the Tatung Defendants and their customers which have absolutely nothing to do with this case. LPL should not be permitted to embark on a fishing expedition that serves no legitimate purpose and is calculated merely to harass the Tatung Defendants' customers. *See Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327-28 (Fed. Cir. 1990); *Joy Technologies, Inc. v. Flakt, Inc.*, 772 F. Supp. 842 (D. Del. 1991).[5]

//

//

_____

*Portland Gen. Elec. Co. v. U.S. Bank Trust Nat'l Assoc.*, 38 F. Supp. 2d 1202, 1206 n. 3 (D. Or. 1999), *rev'd on other grounds*, 218 F.3d 1085 (9th Cir. 2000); *see also, In re Ashworth, Inc. Securities Litigation*, 2002 WL 33009225 at * 1 (S.D. Cal. 2002); *Springbrook Lenders v. Northwestern Nat'l Ins. Co.*, 121 F.R.D. 679, 680 (N.D. Cal. 1988).

[5] LPL mistakenly claims that the broad categories of information it seeks are relevant to the issue of inducement. However, there can be no indirect infringement (or inducement) without direct infringement. "In order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement, . . . and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Minnesota Mining and Manufacturing Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304 (Fed. Cir. 2002). In other words, in order for there to be indirect infringement, there must be direct infringement *and an infringing product*. The cases cited in LPL's opposition do not hold to the contrary. Here, there is no allegation of direct infringement with respect to the hundreds of products for which LPL seeks information from the Tatung Defendants' customers.

REPLY TO LPL'S OPPOSITION TO THE
TATUNG DEFENDANTS' MOTION FOR
PROTECTIVE ORDER
NO. C07-0398 – Page 4

YARMUTH WILSDON CALFO PLLC

FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

1.    **The Tatung Defendants Have Not Improperly Impeded Third Party Discovery.**

The Tatung Defendants' motion does not seek to bar all third party discovery; rather, it only seeks to limit third party discovery to the products that have been expressly accused by LPL of infringing the Patents-in-Suit.  This approach is entirely consistent with the Special Master's views regarding discovery.

Moreover, Rule 26(c) clearly affords a party the right to file a motion for protective order.  That the Tatung Defendants availed themselves of this procedural right does not in any way serve as evidence of improper conduct.  Indeed, the Special Master suggested at the March 16 hearing that it was *not* improper for the Tatung Defendants to inform their customers of the pending motions for protective order.  (Rough Transcript at 12 at Exh. A.) In many instances, the customers themselves have objected to LPL's subpoenas or filed motions to quash in their respective districts.  (Declaration of Donald Fischbach at Exh. D, stating that counsel for LPL never informed customer Pelco that there was an issue pending before the Special Master as to whether information relating to unaccused products was discoverable.)

2.    **Any Delay Asserted By LPL Is Self-Inflicted.**

Earlier this year, the Special Master on multiple occasions denied LPL's motion to extend the third party discovery cutoff.  LPL nevertheless waited until mid to late February 2007 to issue a series of 23 subpoenas out of 15 different districts to the Tatung Defendants' customers.  It could have issued these subpoenas in January or early February 2007, but it did not do so, presumably because it was hoping to obtain an extension of the discovery deadline.

Moreover, contrary to LPL's suggestion that it did not know the Tatung Defendants would be filing motions for protective order until *March 5, 2007*, the Tatung Defendants in fact asked for a meet and confer on *February 27, 2006* regarding LPL's subpoenas and the anticipated motions for protective order.  In an obvious attempt to "run down the clock,"

REPLY TO LPL'S OPPOSITION TO THE TATUNG DEFENDANTS' MOTION FOR PROTECTIVE ORDER NO. C07-0398 – Page 5

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

1  LPL's counsel responded that they were not available for a meet and confer until March 5,

2  2007, the return date on the subpoenas for the production of documents.  LPL sought to

3  further delay the filing of the motions by asking the Tatung Defendants to provide relevant

4  case law and suggesting that it may be willing to narrow the scope of the subpoenas.  After

5  the Tatung Defendants provided their case law, LPL finally indicated on March 6 - a full

6  week after LPL was first alerted that motions for protective order may be filed - that it was

7  unwilling to narrow or modify any of the subpoenas.  (February 27, 2007 Letter from

8  Valerie Ho to Cormac Connor at Exh. E and Emails between Valerie Ho and Cormac

9  Connor at Exh. F.)[6]  In short, any supposed delay associated with third party discovery was

10  caused solely by LPL, and not the Tatung Defendants.

11      And finally, LPL's complaints regarding the Tatung Defendants' document

12  productions are both baseless and irrelevant for purposes of this motion.  To set the record

13  straight, the Tatung Defendants in fact have fully complied with their discovery obligations.

14  (Letter at Exh. G.

### III.    CONCLUSION

16      The Tatung Defendants respectfully request that this Court either grant their motion

17  for protective order limiting the scope of discovery sought from their customers to the

18  accused products, or transfer this motion to the District of Delaware.

19      DATED:  March 19, 2007.

**YARMUTH WILSDON CALFO PLLC**

By: _Stacie Foster_
Stacie Foster, WSBA #23397
The IDX Tower
925 Fourth Avenue, Suite 2500
Seattle, WA  98104
Phone: (206) 516-3800
Fax:    (206) 516-3888

---

[6] Because the depositions were noticed for mid to late March, the Tatung Defendants indicated that they may not have sufficient time to file regularly noticed motions under the local rules of the various districts, and informed LPL that they may have to seek expedited relief.  The Tatung Defendants stated that they would provide, and in fact have provided, notice of these motions to LPL.  The Tatung Defendants filed their first motions on March 9, 2007 - three days after LPL indicated that it was unwilling to modify the subpoenas.

REPLY TO LPL'S OPPOSITION TO THE
TATUNG DEFENDANTS' MOTION FOR
PROTECTIVE ORDER
NO. C07-0398 – Page 6
471.01 hc194801 3/19/07

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800  F 206.516.3888

1

2          *Of Counsel:*

3          **GREENBERG TRAURIG LLP**

4          Frank E. Meredith, Jr.
           Valerie W. Ho
5          Mark H. Krietzman
           Steve P. Hassid
6          2450 Colorado Avenue, Suite 400E
           Santa Monica, CA 90404

7          **RICHARDS LAYTON & FINGER, PA**

8          Frederick L. Cottrell, III
           Anne Shea Gaza
9          One Rodney Square
           P.O. Box 551
10         Wilmington, DE 19899

11         Attorneys for Defendant Tatung Company and
           Tatung Company of America

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPLY TO LPL'S OPPOSITION TO THE
TATUNG DEFENDANTS' MOTION FOR
PROTECTIVE ORDER
NO. C07-0398 – Page 7

## Declaration of Charlene L. Oh

I, Charlene L. Oh, declare as follows:

1.      I am an attorney at the law firm of Greenberg Traurig, LLP, and I am counsel for Defendants Tatung Company and Tatung Company of America (collectively, "the Tatung Defendants") in the lawsuit styled *L.G. Philips LCD Co., Ltd. v. Tatung Company, et al.*, Civil Action No. 04-343-JJF, in the United States District Court for the District of Delaware (the "Delaware Action").

2.      Attached hereto as Exhibit A is a true and correct copy of the Rough Transcript of the March 16, 2007 telephonic hearing before Vincent J. Poppiti, Special Master in the lawsuit styled *L.G. Philips LCD Co., Ltd. v. Tatung Company, et al.*, Civil Action No. 04-343-JJF.

3.      Attached hereto as Exhibit B is a true and correct copy of the Southern District of Florida's Order granting the Tatung Defendants' Motion for Protective Order, dated March 12, 2007.

4.      Attached hereto as Exhibit C is a true and correct copy of the District of Minnesota's Order, dated March 15, 2007.

5.      Attached hereto as Exhibit D is a true and correct copy of the Declaration of Donald Fischbach filed in connection with Pelco's Motion to Quash in the Eastern District of California, filed on March 16, 2007.

6.      Attached hereto as Exhibit E is a true and correct copy of a letter from Valerie Ho, counsel for the Tatung Defendants, to Cormac Connor, counsel for LPL, dated February 2, 2007.

7.      Attached hereto as Exhibit F is a true and correct copy of email communications between counsel for the Tatung Defendants and counsel for LPL, dated March 5-7, 2007.

8.      Attached hereto as Exhibit G is a true and correct copy of the Tatung Defendants' Letter to the Special Master, dated March 2, 2007.

I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct.  Executed on March 19, 2007 in Los Angeles, California.

Charlene L. Oh

# EXHIBIT A

Exh  A- Rough Transcript of Hearing.txt

1

1              UNEDITED UNCERTIFIED ROUGH DRAFT

2

3              IN THE UNITED STATES DISTRICT COURT

4                  FOR THE DISTRICT OF DELAWARE

5

PHILLIPS, L.G., LCD CO., LTD,  )
6                              )
              Plaintiffs,      )   C.A. No. 04-343(JJF)
7                              )
v.                             )
8                              )
TATUNG CO., TATUNG COMPANY OF  )
9  AMERICA, INC., and VIEWSONIC )
CORPORATION,                   )
10                             )
              Defendants.      )
11

12        Hearing of above matter taken pursuant to
    notice before Renee A. Meyers, Registered Professional
    Reporter and Notary Public, in the law offices of BLANK
13  ROME, LLP, 1201 North Market Street, Wilmington,
    Delaware, on Friday, March 16, 2007, beginning at
14  approximately 3:00 p.m., there being present:

15  BEFORE:  VINCENT J. POPPITI, SPECIAL MASTER

16  APPEARANCES:

17            THE BAYARD FIRM
              RICHARD D. KIRK, ESQ.
18              222 Delaware Avenue, Suite 900
                Wilmington, Delaware  19899
19              for Plaintiffs

20                  CORBETT & WILCOX
              Registered Professional Reporters
21   230 North Market Street      Wilmington, DE 19899
                  (302) 571-0510
22              www.corbettreporting.com
              Corbett & Wilcox is not affiliated
23        with Wilcox & Fetzer, Court Reporters

24

2

1

Page 1

Exh  A- Rough Transcript of Hearing.txt

2

3    APPEARANCES (Continued):

4            MCKENNA, LONG & ALDRIDGE, LLP
             CASS W. CHRISTENSON, ESQ.
5            CORMAC CONNOR, ESQ.
             SHERI KLEVINS, ESQ.
6            REL AMBROZY, ESQ.
               1900 K Street, N.W.
7              Washington, D.C.  20006
               for Plaintiffs
8

         RICHARDS LAYTON & FINGER
9        ANNE SHEA GAZA, ESQ
           One Rodney Square
10         Wilmington, Delaware  19801
           for Defendant Tatung Co.
11

         GREENBERG TRAURIG LLP
12       FRANK MERIDETH, ESQ.
         VALERIE HO, ESQ.
13       CHARLENE OWE, ESQ.
         MARK KREISMAN, ESQ.
14         2450 Colorado Avenue, Suite 400E
           Santa Monica, California  90404
15         for Defendant Tatung Company of America, Inc.

16       CONNOLLY BOVE LODGE & HUTZ LLP
         JAMES D. HEISMAN, ESQ.
17         1007 North Orange Street
           Wilmington, Delaware  19899
18         for Defendant Viewsonic Corporation

19    ALSO PRESENT:  Edmond Johnson, Esq.

20

21

22

23

24

0

                                                     3

1

2

3                    SPECIAL MASTER POPPITI:  Mr. Kirk.

4                    MR. KIRK:  Yes, Your Honor.  Richard

5    Kirk from The Bayard Firm for the plaintiff, LG Phillips,

6    LCD Company, Ltd.  With me on the line, from various
                         Page 2

Exh  A- Rough Transcript of Hearing.txt

 7    locales, are my colleagues from McKenna, Long & Aldridge,

 8    courtroom acknowledge corner, I think Shari Klevens is

 9    on; is that correct, Cormac?

10                    MR. CONNOR:  That's correct.

11                    MR. KIRK:  And Cass Christenson.

12                    SPECIAL MASTER POPPITI:  Thank you.

13                    MR. HEISMAN:  Good afternoon, Your

14    Honor, Jim Heisman on behalf of ViewSonic Corporation.

15                    SPECIAL MASTER POPPITI:  Good afternoon.

16                    MS. GAZA:  Good afternoon, Your Honor.

17    It's Anne Gaza again from Richards, Layton & Finger on

18    behalf of the Tatung defendants.  I believe with me on

19    the phone are Charlene Owe, Frank Merideth, Mark

20    Kresiman, and Valerie Ho, but I may have one too many or

21    one too few.

22                    SPECIAL MASTER POPPITI:  Good afternoon.

23    I am really amazed at how you are on the phone and I just

24    got some new mail from you.  But in any event --

                                                           4

 1                    MR. CHRISTENSON:  We are mid deposition,

 2    Your Honor.

 3                    SPECIAL MASTER POPPITI:  I understand.

 4    Mid air.

 5                    Next, please.

 6                    MR. JOHNSON:  This is Edmond Johnson

 7    from Pepper Hamilton.  I represent, the Tyco entities

 8    which are the three of the -- subject of the three of the

 9    subpoenas of third parties in this matter.

10                    SPECIAL MASTER POPPITI:  Thank you, sir.

Exh A- Rough Transcript of Hearing.txt

11    Is that it?  I think it is.

12                    Okay.  Let's start with some -- the

13    March 9 filing, some correspondence from Mr. Kirk dated

14    March 9.

15                    MR. CONNOR:  Your Honor, I believe you

16    are referring to LPL's request for third-party discovery

17    extension and relief?

18                    SPECIAL MASTER POPPITI:  Yes, that's

19    correct.

20                    MR. CONNOR:  Well, Your Honor, our

21    position has really not changed very much.  What we are

22    concerned about is that this -- these barrage of motions

23    that Tatung has filed against all of our subpoenas has

24    impeded our ability to proceed with third-party discovery

5

1    against the various third parties upon whom we have

2    served subpoenas.

3                    We have had three of those motions go to

4    hearing in the last three days, and in no case has any of

5    the courts -- any of the Courts that have heard both

6    sides of the story granted Tatung's motion.

7                    Notably, this morning, the Northern

8    District of California took Tatung to task for filing

9    motions all over the country, saying that LPL's subpoenas

10   are reasonable and that it is reasonable to request

11   30(b)(6) testimony on the topics listed in the subpoena.

12                   The other two court -- and in doing so,

13   the northern district of California denied Tatung's

14   motion outright.

15                   The other two courts were the district

Page 4

Exh  A- Rough Transcript of Hearing.txt

16    of Minnesota and the district of New Jersey, and in both

17    cases there, the courts entered a middle ground

18    provisional order that allowed LPL to proceed with

19    discovery against specifically accused products, but

20    recognized that, as I am sure Your Honor is aware, the

21    components of that category are likely to change, than if

22    Your Honor permits additional discovery beyond March

23    30th, than those orders will be automatically modified to

24    allow LPL to proceed.

6

1                MR. MERIDETH:  The Court in any location

2    never said anything about --

3                SPECIAL MASTER POPPITI:  You will have

4    an opportunity, sir.  I am going to either have to rely

5    on what I am hearing and hopefully there is going to be

6    no dispute; if there is a dispute, I am going to need a

7    document to show me what the Court said, and I will have

8    to do my best.

9                MR. CONNOR:  Thank you, Your Honor.

10    What our concern is, Your Honor, is that those motions

11    have ground to a halt our efforts to get third-party

12    discovery, and, notably, as we explained earlier in the

13    week, we were on the verge of getting discovery

14    production from several of these third parties, and it

15    was only after Tatung contacted those third parties and

16    advised them of Tatung's intent to file these motion that

17    is the third parties pulled up and did not produce

18    discovery, and we have been forced to put all of that on

19    hold.

Page 5

Exh  A- Rough Transcript of Hearing.txt

20                    SPECIAL MASTER POPPITI:  Let me ask this

21    question:  You have just described a number of

22    jurisdictions where there have been hearings on the

23    respective applications.  And there may be some dispute

24    as to what ultimately occurred in each of those

☐

7

1    jurisdictions.

2                    How many more hearings are expected to

3    occur?  And how long -- and I expect that it will take to

4    have that process come to completion.

5                    MR. CONNOR:  Your Honor, by may count,

6    we have got as many as a dozen different jurisdictions

7    that have not held hearings yet, and, notably, at least

8    one of them, I see the northern district of Illinois, has

9    set a briefing schedule by which it is imposed upon

10    itself an April 5 deadline to issue an order.

11                    Further, the Southern District district

12    of Florida, we raised this issue with Your Honor on

13    Monday, the Southern District of Florida granted Tatung's

14    motion before hearing any response from LPL.  LPL has

15    since filed a motion for reconsideration and then Tatung

16    has requested that the briefing schedule run through the

17    end of March.

18                    So, we have got at least two courts that

19    potentially won't even issue rulings until well after

20    March 30th.  And we, frankly, aren't entirely sure about

21    what the briefing schedules or rulings will be from any

22    of the other courts because we haven't had hearings yet,

23    or, in some cases, have not yet had briefing schedule

24    orders hearings set.

                          Page 6

Exh  A- Rough Transcript of Hearing.txt

8

1            SPECIAL MASTER POPPITI:  Let's focus on
2    that response for just a moment.
3                I don't expect, and certainly, in none
4    of your papers, No. 1, you are not asking me to do
5    anything with respect to those applications and with
6    respect to those hearings, and I expect the reason for
7    that is I don't have -- and tell me whether you agree
8    with this -- I don't have the authority to direct Tatung
9    to stand down; do you agree with that?
10           MR. CONNOR:  Not necessarily, Your
11   Honor.
12           SPECIAL MASTER POPPITI:  Tell me why you
13   don't think.
14           MR. CONNOR:  Well, we believe that these
15   motions could have, and Mr. Merideth raised this on
16   Monday, we did discuss it, and, at the time, LPL didn't
17   see how what it understood to be Tatung's plan could be
18   heard before Your Honor, but as it's now taken shape,
19   these issues could be raised with Your Honor if they are
20   going to be raised.  And what we are asking for is that
21   Your Honor issue an order on one hand that extends the
22   time by which LPL can complete its third-party discovery,
23   and we would submit that a reasonable time would be 60
24   days, and then we also; Your Honor, direct Tatung to stop

9

1    interfering and throwing up road blocks in front of LPL's
                              Page 7

Exh  A- Rough Transcript of Hearing.txt

2    third-party discovery efforts.

3                    SPECIAL MASTER POPPITI:  Let me take the

4    second part of that first.  I know, whether it's from a

5    special Master's desk or from the bench of the Court,

6    that the Court has a wide range of opportunities in its

7    arsenal, if you will, to help to direct, to help to

8    ensure that discovery in any case proceeds as the rules

9    expect it to proceed.  I understand that.

10                    At the same time -- and I understand

11    that the Court has, in that same arsenal, when

12    appropriate, a broad range of remedies/sanctions that can

13    be issued against a party that is violating the rules of

14    discovery, violating orders with respect to those rules.

15    I mean, I understand that.  And the remedies are broad

16    ranged, I don't think anyone would disagree with that,

17    even during the discovery phase of litigation.

18                    At the same time, I am not informed, by

19    virtue of your papers, of any authority in this district

20    and this circuit that says to -- that says a court/a

21    special master has the authority to forestall Tatung from

22    doing what it is doing.

23                    At the same time, I understand that, at

24    the back end of this process, if there is an application

10

1    to do more than just extend the opportunity to do

2    third-party discovery, if there is an application later

3    on, then I know I have got the authority to look at what

4    Tatung has -- look at what Tatung did and make some

5    informed judgment based on how other -- how the -- how

6    the Courts that have jurisdiction to deal with these

Exh  A- Rough Transcript of Hearing.txt

7    applications view Tatung's efforts.

8              So, I mean, it seems to me that the

9    second application, if you will, comes -- first of all, I

10   don't believe I have the authority to say, "Stand down,"

11   and if you are expecting that you want me to exercise

12   authority with respect to remedy, it comes jurisdiction

13   by jurisdiction or it comes at the end of this process.

14              Now, make no bones about it, I would --

15   a special master and a court certainly has the right, and

16   by virtue of the right, I expect the authority, to say, I

17   encourage everyone to make good faith efforts to complete

18   discovery and to permit discovery that is appropriate to

19   be completed.  Make no bones about that.

20              MR. MERIDETH:  May I now address the

21   Court?

22              SPECIAL MASTER POPPITI:  Well, I have

23   one more question.

24              MR. MERIDETH:  Yes, sir.


                                                    11


1              SPECIAL MASTER POPPITI:  Is there any

2    authority, from this district or from the circuit, which

3    stands for the proposition that, in a circumstance

4    similar to what you have described in your papers, that I

5    have the authority to say, "Stand down."

6              MR. CONNOR:  Your Honor, I am afraid

7    that I may have gotten us a little bit off track.  We are

8    not asking -- I need to clarify.  What we are trying to

9    get is confirmation or a determination from Your Honor

10   that gets Tatung to stop its communications, really, with

                          Page 9

Exh A- Rough Transcript of Hearing.txt
11    these -- with the third parties because what we are

12    talking about is, well, they filed these motions, but in

13    advance of these motions, communicated with the third

14    parties to say that the third parties need not tender

15    their production because Tatung was going to be filing a

16    motion.

17              SPECIAL MASTER POPPITI:  Let me make

18    some observation business that.  No. 1, I understand what

19    you represented they have said to individuals that, in

20    turn, contacted you to tell you what they have said.  And

21    I understand that trail.  I don't have -- I am not

22    convinced it would matter anyway -- but I don't have any

23    declaration that permits me to view those precise words

24    coming from the individual that you said used those

                                                          12

1    words.  That's the first observation.

2              The second is if, in fact, what they

3    said was, We have had communication from Tatung, Tatung

4    said that they intended to file a motion for a protective

5    order or motion to quash or however all of these

6    applications are framed in the respective district where

7    is they have been filed, and would they please not do

8    anything until that application is heard, my question is:

9    Aside from the impact that it has on discovery and aside

10    from any ultimate argument you may want to make with

11    respect to Tatung's design from your perspective to

12    frustrate discovery, what can I do, at this juncture, to

13    say to them, You are not permitted to have conversations

14    with third parties?  Where is the authority for that?

15              MR. CONNOR:  Your Honor, I understand
                          Page 10

Exh  A- Rough Transcript of Hearing.txt

16    what you are telling us.

17                SPECIAL MASTER POPPITI:  The record that

18    I have, and please help me if this is not the record, it

19    is not a record where a party is saying to each of its

20    third-party customers, Do not, under any circumstances,

21    comply with the subpoena, ignore it, under pain of we are

22    not going to do business with you anymore, for example.

23                I think were you to be bringing an issue

24    like that before me or before the Court, I think the

                                                        13

1     Court has the right to say, Well, you know, wait a

2     minute, discovery is supposed to proceed unimpeded in all

3     good faith in compliance the rules, but I can't, on this

4     record, make a judgment that Tatung is proceeding in, if

5     you will, in bad faith and in an effort to frustrate the

6     discovery process.

7                Is it frustrating?  I am sure it is.

8                MR. CHRISTENSON:  Just as one point with

9     respect to developing the record, and I understand what

10    you just said, we had requested, from Tatung, copies of

11    their communications with the third parties, which we

12    think would be appropriate for us to see as part of

13    developing this record in case of a need for a later

14    determination by you along these lines, and, so, we would

15    like to see that correspondence.

16                SPECIAL MASTER POPPITI:  Well, I am --

17    Mr. Merideth, why don't you speak to that, please, and

18    then we will -- if you would just speak to that so I can

19    bring you back to your speaking about the whole subject

                              Page 11

Exh  A- Rough Transcript of Hearing.txt

20    area, please.

21                    MR. MERIDETH:  We would be happy to

22    provide that correspondences and I assume they will

23    provide with us their correspondence with their third

24    parties as well.  Charlene -- from Tatung.

                                                    14

1                     SPECIAL MASTER POPPITI:  Just one

2     moment, Ms. Owe, if you don't mind.  Mr. Christenson, did

3     you understand Mr. Merideth's agreement?  And I gather

4     his agreement was conditional.

5                     MR. CHRISTENSON:  Yes, Your Honor,

6     that's fine.

7                     SPECIAL MASTER POPPITI:  So you agree

8     that you will provide your communication with third

9     parties as well?

10                    MR. CHRISTENSON:  Yes, Your Honor.

11                    MR. MERIDETH:  And if I could now

12    address the Court, and I am sure this is what miss owe is

13    also itching to say --

14                    SPECIAL MASTER POPPITI:  Do you want to

15    make sure you are --

16                    MR. MERIDETH:  These statements and

17    accusations that are being made are completely and

18    totally ground less.  Many of these customers that they

19    are referring to have filed objections to the subpoena,

20    and, indeed, in some cases, have filed their own motions

21    to quash.  They have not been encouraged by us to do so.

22    We have filed for very limited relief.  That limited

23    relief relates to data respecting unaccused products.  We

24    have never said or suggested, in the motions or

                            Page 12

Exh  A- Rough Transcript of Hearing.txt

15

1    otherwise, that there not be full comply answer with the

2    subpoena.  We have signed a protective order of very

3    limited scope, which is that -- the same argument that we

4    have made consistently in this case, information that we

5    consider to be an important trade secret not be

6    communicated to our competitor as relates to unaccused

7    product.  That is all we have asked for.  That's what the

8    Courts in New Jersey and Minnesota have granted.

9              I don't think that the Court in San

10    Francisco quite grasped that and suggested that we should

11    have gone to the Court in Delaware first, we disagree

12    with that, but that's the issue there.

13              What we are concerned about here is that

14    ground less statements are being made.  If there are

15    customers who think they have been told not to comply

16    with the subpoenas, they are mistaken, I don't think

17    there are any such customers, and I challenge LG Phillips

18    to produce declarations from those customers suggesting

19    that we have done anything other than inform them that we

20    are filing a motion for a protective order seeking very

21    limited relief.

22              We are not attempting to interfere with

23    the process.  And let me go back, and, having said that,

24    miss owe has submitted a letter to you, which you just --

16

1    which is the document that you just received from Ms.

Page 13

Exh A- Rough Transcript of Hearing.txt

2              MS. GAZA:  When we started this

3   discussion, so I am sure you have not had a chance to

4   review it -- but it does say --

5              SPECIAL MASTER POPPITI:  It is sitting

6   here, but you are right, I have had not had chance to

7   review it.

8              MR. MERIDETH:  Before any judgment is

9   made on anything, that letter needs to be read.  But in

10  any event, let me say this:  We approached the LG

11  Phillips attorneys when we received the third-party

12  subpoenas to attempt to meet and confer and limit the

13  scope to accused products.  We were rebuffed.

14             We sought to suggest that we present the

15  matter to the special master, and we were rebuffed.  They

16  told us that you had no jurisdiction, that whatever

17  ruling that you might have made would be unenforceable

18  against third parties, and that we could pound sand.

19             MR. CHRISTENSON:  Your Honor.

20             MR. MERIDETH:  Excuse me, let me finish.

21             SPECIAL MASTER POPPITI:  Let

22  Mr. Merideth finish, please.

23             MR. MERIDETH:  We were left with

24  absolutely no alternative to file these motions in these

                                                        17

1   different jurisdictions to prevent an end run around the

2   motion that we had presented to Your Honor which is to

3   sustain our objections and to grant us a protective order

4   with regard to the production of confidential information

5   concerning unaccused products.  And there is -- there is

6   absolutely nothing improper about what we have done.
                        Page 14

Exh  A- Rough Transcript of Hearing.txt

7    It's exceedingly important to our client, as we have said

8    on numerous occasions, that information about unaccused

9    products not be shared with our competitor.  There is

10   absolutely no reason to do that.  That very issue is

11   under consideration by Your Honor.  We would have been

12   happy and we asked that the issue be presented to you in

13   some normal that would have precluded having to do this.

14            We don't enjoy going to 13 different

15   jurisdictions and filing these motions.

16            Second, we have asked for emergency

17   consideration of these motions because we want to get the

18   decisions made right away.  So, if a decision is that the

19   information should be produced, then it can be produced

20   by these third-party witnesses.  And we have -- that

21   effort to try to expedite a determination of the issue

22   has been resisted by LG Phillips.

23            So, to suggest somehow or another that

24   we are trying to impede the process is just flat out

18

1    wrong.  And it's -- well, that's the end of it.  I won't

2    --

3            SPECIAL MASTER POPPITI:  Let me do this

4    before Mr. Christenson says anything:  I hope, if nothing

5    else, over the time that we have -- that I have had an

6    opportunity to be working with all of you, I hope one of

7    the things that you have learned is, when I say I have

8    not made a judgment one way or the other, when I do not

9    have any inclination one way or the other, that you can

10   take me at my word.

Page 15

Exh  A- Rough Transcript of Hearing.txt

11              So, the dialogue that I was having

12    earlier about the papers that have been put before me and

13    what, if any, authority I have, notwithstanding the

14    language that I used for purposes of having that

15    dialogue, because I think the language is the language of

16    the art to use, the language of the law to use, I make no

17    judgment and I have no inclination.

18              Let me say this as well, and perhaps I

19    should have done this earlier than now:  To the extent

20    that it is appropriate for a special master and for

21    somebody sitting in my chair to give an inclination as to

22    what a finding and recommendation is going to be, and

23    particularly to give an inclination as to a finding and

24    recommendation that has not only implications in this

19

1    case but perhaps implications in other cases, even though

2    I know what I do is merely a finding and recommendation,

3    it's not adopted by the Court, it is -- the words are --

4    they are on the paper, hopefully, they have some worth,

5    but it's the court's word that is count.

6              But to the extent that it's important to

7    give an inclination on the issue of accused/unaccused, I

8    think the best way to describe that is you know that I

9    have not filed a finding and recommendation on that

10    issue, and you also know that discovery is proceeding --

11    I am no going to characterize how it's proceeding -- on

12    accused product.  You all know that.

13              You can expect, and I said it to you

14    last week, but, quite frankly, I wasn't able to turn to

15    it and get to it this week, you will get a finding and

Page 16

Exh  A- Rough Transcript of Hearing.txt

16    recommendation.  It's important that it be as careful --
17    they all should be careful -- but in more depth in terms
18    of its analysis of dealing with the issue of
19    accused/unaccused.  But by virtue of what has been going
20    on, I am telling you that the discovery is going to be,
21    absent something earth shattering that I consider in the
22    next number of days, it's going to be limited to accused
23    products.
24                    Now, perhaps I should have done that

                                                              20

1     earlier, and I will even go so far as to suggest, by
2     perhaps doing it earlier in terms of giving you an
3     indication or an inclination on the record, you would
4     have been able to, perhaps, discussed the issue in a meet
5     and confer more meaningfully, and you would have had the
6     opportunity and you now may have that opportunity to
7     share a special Master's inclination with other
8     jurisdictions that you will be working in.
9                    Now, having said that, Mr. Christenson.
10                   MR. CHRISTENSON:  Yes, Your Honor.
11    Thank you.  I don't know if there is anything else that
12    you would like me to address concerning the third-party
13    issue.  I think -- I think we all understand your view on
14    that and it sounds like that's an issue to be addressed
15    at another time, if I understood you correctly.
16                   SPECIAL MASTER POPPITI:  That's correct.
17    I only want to be looking at the extension of time.  And,
18    again, it seems to me that there should be -- discovery
19    itself occurring in a face for whatever reason.  There

Exh A- Rough Transcript of Hearing.txt

20    will be hearings in other jurisdictions as they relate to

21    certain third parties.

22              If it's important to discuss the number

23    of days for the extension, then let's do it now because I

24    intend to grant an extension.  If it's better to wait

21

1    until the universe of dispute has narrowed or completely

2    evaporated, then we should wait.

3              MS. KLEVENS:  May I address that?

4              SPECIAL MASTER POPPITI:  Yes, please.

5              MS. KLEVENS:  Our view is that it is

6    important to discuss this at least on an interim basis

7    now, and the reason for that is that we currently have

8    depositions of these third parties scheduled throughout

9    the next several weeks and we have had to adjourn some of

10   the depositions temporarily over the last week and a half

11   because of the third-parties' positions with respect to

12   these motions.

13              And, so, as a result, we have, right

14   now, quite a few depositions and third parties who are

15   requesting to have those depositions scheduled prior to

16   March 30th.  And until the discovery deadline is

17   extended, I have no authority to extend these deposition

18   dates past March 30th.

19              THE ARBITRATOR:  I understand.

20              MS. KLEVENS:  The hearing dates, as

21   well, will be affected by that date because the judges in

22   the other jurisdiction, I believe, are setting these

23   expedited hearing dates based, in part, on the dates for

24   the deposition.

Page 18

Exh  A- Rough Transcript of Hearing.txt

22

1              SPECIAL MASTER POPPITI:  Well, and that
2    was one of the expectations that -- I mean, I certainly
3    understood that by virtue of the papers that you have
4    filed, and I certainly don't want to -- well, let me say
5    it carefully:  If you have got the March 30th date that
6    you are presently working with and it's important to have
7    these hearings sooner than later and the other
8    jurisdictions are looking at the March 30 target and they
9    are, therefore, giving you expedited hearings, isn't it
10   important to have those hearings completed so that after
11   the hearings are over, we then can look at realistic
12   dates?
13              I mean, my concern is that it's -- it's
14   one that you kind of put a magnifying glass over by
15   virtue of your comment.
16              If I extend the date and have a date
17   certain, it may very well be that the other jurisdictions
18   will feel more relaxed in their approach to scheduling.
19   With the March 30 date, they may honor the request that
20   has been made to expedite, you will have decisions with
21   respect to most, if not all of these, and you will be in
22   a better position to work without the specter of having
23   three, four, five, six, eight, nine out there that still
24   haven't been decided.  That's the only concern I have

23

1    about setting a date now.

Page 19

Exh  A- Rough Transcript of Hearing.txt

2          MS. KLEVENS:  I understand, Your Honor.

3   And we essential search share that concern that while we

4   did object to that expedited schedules, the reason we did

5   so was merely for scheduling purposes with some of our

6   attorneys out in depositions out in other locations,

7   there are only so many of us that can handle these

8   hearings and unfortunately we were getting notice from

9   the Courts that we were having up to four hearings a day

10  in these other jurisdictions.  It's not that we weren't

11  interested in an expedited schedule.  Having said, that,

12  you know, I do still have a strong concern that, from

13  today, there is only two weeks remaining during which I

14  have scheduled depositions, roughly two a day, between

15  now and then, and no ability to reschedule past that

16  date.  I know I have said that and I apologize for

17  repeating myself.

18          SPECIAL MASTER POPPITI:  I understand.

19          MS. KLEVENS:  I just have a strong

20  concern that if the defendants will somehow, you know,

21  agree not to object to our scheduling of depositions past

22  March 30th, that would give us a little bit of leeway, at

23  least temporarily, until such time as we have ruling from

24  the other jurisdictions and can discuss a more permanent

24

1   extension of the discovery deadline.

2          SPECIAL MASTER POPPITI:  Mr. Merideth.

3          MR. CHRISTENSON:

4          MR. MERIDETH:  I have no problem

5   discussing, on a case-by-case basis, new dates.  I agree

6   with Your Honor's view that if we extend the dates, the

Page 20

Exh  A- Rough Transcript of Hearing.txt

7    courts are more likely to take a relaxed position.

8    Furthermore, as Ms. Klevens has conceded, LPL, I believe

9    in every case, has requested additional time with respect

10   to these hearings, and, of course, that's going to delay

11   it even further.

12            I understand exactly what the problem

13   is.  once there is a ruling, we still have to take the

14   deposition.  On the other hand, I believe that, from what

15   I have been told, there are third-party witnesses who are

16   prepared to go ahead with documents document production

17   and with depositions on accused products.  so, we could

18   do that.  There is no reason why we could not do that at

19   this time.

20            MS. KLEVENS:  If I may just make one

21   point, Your Honor, the only limitation there is just with

22   respect to there being, again, you know, only so many

23   people in our offices.  we are trying to simultaneously

24   field multiple hearings and multiple discussions with

25

1    these courts every day and respond to the motions that

2    were filed, and, at the same time, prepare for and take

3    depositions.  So even if there are parties that are

4    prepared to go forward today, frankly, in whole effort by

5    the defendants have derailed our ability to prepare for

6    those depositions.  And we also need some time to prepare

7    for the depositions of these parties once they produce

8    their documents.  The original subpoenas allowed for the

9    third parties to produce their documents and their

10   depositions were scheduled no less than one week after we

Page 21

Exh A- Rough Transcript of Hearing.txt

11  have received the documents.

12          MR. MERIDETH:  May comment, Your Honor?

13          SPECIAL MASTER POPPITI:  Absolutely.

14          MR. MERIDETH:  I must say that the

15  problem Miss Klevens is describing is one that was self

16  inflicted.  They waited until the end of February to

17  notice 23 depositions, and that taxes the resources of

18  all of the firms that are involved.

19          SPECIAL MASTER POPPITI:  It does.

20          MR. MERIDETH:  That delay is not a

21  reason to continue the Court established deadline.

22          I agree that if the Courts are putting

23  off these depositions until there is a decision, that's a

24  different thing, but the -- we are all under the same

26

1   burden when someone serves 23 deposition notices with

2   only 30 days left to go in the case, it's going to be a

3   real difficult logistical problem.

4           SPECIAL MASTER POPPITI:  I am willing to

5   make -- to literally sit down with the calendar and start

6   going through your scheduled depositions of third

7   parties.  I don't think that that's going to be very

8   productive for anyone.  I think it makes a great deal of

9   sense for me to expect that between now and somebody pick

10  a date in the new week, that you all have the opportunity

11  to sit down, discuss the parameters of what you would

12  expect to be a reasonable extension, make some

13  determination as to what depositions need to be

14  forestalled, and if any can go forward, make that

15  judgment as well, because I certainly can't do that for

Page 22

Exh  A- Rough Transcript of Hearing.txt

16    you on this record.

17            You are going to, notwithstanding the --

18    and Mr. Merideth, I note in your papers and I note your

19    argument that these depositions were scheduled when they

20    were, but my view of expecting that you are going to be

21    getting an extension has more to do with where we are as

22    a result of the third-party practice in terms of these

23    other applications in the other districts than it is a

24    function of when the depositions were noticed.

27

1            MR. MERIDETH:  I would be happy to

2    discuss those dates with counsel for LG Phillips.

3            SPECIAL MASTER POPPITI:  Is it important

4    to discuss outside limits on this -- in this conversation

5    or can you all do that as well?

6            MR. MERIDETH:  I think we can all do it.

7    I think, you know, theres are a number of third-party

8    witnesses that we also have subpoenaed and there are also

9    some issues with regard to objections that have been made

10    to some of those subpoenas.  I think it would be

11    worthwhile for us to sit down and talk about a schedule

12    for all of the third-party discovery, and, hopefully, we

13    can get it completed during the month of April.  I just

14    don't want to have an open-ended extension with respect

15    to everything, and I think if we sat down and tried to

16    work with the third parties and work between ourselves,

17    that we can come up with a reasonable schedule.

18            SPECIAL MASTER POPPITI:  Well, and you

19    and everybody on this phone call understands where we

Page 23

Exh A- Rough Transcript of Hearing.txt
20  have been with the history of this and understands where
21  we have been with my two visits to Judge Farnan's chamber
22  to tweak the scheduling order, and each of those times
23  resulted in the Court issuing a scheduling order that did
24  not extend the time for third-party discovery.

28

1           We are in a different environment right
2   now.  It seems to me it needs to be extended.  It makes a
3   great deal of sense to do it globally.  And it will not
4   affect any of the other -- any of the other dates, so you
5   are still working within the time frames, the critical
6   time frames of hearings that have already been
7   established, hearings and ultimate trial.
8           And can you all wrap this up by the
9   teleconference that's presently scheduled for 6:30 on
10  Monday?
11          MR. CONNOR:  Yes.  We will do our best
12  to do that.
13          MR. MERIDETH:  Yes, Your Honor.
14          SPECIAL MASTER POPPITI:  So, no
15  discussion about an outside limit?  Wouldn't that help
16  frame the discussion or no?
17          MR. MERIDETH:  I think that there are
18  other things that we need to take into account, and,
19  specifically, the schedule with respect to some of the
20  third-party witnesses, who are the ones who, frankly, are
21  also bearing a considerable burden with respect to having
22  to produce all of this data on a very short time period,
23  and it would probably be wise for us to touch base with
24  them and see what their schedules are and make sure that
                        Page 24

Exh  A- Rough Transcript of Hearing.txt

29

1    we have the proper places and the proper times and the
2    proper people.
3                    SPECIAL MASTER POPPITI:  Can you do all
4    that by Monday or do you need --
5                    MR. MERIDETH:  Probably Monday may be
6    too ambitious.  Maybe by Tuesday or Wednesday, I would
7    think we, would and I am not sure it's going to make any
8    difference whether it's Monday or Wednesday, frankly.
9                    SPECIAL MASTER POPPITI:  Anyone want to
10   speak from the other side.
11                   MR. CONNOR:  I guess I am just not
12   hearing a response as to a global extension for
13   deposition time.
14                   SPECIAL MASTER POPPITI:  I think I heard
15   Mr. Merideth say, rather than discuss it now, it really
16   is more important to have your discussion off-line,
17   permit each of you to discuss issues with respect to
18   third parties so that when we -- when we reconvene on
19   this issue to discuss whether you arrived at an agreement
20   on the closure of third party discovery or whether you
21   submit to me your ultimate dispute on a date, you will be
22   much better informed, and, therefore, I will be better
23   informed.  I think that's what I heard him say.
24                   MR. MERIDETH:  Yes, sir.  By way of

30

1    example, I know that tie company has filed objections and
                            Page 25

Exh  A- Rough Transcript of Hearing.txt
2    -- of its own and has issues with regard to the timing.

3    If we were to call tie company and try to work out those

4    objections and try to set a time that's convenient with

5    tie company, then we'd know where tie company is and we

6    can go forward.  I think we can do that -- I mean, there

7    are a number of these, but we could and should do this

8    with everyone.  I think to the extent that there are

9    agreed deadlines as opposed to imposed deadlines, it's

10   always easier to get compliance.

11              SPECIAL MASTER POPPITI:  I agree.  I'd

12   like to proceed in that fashion.  Just tell me, if it's

13   not going to be doable by Monday, do you all want to

14   schedule another time Tuesday or Wednesday?

15              MR. MERIDETH:  I would suggest

16   Wednesday, Your Honor.

17              MS. KLEVENS:  Obviously, Your Honor, we

18   would rather do it sooner rather than later.  We would do

19   it Monday.  Tuesday is even better.

20              SPECIAL MASTER POPPITI:  I don't want to

21   be in a position of having to hear, We weren't able to

22   accomplish all we intended to because we are busy doing

23   other things.  I don't think we are going to lose much

24   time by virtue of doing it on Wednesday.  So we will do

31

1    it Wednesdays, I don't have your deposition schedule

2    right in hand -- will we have to do it at five?  We can

3    if we need to, or if we have to do it later.

4              MR. MERIDETH:  I am going to be in

5    Washington D.C. for Mr. Kim's deposition so, 5:00 would

6    be fine where me.

Exh  A- Rough Transcript of Hearing.txt

7          SPECIAL MASTER POPPITI:  Do you expect
8   to conclude with him at five?  We can start at five.  We
9   can start at 5:15.
10         MR. MERIDETH:  5:15 would be even
11  better.
12         SPECIAL MASTER POPPITI:  Does that work
13  for everyone?
14         MS. KLEVENS:  Is that Wednesday, Your
15  Honor?
16         SPECIAL MASTER POPPITI:  It is.
17         MS. KLEVENS:  That's fine.
18         SPECIAL MASTER POPPITI:  May I ask madam
19  court reporter, does that work for you:
20         MR. HEISMAN:  This is gym Heisman on
21  behalf of ViewSonic.  I was wondering if you could
22  provide some clarification when you are talking about a
23  global extension of third-party discovery, it's my
24  understanding that that would be limited to discovery

32

1   that's already been propounded and on the table at this
2   point and would not spawn additional third-party
3   discovery requests.
4          SPECIAL MASTER POPPITI:  No new
5   mushrooms.
6          MR. HEISMAN:  Thank you, Your Honor R
7   thank you, Your Honor.
8          SPECIAL MASTER POPPITI:  Next, please.
9          MR. CHRISTENSON:  We had a letter that
10  we had submitted to you with respect to some outstanding
                        Page 27

Exh  A- Rough Transcript of Hearing.txt

11   issues --

12        MR. KIRK:  Your Honor, excuse me, may I

13   suggest that, at some point, representatives of the third

14   parties be excused because this is now turning to

15   information that may be confidential?

16        MR. JOHNSON:  Thank you, Dick.  I was

17   trying to figure out how to do that myself.  I will hang

18   up if that's okay.

19        SPECIAL MASTER POPPITI:  Thank you, sir.

20   Thank you for joining us.  Okay.  Okay.

21        MR. CHRISTENSON:  Thank you, Your Honor.

22   We submitted a letter on March 14 concerning issues that

23   we had raised with you during the March 9 hearing related

24   to Tatung's document productions, and the reason we are

                                             33

1    raising it is, as we have stated, is because we need to

2    make sure that now is the time for us to get all of the

3    relevant and necessary discovery that we need to use when

4    we depose Tatung Company's Rule 30(b)6 witness starting

5    on Tuesdays, Mr. Shea.  And there are some issues that I

6    think remain in dispute and it would be helpful if we

7    could raise those wishes you today briefly to see if we

8    could resolve them before the deposition.

9         We have summarized in our March 14

10   letter the types of documents that we understand have to

11   exist but not to have been produced.  Tatung has

12   responded to that with a March 15 letter, and we

13   supplemented, very briefly to you today, you may not have

14   seen it yet, but we supplemented very briefly waved on a

15   deposition this week where there was some additional

                         Page 28

Exh  A- Rough Transcript of Hearing.txt

16    documents that were identified that we felt should have

17    been produced.

18              SPECIAL MASTER POPPITI:  Yes.  I have

19    the 14th, I have the response of the 15th, and Mr. Kirk's

20    letter came in at 2:38, so I can tell you that I haven't

21    had an opportunity to read other than the letter.

22              MR. CHRISTENSON:  I understand, Your

23    Honor.

24              The March 15 letter suggested that it

                                                    34

1     would make sense for a further meet and confers to occur,

2     and I respectfully disagree with that because this is

3     discovery that we have been trying to get for many, many

4     months.  We have had many meet and confers that resulted

5     ultimately in motions in December and hearings and

6     agreements during the course of the hearings before you

7     in January and the idea was we should have had all

8     appropriate discovery by the end of January.  You

9     required a certification from Tatung, as of March 9, that

10    discovery had been completed.

11              So, I don't I think it makes any sense

12    for us to try to meet and confer any further.  The

13    question is:  Is there any additional discovery that

14    should be produced?  And with respect to the issue of

15    accused products, and I understand your indication as you

16    provided, and I do think that it was useful for you to

17    provide that and I appreciate that, I think that there

18    are, however, two types of documents, two types of

19    discovery that relate to accused product, and those two

                          Page 29

Exh_A- Rough Transcript of Hearing.txt

20    types are, first, documents that refer expressly or

21    solely to accused products, which, of course, I think we

22    all agree are relevant, and then there are also

23    documents, Your Honor, that relate to accused products

24    more generally but may not be limited to accused products

35

1    specifically or may not refer specifically to accused

2    products but are just as relevant because they equally

3    relate to accused products.  And I will talk about that a

4    little bit more in a moment.

5              But both of those categories are

6    documents that Tatung has agreed to produce, that are

7    more general and not limited to accused products, Tatung

8    has agreed to produce, to the extent they relate, to the

9    U.S. market, and that makes sense because, for

10   inducement, Tatung's conduct in attempt to go sell

11   products to its customers in the U.S. market is directly

12   relevant and tends to prove inducement.

13             So, just to run through, briefly, the

14   issues as summarized in our March 14 letter, Your Honor,

15   the first issue relates to sales reports, and during the

16   prior hearing on March 2nd, you had ordered that Tatung

17   defendants should produce all sales related reports

18   concerning accused products which had been agreed to by

19   Mr. Merideth previously, and we are not aware of those

20   reports having been produced, and as I understand the

21   March 15 letter from Tatung, they don't represent that

22   they have, in fact, produced those reports.

23             So the first question, I think, is:  Why

24   haven't we received those reports and when can we get

Exh  A- Rough Transcript of Hearing.txt

36

1    those reports?  And, as an example, we cite global
2    monthly sales reports that Tatung Company has on a
3    regular basis that relate to its U.S. customers, and,
4    again, they have agreed to provide discovery generally
5    related to the U.S. market.
6                    So, those are reports that we feel
7    should have already been produced.
8                    I don't know if you want me to go
9    through all of the issues or if you prefer to have me
10   stop and then address these issues separately after a
11   response from Mr. Merideth?
12                   SPECIAL MASTER POPPITI:  Let's do one at
13   a time, please.
14                   MR. MERIDETH:  With respect to the
15   global sales reports, Your Honor.
16                   SPECIAL MASTER POPPITI:  Yes, please.
17                   MR. MERIDETH:  Those are by type of
18   product, i.e., television, monitor, worldwide, i.e.,
19   global reports, and they give numbers.  They do not refer
20   to any product by number.  They do not refer to any of
21   the accused products, and they are a global report.
22                   We have provided quarterly -- now
23   provided quarterly summaries.  We have provided summaries
24   that identified sales on a day-to-day basis.

37

1                    There are customers who buy from us
                             Page 31

Exh  A- Rough Transcript of Hearing.txt
2   globally, and those customers' information, unrelated to

3   the U.S. market, are not, to use the vernacular, any of

4   LG Phillips' business, and we are not going to give them,

5   or we shouldn't be required to give them our global sales

6   reports that don't even identify a product but would

7   identify for them, for their competitive purposes, the

8   worldwide volume that we may be doing with a particular

9   customer or with a particular type of product, i.e.,

10   television or monitor.

11              It has no specificity to any accused

12   product or to the U.S. market in general.

13              SPECIAL MASTER POPPITI:

14   Mr. Christenson.

15              MR. CHRISTENSON:  Yes, Your Honor.

16        A.   What Mr. Merideth failed to mention there was

17   that the sales summaries that they have provided to us

18   have no customer information; hour however, the global

19   monthly sales reports do have customer information and

20   many of those customers are major U.S. customers of

21   Tatung according to the testimony.  For example, gate

22   way, as another example, Tatung sells substantial

23   quantities to HP, those products are specifically

24   intended for the U.S. market.

0

                                                        38

1              The sales reports may not specify a

2   model number, but they do, according to the witness,

3   specify sizes of products and types of products by

4   customer, including for U.S. customers.  So, clearly, I

5   think we are entitled to show that they are -- what types

6   of products they are selling to the U.S. customers as

                          Page 32

Exh  A- Rough Transcript of Hearing.txt

   7    part of our inducement case.

   8                MR. MERIDETH:  If I could respond?

   9                SPECIAL MASTER POPPITI:  Yes, please.

  10               MR. MERIDETH:  Gateway is a perfect

  11    example.  Gateway does not purchase, in the United

  12    States, any products that have been accused.  They want

  13    to have our sales data with respect to gateway.  They

  14    sell no accused products in the United States.  They sell

  15    no accused products worldwide, as far as I am aware, and,

  16    yet, they want our detailed global report with respect to

  17    gateway.  They are not entitled to it.  It has absolutely

  18    no bearing in this case whatsoever other than to give

  19    them competitive information that they are not entitled

  20    to.

  21               SPECIAL MASTER POPPITI:  I will use

  22    gateway as an example.  I see no foundation to expect

  23    that gateway information should be provided.  It's, I

  24    gather, worldwide information?

                                        39

   1                MR. MERIDETH:  Yes, sir.

   2                SPECIAL MASTER POPPITI:  It's not U.S.

   3    information.

   4                MR. MERIDETH:  It would include U.S.

   5    information.

   6                SPECIAL MASTER POPPITI:  And does not

   7    have --

   8                MR. MERIDETH:  It doesn't break it out

   9    by Europe shall after can a, whatever.

  10               SPECIAL MASTER POPPITI:  I am -- if the

Exh  A- Rough Transcript of Hearing.txt

11   gateway example is representative of the rest of the

12   universe that's being requested here, then the

13   application is denied.  If it's important for me, because

14   I haven't had the opportunity to have you point at

15   Mr. Ho's deposition, which you do in the March 16

16   correspondence, and there is a different template than

17   gateway, I am certainly happy to look at that.

18              MR. MERIDETH:  May I add one other

19   additional thing?

20              SPECIAL MASTER POPPITI:  Sure.  Those

21   remarks were for Mr. Christenson, certainly.

22              MR. MERIDETH:  Yes.  The other thing is

23   Mr. Christenson says that our quarterly summaries do not

24   include customer data, and he is absolutely right.  And


                                                          40


1    the reason they don't include customer data is because

2    they didn't ask for customer data.  And I think it's

3    quite unfair, at this stage of the game, for them to say,

4    Oh, we wished we would have asked for customer

5    information.  We have provided, however, for the accused

6    products' customer-related data, so the only thing that

7    we have not provided customer-related data for are

8    unaccused products.

9               So, while the quarterly reports are

10   generally -- generally address all product, with respect

11   to the accused product, we have only -- we have provided

12   them with all of the information including customer

13   information.

14              SPECIAL MASTER POPPITI:  Thank you.

15              MR. CHRISTENSON:  Your Honor, to respond
                           Page 34

Exh  A- Rough Transcript of Hearing.txt

16    briefly, we have, indeed, asked specifically for customer

17    information.  I don't know what the basis is for

18    Mr. Merideth to say that.  I can point to you, I believe,

19    in a transcript, where this came up, and perhaps

20    Mr. Merideth is willing to then provide with us the

21    customer information if I can provide that citation; is

22    that agreeable?

23                    MR. MERIDETH:  I don't know what you are

24    referring to.  What kind of information do you want?

41

1                    SPECIAL MASTER POPPITI:  I didn't hear,

2    you were speaking over each other.

3                    MR. CHRISTENSON:  What I am saying; Your

4    Honor, if I could point Mr. Merideth to where we have

5    specifically requested his customer information, he would

6    be willing to produce it.

7                    MR. MERIDETH:  If you have requested it

8    in the discovery request -- I mean, if you just called me

9    up on the phone or said in a deposition, "I want it,"

10    that's not a discovery request.

11                    MR. CHRISTENSON:  We will follow-up with

12    that among counsel, Your Honor, too.

13                    SPECIAL MASTER POPPITI:  I understand

14    that there have been beyond -- it may be fair to say

15    this, and if it isn't, I know you will make a record --

16    that there have been agreements that you have made during

17    the course of our teleconferences that are transcribed.

18    If it's pursuant to an agreement of that nature, I would

19    expect, Mr. Merideth, you would agree that, if it was an

Page 35

Exh  A- Rough Transcript of Hearing.txt

20  agreement in the context, it was an accommodation dealing

21  with discovery requests, that you should be bound by that

22  agreement.

23              MR. MERIDETH:  Yes, sir.  Absolutely.

24              SPECIAL MASTER POPPITI:  Thank you.


                                                      42


1               MR. CHRISTENSON:  And, Your Honor, just

2   to put a final point on that, do you happen to have

3   access to the January 22nd hearing transcript?

4               SPECIAL MASTER POPPITI:  Just a second.

5   Give me one minute.  Thank you.  Okay.  I do.  Give me a

6   moment to get to it.  January 22.  Okay.

7               MR. CHRISTENSON:  And this is with

8   respect to Mr. Merideth's comment that customer

9   information has never been requested, before it reminds

10  me, Your Honor, of the March 9 hearing we had to talk

11  about --

12              SPECIAL MASTER POPPITI:  This is in

13  January 22?

14              MR. CHRISTENSON:  Yes.  If you would

15  please take a look at page 13 of the transcript.

16              SPECIAL MASTER POPPITI:  Line?

17              MR. CHRISTENSON:  Starting at line

18  eight.

19              SPECIAL MASTER POPPITI:  Why don't you

20  read it, please, for the record.

21              MR. CHRISTENSON:  Yes, Your Honor.  I

22  will start with line 10, where it starts by stating, "The

23  one page sales summary that we have so far that I

24  discussed on Friday, which relates to the L17 AMTN, the

Page 36

Exh   A- Rough Transcript of Hearing.txt

43

1    customer, there is a customer heading in that document,
2    but all the customer names are redacted.  That's an
3    accused product, Your Honor.  And it sounded to me like
4    Mr. Merideth was just saying that, very similarly, do not
5    plan to include the customer information in the summaries
6    to be produced shortly.  And I know that we have
7    discussed already that the protective order does not
8    contemplate redaction of customer information, so I am
9    hoping we could maybe get an agreement to include the
10   customer information.  Mr. Merideth:  We will include the
11   customer information with respect to accused products.
12   We will not provide customer information regarding
13   products that are not accused.  Your Honor states:  I
14   think that's perhaps the clarification you were looking,
15   you weren't looking for to be that narrow, but, in any
16   event, that is a clarification.  I state yes, thank you,
17   Your Honor.  I then state:  We also discussed on Friday,
18   Your Honor, that we are seeking documents concerning
19   indirect infringement and relationships between Tatung
20   Company and U.S. brands or customers as well as products
21   that enter the market and are sold through and to those
22   customers and brands in the U.S. and we, for example, I
23   won't re-plow the discussion, but, as an example, we had
24   requested correspondence between Tatung and ViewSonic or

44

1    correspondence between Tatung and others related to the
Page 37

Exh A- Rough Transcript of Hearing.txt

2    U.S. market.  Those were document request numbers 62 and

3    63, for example.

4                    And then I talk about, paraphrasing now,

5    Your Honor, I talk about our concern that they don't do

6    business just on an accused product basis so that there

7    are certainly relevant documents concerning production

8    that are marketed to U.S. customers and efforts by Tatung

9    to generally market to customer nurse the U.S. by both

10   accused products and other products, Tatung generally

11   markets all those products in certain ways and targets

12   the U.S. when it does so.

13                   And Mr. Merideth responds:  I thought we

14   covered this Friday.  My specific recollection was that,

15   to the extent that there was general correspondence or

16   sales and marketing in the United States generally, for

17   example, was discussed, without any particular model

18   number being referenced, that, you know, I accepted you

19   were entitled to discovery of that.

20                   And he is goes on to say this is

21   something that relates only to non-accused products, then

22   he thinks that should be provided.

23                   SPECIAL MASTER POPPITI:  Right.

24                   MR. CHRISTENSON:  And you then say

                                                      45

1    that's what I understood to be the question.

2                    So, No. 1, I submit, Your Honor, that we

3    not only have requested customer information, it was

4    supposed to have been provided, and No. 2, there is also

5    clearly an agreement and understanding that we are

6    entitled to discovery generally showing efforts to market

                            Page 38

Exh A- Rough Transcript of Hearing.txt

7  display products to the U.S.

8              So, I think that's, us know, for

9  Mr. Merideth to say to you that it's just too bad we

10  never asked for that information is just not correct.

11              MR. MERIDETH:  I think you had

12  misconstrued what I was saying.  I said, with respect to

13  our quarterly summaries, you did not ask us to include

14  customer information.  We have provided you with customer

15  information respecting accused products.  We have

16  provided you with marketing information generally in the

17  United States.  We have provided you that information.

18              We did not include it, however, on the

19  quarterly summaries because you didn't ask for it on the

20  quarterly summaries.  That's the only statement that I

21  made.

22              MR. CHRISTENSON:  And that's another

23  cite, I don't have that side sight in front of me, but we

24  can talk about that further and we can raise it again if

                                                            46

1  necessary.

2              MR. MERIDETH:  If we agreed to provide

3  it on the quarterly summaries, we will provide it on the

4  quarterly summaries.  If you can point that out to me, we

5  don't need to go into a big argument here.  I don't

6  believe that's the case.

7              MR. CHRISTENSON:  The point is:  We

8  requested it specifically and you did not agree to

9  provide it.  We did ask it.

10              MR. MERIDETH:  Yes, I agree.  I did not

                        Page 39

Exh  A- Rough Transcript of Hearing.txt

11    agree to provide it and we didn't provide it because it

12    was never requested in a discovery request, and,

13    therefore, we didn't provide it.  That's the only point

14    that I made.

15                    I have been completely consistent and we

16    have been completely consistent with respect to our

17    production of documents and we have produced what we said

18    we would produce.

19                    SPECIAL MASTER POPPITI:  If I understand

20    the record that I have, there really is nothing for me to

21    deal with other than if Mr. Christenson can point to a --

22    any transcript that said that you would -- that you agree

23    to provide, in the quarterly summaries, customer

24    information than you will be required to do so and you

47

1    just indicated that you would do so.

2                    Absent that, if it was not requested, I

3    have -- I certainly am not going to order it.

4                    MR. CHRISTENSON:  I understand what you

5    just said, Your Honor.  I can tell you my recollection is

6    I did request it, there was no agreement to provide it,

7    and, so, it's a dispute.  If I understand what you just

8    said, you have -- you are not going to require them to

9    produce the --

10                    SPECIAL MASTER POPPITI:  Not unless

11    there is an underlying request specifically dealing with

12    the quarterly summaries.

13                    MR. CHRISTENSON:  Okay.  I do think

14    there is a request that would call to that, Your Honor,

15    but I don't have that in front of me right now.

Exh  A- Rough Transcript of Hearing.txt

16          SPECIAL MASTER POPPITI:  Let's deal with
17    it at another point.
18          MR. CHRISTENSON:  Going back to the
19    March 14 letter if I may, Your Honor.
20          SPECIAL MASTER POPPITI:  Yes.
21          MR. CHRISTENSON:  The second point
22    relates to -- well, I guess before we move off the first
23    topic, the question; and this is really a question, I
24    guess, for counsel, but there is no question that you had

48

1     ordered that regularly created sales related reports
2     concerning accused products needed to be produced, and
3     there is nothing in the letter that says one way or the
4     other whether those products exist or whether they have
5     been produced.  So I think we need that clarification,
6     Your Honor.
7          SPECIAL MASTER POPPITI:  Mr. Merideth.
8          MR. MERIDETH:  To the extent there are
9     regularly generated reports respecting accused products,
10    we have produced them.
11          MR. CHRISTENSON:  Your Honor, I don't
12    know what that means.  Either they exist or they don't.
13    I don't know.
14          SPECIAL MASTER POPPITI:  He said they
15    produced them.  To the extent they exists, they produced
16    them.
17          MR. CHRISTENSON:  I haven't seen they
18    will so, does that mean they don't exist.
19          SPECIAL MASTER POPPITI:  Mr. Merideth.
Page 41

Exh  A- Rough Transcript of Hearing.txt

20              MR. MERIDETH:  No.  It means that you

21     haven't gone through the stuff that we produced

22     thoroughly.

23                   SPECIAL MASTER POPPITI:  So, if I

24     understood what you just said, Mr. Merideth, you respect

                                                           49

1     that there is production that falls in that category;

2     correct, sir?

3                   MR. MERIDETH:  Yes.  I don't think it's

4     incumbent upon me to go through and --

5                   SPECIAL MASTER POPPITI:  No, it isn't.

6     You have answered the question.

7                   MR. CHRISTENSON:  Thank you.

8                   Your Honor, the second point, which is

9     on page 2 of our March 14 letter, relates to profit

10     information for accused products.

11                   SPECIAL MASTER POPPITI:  I see it.

12                   MR. CHRISTENSON:  And my understanding

13     from the March 15 response letter is that Tatung Company

14     does not have that information available and that Tatung

15     America hasn't produced that information.  So, if that's

16     the case, I don't think we need to discuss that issue

17     further.

18                   MR. MERIDETH:  Tatung Company does not

19     maintain profit and loss data by product, so it does not,

20     for example, take a, what is the profit they make an on

21     a.m. T M monitor 17 inch, they do not maintain that

22     profit and loss information.  They don't maintain their

23     records in that fashion.

24                   The Tatung America records do allow you
                              Page 42

Exh  A- Rough Transcript of Hearing.txt

50

1    to determine gross margin on products and we have

2    provided that information.  We do not have profit and

3    loss information from Tatung Company with respect to

4    products.

5              MR. CHRISTENSON:  I will move on, then,

6    to the third topic.

7              SPECIAL MASTER POPPITI:  Okay.

8              MR. CHRISTENSON:  Which is product plans

9    and road maps.

10              We have received one document that's

11    titled a "2007 product plan," and it's a very useful

12    document, I think it shows a lot of information about

13    Tatung's efforts to market specifically to customers in

14    the U.S.

15              My concern is that it's the only such

16    document that I have seen, and we'd like to get

17    additional similar documents from Tatung.

18              MR. MERIDETH:  As I indicated in the

19    letter, we -- this format that you received with regard

20    to the 2007 plan is a new format, it was not used during

21    prior periods.  To the extent that there was any

22    information for prior periods of this type, we have

23    produced it.  However, what we have provided you,

24    starting at T E -- PD E 017921 is not a client

51

1    presentation.  It's an internal document.

Page 43

Exh  A- Rough Transcript of Hearing.txt

2            MR. CHRISTENSON:  I am just trying to

3   understand if there are any such internal documents that

4   are related to the time period before 2007?

5            MR. MERIDETH:  There are other

6   documents, internal documents that have been produced,

7   but they are not in this format, as my letter clearly

8   states.

9            SPECIAL MASTER POPPITI:  That's what it

10  says and that's what Mr. Merideth just said.

11           MR. CHRISTENSON:  Okay.  I understand

12  what he just said, Your Honor.  I don't think that's what

13  it says in the letter, but I understand what he just

14  said.

15           SPECIAL MASTER POPPITI:  Okay.

16           MR. CHRISTENSON:  Going then to topic

17  four, then, if I may, this is presentations to customers

18  in the U.S. market, and this is an issue that arose based

19  on our deposition of Mr. Jackson Chang on Monday, Your

20  Honor.

21           During that deposition, Mr. Chang

22  identified several different meetings he's had with many

23  customers in the U.S., and he further specifically

24  testified that during those meetings, he makes sales and

52

1   marketing presentations to the U.S. customers, and we

2   have requested, as a result, copies of those

3   presentations.  The response, as I understand it, is that

4   Tatung Company is searching for those presentations.

5            SPECIAL MASTER POPPITI:  That's what it

6   says.

Page 44

Exh  A- Rough Transcript of Hearing.txt

 7                    MR. CHRISTENSON:  And will produce them,
 8     and, so, I think the question becomes:  When will they
 9     produce them?  Because as Your Honor has instructed, we
10     need to proceed with the deposition on March 20, which is
11     Tuesday.
12                    MR. MERIDETH:  Let me say two things.
13     No. 1, Mr. Chang was not asked whether or not the power
14     point presentation to which he made reference was related
15     to an accused product.  And, indeed, he was not even
16     asked whether or not the power point presentation that he
17     saw or that he prepared was as to a product that was
18     intended to be sold in the United States.
19                    If that question had been asked, he
20     would have answered that it was not.
21                    I looked at the presentation on his
22     computer.  He showed it to me when you raised this
23     question, Mr. Christenson, and it is a presentation to HP
24     for Europe, the Middle East, and after can a.

                                                        53

 1                    Now, there may be other power point
 2     presentations that are related to the U.S. market.  We
 3     are trying to determine whether any sales representatives
 4     have such programs on their PCs.  And as soon as we -- if
 5     we find out that they do and they have something to do
 6     with accused products, then we will produce them.  But
 7     this business with respect to Mr. Chang's deposition is a
 8     red herring.
 9                    MR. CHRISTENSON:  Your Honor, it's not a
10     red herring.

                        Page 45

Exh  A- Rough Transcript of Hearing.txt

11                    MR. MERIDETH:  I mean, you didn't ask

12     him --

13                    MR. CHRISTENSON:  Excuse me.  May I

14     finish.

15                    MR. MERIDETH:  For the accused product.

16                    SPECIAL MASTER POPPITI:  Mr. Merideth,

17     you had said that already.  Mr. Christenson.

18                    MR. CHRISTENSON:  Thank you.  I wasn't

19     referring to a specific single power point presentation,

20     Your Honor.  These are multiple presentations given to as

21     customers and this goes directly back to --

22                    SPECIAL MASTER POPPITI:  Well, Mr.

23     Merideth acknowledged that.

24                    MR. CHRISTENSON:  And this goes back to

54

1      what I referenced earlier.  Mr. Merideth just said, They

2      are going to see if it relates to products that we have

3      already identified as accused, my point is, Your Honor,

4      going back to the discussion we had on January 22nd,

5      before you, where it's very clear that documents,

6      discovery related to sales and marketing in the United

7      States generally is something that they have agreed to

8      produce.  And that's on page 15 of the January 20 -- of

9      the January 22nd transcript.  And now he is back tack

10     tracking and saying they are going to see if it relates

11     specifically to accused products.

12                    SPECIAL MASTER POPPITI:  Mr. Merideth.

13     Do you have the transcript in front of you, sir?

14                    MR. MERIDETH:  I do not.  I agree that

15     if it relates to U.S. sales and it's a power point

Exh A- Rough Transcript of Hearing.txt

16    presentation, that's what we are searching for right now.

17    And we will produce it. But the power point presentation

18    that he asked the witness about is for Europe, Africa,

19    and the Middle East.

20         SPECIAL MASTER POPPITI:   I understand

21    that. Mr. Christenson, did you get a clarification,

22    then, with Mr. Merideth's last statement?

23         MR. CHRISTENSON:   Yeah.   As I understand

24    it now we are back to where we started, which is they are

55

1    going to produce the documents and then my question, Your

2    Honor, is --

3         MR. MERIDETH:   Well, that's not what I

4    said. Please, lists tone what I said.   I said we are

5    searching to determine whether there are any such

6    documents in existence.   That's the first step.

7         Once we are able to identify that there

8    are any documents that exist, we are going to gather them

9    up and we are going to see what they are and if they

10    relate to U.S. products, we will produce them.   And I

11    think we already have produced power point presentations

12    with respect to presentations that have been made and

13    they include the product road maps and we are looking for

14    additional ones and we haven't found them, but we are

15    continuing to look.   It may be that the surgery that was

16    done should have gone to each individual person, we

17    thought that had been done, be said, what do you have on

18    your PC, and that's what we are doing right now.   And if

19    we have U.S. presentations for U.S. products, we will

Page 47

Exh  A- Rough Transcript of Hearing.txt

20    produce it.  But we haven't found it yet.

21                    MR. CHRISTENSON:  Again, back to my

22    question is whether or not I can have that for my

23    depositions on Tuesday.

24                    MR. MERIDETH:  Yes, if we find it.  I

56

1    can't guarantee that we will find anything.  In fact, I

2    suspect we will not find anything, but we are looking,

3    again.

4                    MR. CHRISTENSON:  And, Your Honor, my

5    only comment, this is going to be my last comment on this

6    point, but it would be rather surprising to me to find

7    out that, during all the presentations by Tatung's sales

8    representatives to U.S. customers, those presentations

9    never addressed products for the U.S. market.

10                    SPECIAL MASTER POPPITI:  You have made

11    your point for the record.  If Mr. Merideth has made a

12    commitment that they are still looking and that he will

13    produce, to the extent that they find anything before the

14    deposition, there is an ongoing obligation to supplement

15    if information is discovered later than the deposition,

16    and if that's the case, and it's important for me to look

17    at an application that something was later filed, then I

18    will look at it.

19                    MR. CHRISTENSON:  Your Honor, if I may,

20    I will proceed to the next topic.

21                    SPECIAL MASTER POPPITI:  Please.

22                    MR. CHRISTENSON:  Thank you.  Topic

23    five, which deals with documents showing compliance with

24    U.S. regulations.  I think the testimony, at least from

Page 48

Exh  A- Rough Transcript of Hearing.txt

1  my perspective so far, has been somewhat inconsistent
2  concerning whether Tatung makes documents specifically to
3  comply with U.S. regulations.
4          To the extent there is any evidence of
5  that, I think it is relevant to our inducement case.  I
6  think I have seen some U.L. certifications that were
7  issued from U.L. where the relevant authority concerning
8  U.S., to I believe, Tatung America, but I don't think I
9  have seen anything from either Tatung Company, most
10  importantly, or Tatung America directed from the
11  defendant to the U.S. compliance authority.  And, so, I'd
12  like to know if those documents exist and can be
13  produced?
14          MR. MERIDETH:  We have produced U.L.
15  documents for both companies, Tatung Company and Tatung
16  America.  There is no U.S. authority.  There is no FCC
17  for our monitor products.  There are some voluntary
18  information data that is provided, but they don't have
19  anything to do with clearance of products by the FCC.
20  And perhaps you are confusing the Federal Communications
21  Commission with an entity in Taiwan called FCC which
22  doesn't have anything to do with the Federal
23  Communications Commission.
24          I don't think that the Federal

1  Communications Commission has an office in tie pay that

Exh  A- Rough Transcript of Hearing.txt

2   has a logo that looks like this one, and it has nothing

3   to do with the United States federal communications

4   commission.

5              To the extent that we have U.L.

6   approvals, we provided those for both companies.

7              MR. CHRISTENSON:  Your Honor, my point

8   is that we may have a final approval document, but I

9   think that we should be able to get the correspondence

10  from Tatung to the regulatory authority in the U.S.  I

11  don't know if U.L. authority is the only one.  I

12  understand Mr. Merideth's representation the FCC is not

13  one, but whichever ones there are, I think we are

14  entitled to get those communications.

15             MR. MERIDETH:  Well, you made a flat out

16  representation that there were file wings the FCC and I'd

17  like to see the support for that.

18             SPECIAL MASTER POPPITI:  Well, let's

19  focus not on the FCC because I expect that if the

20  products do not require FCC approval, then I expect there

21  are no documents related to FCC.

22             MR. MERIDETH:  May I say one other thing

23  about the U.L.?  The U.L. approval, underwriters

24  laboratory, is an approval for electrical wiring.  It

                                                    59

1   doesn't have anything to do with mounting technology.

2   This lawsuit and these patents have to do with mounting

3   technology.  We are going far, far afield to now get into

4   the data that was provided to U.L. to provide the

5   certification.  They asked us for the U.L. certifications

6   and we provided them.  What more could conceivably be
                         Page 50

Exh  A- Rough Transcript of Hearing.txt

7    relevant?

8                      SPECIAL MASTER POPPITI:

9    Mr. Christenson.

10                      MR. CHRISTENSON:  I guess that's sort of

11   the issue.  I just don't know what they have and what

12   they don't have.  If they don't have anything, then --

13                      SPECIAL MASTER POPPITI:  Let me --

14                      MR. MERIDETH:  That wasn't the question.

15                      SPECIAL MASTER POPPITI:  I think the

16   application was provide all communication as it relates

17   to U.L. compliance, and I certainly have the question:

18   What does U.L. compliance have to do with mounting?  I

19   don't expect that you are looking to or expecting to look

20   that U.L. related documents for the purpose of making

21   your judgment as to whether a product is

22   accused/unaccused; correct?

23                      MR. CHRISTENSON:  That's true, Your

24   Honor.


                                                          60


1                      SPECIAL MASTER POPPITI:  Why would it

2    have anything to do with this litigation.

3                      MR. CHRISTENSON:  I can explain.  And

4    just to clarify, on topic five, as we set forth in the

5    March 14th letter, relates generally to documents showing

6    with compliance with federal regulations.

7                      SPECIAL MASTER POPPITI:  I understand

8    that.

9                      MR. CHRISTENSON:  The relevance is this:

10   If Tatung Company makes an accused product and

Page 51

Exh  A- Rough Transcript of Hearing.txt

11    specifically seeks U.S. regulatory approval so that that

12    product can be sold to customers for the U.S. market

13    specifically, that triggers the -- that triggers the

14    relevant patent statutes and results in infringement for

15    which we are entitled to a royalty.

16              SPECIAL MASTER POPPITI:  I understand

17    that, but you have -- you have a -- if I understand this

18    correctly, you, in your submittal, say, Tatung has

19    produced documents from U.L. which show compliance.  Why

20    isn't that document sufficient to give you what you need?

21              MR. CHRISTENSON:  Well, if we have got

22    what they have to produce, then that, maybe that's

23    sufficient.  I guess that's what I --

24              SPECIAL MASTER POPPITI:  Mr. Merideth.

                                                      61

1              MR. MERIDETH:  Well, the discovery

2    requests that we complied with ask for documents that

3    evidenced compliance, and we have provided that.  And I

4    don't -- I am not sure what the purpose is that they want

5    it for, but we have provided what they asked for.  And I

6    don't think that we should provide -- that we are

7    required to provide anything more than what they asked

8    for.

9              SPECIAL MASTER POPPITI:  I am not going

10    to require anything more unless you direct me more

11    specifically to the request.

12              So let's move on, please.

13              MR. CHRISTENSON:  Yes, Your Honor, topic

14    six refers to license agreements.

15              SPECIAL MASTER POPPITI:  Yes.
                        Page 52

Exh  A- Rough Transcript of Hearing.txt

16          MR. CHRISTENSON:  And the it's a
17   question of completeness, I don't know whether there is
18   any dispute we are entitle told you the license
19   agreements.  I think we have received only two, certainly
20   not many more than two license agreements from Tatung
21   Company, and just from looking at case law, and I cite a
22   case in our letter to you, we know that there appear to
23   be at least one other license, and as I understand it,
24   Tatung is agreeing to produce another license --

                                                          62

1    hopefully we will have that before the deposition on
2    Tuesday -- and I just want to make sure we are not in a
3    situation where the witness tells me on Tuesday that
4    there are additional licenses but those are not been
5    produced.
6          SPECIAL MASTER POPPITI:  Mr. Merideth.
7          MR. MERIDETH:  We are attempting to get
8    that license.  We anticipate receiving it this evening
9    when business opens in Taiwan.  And we will provide it.
10         It doesn't have anything to do with
11   mounting technology or even anything to do with monitor
12   products, but we will produce it.
13         MR. CHRISTENSON:  And, Your Honor, the
14   only other thing I would need to know is whether there
15   are any additional license agreements related to liquid
16   crystal display technology that have not been produced?
17         MR. MERIDETH:  Well, then, if that's
18   what the criteria is, this other license that you
19   referred to is not responsive, but we have done our very
                          Page 53

Exh A- Rough Transcript of Hearing.txt

20    best to find licenses that relate to liquid crystal

21    display devices, and we have produced what we have, and

22    you can ask the 30(b)(6) witness about what he knows

23    about it and what he did to ensure that we have provided

24    all of those documents.

⬜

63

1                    SPECIAL MASTER POPPITI:  Thank you.

2                    MR. CHRISTENSON:  Well, as I understand

3     it, then, Your Honor, we do have whatever Tatung knows

4     of.

5                    SPECIAL MASTER POPPITI:  That's what I

6     understand.  If you walk into a deposition and you start

7     uncovering other information, I expect I will hear from

8     you.

9                    MR. CHRISTENSON:  Okay.  The last topic

10    in our letter, Your Honor, is topic seven on page 3,

11    relevant communications with customers, and we refer

12    there to certain categories of communications, all

13    targeting or focused on the U.S. market or U.S.

14    customers.  And we have got very little correspondence

15    that we have seen, and, so, we would want to know if

16    there is additional correspondence that's relevant to

17    U.S. customers and the U.S. market.  Tatung's response,

18    as I read it, on page three of their March 15 letter, is

19    that they have produced documents that reference accused

20    products, and as I, again, going back to the January 22nd

21    transcript, the agreement previously was they wouldn't

22    limit it just to references to accused products because,

23    again, they agreed to produce, and it's relevant for us

24    to get it, documents showing the transactions and efforts

Exh  A- Rough Transcript of Hearing.txt

64

1    to market to U.S. customers for various product lines
2    that would also include and encompass accused products
3    even if that model number is not referenced in the
4    correspondence.
5            So I think we are entitled to something
6    broader.  They have agreed to produce something broader,
7    and I just want to find out if we can get that discovery
8    before the deposition?
9            SPECIAL MASTER POPPITI:  Mr. Merideth.
10           MR. MERIDETH:  I disagree that we agreed
11   to provide anything broader.  We agreed to provide sales
12   presentations, that's what they asked for, and we agreed
13   that we would produce it.  I believe we have produced it.
14   Now they are -- they didn't -- they are expanding that,
15   the scope of that.  It was not our understanding that we
16   were agreeing to produce customer information.  It has
17   all kinds of detailed stuff about products that are not
18   accused, pricing information, quantities, production
19   times, none of which has anything to do with the accused
20   products.  We have produced the correspondence with
21   respect to the accused products.
22           And general correspondence or
23   correspondence regarding unaccused products was not
24   agreed to be produced and has not been produced.

65

1            MR. CHRISTENSON:  Your Honor, in

Page 55

Exh A- Rough Transcript of Hearing.txt

2  response, I will just quote briefly Mr. Merideth one more

3  time from the January 22nd transcript, page 15.

4           SPECIAL MASTER POPPITI:  Just a second,

5  please.

6           I know I have looked at it before but

7  I'd rather have the page in front of me.

8           MR. CHRISTENSON:  Yes, Your Honor.

9           SPECIAL MASTER POPPITI:  Page 15.

10           MR. CHRISTENSON:  Line seven.

11           SPECIAL MASTER POPPITI:  Right.

12           MR. CHRISTENSON:  Mrs. Mr. Merideth

13  quote, My specific recollection was to the extent that

14  there was general correspondence where sales and

15  marketing in the United States, generally, for example,

16  was discussed without any particular model number being

17  referenced, that, you know, I accepted you were entitled

18  to discovery of that.  The limitation is where there is

19  communications between Tatung and ViewSonic about

20  products that are specifically about products that are

21  not accused.  And that information should not be

22  provided.

23           So, if it's just related to a

24  non-accused product, we understand they are not producing

66

1  that.  If it's related to products generally, which would

2  include accused products, obviously, we need, that and

3  they have agreed to produce it.

4           MR. MERIDETH:  Sales and marketing

5  information.

6           MR. CHRISTENSON:  No.  This is

Page 56

Exh  A- Rough Transcript of Hearing.txt

7    correspondence.
8                    MR. MERIDETH:  No.  The agreement was
9    the sales and marketing information.
10                    SPECIAL MASTER POPPITI:  It does say --
11    let's read it again.  I thought we covered this Friday.
12    My specific recollection was that, to the extent that
13    there was general correspondence where sales and
14    marketing in the United States generally, for example,
15    was discussed, without any particular model number being
16    referenced, that, you know, I accepted you are entitled
17    to discovery of that.
18                    MR. CHRISTENSON:  That's right, Your
19    Honor.  That's not limited to accused products and that's
20    the type of discovery we have asked for in our March 14
21    letter to you and we clearly should have had it a long
22    time ago.
23                    SPECIAL MASTER POPPITI:  Mr. Merideth.
24                    MR. MERIDETH:  I agree that general --

                                                        67

1    if there is a letter that talks about general sales and
2    marketing that we are required to produce it, and I will
3    go through what we have and make sure that there is
4    nothing of that nature that has not been produced.
5                    There is other correspondence that has
6    to do with specific other products and other issues, for
7    example, like pricing, don't have to do with general
8    sales and marketing in the United States, and we are not
9    going to produce it.  We shouldn't be required to produce
10    it.

                        Page 57

Exh A- Rough Transcript of Hearing.txt

11              SPECIAL MASTER POPPITI:  And you didn't

12    agree to produce it.

13              MR. MERIDETH:  That's correct.

14              MR. CHRISTENSON:  Your Honor, if I can

15    speak to that:  I don't understand how you separate out

16    pricing from sales and marketing.  I mean, pricing is --

17    it could be an offer for sale which is directly

18    infringing under the patent statute.

19              MR. MERIDETH:  I said, "Sales and

20    marketing generally."  I am not talking about specific

21    product data a that is unaccused product.

22              MR. CHRISTENSON:  Your Honor, just to

23    make had clear, if you look at the March 15 response from

24    them, they say, "Tatung Company has produced the

                                                        68

1    documents in these categories that reference accused

2    products".

3              SPECIAL MASTER POPPITI:  Well, then

4    maybe, Mr. Merideth, would you look at that sentence,

5    please.

6              MR. MERIDETH:  Yes, sir.  I have it.

7    And I agree.  I will go back and look and see if there is

8    anything else that relates generally to sales and

9    marketing and make sure that we have produced all of that

10    information.

11              SPECIAL MASTER POPPITI:  So, will you

12    accept the first sentence in paragraph seven needed to be

13    tweaked a little bit if you measure it against the

14    transcript of page 15?

15              MR. MERIDETH:  Yes, sir.  I think it's

Page 58

Exh  A- Rough Transcript of Hearing.txt

16    too narrow.

17                    SPECIAL MASTER POPPITI:  Thank you.

18                    MR. CHRISTENSON:  Thank you, Your Honor.

19    I guess my understanding is then we would get whatever

20    additional discovery there is in time to use it for the

21    deposition on Tuesday.

22                    SPECIAL MASTER POPPITI:  Mr. Merideth.

23                    MR. MERIDETH:  Yes.

24                    MR. CHRISTENSON:  Your Honor, that


                                                              69


1    covers the issues raised in the March 14 letter.   There

2    are just a couple of supplemental issues that arose --

3                    SPECIAL MASTER POPPITI:  Have you all

4    discussed those?  And I realize -- and Ms. Gas's letter

5    to me, the concern was raised about how we were going to

6    go about this agenda, if you will.  I believe that I

7    invited that there be this kind of a session, and I think

8    the purpose of it, I hope, was well served even though

9    you did not go through all the normal formal meet and

10   confers.  I said to you before that it's important to

11   follow that process, but I invited you to deviate from

12   that for purposes of gathering, if you will, around the

13   production that's already been made.

14                    MR. CHRISTENSON:  Yes, Your Honor.  I

15   appreciate your indulgence given the timing and the

16   circumstances that we are facing.

17                    SPECIAL MASTER POPPITI:  I understand

18   that.  But I am about to say, with respect to any other

19   items that you want to add to the agenda that was

                            Page 59

Exh A- Rough Transcript of Hearing.txt

20   developed by both Ms. Gasses and Mr. Kirk and perhaps

21   others were involved with it, that I want to make sure

22   that there is agreement that I should be dealing with it

23   today.

24                    MR. CHRISTENSON:  That's fine, Your

70

1    Honor.  I will, obviously, let the defendant speak to

2    that.  From my perspective, we have discussed it during

3    the deposition.  I think we are at an I am past.  There

4    is clearly -- clearly, the response was that these

5    documents either were not requested or would not be

6    produced for some other reason, and the only way for us

7    to try to get them before the deposition on Tuesday is to

8    raise it now.  If the defendants, you know, if you decide

9    not to entertain it now, we will do the best we can at

10   the deposition and we will have to address it at another

11   time.

12                    SPECIAL MASTER POPPITI:  Can we address

13   it Monday night?

14                    MR. CHRISTENSON:  Yes, Your Honor.

15                    SPECIAL MASTER POPPITI:  Today, why

16   don't you outline what the issue is.

17                    MR. CHRISTENSON:  There are three

18   discrete issues, Your Honor, and they are issues that we

19   learned of during the deposition of Mr. Calvin Ho.

20                    SPECIAL MASTER POPPITI:  I don't have a

21   writing on this; correct?

22                    MR. CHRISTENSON:  The only thing we

23   have, Your Honor, we didn't submit argument on it

24   because, obviously, you weren't going to have time to get

Page 60

Exh  A- Rough Transcript of Hearing.txt

71

1    full submissions from either party, so this is an email
2    that we just briefly summarized, pointed you to pages in
3    the transcript where the three issues arose.
4                    SPECIAL MASTER POPPITI:  And, you are
5    right, I don't have that.  You know when it came in?
6                    MR. CHRISTENSON:  I do not have the time
7    in front of me, Your Honor.
8                    SPECIAL MASTER POPPITI:  Just outline
9    the issues and see if there is agreement that --
10                   MR. MERIDETH:  That was from today,
11   Cass?
12                   MR. CHRISTENSON:  Yes, it is.
13                   MR. MERIDETH:  That was about 2:30, Your
14   Honor, and it was a very lengthy.
15                   SPECIAL MASTER POPPITI:  Is it your
16   letter, Mr. Kirk, with -- it begins, "I write to
17   supplement the record for the teleconference "?
18                   MR. KIRK:  Yes.
19                   MR. CHRISTENSON:  I think that's the
20   one.
21                   MR. MERIDETH:  It was about Mr. Ho's
22   deposition.
23                   SPECIAL MASTER POPPITI:  Yes.  Then I do
24   have it in front of me.

72

1         A.   You are right, I have looked at the letter,
                        Page 61

Exh  A- Rough Transcript of Hearing.txt

2    itself, but I have not drilled through the deposition

3    testimony.

4              MR. CHRISTENSON:  The first of the three

5    issues, Your Honor, relates to pricing quotations that we

6    understand have been provided to U.S. customers from

7    Tatung, and we feel that that is directly relevant to,

8    for example, what would constitute an offer for sale for

9    purposes of direct infringement and also it would go to

10   inducing customers to purchase and import products into

11   the U.S. which could constitute indirect infringement as

12   well.  And that was discussed on pages 43 and 44 of the

13   rough transcript.

14             On page 44, line one, I asked the

15   witness:  When you said --

16             SPECIAL MASTER POPPITI:  Let's do it

17   this way, Mr. Christenson.

18             MR. CHRISTENSON:  Yes.

19             SPECIAL MASTER POPPITI:  Merideth, I

20   don't know whether you or anyone on your team has

21   reviewed the correspondence that was filed by email at

22   2:38, and if you have, whether you are in a position to

23   deal with these issues now or whether it's something that

24   has to be dealt with once you have had an opportunity to


                                                    73


1    look at it and respond?

2              MR. MERIDETH:  I am searching for that

3    -- I have the transcript but I am searching for it now.

4    I think it would be better to look at it, then to address

5    it once we have had an opportunity to look at it.  I have

6    a copy of his letter on my computer right now and I am
                          Page 62

Exh  A- Rough Transcript of Hearing.txt

7     looking for the transcript.

8                          SPECIAL MASTER POPPITI:  When did this

9     deposition -- is this for purposes of -- it's for

10    purposes of Mr. Shea's deposition on Tuesday; correct?

11                          MR. CHRISTENSON:  Yes, Your Honor.

12                          SPECIAL MASTER POPPITI:  Can this be

13    something that we can deal with on Monday?

14                          MR. CHRISTENSON:  I suppose we could,

15    Your Honor.  My concern would be whether that would lead

16    Tatung with sufficient time to produce anything

17    additional to the extent that became appropriate.  Tatung

18    has made it very clear they don't want to bring Mr. Shea

19    back again.

20                          SPECIAL MASTER POPPITI:  I understand

21    that.

22                          MR. CHRISTENSON:  Obviously, my position

23    is I would like to have the documents that we feel are

24    relevant for the deposition.  We are probably going to

                                                            74

1     take him for a second day, so I think his deposition is

2     likely to continue and spill over to Wednesday, so maybe

3     that impacts things.

4                          MR. MERIDETH:  I don't believe that you

5     are entitled to more than seven hours with the witness,

6     and I fully expect to start and complete on Tuesday

7     because I have to be in Washington, D.C. on Wednesday for

8     Mr. Kim's depositions.

9                          MR. CHRISTENSON:  I was told the witness

10    would need an interpreter, and as I understand it, we

Page 63

Exh A- Rough Transcript of Hearing.txt
11    have 10.5 hours of time, and I can't take 10.5 hours in

12    one day.

13                    MR. MERIDETH:  He is going to give his

14    testimony in English.

15                    MR. CHRISTENSON:  I think that makes it

16    all the more urgent, Your Honor.

17                    MR. MERIDETH:  Well, I now have page --

18    the pages in front of me, so if you give me just one

19    second.  I have read it.  It doesn't show anything

20    related to accused products, and, indeed, you don't each

21    ask him if they are quotes for products in the United

22    States.  All he said was that he has responded to a

23    request for quotation by sending a price to an email

24    site.

75

1                    MR. CHRISTENSON:  Your Honor, I can

2    represent to you that Tatung Company sells many, many

3    products to HP for the U.S. market.

4                    MR. MERIDETH:  I know.  You didn't tie

5    that down.  Your questioning was very poor.

6                    MR. CHRISTENSON:  There is nothing to

7    indicate, Your Honor, there are still problems with the

8    witness, and that's another issue for another day, but --

9                    SPECIAL MASTER POPPITI:

10                    MR. MERIDETH:  There were problems with

11    the questions.

12                    MR. CHRISTENSON:  We disagree.

13                    SPECIAL MASTER POPPITI:  Counsel, let's

14    do it this way:  If there is no question in the

15    transcript that ties it to U.S. product, what am I

Exh  A- Rough Transcript of Hearing.txt

16    looking at here?

17                    MR. CHRISTENSON:  I am taking a quick

18    look at the transcript here, Your Honor.

19                    SPECIAL MASTER POPPITI:  Thank you.

20                    MR. CHRISTENSON:  The section that we

21    cited refers to placing quotations for HP regarding

22    display products.  I don't see that it specifies a

23    product.  What I would probably have to do is try to tie

24    that to another part of the deposition, but I am not in a

                                                        76

1    position to do that right now.

2                    SPECIAL MASTER POPPITI:  Then I can't

3    address it right now.

4                    MR. MERIDETH:  I just want to say one

5    other thing to put this into context:  There is only one

6    HP product that's accused, and that is a television set,

7    a 22-inch television set, and it seems to me that you are

8    -- he was being asked here about quotes that were being

9    given with respect to monitor products and if you didn't

10    ask the witness, I can tell you because I talked at

11    length with the witness many of his presentation to the

12    United States had to do with products that were sold in

13    other markets other than the United States.

14                    He is a worldwide guy for HP.

15                    SPECIAL MASTER POPPITI:  Let's, then,

16    move to the next issue, please.

17                    MR. CHRISTENSON:  Yes, Your Honor.  The

18    next issue relates to communications between Tatung

19    Company and U.S. customers regarding, for example, market

Exh A- Rough Transcript of Hearing.txt

20    trend, and I think this came up at page 45 in the

21    transcript.  And then it continues on for a few pages.

22                    SPECIAL MASTER POPPITI:  Okay.  And I am

23    looking at --

24                    MR. MERIDETH:  These are discussions

77

1    with gateway.  Gateway does not have any accused product.

2    It's clear the discussions continue questions about R

3    about gateway.

4                    MR. CHRISTENSON:  And, Your Honor, just

5    to respond back:  We recently had a discussion about

6    Mr. Shea's deposition, and as I understand it,

7    Mr. Merideth's position this was the deposition should go

8    forward because the witness would be prepared to testify

9    about all accused products not limited to accused

10    products, and, therefore, I didn't need to know all the

11    accused products at the time of the deposition.  And now

12    he is going the other way and saying --

13                    SPECIAL MASTER POPPITI:  I think he is

14    just saying that this witness wasn't -- well, Mr.

15    Merideth, you tell me what you were saying, please.

16                    MR. MERIDETH:  This witness -- you asked

17    the witness about market surveys with respect to gateway.

18    You have never accused a product with respect to gateway.

19    We -- we have not produced -- we have produced market

20    information generally.  We have produced -- we have

21    market surveys that we have produced.  If you are talking

22    -- and you seem to be asking whether there were any

23    discussions at any meetings about market surveys, and he

24    says, Yes, he had a discussion with gateway.

Page 66

Exh  A- Rough Transcript of Hearing.txt

78

1              That doesn't have anything to do with
2    what you are claiming.
3              MR. CHRISTENSON:  It's not limited to
4    gateway.  Your Honor, if you go forward to page 48 --
5              MR. MERIDETH:  That's not what you --
6    okay.
7              MR. CHRISTENSON:  On page 48, I say to
8    him, "Have you provided that type of information to
9    customers during several of your meetings with customers
10   in the U.S.?  And he says, "I think so."  So it's not
11   limited to gateway.  I then say, "Have you provided that
12   type of information to HP in the U.S."?, and he confirms
13   that he has.
14             MR. MERIDETH:  But there is no
15   identification that they are related to accused products.
16   You never asked him.
17             MR. CHRISTENSON:  This witness, Your
18   Honor, is only responsible for certain customers.  There
19   are many other customers for which he is not responsible.
20   I don't think I have to prove the document exists if it's
21   a relevant document, I think we should -- we are entitled
22   to receive it, and Mr. Merideth earlier said, If it
23   relates generally to the sales and marketing of products
24   in the U.S., that that would be produced.

79

1              MR. MERIDETH:  We have given you all the
                              Page 67

Exh  A- Rough Transcript of Hearing.txt

2  market research reports that we have.  There aren't very

3  many because they don't do a lot of market research

4  because they don't -- they will sell to other people who

5  do that research, but we provided that to you.  I have

6  seen a full box of them.

7                    MR. CHRISTENSON:  If all the documents

8  --

9                    MR. MERIDETH:  Furthermore, you didn't

10  show any of those documents to the witness.  If you would

11  have shown them to the witness, he could have told you

12  whether that was what he was referring to or not.

13                    It's very unclear -- he could very well

14  have been discussing market surveys that were generated

15  by the client during this discussion.  And we have

16  provided you with a market surveys we have.  And this

17  witness' testimony doesn't indicate that we failed to

18  produce or there is anything that we haven't produced.

19                    MR. CHRISTENSON:  Either you did or did

20  not, and just to respond to that:  The witness clearly

21  says, These are reports prepared and generated by Tatung

22  Company, and his testimony is very clear on that point,

23  and these are communications with the customers to which

24  you agree to produce, we already covered that regarding

                                          80

1  the January 22nd hearing.  The only question.  Is.  Have

2  we received the documents?  If we have, then this is a

3  moot point.

4                    MR. MERIDETH:  It is a moot point.  I

5  just told you that about three times.  We have produced

6  the marked survey that we have.

Page 68

Exh  A- Rough Transcript of Hearing.txt
7            MR. CHRISTENSON:  That's what I heard
8    you say.
9            Your Honor, the third point relates to
10   sales forecasts, and this arose starting on page 89 of
11   the transcript and continued on through to about page 99.
12           And just to explain briefly, a sales
13   forecast is a communication from the customer in the U.S.
14   concerning the quantity of products that the customer
15   anticipates needing for a specific market, such as the
16   U.S., so that Tatung Company can plan its supply in
17   manufacturing to provide those products giving Tatung
18   some lead time to deliver those products.  It relates
19   specifically to the U.S. market.  Those documents, I
20   don't think, have ever been produced.  And when I tried
21   to ask the witness on page 99, at the end of page 98, if
22   you have the transcript there --
23           SPECIAL MASTER POPPITI:  I am looking at
24   page 98 of the transcript.  What line, please?


                                                        81


1            MR. CHRISTENSON:  Yes.  It is line 25, I
2    asked this witness, "As of today, have you not made any
3    effort to look for sales forecasts relating to any
4    specific products that you have sold to gateway or HP"?
5    And the counsel for Tatung says, "Objection.  Irrelevant
6    instruct the witness not to answer based on
7    attorney/client privilege and work product doctrine."
8            And, so, you know, I am criticized here
9    for not making a more specific record, but I don't know
10   what to do.  I ask a question like that about whether
                        Page 69

Exh  A- Rough Transcript of Hearing.txt

11    they have, you know, so I understand what they have or

12    have not produced continue witness was instructed not to

13    answer that.

14              MR. MERIDETH:  There is only one accused

15    HP product, and it was accused last month -- this month,

16    excuse me.  We are attempting to determine whether there

17    are any forecasts that we received from HP for that

18    product.  If there are, we will produce them.  We are not

19    going to produce forecasts for gateway.  There is no

20    accused products.

21              MR. CHRISTENSON:  Your Honor, this goes

22    directly to the point we just discussed.  He just told us

23    during this call that they would produce sales and

24    marketing discovery related generally to the U.S. market

82

1    and not limited to accused products and then we are right

2    back to that again.

3              MR. MERIDETH:  No, we are not, because

4    you are asking about a product-specific forecast provided

5    by the customer to us.  That's not sales and marketing

6    information that we provided to a customer.

7              MR. CHRISTENSON:  It's communication

8    between Tatung and the customer related to sales --

9              MR. MERIDETH:  Isn't what we agreed to

10    produce.  We agreed to produce general marketing

11    communications, not specific survey -- not specific

12    product forecasts that were provided to us by our

13    customer as to unaccused products, and, indeed, by our

14    customer, gateway, who does not have any accused

15    products.

Page 70

Exh  A- Rough Transcript of Hearing.txt

16          MR. CHRISTENSON:  Your Honor, at this

17   point, we don't have those forecasts for accused or

18   unaccused products.

19          SPECIAL MASTER POPPITI:  Mr. Merideth,

20   what about the accused products?

21          MR. MERIDETH:  I think the only one that

22   we are -- that we have been able to identify that may

23   exist is the one with respect to -- is that there may be

24   one with respect to this 22-inch HP product and we are


83


1    trying to determine whether we have any or not.

2          MR. CHRISTENSON:  And, Your Honor, just

3    to be clear --

4          MR. MERIDETH:  They were just accused

5    this month.  It's not like we are sitting on our hands.

6          MR. CHRISTENSON:  Your Honor, just to be

7    clear, I am not seeking it only as to that product.  I am

8    seeking it -- this is something that generally --

9          MR. MERIDETH:  We are going to produce

10   it generally.

11          MR. CHRISTENSON:  Excuse me.

12          SPECIAL MASTER POPPITI:  Wait just a

13   second.  You are talking over each other and I am not a

14   following.

15          MR. CHRISTENSON:  Your Honor, I am not

16   limiting my request just to the 22-inch product that

17   Mr. Merideth talked about.  We know that Tatung received

18   sales forecasts like this for U.S. products from its

19   customer nurse the U.S. generally so, that's the extent

Page 71

Exh A- Rough Transcript of Hearing.txt
20    of our request.

21                    MR. MERIDETH:  We made an objection to

22    producing such information as to unaccused products.  We

23    are searching to determine if there are any with respect

24    to the accused products.  And if there is, we will

84

1    produce it.

2                    MR. AMBROZY:  If I may be heard on the

3    accused products issue.

4                    SPECIAL MASTER POPPITI:  Mr. Ambrozy, I

5    don't think I need a third voice.

6                    MR. AMBROZY:  Thank you, Your Honor.

7                    SPECIAL MASTER POPPITI:  Just a moment,

8    please.

9                    Mr. Merideth, I just, again, and perhaps

10   it should be etched in my memory or at least on my

11   eyeglass lenses, the page 15 of the transcript that we

12   were dealing with, and if I need to go back to see

13   context, I don't see where, in referencing general

14   correspondence where sales and marketing in the United

15   States is referenced that you limit the agreement to

16   Tatung documents as opposed to documents that were

17   provided to customers.

18                    So, it seems to me that sales forecasts,

19   why wouldn't they fall under the general description of

20   "general correspondence" where sales and marketing in the

21   United States, etcetera?  Why wouldn't it fall under

22   that?

23                    MR. MERIDETH:  Because the forecast is

24   made after the sale has been made with respect to very

Page 72

Exh  A- Rough Transcript of Hearing.txt

85

1    specific product and it isn't general marketing or sales
2    information.
3                    MR. CHRISTENSON:  Your Honor, first of
4    all, the forecast precedes the say.  It's an indication
5    from the customer of the need of quantity.
6                    MR. MERIDETH:
7                    MR. CHRISTENSON:  They say that's not
8    sales related, Your Honor.  I don't think I need to
9    respond to that.
10                   SPECIAL MASTER POPPITI:  I don't have
11   one in front of me.  I know what you are talking about,
12   but I don't have one in front of me.
13                   So, let me --
14                   MR. MERIDETH:  If I could, Your Honor, I
15   don't believe that anyone could suggest that reasonably
16   that customer forecasts for specific models for a
17   specific period of time for a specific number of product
18   is sales and marketing general correspondence.  It is
19   not.  What they were saying was, Well, gee, you may have
20   some sales literature that's general and doesn't refer to
21   a specific product, a specific accused product, we want
22   that, too, and we said, Okay, we will provide it.  But we
23   didn't say that we will provide specific product sales
24   forecasts.  That cannot fall within that definition.

86

1                    MR. CHRISTENSON:  Your Honor, with all
                                Page 73

Exh A- Rough Transcript of Hearing.txt
2  due respect to Mr. Merideth, this information -- I really

3  don't understand how we are fighting about whether sales

4  forecasts for U.S. customers is or is not relevant.  I

5  think it is clearly within the scope of what was

6  discussed at the January 22nd hearing.  It's responsive

7  to our request.

8            SPECIAL MASTER POPPITI:  That's what I

9  want to get at.  I mean, it is responsive to the request,

10  is it not, Mr. Merideth?

11            MR. MERIDETH:  Not as to unaccused

12  products.

13            SPECIAL MASTER POPPITI:  No.  I

14  understand -- I understand unaccused products.

15            MR. MERIDETH:  Right.  I have said, We

16  will do our best to produce forecasts, if we have any,

17  with respect to accused products.  And we actually set

18  sent out requests last night asking for that information,

19  and we hope to receive it before the weekend is out

20  because Sunday is Monday in Taiwan and we should have

21  that information.  But we are not going to produce it

22  with respect to unaccused products.

23            SPECIAL MASTER POPPITI:  I am not going

24  to require it for unaccused products.

87

1            MR. MERIDETH:  We are doing our best to

2  get the sales forecasts with respect to accused products,

3  and if we have it, we will get it.

4            SPECIAL MASTER POPPITI:  Okay.

5            MR. CHRISTENSON:  That was the final

6  issue that we had to raise with respect to the Tatung

Page 74

Exh A- Rough Transcript of Hearing.txt

7    document production for today.  Thank you.

8                    SPECIAL MASTER POPPITI:  Is there

9    anything else, then, please, for today?  If not --

10                   MR. CHRISTENSON:  Mr. Ambrozy may have

11   had one issue, Your Honor, I am not sure.

12                   SPECIAL MASTER POPPITI:  Do you want to

13   check with him.

14                   MR. AMBROZY:  I just wanted to let you

15   know that we have looked through the Tatung production of

16   the CAD CAM drawings and we are sending a letter to

17   Mr. Merideth outlining some pretty severe deficiencies in

18   that production, so we would ask that we be heard on this

19   issue -- if you are going to limit all the discovery to

20   accused products, then I believe that when we were up

21   there on March 9th, that you gave us until April 6th to

22   determine whether it is accused product, so I just want

23   to be clear on the record, Your Honor, that we have until

24   that date to determine the accused product?


                                                        88


1                    SPECIAL MASTER POPPITI:  Whatever date I

2    gave you, and quite frankly, I don't have it in mind, I

3    don't have the document in front of me, but I believe

4    that was the date.

5                    MR. AMBROZY:  So we will get the letter

6    out to Mr. Merideth today to outline those deficiencies

7    and then, if we need, to Your Honor, we'd like to revisit

8    that production to move the along.

9                    SPECIAL MASTER POPPITI:  Okay.  I have a

10   question with respect to Monday.  What are we teed up to

                            Page 75

Exh A- Rough Transcript of Hearing.txt

11  do on Monday?

12           MR. CHRISTENSON:  Your Honor, I intend

13  to submit to you some examples of what we feel reflects

14  inappropriate deposition conduct so that we can convene

15  briefly.  It would be very productive and helpful if you

16  could then give us some brief input, I think it will help

17  us next week so we can avoid some of the problems that we

18  have experienced this week.

19           SPECIAL MASTER POPPITI:  I do remember

20  that now.  That's the only thing on for Monday.

21           MR. CHRISTENSON:  I believe it is, Your

22  Honor.

23           SPECIAL MASTER POPPITI:  I think I said

24  in conjunction with that I would expect that my

                                                        89

1  colleagues at the local bar will do some heavy lifting in

2  terms of your conferring before we convene at 6:30 on

3  Monday evening.

4           MR. CHRISTENSON:  You did, Your Honor.

5           MS. GAZA:  With respect to the issue

6  that Mr. Ambrozy just raised, I would just like to

7  understand the procedure that we, the parties will be

8  conduct ago meet and confer process before we bring this

9  issue before Your Honor?

10           SPECIAL MASTER POPPITI:  Yes.  I would

11  like that.  And by "meet and confer process," given the

12  time frames, I expect that "meet and confer" may be one,

13  if you will, session, however you all define that.  I

14  don't know whether that means mail to mail, email to

15  email, phone to phone.  It may be several sessions, but I

Exh  A- Rough Transcript of Hearing.txt

16    understand it's a short time frame.

17                    MS. GAZA:  Thank you, Your Honor.

18                    MR. AMBROZY:  Thank you, Your Honor.

19                    SPECIAL MASTER POPPITI:  Thank you all.

20    Be careful getting home.  4:58.

21

22

23

24

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

L.G. PHILIPS LCD CO., LTD.,

      Plaintiff,

TATUNG COMPANY; TATUNG
COMPANY OF AMERICA, INC.; AND
VIEWSONIC CORPORATION,

      Defendants

Case No. 04-343-JJF (D. Del.)

**07-80223**
**CIV-RYSKAMP**

THIS MATTER having been opened to the Court on motion by defendants, the

Tatung Co. and the Tatung Company of America, Inc., by their attorneys, for a protective

order pursuant to Fed. R. Civ. P. 26(c), limiting the scope of discovery from third party

Sensormatic, Inc. ("Sensormatic"); and plaintiff L.G.Philips LCD Co., Ltd., by their

attorneys, having opposed the motion; and the Court having considered the papers

submitted and the arguments presented; and for good cause shown:

**IT IS HEREBY ORDERED THAT:**

1.    The motion is GRANTED.

2.    Any deposition testimony taken from third party Sensormatic shall be

limited to the accused products at issue in *L.G. Philips LCD Co., Ltd. v. Tatung*

*Company, et. al.*, C.A. No. 04-343-JJF (United States District Court for the District of

Delaware) (the "Delaware Action"). Such deposition testimony shall be subject to the

provisions of the Stipulated Protective Order dated January 24, 2005 entered in the

Delaware Action.

3.    Any documents produced in response to the subpoena by third party

Sensormatic shall be limited to those documents relating to the accused products at issue

in the Delaware Action. Additionally, any documents produced shall be stamped

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER and shall be produced subject

to the Stipulated Protective Order dated January 24, 2005 entered in the Delaware Action,

which is attached hereto as Exhibit 1.

Dated: March 9, 2007
~~Boca Raton~~, Florida

United States District Court Judge for the
Southern District of Florida

Copies to:    Richard D. Kirk, Esq. (rkirk@bayardfirm.com)
               Gaspare J. Bono, Esq. (gbono@mckennalong.com)
               Jeffrey B. Bove, Esq. (jbove@cblh.com)
               Tracy R. Roman, Esq. (troman@raskinpeter.com)
               Scott R. Miller, Esq. (smiller@cblh.com)
               Frederick L. Cottrell, III, Esq. (Cottrell@RLF.com)
               Frank E. Merideth, Jr., Esq. (meredith@gtlaw.com)
               Geoffrey M. Cahen, Esq. (caheng@gtlaw.com)

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2005 JAN 24 AM 9: 45

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

LG PHILIPS LCD CO., LTD ,        )
                                 )
Plaintiff,                       )
                                 )        C A. No. 04-343-JJF
v.                               )
                                 )
TATUNG COMPANY;                  )
TATUNG COMPANY OF AMERICA,       )
INC. and VIEWSONIC CORPORATION,  )
                                 )
Defendants.                      )

## STIPULATED PROTECTIVE ORDER

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the parties stipulate to the
following Protective Order, subject to the approval of the Court:

1.      Scope of Protection.

1.1     This Protective Order shall govern any record of information, designated pursuant
to Paragraph 2 of this Protective Order, produced in this action, including all designated
deposition testimony, all designated testimony taken at a hearing or other proceeding,
interrogatory answers, documents and other discovery materials, whether produced
informally or in response to interrogatories, requests for admissions, requests for
production of documents or other formal method of discovery.

1.2     This Protective Order shall also govern any designated record of information
produced in this action pursuant to required disclosures under any federal procedural rule
or District of Delaware local rule, and any supplementary disclosures thereto.

1.3     This Protective Order shall apply to the parties and any nonparty from whom
discovery may be sought and who desires the protection of this Protective Order
(collectively herein referred to as a "party" or the "parties").

2       Designation.

2.1     Each party shall have the right to designate as confidential and subject to this
Protective Order any information produced by it in this action which contains, reflects, or

EXHIBIT

1

otherwise discloses confidential technical, business or financial information ("CONFIDENTIAL information"). This designation shall be made by stamping or otherwise labeling each page or thing containing confidential information with the legend CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER prior to its production or, if inadvertently produced without such legend, by furnishing written notice to the receiving party that the information shall be considered confidential under this Protective Order. The parties will use reasonable care to avoid designating any documents or information CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER that are generally available to the public.

2.2     Each party shall have the right to designate as restricted to review by those categories of individuals listed in Paragraphs 4.1(a) - 4.1(e) and subject to this Protective Order any information produced in this action which contains, reflects, or otherwise discloses (1) trade secrets, (2) research and development, manufacturing, operational or other highly sensitive technical information, or (3) highly sensitive business related information, such as customer, supplier or financial information (collectively, "HIGHLY SENSITIVE CONFIDENTIAL information"). This designation shall be made by stamping or otherwise labeling each page or thing containing confidential information with the legend HIGHLY SENSITIVE CONFIDENTIAL prior to its production or, if inadvertently produced without such legend, by furnishing written notice to the receiving party that the information shall be considered HIGHLY SENSITIVE CONFIDENTIAL under this Protective Order. To the extent that material is marked HIGHLY SENSITIVE CONFIDENTIAL, such material shall be revealed to or used by limited categories of individuals, as provided for in Paragraph 4.2, and shall not be communicated in any manner, either directly or indirectly, to any person or entity not permitted disclosure pursuant to this Protective Order. Any copies of such material, abstracts, summaries or information derived therefrom, and any notes or other records regarding the contents thereof, shall also be deemed HIGHLY SENSITIVE CONFIDENTIAL, and the same terms regarding confidentiality of these materials shall apply as apply to the originals. Use of this highly restrictive designation is limited to information of the highest sensitivity. The parties will use reasonable care to avoid designating any documents or information HIGHLY SENSITIVE CONFIDENTIAL for which the designating party does not have a good faith belief that the documents or information satisfy the criteria set forth in this Paragraph 2.2. HIGHLY SENSITIVE CONFIDENTIAL information shall be used only for purposes directly related to this action, and for no other purpose whatsoever, except by consent of all of the parties or order of the Court.

2.3     To the extent that any party has, prior to the date that this Order is entered, produced to the other side materials that the producing party has marked with confidentiality designation, all such materials shall be considered to have been designated under this Order as HIGHLY SENSITIVE CONFIDENTIAL unless otherwise agreed by the Parties.

3.      Limit On Use And Disclosure Of Designated Information.

3.1     Each party and all persons bound by the terms of this Protective Order shall use any information or document governed by this Protective Order only in connection with the prosecution or defense of this action and for no other purpose, except by consent of the parties or order of the Court. No party or other person shall disclose or release to any person not authorized under this Protective Order any information or document governed by this Protective Order for any purpose, or to any person authorized under this Protective Order for any other purpose.

3.2     It is, however, understood that counsel for a party may give advice and opinions to his or her client in connection with the prosecution or defense of this action based on his or her evaluation of designated confidential information received by the party, provided that such rendering of advice and opinions counsel shall not reveal the content of such information except by prior written agreement with counsel for the producing party.

3.3     The attorneys of record for the parties and other persons receiving information governed by this Protective Order shall exercise reasonable care to ensure that the information and documents governed by this Protective Order are (a) used only for the purposes specified herein, and (b) disclosed only to authorized persons.

4.      Disclosure Of Confidential Material.

4.1     Documents or information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER shall be disclosed by the recipient thereof only to:

(a)     the attorneys who are actively involved in this action that are partners of or employed by the following law firms of record for the parties, and their authorized secretarial, clerical and legal assistant staff: Morris, James, Hitchens & Williams LLP; McKenna, Long & Aldridge LLP; Potter Anderson & Corroon LLP; Bingham McCutchen LLP; Rosethal, Monhait, Gross & Goddess; and Baum & Weems provided that such attorneys shall not be provided access to HIGHLY SENSITIVE CONFIDENTIAL information if such attorneys

        (1)     have participated in, directed or supervised any patent prosecution activitiy related to the patents-in-suit or currently participate in, direct or supervise any patent prosecution activity involving (i) flat panel or flat panel display technology or (ii) technology related or refering to or incorporating flat panels or flat panel displays (collectively, "the Subject Matter"). During the pendency of this litigation and for one year after the full and final conclusion of this litigation, including all appeals, those attorneys at outside counsel for the parties defined above who are provided access to HIGHLY SENSITIVE CONFIDENTIAL materials covered by this order will not participate in, direct or supervise any patent prosecution activity in the United States Patent and Trademark Office or with any patent office outside the United States involving the Subject Matter;

(2)    provide non-legal, business advice or non-legal, business representation or to clients in the flat panel display industry wherein the highly sensitive business-related financial information of any opposing party would be relevant to such non-legal, business advice or non-legal, business representation. During the pendency of this litigation and for one year after the full and final conclusion of this litigation, including all appeals, those attorneys at outside counsel for the parties defined above who are provided access to HIGHLY SENSITIVE CONFIDENTIAL materials covered by this order will not provide non-legal, business advice or non-legal, business representation to clients in the flat panel display industry wherein the highly sensitive business-related information of any opposing party would be relevant to such non-legal, business advice or representation; or

(3)    are related to or have a personal, social relationship with any officer, director or employee of a party

(b)    the Court and Court personnel, as provided in Paragraph 12;

(c)    consultants or experts and their staffs retained by the parties or their attorneys for purposes of this action, who are agreed upon by the parties pursuant to Paragraph 6, who are not employees or otherwise affiliated with any of the parties (except persons scheduled to be deposed by any of the parties pursuant to Rule 30(b)(6), Fed.R.Civ.P.), and who first agree to be bound by the terms of this Protective Order;

(d)    court reporters employed in connection with this action;

(e)    outside copying and computer services necessary for document handling, and other litigation support personnel (e.g., translators, graphic designers and animators);

(f)    One member of LG.Philips LCD, Co., Ltd.'s in-house legal staff, provided that each such individual must first agree to be bound by the terms of this Protective Order;

(g)    One member of Viewsonic Corporation's in-house legal staff, provided that each such individual must first agree to be bound by the terms of this Protective Order;

(h)    One member of Tatung Company's in-house legal staff, provided that each such individual must first agree to be bound by the terms of this Protective Order;

(i)    One attorney of Tatung Company of America, Inc.'s regular out-side counsel, provided that each such individual must first agree to be bound by the terms of this Protective Order;

4.2    Documents or information designated HIGHLY SENSITIVE CONFIDENTIAL shall be disclosed by the recipient thereof only to those categories of individuals listed in Paragraphs 11 4.1(a) - 4.1(e) subject to the restrictions therein.

5.  Redaction

Counsel for a party producing documents may mask ("redact") material deemed exempt from discovery because it is protected from disclosure under the attorney-client privilege or work product immunity afforded by Rule 26(b), Fed.R.Civ.P. However, any document from which material is masked must identify in the masked area that masking or redaction has occurred. The reason for any such masking must be stated on a log to be provided within thirty (30) days after the production of the documents. Sufficient information regarding the masked material must be provided to the other party to enable it to evaluate the legitimacy of the asserted privilege or immunity. The parties reserve the right to pursue categories for redaction in addition to those identified above, by either consent of the parties or order of the Court, to be addressed on a case-by case basis.

6.  Disclosure to Independent Consultants and Identification of Experts

6.1  If any party desires to disclose information designated CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL to any expert or consultant pursuant to Paragraph 4 above, it must first identify in writing to the attorneys for the producing party each such expert or consultant. The attorney for the producing party shall have ten (10) business days from receipt of such notice to object to disclosure of such information to any of the experts or consultants so identified.

6.2  Such identification shall include the full name and professional address and/or affiliation of the proposed expert or consultant, an up-to-date curriculum vitae identifying at least all other present and prior employments or consultancies of the expert or consultant in the field of flat panel and flat panel display technologies, and a list of the cases in which the expert or consultant has testified at a deposition, an arbitral hearing or trial within the last four years. The parties shall attempt to resolve any objections informally. If the objections cannot be resolved, the party seeking to disclose the CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information to the expert or consultant may move the Court for an Order allowing the disclosure. On any motion challenging the disclosure of such information to an expert or consultant, the burden of proof shall lie with the party objecting to the disclosure to establish that the information should not be disclosed to the expert or consultant. In the event objections are made and not resolved informally, disclosure of information to the expert or consultant shall not be made except by Order of the Court (or to any limited extent upon which the parties may agree).

7.  Agreement Of Confidentiality.

In no event shall any information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL be disclosed to any person authorized pursuant to Paragraph 4, other than (a) the Court and Court personnel, (b) the parties' attorneys identified in Paragraph 4.1(a) and their authorized secretarial and legal assistant staffs, (c) court reporters, and (d) outside copying and computer services necessary for document handling, until such person has executed a written

Confidentiality Undertaking (in the form set forth in Exhibit A hereto) acknowledging and agreeing to be bound by the terms of this Protective Order. Copies of such Confidentiality Undertakings shall be promptly served on the producing party.

8    Related Documents.

Information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL shall include (a) all documents, copies, extracts, and complete or partial summaries prepared from or containing such information; (b) portions of deposition transcripts and exhibits thereto which contain or reflect the content of any such documents, copies, extracts, or summaries; (c) portions of briefs, memoranda or any other papers filed with the Court and exhibits thereto which contain or reflect the content of any such documents, copies, extracts, or summaries; (d) deposition testimony designated in accordance with Paragraph 9; and (e) testimony taken at a hearing or other proceeding that is designated in accordance with Paragraph 10.

9.    Designation Of Deposition Transcripts.

9.1    Deposition transcripts, or portions thereof, may be designated as subject to this Protective Order either (a) at the time of such deposition, in which case the transcript of the designated testimony shall be marked by the reporter with the appropriate legend (see Paragraph 2.1) as the designating party may direct, or (b) within twenty-one (21) days following the receipt of the transcript of the deposition by providing written notice to the reporter and all counsel of record, in which case all counsel receiving such notice shall mark the copies or portions of the designated transcript in their possession or under their control as directed by the designating party.

9.2    All deposition transcripts not previously designated shall be deemed to be, and shall be treated as, HIGHLY SENSITIVE CONFIDENTIAL until the expiration of the period set forth in Paragraph 9.1, and neither the transcript nor the content of the testimony shall be disclosed by a non-designating party to persons other than those persons named or approved according to Paragraph 4.

9.3    The designating party shall have the right to exclude from a deposition, before the taking of testimony which the designating party designates CONFIDENTIALSUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL and subject to this Protective Order, all persons other than those persons previously qualified to receive such information pursuant to Paragraph 4.

9.4    In addition, to the extent that any document or information that has been designated as either CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL and subject to this Protective Order, such document or information shall not be disclosed to or otherwise used with any witness not currently or previously employed or retained by the producing party during a deposition without at least three (3) calendar days prior notice to the designating party of such potential use in order to permit counsel for the designating party to attend and to take

such action as it deems appropriate to protect the confidentiality of the documents and/or information. Counsel for the parties shall attempt to resolve any objection(s) and they will only seek redress to the Court if no resolution can be reached. However, the receiving party shall not use or otherwise disclose the confidential documents or information subject to such objection at such deposition of a witness not currently or previously employed or retained by the producing party until the Court has ruled upon any such objection(s), provided that the producing party submits the matter to the Court within three (3) calendar days of the parties being unable to resolve the objection(s).

10.     Designation Of Hearing Testimony Or Argument.

With respect to testimony elicited during hearings and other proceedings, whenever counsel for any party deems that any question or line of questioning calls for the disclosure of CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL information, counsel may designate on the record prior to such disclosure that the disclosure is subject to confidentiality restrictions. Whenever matter designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL is to be discussed in a hearing or other proceeding, any party claiming such confidentiality may ask the Court to have excluded from the hearing or other proceeding any person who is not entitled under this Order to receive information so designated.

11      Disclosure To Author Or Recipient.

Notwithstanding any other provisions of this Order, nothing herein shall prohibit counsel for a party from disclosing a document containing information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL to any person which the document clearly identifies as an author, addressee, or carbon copy recipient of such document, or to any current employee of the producing party who by their testimony indicates they have access to the type of information sought to be disclosed. During deposition or trial testimony, counsel may disclose documents produced by a party to current employees and officers of the producing party who by their testimony indicates they have access to the type of information sought to be disclosed. And regardless of such designation pursuant to this ' Protective Order, if a document or testimony makes reference to the actual or alleged conduct or statements of a person who is a potential witness, counsel may discuss such conduct or statements with such witness without revealing any portion of the document or testimony other than that which specifically refers to such conduct or statement, and such discussion shall not constitute disclosure in violation of this Protective Order

12.     Designation Of Documents Under Seal.

Any information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL, if filed with the Court, shall be filed under seal and shall be made available only to the Court and to persons authorized by the terms of this Protective Order. The party filing any paper which reflects, contains or includes

any CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information subject to this Protective Order shall file such paper in a sealed envelope, or other appropriately sealed container, which indicates the title of the action, the party filing the materials, the nature of the materials filed, the appropriate legend (see Paragraph 2.1), and a statement substantially in the following form:

This envelope contains documents subject to a Protective Order of the Court. It should be opened only by the Court. Its contents should not be disclosed, revealed or made public except by Order of the Court or written agreement of the parties.

13.    Confidentiality Of Party's Own Documents.

No person may disclose, in public or private, any designated information of another party except as provided for in this Protective Order, but nothing herein shall affect the right of the designating party to disclose to its officers, directors, employees, attorneys, consultants or experts, or to any other person, its own information. Such disclosure shall not waive the protections of this Protective Order and shall not entitle other parties or their attorneys to disclose such information in violation of it, unless by such disclosure of the designating party the information becomes public knowledge (see Paragraph 16). Similarly, the Protective Order shall not preclude a party from showing its own information to its officers, directors, employees, attorneys, consultants or experts, or to any other person, which information has been filed under seal by the opposing party.

14.    Other Protections.

14.1    No person shall use any CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information, or information derived therefrom, for purposes other than the prosecution or defense of this action, including without limitation, for purposes of preparing, filing or prosecuting any patent application, continuation or divisional patent application, reissue patent application or request for re-examination.

14.2    Any party may mark any document or thing containing CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information as an exhibit to a deposition, hearing or other proceeding and examine any witness thereon qualified under the terms of this Protective Order to have access to such designated material.

15.    Challenge To Confidentiality.

15.1 This Protective Order shall not preclude any party from seeking and obtaining, on an appropriate showing, such additional protection with respect to the confidentiality of documents or other discovery materials as that party may consider appropriate. Nor shall any party be precluded from (a) claiming that any matter designated hereunder is not entitled to the protections of this Protective Order, (b) applying to the Court for an Order permitting the disclosure or use of information or documents otherwise prohibited by this Protective Order, or (c) applying for a further Order modifying this Protective Order in any respect. No party shall be obligated to challenge the propriety of any designation, and

failure to do so shall not preclude a subsequent challenge to the propriety of such designation.

15.2   On any motion challenging the designation of any information, the burden of proof shall lie with the producing party to establish that the information is, in fact, CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information. If a party seeks declassification or removal of particular items from a designation on the ground that such designation is not necessary to protect the interests of the party wishing the designated information, the following procedure shall be utilized:

a. The party seeking such declassification or removal shall give counsel of record for the other party written notice thereof specifying the designated information as to which such removal is sought and the reasons for the request; and

b. If, after conferring, the parties cannot reach agreement concerning the matter, then the party requesting the declassification or removal of particular items may file and serve a motion for a further Order of this Court directing that the designation shall be so removed.

16.   Prior Or Public Knowledge.

This Protective Order shall not apply to information that, prior to disclosure, is public knowledge, and the restrictions contained in this Protective Order shall not apply to information that is, or after disclosure becomes, public knowledge other than by an act or omission of the party to whom such disclosure is made, or that is legitimately and independently acquired from a source not subject to this Protective Order.

17.   Limitation Of Protective Order.

This Protective Order is not intended to address discovery objections to produce, answer, or respond on the grounds of attorney-client privilege or work product doctrine, or to preclude any party from seeking further relief or protective orders from the Court as may be appropriate under the Federal Rules of Civil Procedure.

18   Other Proceedings.

By entering this order and limiting the disclosure of information in this case, the court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this order who may be subject to a motion to disclose another party's CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information pursuant to this order shall promptly notify that party of the motion so that it may have an opportunity to appear and be heard on whether such information should be disclosed.

19.   Inadvertent Disclosure Of Work Product Or Privileged Information:

Procedure And Waiver.

19.1    If the producing party at anytime notifies the Non-producing party in writing that it has inadvertently produced documents and/or things that are protected from disclosure under attorney-client privilege, work-product immunity, and/or any other applicable privilege or immunity from disclosure, the non-producing party shall return all copies of such documents and/or things to the producing party within five (5) business days of receipt of such notice and shall not further disclose or use such items for any purpose until further order of the Court. Upon being notified by the producing party pursuant to this section, counsel for the non-producing party shall use his or her best efforts to retrieve all copies of the documents at issue.

19.2    The return of any discovery item to the producing party shall not in any way preclude the non-producing party from moving the Court for a ruling that: (a) the document or thing was never privileged or otherwise immune from disclosure; and/or (b) that any applicable privilege or immunity has been waived.

19.3    Inadvertent or unintentional disclosure of information subject to any privilege or immunity during the course of this litigation without proper designation shall not be deemed a waiver of a claim that disclosed information is in fact subject to a privilege or immunity if so designated within ten (10) business days after the producing party actually learns of the inadvertent or unintentional disclosure.

20.    Non-Party Material.

The terms of this Protective Order, as well as the terms of any protective order that may be entered into between a discovering party and third party for the production of information to the discovering party, are applicable to CONFIDENTIAL or HIGHLY SENSITIVE CONFIDENTIAL information provided by a non-party. Information provided by a non-party in connection with this action and designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL, pursuant to the terms of this Protective Order shall be protected by the remedies and relief provided by this Protective Order.

21.    Return Of Designated Information.

Within thirty (30) days of final termination of this action, unless otherwise agreed to in writing by an attorney of record for the designating party, each party shall assemble and return, or certify destruction of, all materials containing information designated CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER or HIGHLY SENSITIVE CONFIDENTIAL, including all copies, extracts and summaries thereof, to the party from whom the designated material was obtained, except that (a) any documents or copies which contain, constitute or reflect attorney's work product or attorney-client privilege communications, and (b) archive copies of pleadings, motion papers, deposition transcripts, correspondence and written discovery responses may be retained by counsel.

22. Waiver Or Termination Of Order.

No part of the restrictions imposed by this Protective Order may be waived or terminated, except by written stipulation executed by counsel of record for each designating party, or by an Order of the Court for good cause shown. The restrictions provided for herein shall not terminate upon the conclusion of this action, but shall continue until further Order of this Court.

23. Modification Of Order; Prior Agreements.

To the extent the terms of this Protective Order conflict with Local Rule 26.2 or with any agreements between the parties regarding the confidentiality of particular documents or information entered into before the date of this Protective Order, the terms of this Protective Order shall govern, except as to those documents and information produced or disclosed prior to the entry of this Protective Order, which documents and information shall continue to be governed by the terms of such prior agreements or by the provisions of Local Rule 26.2, as applicable.

24. Section Captions.

The title captions for each section of this Protective Order are for convenience only and are not intended to affect or alter the text of the sections or the substance of the

Order.

Dated: December      , 2004

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LG PHILIPS LCD CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 04-343-JJF |
| v. | ) | |
| | ) | |
| TATUNG COMPANY; | ) | |
| TATUNG COMPANY OF AMERICA, | ) | |
| INC. and VIEWSONIC CORPORATION, | ) | |
| | ) | |
| Defendants | ) | |

CONFIDENTIALITY UNDERTAKING

I certify that I have read the Protective Order in this action and that I fully understand the terms of the Order. I recognize that I am bound by the terms of that Order, and I agree to comply with those terms. I hereby consent to the personal jurisdiction of the United States District Court, District of Delaware, for any proceedings involving the enforcement of that Order and waive any venue objection with respect to any such proceedings.

EXECUTED this      day of _____, _____.

Name

Affiliation

Business Address

## CERTIFICATE OF SERVICE

I, Jeffrey S. Goddess, hereby certify that on January 24, 2005, I caused two

copies of the foregoing document to be served as follows:


(VIA E-MAIL)   Richard D. Kirk, Esquire
        The Bayard Firm
        222 Delaware Avenue #900
        P. O. Box 25130
        Wilmington, DE 19899
        Attorneys for Plaintiff L.G. Philips LCD Co., Ltd.

(VIA E-MAIL)   Richard L. Horwitz, Esquire
        Potter Anderson & Corroon, LLP
        1313 N. Market Street
        Hercules Plaza, 6th Floor
        P. O. Box 951
        Wilmington, DE 19899

(VIA E-MAIL)   Cass W. Christenson, Esquire
        McKenna Long & Aldridge LLP
        1900 K Street, NW
        Washington, DC 20006

(VIA E-MAIL)   Tracy Roman, Esquire
        Bingham McCutchen
        355 S. Grand Ave., 44th Floor
        Los Angeles, CA 90071


             JEFFREY S. GODDESS (No. 630)

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

## CIVIL MOTION HEARING

LG Philips LCD Co., Ltd.,

     Plaintiff,

v.

Tatung Company,
Tatung Company of America, Inc.,and
ViewSonic Corporation,

     Defendants.

**COURT MINUTES**

BEFORE: Susan Richard Nelson
U.S. Magistrate Judge

| | |
|---|---|
| Case No: | 07-MC-19 JNE/SRN |
| Date: | March 15, 2007 |
| Court Reporter: | Jodi Weisenburger |
| Tape Number: | none |
| Time Commenced: | 3:00 p.m. |
| Time Concluded: | 3:40 p.m. |
| Time in Court: | 40 minutes |

APPEARANCES:

| | |
|---|---|
| For Plaintiff: | Daniel Connolly, Shari Klevens, Nicole Balaci |
| For Defendants Tatung Company, et al.: | Thomas Jensen, Frank Merideth, Deborah Pourapian |
| For Defendant ViewSonic Corporation: | |

IF MOTION IS RULED ON PLEASE INCLUDE DOCUMENT NUMBER AND TITLE APPEARING IN CM/ECF.

**ORDER TO BE SUBMITTED BY:**    ☐ **COURT**   ☐ **PLAINTIFF**   ☐ **DEFENDANT**

## Consistent with the Court's ruling from the bench, for the reasons stated in the record:

**The Motion for Protective Order of Defendants Tatung Company and Tatung Company of America, Inc. [Doc. No. 1] is granted in part and denied in part.** There is no dispute among the parties that the documents requested in the Third Party Subpoena to Best Buy, Inc. regarding accused products are relevant and should be produced, commencing immediately. The dispute concerns documents pertaining to unaccused products. The Court orders that Best Buy, Inc. may refrain from producing any documents regarding unaccused products until such time as the Special Master in the pending matter in Delaware rules on a substantially similar discovery motion pending at this time. If the Special Master orders the production of all or certain categories of documents relating to unaccused products, Best Buy, Inc. is hereby ordered to comply with the spirit of the Special Master's Order and produce those documents pursuant to this subpoena. When the Special Master issues the ruling, the parties are instructed to immediately advise Best Buy, Inc. of the ruling. Best Buy, Inc. is to produce such documents even if the time period for discovery set in the Delaware action has expired.

Motions taken under advisement as of:

☐ ORDER TO BE ISSUED    ☒ NO ORDER TO BE ISSUED   ☐ R&R TO BE ISSUED   ☐ NO R&R TO BE ISSUED
☐ Exhibits retained by the Court    ☐ Exhibits returned to counsel

               _s/ Gabriel R. Gervey_
               Signature of Law Clerk

# EXHIBIT D

Donald R. Fischbach  #053522
Christopher D. Bell  #247082

1       **BAKER, MANOCK & JENSEN**
        A PROFESSIONAL CORPORATION
        FIG GARDEN FINANCIAL CENTER
2       5260 NORTH PALM AVENUE, FOURTH FLOOR
        FRESNO, CALIFORNIA 93704-2209
3           TELEPHONE (559) 432-5400
            TELECOPIER (559) 432-5620

4

5       Attorneys for    PELCO, a non-party witness in the captioned litigation.

6

7

8                       UNITED STATES DISTRICT COURT

9                       EASTERN DISTRICT OF CALIFORNIA

10

11      LG. PHILIPS LCD CO. LTD.,              )    Case No. 1:07-mc-9 (SMS)
                                               )
12                          Plaintiff,         )
                                               )    **DECLARATION OF DONALD R.**
13              v.                             )    **FISCHBACH IN SUPPORT OF**
                                               )    **PELCO'S MOTION TO QUASH, AND**
14      TATUNG COMPANY, et. al.,               )    **IN RESPONSE TO PLAINTIFF'S**
                                               )    **OPPOSITION THERETO**
15                          Defendants.        )
                                               )    [FED. R. CIV. P. 45]
16                                             )
                                               )
17      _____)

18

19                      I, DONALD R. FISCHBACH, DECLARE:

20              1.      I am an attorney at law licensed to practice law in all courts of the State of

21      California and in the United States District Court for the Eastern District of California.  I am a

22      member of the law firm of Baker, Manock & Jensen, and counsel for PELCO, a non-party to this

23      action.  If called as a witness, I would and could competently testify as set forth below.

24      2.      In an attempt to meet and confer regarding this matter, your declarant and Ms. Klevens,

25      representing the plaintiff, have had a number of telephone calls and exchanged e-mails, not only

26      with respect to the deposition of a representative of Pelco, which is the subject matter of our

27      motion, but also the subpoena for records to be produced before that deposition.

28      ///

1        3.    Attached hereto and marked as Exhibit "A" are the formal objections to the

2    production of documents requested in the plaintiff's subpoena served on Plaintiff on February 27,

3    2007 pursuant to Rule 45.

4        4.    Subsequent to that, Pelco agreed that certain documents would be produced

5    on March 15, 2007, but advised that no sales or similar  documents would be produced.

6        5.    On the evening of March 14, 2007, your declarant learned for the first time

7    of two significant issues which could potentially affect the production of those records, matters

8    which Plaintiff had never advised us about and are more particularly described in the attached

9    Exhibit "B," Memorandum of Points and Authorities by Defendant Tatung filed in support of its

10   motion for a protective order, and Exhibit "C," the declaration of Charlene Oh, also in support of

11   that motion.  First, we were never made aware before March 14, 2007 that there is pending a

12   discovery motion before a Special Master in this Delaware action with respect to "Accused"

13   products.  Also, nobody advised us that there are  a limited number of products, the "Accused"

14   products which are the subject matter of the lawsuit, and the notice of deposition and subpoena

15   served on Pelco place no limitations with respect to products which are the subject matter of suit.

16       6.    On the evening of March 14, 2007, documents had been forwarded to

17   Plaintiffs by Federal Express, but that action was reversed as soon as we learned about the above

18   issues.  Counsel for Plaintiff was immediately advised of our action pursuant to e-mail, Exhibit

19   "D" hereto.

20       7.    Plaintiff's opposition to our motion is entitled "Plaintiff's Combined

21   Motion to Compel and Brief in Opposition to Pelco's Application to Shorten Time For Notice And

22   Hearing of Its Motion to Quash or, Alternatively, Modified Subpoena Duces Tecum."  Thus, the

23   title states that Plaintiff opposes our application to shorten time (which the Court has already

24   done), yet, Plaintiff agreed to the shortening time, and their brief even encourages the Court to

25   make an early decision.  Exhibit "E" is an e-mail from your declarant to Plaintiff's attorney of

26   March 6, 2007, asking for a stipulation for an order shortening time to hear this matter, and

27   ///

28   ///

2

DECLARATION OF DONALD R. FISCHBACH IN SUPPORT OF PELCO'S MOTION TO QUASH

1   opposing counsel's e-mail stating "we agree that an expedited hearing on these issues is

2   appropriate."

3          8.      Exhibit "F" is your declarant's e-mail to Plaintiff's counsel confirming that

4   counsel agreed by telephone that we would not be producing documents for the reasons set forth

5   above until the hearing on March 19, and Plaintiff's response confirming that arrangement; it also

6   confirms your declarant's explanation to Plaintiff's counsel about our change in position as a result

7   of learning about the pending discovery motion in Delaware, as well as the previously unheard of

8   issue about "Accused" products.  When your declarant asked opposing counsel why the pending

9   discovery motion in Delaware was never mentioned, the reply was that Plaintiff did not think it

10  was "relevant" to any of our issues, something we believe is very relevant and should have been

11  disclosed.

12         I declare under penalty of perjury under the laws of the United States that the

13  foregoing is true and correct and that this declaration was executed this 16 day of May, 2007 at

14  Fresno, California.

15

16                                      _____
                                              Donald R. Fischbach
17

18  @PFDesktop\::ODMA/MHODMA/DMS;DMS;537486;1

19

20

21

22

23

24

25

26

27

28

3

# EXHIBIT "A"

FAXED

# Baker Manock & Jensen

### ATTORNEYS AT LAW

Donald R. Fischbach
*Attorney at Law*
drf@bmj-law.com

February 27, 2007

Fig Garden Financial Center

5260 North Palm Avenue

Fourth Floor

Fresno, California 93704

Tel: 559.432.5400

Fax: 559.432.5620

www.bmj-law.com

Shari Klevens
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006

Re:     Pelco Deposition and Subpoena/L.G. Philips LCD. Co. Ltd. v.
        Tatung Company, et al.

Dear Ms. Klevens:

As we discussed earlier today, enclosed is our formal objection pursuant to Federal Rule of Civil Procedure Rule 45 with respect to the subpoena served on Pelco. However, in response to your email today in an attempt to narrow the issues, we respond to your following requests:

1.      A sales summary consisting of a printout from Pelco Sales Database. Pelco is adamant it cannot provide this information because it involves trade information, some of which is potentially confidential even to the parties to this lawsuit to where the protective order is of no assistance. Accordingly, those documents will not be produced.

2.      All contracts, supply agreements, licenses or distribution agreements between Pelco and Tatung or ViewSonic. Those can be produced.

3.      Documents related to technical specifications, manufacturing or assembly of Tatung and ViewSonic products. The only thing that our client is aware of is an Excel spreadsheet which Pelco is willing to produce.

4.      Documents relating to the marketing of products to Pelco including brochures, etc. That can be produced if the information can be found.

5.      Documents sufficient to identify OEM'S or ODM'S that manufacture Pelco's products, etc. We are not quite sure what that relates to, but we have been advised that no such documents exist.

Shari Klevens
February 27, 2007
Page 2

6.    Documents relating to product support or service on Pelco's visual display products provided by Tatung or ViewSonic through a warranty or otherwise.  That is something we can produce.

Accordingly, it appears that we can agree on five of the six issues set forth in your email.  With respect to the deposition date, we are working on a PMK available date and we will get back to you with respect to that.

Thank you for your assistance.  We will continue to work with you to hopefully work this out.

Very truly yours,

Donald R. Fischbach
BAKER, MANOCK & JENSEN,
a Professional Corporation

DRF:mlm
Enclosure

@PFDesktop\::ODMA/MHODMA/DMS;DMS;534668;1
99998.DRF

# Baker Manock & Jensen

### ATTORNEYS AT LAW

Donald R. Fischbach
*Attorney at Law*
drf@bmj-law.com

February 27, 2007

Fig Garden Financial Center

Shari Klevens
McKenna Long & Aldridge, LLP
1900 K Street, NW
Washington D.C. 20006

5260 North Palm Avenue

Fourth Floor

Fresno, California 93704

Tel: 559.432.5400

Fax: 559.432.5620

Re:    <u>LG. Philips LCD Co., Ltd., v. Tatung Company, et. al.</u>

www.bmj-law.com

Dear Ms. Klevens:

Regarding the Subpoena served on Pelco on February 14, 2007, in the above-referenced matter, our firm represents Pelco, which as you are aware, is not a party in this matter. This letter sets forth Pelco's formal objections to your request for production of documents pursuant to Federal Rule of Civil Procedure, Rule 45 (c)(2)(B). As such, until ordered by the court, Pelco refuses to produce certain documents for the reasons set forth more particularly below, unless we can work out an agreement otherwise. We thank you for working with us in that regard.

First, please be advised that Pelco is deeply concerned with regards to much of the information requested by the Subpoena. Pelco is a partnership and <u>not</u> a corporation. Therefore, most of the information requested in the Subpoena constitutes sensitive and confidential trade secrets not normally available to the public through the regular reporting requirements associated with corporations. Moreover, the protective order offered to us fails to protect the majority of our sales-related, trade secret information from disclosure.

Second, we are aware that the Subpoena requires Pelco to produce requested documents on March 5, 2007 at 9:00 a.m. However, due to difficulties being encountered in locating and compiling these documents, it will be impossible for Pelco to comply by this date. To the extent they exist or are in Pelco's possession, the requested documents are kept in many locations and files, and <u>not</u> in single, organized files that are easily accessible. Production of these records will require extensive time and great expense to search for, select and compile. As such, we generally object to producing certain documents requested because it imposes undue burden and expense on Pelco. (See Fed. R. Civ. P. 45 (c)(1); see also *Cusumano v. Microsoft Corporation*, 162 F.3d 708, 717 (1st Cir. 1998) ("concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs); *Dart Indus. Co. V. Westwood Chem. Co.*, 649 F.2d 646 (9th Cir. 1980).) However, in an attempt to cooperate, we will continue efforts to negotiate a reasonable time frame and manner in which to provide the documents requested in the Subpoena.

Shari Klevens
February 27, 2007
Page 2

Notwithstanding these issues, specific objections to each request are addressed sequentially below.

REQUEST FOR PRODUCTION NO. ONE:

- All documents provided by Tatung Company, Tatung America, TSTI, and/or ViewSonic to Pelco since January 2, 2002 regarding; (I) marketing, sales, or business documents or presentation materials; (ii) technical specifications and/or drawings regarding Tatung Company's, Tatung America's, TSTI's or ViewSonic's visual display products, including but not limited to the assembly of such products; and (iii) any documents relating to warranties, product support, or service provided by Tatung Company, Tatung America, TSTI, and/or ViewSonic regarding their visual display products.

RESPONSE:

- Objection: This request imposes undue burden and expense on Pelco for the reasons stated above. Furthermore, this burden clearly outweighs any likely benefit to you from their production. Documents responsive to this request must be equally available from Tatung Company, Tatung America, TSTI, and/or ViewSonic because these entities are in as good, or an even better position to produce documents *they provided to Pelco*. As such, subpoenaing party cannot demonstrate a substantial need for the documents requested. However, in an attempt to cooperate, we will produce documents which can be found.

REQUEST FOR PRODUCTION NO. TWO:

- Documents provided by Pelco to Tatung Company, Tatung America, TSTI or ViewSonic since January 1, 2002 sufficient to show (i) Pelco's design requirements for its visual display products (ii) Pelco's market for its visual display products, and/or (iii) market trends in the United States for visual display products.

RESPONSE:

- Objection: This request for production of documents places undue burden and expense on Pelco for the reasons stated above.

Shari Klevens
February 27, 2007
Page 3

- Objection: Pelco objects to this request where it may seek disclosure of commercial trade secrets or other confidential research, development, or commercial information. (See Fed. R. Civ. P. 26 (c), 45 (c)(3)(B)(I); Federal Open Market Comm. v. Merrill 443 U.S. 340, 362 (1979); Sega Enterprises Ltd. V. Accolade, Inc., 977 F.2d 1510, 1532 (9th Cir. 1992); See In re Vitamins Antitrust Litigation, 267 F.Supp.2d 738, 741 (S.D. Ohio 2003) (court quashed subpoena where it called for disclosure of trade secrets).) However, in an attempt to cooperate, we will produce documents which can be found.

REQUEST FOR PRODUCTION NO. THREE:

- Documents sufficient to show the business relationship between Pelco and Tatung Company, Tatung America, TSTI, and/or ViewSonic since January 1, 2002, including communications with Tatung Company, Tatung America, TSTI, and/or ViewSonic, notes from meeting with Tatung Company, Tatung America, TSTI, and/or ViewSonic, and documents in which Pelco has agreed to purchase visual display products directly from Tatung Company, Tatung America, TSTI, and/or ViewSonic.

RESPONSE:

- Objection: This document request is vague and ambiguous as to the meaning of "documents sufficient to show the business relationship," such that Pelco cannot reasonably be expected to respond to this request.

- Objection: This request for production imposes undue economic burden and expense on Pelco for the reasons stated above. The burden on Pelco outweighs subpoenaing party's need for the requested documents because "documents in which Pelco has agreed to purchase visual display products directly from Tatung Company, Tatung America, TSTI, and/or ViewSonic" and documents showing a business relationship between Pelco and these entities must be equally accessible from Tatung Company, Tatung America, TSTI, and/or ViewSonic.

- Objection: The document request for "notes from meeting with Tatung Company, Tatung America, TSTI, and/or ViewSonic" is broad enough to encompass commercial trade secrets or other confidential research, development, or commercial information. (See Fed. R. Civ. P. 26 (c), 45 (c)(3)(B)(I); Federal Open Market Comm. v. Merrill 443 U.S.

Shari Klevens
February 27, 2007
Page 4

340, 362 (1979); <u>Sega Enterprises Ltd. V. Accolade, Inc.</u>, 977 F.2d 1510, 1532 (9th Cir. 1992); <u>See</u> <u>In re Vitamins Antitrust Litigation</u>, 267 F.Supp.2d 738, 741 (S.D. Ohio 2003) (court quashed subpoena where it called for disclosure of trade secrets).)

This information may have independent economic value from not being generally known to the public. Disclosure of Pelco's notes from meetings with the above entities could reveal to competitors sensitive information concerning, but not limited to Pelco's manufacturing, distribution, developmental, research, and general business strategy. With the exception of notes from meetings with the above entities, we will produce documents which can be found.

## REQUEST FOR PRODUCTION NO. FOUR:

- All documents related to the manufacture and/or assembly of Tatung Company's, Tatung America's, TSTI's, and/or ViewSonic's visual display products.

## RESPONSE:

- <u>Objection</u>: This request for production of documents imposes undue burden and expense on Pelco because we do not believe any such documents exist in Pelco's possession or control. Pelco does not assemble or manufacture Tatung Company's, Tatung America's, TSTI's, and/or ViewSonic's visual display products.

## REQUEST FOR PRODUCTION NO. FIVE:

- All documents since January 1, 2002 evidencing or relating to Pelco's purchase from original equipment manufacturers ("OEMs") any visual display products that Pelco had reason to believe were manufactured or assembled in whole or in part by Tatung Company, Tatung America, TSTI, and/or ViewSonic, and documents sufficient to show that Tatung Company, Tatung America, TSTI, and/or ViewSonic received notice of Pelco's agreements to purchase.

## RESPONSE:

Shari Klevens
February 27, 2007
Page 5

- <u>Objection</u>: This request is vague and ambiguous as to the term "original equipment manufacture," such that Pelco cannot reasonably expected to respond to this request.

- We do not believe any such documents exist in Pelco's possession or control. It is our understanding that Pelco did not purchase any visual display products it believed or had reason to believe was manufactured an/or assembled in whole or in part by Tatung Company, Tatung America, TSTI, and/or ViewSonic, from original equipment manufacturers other than these entities.

## REQUEST FOR PRODUCTION NO. SIX:

- Documents sufficient to show Pelco's receipt or purchase of visual display products sold, manufactured, shipped, imported, or distributed in whole or in part by Tatung Company, Tatung America, TSTI, and/or ViewSonic since January 1, 2002.

## RESPONSE:

- <u>Objection</u>: This request for production imposes undue burden and expense on Pelco for the reasons stated above. In addition, the burden on Pelco clearly outweighs subpoenaing party's need for the requested documents because "documents sufficient to show Pelco's receipt or purchase of visual display products sold, manufactured, shipped, imported, or distributed" by Tatung Company, Tatung America, TSTI, and/or ViewSonic must be equally accessible from these entities. As such, subpoenaing party cannot demonstrate a substantial need for the documents requested to justify Pelco's burden attendant to production. However, an attempt will be made to locate these documents.

## REQUEST FOR PRODUCTION NO. SEVEN:

- Documents sufficient to show the total quantity of visual display products sold, by product, by Pelco that were manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic since January 1, 2002, including separate summaries for (1) Tatung Company products, (2) Tatung America products, (3) TSTI products, and (4) ViewSonic products.

Shari Klevens
February 27, 2007
Page 6

RESPONSE:

- Objection:  This request for production imposes undue burden and expense on Pelco for the reasons stated above.

- Objection:   This request seeks disclosure of commercial trade secrets or other confidential research, development, or commercial information.   (See Fed. R. Civ. P. 26 (c), 45 (c)(3)(B)(I); Federal Open Market Comm. v. Merrill 443 U.S. 340, 362 (1979); Sega Enterprises Ltd. V. Accolade, Inc., 977 F.2d 1510, 1532 (9th Cir. 1992); See In re Vitamins Antitrust Litigation, 267 F.Supp.2d 738, 741 (S.D. Ohio 2003) (court quashed subpoena where it called for disclosure of trade secrets).)  "[Q]uantity of visual display products sold, by product, by Pelco" is broad enough to encompass important proprietary information that relates to sensitive strategic, operational, research, and manufacturing aspects of Pelco's business that it has historically sought to maintain confidential.  This information has independent economic value from not being generally known to the public.  Disclosure of Pelco's quantity of visual display products sold by product would allow competitors to estimate information concerning, but not limited to Pelco's marketing strategy, research, operations, and overall business strategy.

REQUEST FOR PRODUCTION NO. EIGHT:

- Documents sufficient to show the sales by total dollar value and by quantity of visual display products sold, by product, by Pelco that were manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic since January 1, 2002, including separate summaries for (1) Tatung Company products, (2) Tatung America products, (3) TSTI products, and (4) ViewSonic products.

RESPONSE:

- Objection:  This request for production imposes undue burden and expense on Pelco for the reasons stated above.

- Objection:  This request seeks disclosure of commercial trade secrets or other confidential research, development, or commercial information.   (See Fed. R. Civ. P. 26 (c), 45 (c)(3)(B)(I); Federal Open Market Comm. v. Merrill 443 U.S. 340, 362 (1979); Sega

Shari Klevens
February 27, 2007
Page 7

<u>Enterprises Ltd. V. Accolade, Inc.</u>, 977 F.2d 1510, 1532 (9th Cir. 1992); <u>See</u> <u>In re</u>
<u>Vitamins Antitrust Litigation</u>, 267 F.Supp.2d 738, 741 (S.D. Ohio 2003) (court quashed
subpoena where it called for disclosure of trade secrets).) "[S]ales by total dollar amount
and by quantity of visual display products sold, by product, by Pelco" is broad enough to
encompass important proprietary information that relates to sensitive pricing, strategic,
operational, research, and manufacturing aspects of Pelco's business that it has
historically sought to maintain confidential. This information has independent economic
value from not being generally known to the public. Disclosure of a breakdown of
Pelco's sales amounts by product would allow competitors to estimate information
concerning, but not limited to Pelco's marketing strategy, research, operations, and
overall business strategy.

## REQUEST FOR PRODUCTION NO. NINE:

- Documents sufficient to identify each person Pelco has communicated with at Tatung
  Company, Tatung America, TSTI, and/or ViewSonic.

## RESPONSE:

- <u>Objection</u>: This request for production imposes undue burden and expense on Pelco for
  the reasons stated above. Furthermore, as parties to the communications at issue in this
  request, Tatung Company, Tatung America, TSTI, and/or ViewSonic must be equally
  suited to provide the identity of Pelco employees, agents, etc., with which they have had
  communications. Accordingly, subpoenaing party cannot demonstrate a substantial need
  of these documents to overcome Pelco's burden attendant to production. However, in an
  attempt to cooperate, we will produce documents which can be found.

  In addition, pursuant to Rule 45, Pelco hereby objects to any areas of inquiry set
forth in your Notice of Deposition which involves these categories as well. Hopefully, we can
work that matter out in order that a Motion to Quash is not necessary and we will continue to
work with you in that regard. Please understand that while Pelco does not intend to create an

Shari Klevens
February 27, 2007
Page 8

 adversarial relationship with the parties in the underlying litigation, it must protect its rights under applicable law.  We will continue with our efforts to cooperate with you on this matter.

Very truly yours,

Donald R. Fischbach

BAKER, MANOCK & JENSEN

@PFDesktop\::ODMA/MHODMA/DMS;DMS;534545;1

4:55 PM 2/27/2007 Transmission Record
        Sent to: Valerie W. Ho
        Phone: 1-310-586-7800
        Billing information: '99998', 'Drf'
        Remote ID:
        Unique ID: "VEK45E4614785D7"
        Elapsed time: 2 minutes, 48 seconds.
        Used channel 1 on server "BMJ-RIGHTFAX".
        No ANI data.
        No AOC data.
        Resulting status code (0/339; 0/0): Success
        Pages sent: 1 - 11

4:58 PM 2/27/2007 View Record
        Viewed by:  VEK

4:51 PM 2/27/2007 Transmission Record
        Sent to: Shari Klevens
        Phone: 1-202-496-7756
        Billing information: '99998', 'Drf'
        Remote ID: 202 496 7756
        Unique ID: "VEK45E4614785D7"
        Elapsed time: 2 minutes, 50 seconds.
        Used channel 0 on server "BMJ-RIGHTFAX".
        No ANI data.
        No AOC data.
        Resulting status code (0/339; 0/0): Success
        Pages sent: 1 - 11


4:54 PM 2/27/2007 Forward Record
        Forwarded by:  VEK


4:55 PM 2/27/2007 View Record
        Viewed by:  VEK

# EXHIBIT "B"

1 │ VALERIE HO (SBN 200505)
    │ MARK H. KREITZMAN (SBN 126806)
2 │ FRANK C. MEREDITH, JR. (SBN 46266)
    │ GREENBERG TRAURIG, LLP
3 │ 2450 Colorado Avenue, Suite 400E
    │ Santa Monica, CA  90404
4 │ Telephone: (310) 586-7700
    │ Facsimile: (310) 586-7800
5 │
6 │ MARC B. KOENIGSBERG, (SBN 204265)
    │ GREENBERG TRAURIG, LLP
7 │ 1201 K Street, Suite 1100
    │ Sacramento, CA  95817
8 │ Telephone: (916) 442-1111
    │ Facsimile: (916) 448-1709
9 │
    │ Attorneys for defendants
10 │ TATUNG COMPANY; TATUNG  COMPANY
    │ OF AMERICA, INC
11 │

12 │                 UNITED STATES DISTRICT COURT

13 │              EASTERN DISTRICT OF CALIFORNIA

14 │

15 │ L.G. PHILLIPS LCD CO., LTD.,            )  CASE NO.
                                            )
16 │                                        )  **DEFENDANT TATUNG COMPANY**
    │         Plaintiff,                     )  **AND TATUNG COMPANY OF**
17 │                                        )  **AMERICA'S MEMORANDUM OF**
    │ v.                                     )  **POINTS AND AUTHORITIES IN**
18 │                                        )  **SUPPORT OF MOTION FOR**
    │ TATUNG COMPANY; TATUNG                 )  **PROTECTIVE ORDER**
19 │ COMPANY OF AMERICA, INC.; AND          )  **LIMITING SCOPE OF THIRD PARTY**
    │ VIEWSONIC CORPORATION,                 )  **DEPOSITION AND SUBPOENA**
20 │                                        )
21 │         Defendant.                     )  Date:  March _____, 2007
                                            )  Time: _____
22 │ _____)  Courtroom: _____

23 │                       **I.    INTRODUCTION**

24 │        Defendants Tatung Company and Tatung Company of America (collectively, "the Tatung

25 │ Defendants") submit this Memorandum of Points and Authorities in support of their Motion for

26 │ Protective Order Limiting Scope of Third Party Deposition and Subpoena (the "Motion for

27 │ Protective Order").

28 │        This Motion for Protective Order seeks to limit the scope of a subpoena and deposition

                                            1

1  notice issued on third-party Pelco- California ("Pelco") in this district in connection with a patent

2  infringement lawsuit pending in the United States District Court for the District of Delaware (the

3  "Delaware Action," C.A. No. 04-343-JJF).  The subpoena at issue is attached as Exhibit 1 hereto

4  and made a part hereof.  Defendants submit that any third-party discovery should be limited to

5  the accused products. *See* Declaration of Charlene Oh at ¶3.  For the reasons discussed in greater

6  detail below, the Tatung Defendants' request for a protective order should be granted because the

7  discovery sought by Plaintiff L.G. Philips LCD Co., Ltd. ("LPL") is:

8        1.     A transparent and improper effort by LPL to perform an "end run" around a

9  potentially unfavorable ruling by the Special Master in the Delaware Action concerning the

10  proper scope of LPL's discovery, namely, the Special Master's impending ruling on LPL's

11  motion to compel discovery pertaining to *unaccused* products from the Tatung Defendants and

12  the Tatung Defendants' motion to stay discovery regarding *unaccused* products pending

13  resolution of issues relating to LPL's and its attorneys' violations of Protective Orders in cases

14  pending between the parties;

15        2.     Irrelevant in that it seeks extremely broad categories of communications and

16  information from the Tatung Defendants' customers entirely unrelated to the patents-in-suit or

17  the accused products in the Delaware Action;

18        3.     Not reasonably calculated to lead to the discovery of admissible evidence in the

19  Delaware Action, but instead, is information about the Tatung Defendants' confidential business

20  communications and trade secret information that LPL seeks for ulterior and improper purposes;

21  and

22        4.     Unduly burdensome in that the third-party discovery Plaintiff seeks from Pelco

23  and the Tatung Defendants' other customers will require the production of thousands of

24  documents and is calculated to harass the Tatung Defendants' customers, some of whom have

25  already responded to subpoenas issued by LPL during jurisdictional discovery.

26          **II.**     **STATEMENT OF FACTS**

27  **A.**    **The Nature Of This Lawsuit.**

28        Defendant Tatung sells electronic products including computer monitors and televisions

1    to resellers and retailers worldwide. Defendant Tatung Company of America, a California

2    corporation, is a reseller of computer monitors and other LCD applications in the United States.

3    The Tatung Defendants also perform OEM (Original Equipment Manufacturer) services for a

4    number of customers. LPL and its parent company, LG Electronics, Inc. ("LGE"), compete with

5    the Tatung Defendants in the market of flat display panel products (e.g., LCD monitors, LCD

6    televisions and plasma televisions).

7            Third-party Pelco, the recipient of LPL's subpoena and deposition notice, is located in

8    Clovis, California and is a customer of the Tatung Defendants.

9            The Tatung Defendants integrate more than 800 models of computer monitors and flat

10    panel display products, referred to collectively as "visual display products." As OEMs, many of

11    the Tatung Defendants' products are branded and otherwise customer specific; in most instances,

12    the products are made to exacting customer specifications. Because the monitor business is

13    highly competitive, the particular product design requirements and specifications of the Tatung

14    Defendants' OEM customers, including those of Pelco, are extremely valuable trade secrets. The

15    Tatung Defendants' specific pricing arrangements with customers also are extremely valuable

16    trade secrets.

17            LPL commenced the Delaware Action against the Tatung Defendants on May 27, 2004.

18    In the Delaware Action, LPL has alleged patent infringement claims against the Tatung

19    Defendants based on certain "rear-mount" patents with respect to 20 of its products.

20            The discovery cut-off date in the Delaware Action is March 30, 2007.

21    **B.    The Tatung Defendants Have Already Provided LPL With Voluminous Discovery**

22    **Relating to Both Its Accused and Non-Accused Products.**

23            LPL served its initial discovery requests in the Delaware Action over two years ago. In

24    response to those discovery requests, the Tatung Defendants produced technical specifications

25    and assembly drawings covering approximately 800 models of monitors and flat panel displays

26    they sell. Until November 2006, LPL had accused only one Tatung product of infringing the

27    patents-in-suit. In November 2006, LPL identified two additional accused products. It was not

28    until mid-January 2007 that LPL accused the remaining products.

3

1  ///

2  The Tatung Defendants have expended a great deal of effort to comply with their

3  discovery obligations.  Since late January 2007 alone, the Tatung Defendants have produced

4  approximately 15,000 pages of documents, including the following:

5  - Highly confidential Tatung America product work instructions;

6  - Highly confidential exploded view drawings of products; and

7  - Highly confidential sales summaries from 2002 to the present (quarter 1, 2007)

8  containing model, price, and quantity information for *all* of its visual display

9  products.

10  In addition, the Tatung Defendants have made available for LPL's inspection, and LPL

11  has examined, disassembled, and photographed more than 40 monitor and television products.

12  Of the hundreds of products for which LPL has been provided technical documents, LPL to date

13  has accused only 20 products of infringing the patents-in-suit.

14  **C.     LPL's Motion To Compel Further Customer Information Is Pending**

15  **Before the Special Master.**

16  In January 2007, LPL filed a motion to compel the production of additional documents

17  such as highly confidential agreements and communications between the Tatung Defendants and

18  their customers relating to *all* of the Tatung Defendants' visual display products including the

19  hundreds of unaccused products.  The Tatung Defendants vigorously opposed that motion on the

20  grounds that LPL's requested discovery is not limited in any way to the accused products at issue

21  in the Delaware Action and is instead a transparent attempt by LPL to obtain highly sensitive

22  business information.  That motion is presently pending before the Special Master.  The parties

23  expect a decision shortly, as discovery cut-off is March 30, 2007.

24  **D.     LPL Now Seeks the Same Discovery Directly From the Tatung Defendants'**

25  **Customers.**

26  In what can only be characterized as a blatant attempt to circumvent a potentially

27  unfavorable ruling by the Special Master on a motion LPL itself filed, LPL recently served

28  Pelco, as well as two dozen other customers of the Tatung Defendants, with a subpoena and

1    ///

2    deposition notice seeking voluminous discovery about highly confidential customer information

3    on hundreds of products that LPL has *never accused of infringement*.

4         Specifically, LPL's request for documents seeks, *inter alia*, "all documents" including

5    but not limited to writings, accounting records, agreements, communications, correspondence,

6    faxes, summaries of records or telephone conversations, minutes or records of meetings or

7    conferences, lists of persons attending meetings or conferences, drafts of any documents,

8    working papers, and documents between the Tatung Defendants and Pelco concerning such

9    subject matter area as (a) marketing, sales, business documents or presentation materials

10    provided by the Tatung Defendants, (b) technical specifications and/or assembly drawings

11    regarding the Tatung Defendants' "visual display products," (c) Pelco' design requirements for

12    its "visual display products," (d) Pelco' market for its "visual display products," (e) the business

13    relationship between Pelco and the Tatung Defendants since January 1, 2002, (f) the manufacture

14    and/or assembly of the Tatung Defendants' "visual display products," and more.

15         These extensive and broad-reaching requests for "visual display products" encompass *all*

16    of the products the Tatung Defendants sell to Pelco and not just the accused products that are the

17    subject of the Delaware Action.  To date, LPL has failed to provide any legitimate explanation

18    why information on *unaccused* products is relevant to its patent infringement claims in the

19    Delaware Action.

20                   **III.    LEGAL ARGUMENT**

21    **A.    The Tatung Defendants Have Standing Under FRCP 26(c)**

22          **To Move For A Protective Order.**

23         Rule 26(c) of the Federal Rules of Civil Procedure ("FRCP") provides that "[u]pon

24    motion *by a party* or by the person from whom discovery is sought, accompanied by a

25    certification that the movant has in good faith conferred…and for good cause shown… the court

26    in the district where the deposition is to be taken may make any order which justice requires to

27    protect a party or person…" (emphasis added).  Courts in the Ninth Circuit have recognized that

28    this language gives parties to a lawsuit, as well as third-parties themselves, standing to challenge

1    third-party subpoenas.  *See Portland Gen. Elec. Co. v. U.S. Bank Trust Nat'l Assoc.*, 38 F. Supp.

2    2d 1202, 1206 n. 3 (D. Or. 1999), *rev'd on other grounds*, 218 F.3d 1085 (9th Cir. 2000) (noting

3    that FRCP 26(c) "expressly gives" a party standing to challenge third party subpoenas); *see also,*

4    *In re Ashworth, Inc. Securities Litigation*, 2002 WL 33009225 at * 1 (S.D. Cal. 2002) (finding

5    that under FRCP 26, defendants have standing to seek a protective order in connection with a

6    third party subpoena); *Springbook Lenders v. Northwestern Nat'l Ins. Co.*, 121 F.R.D. 679, 680

7    (N.D. Cal. 1988) (citing FRCP 26(c) for the proposition that "[Defendant] does have standing to

8    object to [Plaintiff's] subpoena of a third party").

9         In meet and confer discussions, LPL has asserted that the Tatung Defendants do not have

10    standing to object to the information sought from third parties.  LPL is mistaken and references

11    inapposite authority.[1]

12         Based on the above, the Tatung Defendants, as parties to the Delaware Action, clearly

13    have standing to seek a protective order against LPL's attempts to obtain extremely broad and

14    irrelevant discovery from third-parties.

15    **B.    Good Cause Supports The Issuance of A Protective Order.**

16         **1.    Legal Standard Governing The Issuance Of Protective Orders.**

17

18    ─────────────────────

19    [1] For example, LPL will likely cite *Dart Industries, Inc. v. Liquid Nitrogen Processing* for the
      proposition that "unless a party to an action can make claim to some personal right or privilege
20    in respect to the subject matter of a subpoena duces tecum directed to a nonparty witness, the
      party to the action has no right to relief under FRCP 45(b) or 30(b)."  50 F.R.D. 286, 291 (D.
21    Del. 1970), *quoting Shepherd v. Castle*, 20 F.R.D. 184, 188 (W.D.Mo. 1957).

22    *Dart Industries* is inapposite for two reasons.  First, that case involved a party's motion to
      *quash a third party subpoena under FRCP 45(b)*; here, the Tatung Defendants move for a
23    *protective order pursuant to FRCP 26(c)*, which expressly grants parties standing to move the
      court to limit the scope of, or altogether preclude certain issues from, third party discovery.[1]
24    FRCP 26(c)(4), 26(c)(7).  The Tatung Defendants have chosen not to quash under FRCP 45(b)
      because they agree that LPL may seek *relevant and appropriate* discovery from third parties;
25    FRCP 26(c) is the more appropriate mechanism to strike a balance between allowing open
      discovery and ensuring that such discovery is fairly tailored to the accused products.

26    Second, unlike the Tatung Defendants, the moving party in *Dart Industries* did not assert any
      personal privilege with respect to the requested documents.  50 F.R.D. at 291.  In fact, the court
27    expressly "decline[d] to hold that Dart lacks standing to move to quash the subpoena duces
      tecum on the grounds stated in FRCP 45(b)," averring that Dart's interest "*may be sufficient* to
28    give it standing to move to limit the production sought here."  *Id.*, emphasis added.

MOTION FOR PROTECTIVE ORDER

1    Pursuant to Federal Rule of Civil Procedure 26(c), "upon a showing of good cause," the

2    Court may issue a protective order precluding or limiting the scope of discovery in order to

3    protect a party from annoyance, embarrassment, oppression, or undue burden or expense. *See,*

4    *e.g., Murata Mfg. Co., Ltd. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 178 (N.D. Ill. 2006); *see also,*

5    *Pulsecard, Inc. v. Discover Card Services, Inc.*, 1995 WL 526533 at *14 (D. Kan. 1995).  The

6    protective order may include limiting the scope of discovery to certain matters, precluding

7    altogether the discovery of certain matters, and ordering that a trade secret or other confidential

8    research, development, or commercial information not be revealed.  Fed R. Civ Proc. 26(c)(4),

9    26(c)(7).

10    In the context of Federal Rule of Civil Procedure 26(c)(7) specifically, "good cause"

11    requires the party seeking the protective order to demonstrate that: (1) the material sought to be

12    protected is confidential, and (2) disclosure will create a competitive advantage for the party.

13    *Pulsecard*, 1995 WL 526533 at * 16, *citing Georgia Television Co. v. TV News Clips of Atltanta,*

14    718 F. Supp. 939, 953 (N.D. Ga. 1989).

15    **2.    The Requested Discovery Seeks Overly Broad Categories Of**

16    **Communications and Information Completely Unrelated To Claims At Issue**

17    **in The Delaware Action.**

18    A protective order is appropriate because LPL's third-party discovery requests are overly

19    broad and seek information that is not relevant to its claims, nor the Tatung Defendants'

20    defenses, in the Delaware Action.  Instead, LPL seeks to obtain, through the guise of

21    "discovery," sensitive and confidential information relating to the Tatung Defendant's business

22    operations that would help LPL gain a competitive advantage.

23    "[D]iscovery may not be had regarding a matter which is not 'relevant to the subject

24    matter involved in the pending action.'"  *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318,

25    1323 (Fed. Cir. 1990).  Moreover, "[e]*ven if relevant*, discovery is not permitted where no need

26    is shown, or compliance would be unduly burdensome, or where harm to the person outweighs

27    the need of the person seeking discovery of the information." *Id; see also, American Standard,*

28    *Inc. v. Pfizer Inc.*, 828 F.2d 734, 739-42 (Fed. Cir. 1987).

7

MOTION FOR PROTECTIVE ORDER

1    In this regard, the case of *Joy Technologies, Inc. v. Flakt, Inc.*, 772 F. Supp. 842 (D. Del.

2   1991) is instructive, and presents a nearly identical situation to that found here.  In *Joy*

3   *Technologies*, the defendant sought a protective order preventing plaintiff from seeking

4   discovery from *any of the defendant's customers or potential customers* until plaintiff made a

5   showing that the information: (a) was necessary and relevant to the action, and (b) could not be

6   obtained from any other source.  *Id.* at 845.  The court granted the requested protective order,

7   stating:

8    "[I]t is undisputed that [plaintiff] and [defendant] are fierce
     competitors in the technology that is the subject of this lawsuit, and
     [plaintiff] has not convinced the Court that the same information it

9    seeks from third parties is not available from [defendant].
     Therefore, unless [plaintiff] can demonstrate that it has a specific

10   need for evidence available only from third party customers of
     [defendant], the Court concludes that [defendant] and its customers

11   are entitled to protection."

12   *Id.* at 849.

13   Similarly, in *Micro Motion, supra,* the plaintiff sought to obtain information from a

14  nonparty competitor that was purportedly relevant to the issue of damages in the underlying

15  patent suit.  The court held that the plaintiff was embarking on a "fishing expedition" with its

16  "merely speculative inquiries in the guise of relevant discovery."  894 F.2d at 1327-28, *see also*

17  *Visto Corp. v. Smartner Info. Systems, Ltd.,* 2007 WL 218771 at * 5 (N.D. Cal. 2007) (granting

18  protective order such that third party did not have to respond to the subpoena).

19   Here, LPL's discovery requests to Pelco seek broad categories of documents and

20  information concerning both accused and *unaccused* products that also are not limited as to time

21  period.  Such overly broad discovery requests encompass documents and information that, in

22  reality, have nothing to do with the pending Delaware Action.  Instead, it is readily apparent that

23  LPL seeks to obtain such information about the Tatung Defendants to obtain a competitive

24  advantage over them.

25   It also should be noted that the Tatung Defendants do not seek to prevent LPL from

26  obtaining all third-party discovery being requested in its subpoena and deposition notice.  Rather,

27  such third-party discovery should focus on deposition topics and documents *pertaining to the*

28

8

1    *accused products* at issue in the Delaware Action.[2]

2         3.    **The Requested Third-Party Discovery Is Irrelevant To**

3               **Any Purported Claim of Indirect Infringement.**

4         The Tatung Defendants anticipate that LPL will claim that it needs customer information

5    in order to determine indirect infringement.  However, LPL has not shown why such information

6    is relevant to any such indirect infringement claim.

7         Determining whether a patent claim has been infringed involves a two step analysis.

8    First, the claim must be properly construed by the Court to determine its scope and meaning.

9    Second, the claim, as construed, must be compared to the accused device or process.  *PC*

10   *Connector Solutions LLC v. Smartdisk Corp.*, 406 F.3d 1359, 1362 (Fed. Cir. 2005).

11   Infringement analysis therefore focuses on the products or processes and the claims of the

12   patents.

13        Here, the Tatung Defendants have already produced technical documents that depict their

14   products' components, as well as the assembly methods used.  LPL is *already in possession* of

15   all the technical information it needs to compare Tatung's products to the asserted claims.  There

16   is no need to directly subpoena and depose the Tatung Defendants' customers.

17        Moreover, there can be no indirect infringement without direct infringement and an

18   infringing product.  "In order to succeed on a claim of inducement, the patentee must show, first

19   that there has been direct infringement, … and second that the alleged infringer knowingly

20   induced infringement and possessed specific intent to encourage another's infringement."

21   *Minnesota Mining and Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304 (Fed. Cir. 2002).

22        Here, there is no allegation of direct infringement with respect to the hundred of products

23   for which LPL seeks thousands of documents from third parties.  LPL is therefore not entitled to

24   the broad categories of documents it seeks from Pelco.

25

26   _____

27   [2] The Tatung Defendants successfully obtained a protective order on a virtually identical
     deposition notice and subpoena propounded to Sensormatic, Inc. in the Southern District of
     Florida.  A copy of Judge Kenneth L. Ryskamp's order (without exhibit) is attached hereto as
28   Exhibit 2.

MOTION FOR PROTECTIVE ORDER

4.      **The Requested Discovery Seeks Confidential Business Information**

        **To Which LPL Would Not Otherwise Be Entitled.**

A protective order also is appropriate because LPL's subpoena and deposition notice seeks disclosure of confidential, proprietary trade secret information belonging to the Tatung Defendants. Such confidential commercial information warrants special protection under Rule 26(c)(7). *Micro Motion,* 894 F.2d at 1323, *citing Smith & Wesson v. United States,* 782 F.2d 1074, 1082 (1st Cir. 1986).

The Tatung Defendants and LPL are active competitors in the computer monitor business. Declaration of Jackson Chang ("Chang Decl.") at ¶ 2. Producing the information and testimony LPL seeks would cause major competitive harm to the Tatung Defendants. Chang Decl. at ¶ 3. As just one example, LPL designates as a deposition topic: "The nature of the business relationship and transactions between Pelco and [the Tatung Defendants] relating to the sale, manufacture, assembly, distribution, or import of visual display products, including but not limited to the agreements between Pelco [and the Tatung Defendants]." These topics are closely guarded by the Tatung Defendants as highly sensitive and confidential business information. *Id.* at ¶ 4.

The Tatung Defendants' methods of manufacturing its visual display products, for example, are not disclosed publicly; divulging this information would likely result in competitors using the information to 1) undercut the Tatung Defendants in pricing; 2) deduce the exact specifications required by existing customers; and/or 3) specifically target and lure away Tatung's existing customers. *Id.* at ¶ 7. All of this information is kept secret by the Tatung Defendants. Only authorized personnel have access to the information and information kept on computers are password protected. *Id.* at ¶ 6. The product specifications and features required by each customer, including Pelco, constitute competitive value and maintaining the confidentiality of such information is essential to the fair conduct of this litigation.

///

///

///

MOTION FOR PROTECTIVE ORDER

LA 126744001.1 doc

1    5.    **LPL's Discovery Is Unduly Burdensome And Is Intended to Harass The**

2    **Tatung Defendants' Customers.**

3    Ordering compliance with LPL's subpoena would pose an undue and unnecessary burden

4    and expense on non-party Pelco to gather and produce such information and defend depositions

5    in the requested time frame, particularly given the utter irrelevance of the majority of requested

6    documents and testimony.

7    The Tatung Defendants respectfully submit that LPL's discovery requests have been

8    interposed solely to harass Pelco and aggravate the business relationship between the Tatung

9    Defendants and their customers.

10    C.    **The Need For a Protective Order Limiting Third Party Discovery Is Even More**

11    **Compelling Due To LPL's Violations Of Previous Protective Orders.**

12    LPL will likely argue that a Protective Order entered in the Delaware Action is sufficient

13    for discovery produced by third parties.  The Tatung Defendants disagree on two grounds, both

14    of which are pending before the Special Master.

15    1.    **LPL Has Violated Other Protective Orders On At Least Two Occasions.**

16    The Tatung Defendants have recently petitioned the Special Master for relief regarding

17    LPL's multiple violations of protective orders issued in different cases, implicating different

18    patents, pending between the parties.  LPL has *admitted* that its lawyers have viewed, used and

19    disclosed confidential materials produced in other litigation between the parties for purposes of

20    this case, which is expressly prohibited by the Protective Orders in the other litigation.  The cases

21    include *LPL v. Tatung Company, et. al.*, Case No. 05-292-JJF in Delaware District Court and

22    *LPL v. Tatung Company, et. al.*, Case No. CV-02-6775-CBM  in the Central District of

23    California.  Such conduct flagrantly disregards the letter and spirit of the applicable protective

24    orders.

25    2.    **LPL Is Potentially In Violation Of the Patent Prosecution Bar.**

26    Second, the U.S. Patent and Trademark Office records appear to show that LPL staffs its

27    litigation team with attorneys who also prosecute patents in the area of flat panel display

28    ///

---

11

MOTION FOR PROTECTIVE ORDER

1  technology.  The Tatung Defendants' investigation of this conduct, which would directly violate

2  the Protective Order, is ongoing, and the issue has been raised with the Special Master.

3          For these reasons, the Tatung Defendants submit that the parties' current Protective Order

4  is insufficient to protect against the potential harm posed by disclosure of unlimited confidential

5  information by third parties, including Pelco. *See Pulsecard*, 1995 WL 526533 at * 26 ("The

6  court does not find that the entry of a prior protective order should necessarily bar a second one,

7  if facts justify it").

8                                **IV.    CONCLUSION**

9          To be clear, the Tatung Defendants do not contest LPL's right to seek discovery from

10  Pelco.  They submit, however, that discovery obtained from third-parties must be *relevant* to this

11  litigation and serve a legitimate purpose.  Here, LPL's overly broad and improper requests do not

12  serve such purposes.  Accordingly, the Tatung Defendants respectfully request that the Court

13  issue a protective order limiting discovery from Pelco to deposition testimony and documents

14  relating to the accused products.

15  DATED: March *13*, 2007                GREENBERG TRAURIG, LLP

16

17                                By: _Marc B. Koenigsberg_

18                                    Marc B. Koenigsberg
                                      Attorneys for Tatung Company and Tatung
19                                    Company of America, Inc.

20

21

22

23

24

25

26

27

28

LA 126744001.1.doc

EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LG.PHILIPS LCD CO., LTD.,

                                    Plaintiff,

            v.                                              Civil Action No. 04-343 (JJF)

TATUNG COMPANY, et al.,

                                    Defendants.

## NOTICE OF FED.R.CIV.P. 30(b)(6) DEPOSITION *DUCES TECUM* AND FED.R.CIV.P. 45 SERVICE OF SUBPOENA
### (PELCO)

TO:

Jeffrey B Bove, Esq.
Jaclyn M. Mason, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

Valerie Ho, Esq.
Mark H. Krietzman, Esq.
Frank C. Merideth, Jr., Esq.
Greenberg Traurig LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404

Scott R. Miller, Esq.
Connolly Bove Lodge & Hutz LLP
355 South Grand Avenue
Suite 3150
Los Angeles, CA 90071

Tracy Roman, Esq.
Raskin Peter Rubin & Simon LLP
1801 Century Park East, Suite 2300
Los Angeles, CA 90067

PLEASE TAKE NOTICE that Plaintiff will take the deposition *duces tecum* of Pelco

pursuant to Fed. R. Civ. P. 30(b)(6), on March 28, 2007 at 10:00 a.m. The deposition will take

place at the offices of McKenna Long & Aldridge LLP, Esquire Plaza, 1215 K. St., Sacramento,

CA 95814. The deposition will be videotaped and taken before a notary public or court reporter,

duly authorized to administer oaths and transcribe the testimony of the deponent(s) and may use technology that permits the real time display of the deposition transcript for attendees who bring a compatible computer. The deposition may continue from day to day until completed if authorized by the Court or stipulated by the parties.

PLEASE ALSO TAKE NOTICE that LG.Philips LCD Co., Ltd. is serving Pelco with a subpoena (the "Subpoena"), a copy of which is attached hereto. The subjects covered in the deposition will include (but are not limited to) the subjects listed on Attachment A to the Subpoena. Pursuant to Fed. R. Civ. P. 30(b)(6), Pelco is required to designate one or more persons to testify at the deposition as to the matters known or reasonably available to Pelco concerning all topics listed in Attachment A to the Subpoena. In addition, the Subpoena requires Pelco to produce at the deposition the documents listed in Attachment B to the Subpoena.

You are invited to attend and cross examine.

February 14, 2007

THE BAYARD FIRM

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk
Ashley B. Stitzer
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-5130
rkirk@bayardfirm.com
(302) 655-5000
Counsel for Plaintiff
LG.PHILIPS LCD CO., LTD.

OF COUNSEL:
Gaspare J. Bono
Matthew T. Bailey
Lora A. Brzezynski
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
(202) 496-7500

575485-1
651722-1

OAO88 (Rev. 1/94) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

LG.PHILIPS LCD CO., LTD.

V.

TATUNG COMPANY, et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]    04-343 (JJF)

TO:    Pelco - California
       Worldwide Headquarters
       3500 Pelco Way, Clovis, CA 93612-5699

United States District Court for the District of Delaware

|  |  |
|---|---|
| X | YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case. |

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

|  |  |
|---|---|
| X | YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. (See Attachment A for topics.) |

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Esquire Deposition Services, 516 Shaw Avenue, Suite 200, Fresno CA 93704 | March 28, 2007 at 9 am. |

|  |  |
|---|---|
| X | YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): All documents listed in Attachment B. |

| PLACE | DATE AND TIME |
|---|---|
| Mail documents to: McKenna Long & Aldridge LLP, Attn: Shari Klevens c/o Esquire Deposition Services, 516 Shaw Avenue, Suite 200, Fresno CA 93704 | March 5, 2007 at 9:00 a.m. |

|  |  |
|---|---|
| G | YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below. |

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER=S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR | DATE |
|---|---|
| Shari Klevens (Attorney for Plaintiff) *SK levens* | February 13, 2007 |

ISSUING OFFICER=S NAME, ADDRESS AND PHONE NUMBER
Shari Klevens
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
Telephone: 202-496-7612

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

DC:50459473.1

AO88  (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| DATE | PLACE |
|------|-------|
|      |       |

SERVED

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|------------------------|-------------------|
|                        |                   |

| SERVED BY (PRINT NAME) | TITLE |
|------------------------|-------|
|                        |       |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance,

(ii)   requires a person who is not a party or an officer of a

party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)   subjects a person to undue burden

(B) If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)   requires disclosure of an unretained expert=s opinion or information not describing specific events or occurrences in dispute and resulting from the expert=s study made not at the request of any party, or

(iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim

# ATTACHMENT A: TOPICS TO BE ADDRESSED AT THE DEPOSITION

For purposes of this Attachment, Pelco should use the following definition for the terms used herein.

A.    "Pelco," "you," and "your" as used herein, means Pelco and all persons or entities acting or purporting to act on your behalf, and any affiliates of Pelco.

B.    "ViewSonic" means Defendant ViewSonic Corporation, and all persons or entities acting or purporting to act on ViewSonic Corporation's behalf, and any affiliates of ViewSonic, including, but not limited to, entities, divisions, and affiliates located in Taiwan.

C.    "ViewSonic products" as used herein means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for ViewSonic.  This includes all such products, regardless of brand name, and thus includes, but is not limited to, ViewSonic brand products.

D.    "Tatung Company" means Defendant Tatung Company and all persons or entities acting or purporting to act on Tatung Company's behalf and affiliates of Tatung Company, including, but not limited to, Tatung America and TSTI.

E.    "Tatung Company products" as used herein any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for Tatung.  This includes all such products, regardless of brand name, and thus includes, but is not limited to, Tatung brand products.

Attachments A to Fed. R. Civ. P. 45 Subpoena

Page 1 of 6

F.    "Tatung America" means Defendant Tatung Company of America, Inc., and all persons or entities acting or purporting to act on Tatung Company of America's behalf, including but not limited to Tatung Company and any affiliates of Tatung Company of America.

G.    "Tatung America products" as used herein means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for Tatung America.  This includes all such products, regardless of brand name, and thus includes, but is not limited to, Tatung America brand products.

H.    "TSTI" means Tatung Science and Technology, Inc., and all persons or entities acting or purporting to act on Tatung Science and Technology's behalf, including but not limited to Tatung Company, and any affiliates of Tatung Science and Technology.

I.    "TSTI products" as used herein means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for TSTI.  This includes all such products, regardless of brand name, and thus includes, but is not limited to, TSTI brand products.

J.    "Affiliate(s)" means any corporation or other entity that controls, is controlled by or is under common control with the identified corporation or entity, including without limitation partnerships, parents, subsidiaries and divisions.

K.    "Visual display products" means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs.

Attachments A to Fed. R. Civ. P. 45 Subpoena

Page 2 of 6

L.    "Communication" means, without limitation, every manner or means of statement, utterance, notation, disclaimer, transfer or exchange of information between two of more persons of any nature whatsoever, by or to whomever, whether oral or written or whether face-to-face, by telephone, email, mail, personal delivery or otherwise, including but not limited to, letters, correspondence, conversations, memoranda, dialogue, discussions, meetings, interviews, consultations, agreements and other understandings.

M.    "Concern" and "concerning" are used in their broadest sense and embrace all matter relating to, referring to, describing, discussing, evidencing or constituting the referenced subject.

N.    "Discuss," "discussing," "relate to" "relating to," "support" or "supporting" means in any way directly or indirectly, in whole or in part, discussing, referring to, regarding, constituting, concerning, about, pertaining to, relating to, reflecting, considering, underlying, modifying, amending, confirming, mentioning, endorsing, evidencing, summarizing, memorializing, describing, discussing, analyzing, evaluating, representing, supporting, qualifying, terminating, revoking, canceling or negating.

O.    "Identify" used in respect to a company or corporate or business entity of any kind means to set forth:

    a.  the full name of the company;

    b.  the full name of the division or office involved, if applicable; and

    c.  the address of the company and of the division or office involved, if applicable.

P.    "Identify" used in respect to a document or thing means:

    a.  to provide a brief description of such document or thing, including date, author, recipients, type, and content or substance;

    b.  to identify the custodian of the document or thing;

    c.  to identify the place where the document or thing may be inspected; and

    d.  if a copy of the document has been supplied to LPL, to so state and specifically identify the copy supplied by reference to production numbers or other identifying information.

Q.    "Identify" used with respect to a natural person means to state:

    a.  the full name;

    b.  the present or last known business and residence addresses;

    c.  the last known employer or job affiliation; and

    d.  the last known occupation and business position or title held.

R.    "Import" or "importation" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

S.    "Make" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

T.    "Offer to sell" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

U.    "Person" means any natural person, firm, association, partnership, corporation, or other form of legal entity.

V.    "Sell" or "sale" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

W.    The use of the singular form of any word includes the plural and vice versa.

The topics to be covered in the deposition include:

1.     The nature of the business relationship and transactions between Pelco and Tatung Company, Tatung America, TSTI, and/or ViewSonic relating to the sale, manufacture, assembly, distribution, or import of visual display products, including but not limited to the agreements between Pelco, Tatung Company, Tatung America, TSTI, and/or ViewSonic.

2.     The scope, nature and purpose of communications between Pelco and Tatung Company, Tatung America, TSTI, and/or ViewSonic (a) concerning the sale or marketing in the United States of visual display products manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic, (b) communications regarding any product support assistance or warranties that Tatung Company, Tatung America, TSTI, and/or ViewSonic have provided to Pelco, (c) communications regarding the market trends for visual display products in the United States, (d) communications regarding the technical specifications of Tatung Company, Tatung America, TSTI, and/or ViewSonic visual display products, and (e) communications regarding your required or desired technical specifications for visual display products manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic.

3.     The scope, nature and purpose of communications between Pelco and Tatung Company, Tatung America, TSTI, and/or ViewSonic concerning the technical assembly of Tatung Company's, Tatung America's, TSTI's, or ViewSonic's visual display products, including, but not limited to, the use and identity of original equipment manufacturers ("OEMs") or systems integrators used by Pelco, Tatung Company, Tatung America, TSTI, and ViewSonic.

4.     Any agreements or contracts pursuant to which Pelco has agreed to purchase Tatung Company's, Tatung America's, TSTI, and/or ViewSonic's visual display products either

Attachments A to Fed. R. Civ. P. 45 Subpoena

Page 5 of 6

directly from Tatung Company, Tatung America, TSTI, or ViewSonic or indirectly by purchasing such products from any OEMs.

5.      Pelco's activities or efforts related to the distribution or sale of visual display products in the United States manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic.

6.      All channels, distributors, suppliers, and networks through which products made in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic have been shipped, imported, sold, and/or distributed in the United States.

7.      Pelco's sales of its visual display products that were manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic, including the quantity and dollar amount of such sales, by product.

8.      The date(s) and location(s) of any in person meetings in the United States between employees or representatives of Pelco and of a) Tatung, b) Tatung America, c) TSTI, and/or d) ViewSonic, the identity and job descriptions of participants in such meetings, and the substance of issues discussed or addressed in such meetings.

DC:50459628.1

## ATTACHMENT B: DOCUMENTS TO BE PRODUCED

For purposes of this Attachment, Pelco should refer to Attachment A for the definition or meaning of terms used herein, which definitions are incorporated herein by reference. In addition, the following definition applies:

A.     "Document" means all types of documents and things embraced within Federal Rules of Civil Procedure 34 and includes, without limitation, any writing and each original, or a copy in the absence of the original, and every copy bearing notes or markings not present on the original or copy, of the following items, however produced or reproduced, namely: books, accounting records of any nature whatsoever, agreements, communications, correspondence, facsimiles, telegrams, cable, telexes, memoranda, recordings, studies, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, diaries, letters, forecasts, statistical statements, graphs, laboratory or engineering reports and records, notebooks, charts, plans, sketches, drawings, video tapes, films, slides, information bearing photographic products of any nature whatsoever, photo-records, microfilms, tape recordings, minutes or records of meetings or conferences, expressions or statements of policy, lists of persons attending meetings or conferences, reports or summaries or interviews, reports or summaries of investigations, opinions or reports of consultants, patent studies, or opinions of counsel, records, reports or summaries of negotiations, sales literature of any nature whatsoever, brochures, catalogues, catalogue sheets, pamphlets, periodicals, advertisements, circulars or trade letters, press releases, trade releases, publicity releases, new product releases, reprints, drafts of any documents, working papers, indices, original or preliminary notes, computer printouts, floppy disks, hard drives, CD-ROM's, magnetic tapes and other data compilations from which

information can be obtained or translated, if necessary by Pelco through detection devices into reasonably usable form. The term document also refers to any tangible object other than a document as described above, and includes objects of every kind and nature such as, but not limited to, prototypes, models, and specimens.

The documents to be produced on or before March 5, 2007, include the following:

1.     All documents provided by Tatung Company, Tatung America, TSTI, and/or ViewSonic to Pelco since January 1, 2002 regarding: (i) marketing, sales, or business documents or presentation materials; (ii) technical specifications and/or drawings regarding Tatung Company's, Tatung America's, TSTI's or ViewSonic's visual display products, including but not limited to the assembly of such products; and (iii) any documents relating to warranties, product support, or service provided by Tatung Company, Tatung America, TSTI, and/or ViewSonic regarding their visual display products.

2.     Documents provided by Pelco to Tatung Company, Tatung America, TSTI or ViewSonic since January 1, 2002 sufficient to show (i) Pelco's design requirements for its visual display products, (ii) Pelco's market for its visual display products, and/or (iii) market trends in the United States for visual display products.

3.     Documents sufficient to show the business relationship between Pelco and Tatung Company, Tatung America, TSTI, and/or ViewSonic since January 1, 2002, including communications with Tatung Company, Tatung America, TSTI, and/or ViewSonic, notes from meeting with Tatung Company, Tatung America, TSTI, and/or ViewSonic, and documents in which Pelco has agreed to purchase visual display products directly from Tatung Company, Tatung America, TSTI, and/or ViewSonic.

Attachments B to Fed. R. Civ. P. 45 Subpoena

Page 2 of 4

4.    All documents related to the manufacture and/or assembly of Tatung Company's, Tatung America's, TSTI's, and/or ViewSonic's visual display products.

5.    All documents since January 1, 2002 evidencing or relating to Pelco's purchase from original equipment manufacturers ("OEMs") any visual display products that Pelco had reason to believe were manufactured or assembled in whole or in part by Tatung Company, Tatung America, TSTI, and/or ViewSonic, and documents sufficient to show that Tatung Company, Tatung America, TSTI, and/or ViewSonic received notice of Pelco's agreements to purchase.

6.    Documents sufficient to show Pelco's receipt or purchase of visual display products sold, manufactured, shipped, imported, or distributed in whole or in part by Tatung Company, Tatung America, TSTI, and ViewSonic since January 1, 2002.

7.    Documents sufficient to show the total quantity of visual display products sold, by product, by Pelco that were manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic since January 1, 2002, including separate summaries for (1) Tatung Company products, (2) Tatung America products, (3) TSTI, and (4) ViewSonic products.

8.    Documents sufficient to show the sales by total dollar value and by quantity of visual display products sold, by product, by Pelco that were manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic since January 1, 2002, including separate summaries for (1) Tatung Company products, (2) Tatung America products, (3) TSTI, and (4) ViewSonic products.

Attachments B to Fed. R. Civ. P. 45 Subpoena

Page 3 of 4

9.     Documents sufficient to identify each person Pelco has communicated with at Tatung Company, Tatung America, TSTI, and/or ViewSonic.

DC:50459598.1

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on February 14, 2007, he electronically

filed the foregoing document with the Clerk of the Court using CM/ECF, which will send

automatic notification of the filing to the following:

Jeffrey B Bove, Esq.
Jaclyn M. Mason, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

The undersigned counsel further certifies that copies of the foregoing document

were sent by hand to the above counsel and by email and will be sent by first class mail

to the following non-registered participants:

Scott R. Miller, Esq.
Connolly Bove Lodge & Hutz LLP
355 South Grand Avenue
Suite 3150
Los Angeles, CA 90071

Valerie Ho, Esq.
Mark H. Krietzman, Esq.
Frank C. Merideth, Jr., Esq.
Greenberg Traurig LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404

Tracy Roman, Esq.
Raskin Peter Rubin & Simon LLP
1801 Century Park East, Suite 2300
Los Angeles, CA 90067

/s/ Richard D. Kirk (rk922)
Richard D. Kirk

EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

L.G. PHILIPS LCD CO., LTD.,

Plaintiff,

Case No. 04-343-JJF (D. Del.)

**07-80223**

**CIV-RYSKAMP**

TATUNG COMPANY; TATUNG
COMPANY OF AMERICA, INC.; AND
VIEWSONIC CORPORATION,

Defendants

THIS MATTER having been opened to the Court on motion by defendants, the

Tatung Co. and the Tatung Company of America, Inc., by their attorneys, for a protective

order pursuant to Fed. R. Civ. P. 26(c), limiting the scope of discovery from third party

Sensormatic, Inc. ("Sensormatic"); and plaintiff L.G.Philips LCD Co., Ltd., by their

attorneys, having opposed the motion; and the Court having considered the papers

submitted and the arguments presented; and for good cause shown:

**IT IS HEREBY ORDERED THAT:**

1.    The motion is GRANTED.

2.    Any deposition testimony taken from third party Sensormatic shall be

limited to the accused products at issue in *L.G. Philips LCD Co., Ltd. v. Tatung*

*Company, et. al.*, C.A. No. 04-343-JJF (United States District Court for the District of

Delaware) (the "Delaware Action").  Such deposition testimony shall be subject to the

provisions of the Stipulated Protective Order dated January 24, 2005 entered in the

Delaware Action.

3.    Any documents produced in response to the subpoena by third party

Sensormatic shall be limited to those documents relating to the accused products at issue

in the Delaware Action.  Additionally, any documents produced shall be stamped

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER and shall be produced subject

to the Stipulated Protective Order dated January 24, 2005 entered in the Delaware Action,

which is attached hereto as Exhibit 1.

Dated:  March 9, 2007

Boca Raton, Florida

United States District Court Judge for the
Southern District of Florida

Copies to:     Richard D. Kirk, Esq. (rkirk@bayardfirm.com)
               Gaspare J. Bono, Esq. (gbono@mckennalong.com)
               Jeffrey B. Bove, Esq. (jbove@cblh.com)
               Tracy R. Roman, Esq. (troman@raskinpeter.com)
               Scott R. Miller, Esq. (smiller@cblh.com)
               Frederick L. Cottrell, III, Esq. (Cottrell@RLF.com)
               Frank E. Merideth, Jr., Esq. (meredith@gtlaw.com)
               Geoffrey M. Cahen, Esq. (caheng@gtlaw.com)

# EXHIBIT "C"

1   VALERIE HO (SBN 200505)
    MARK H. KREITZMAN (SBN 126806)
2   FRANK C. MEREDITH, JR. (SBN 46266)
    GREENBERG TRAURIG, LLP
3   2450 Colorado Avenue, Suite 400E
    Santa Monica, CA 90404
4   Telephone: (310) 586-7700
    Facsimile: (310) 586-7800
5

6   MARC B. KOENIGSBERG, (SBN 204265)
    GREENBERG TRAURIG, LLP
7   1201 K Street, Suite 1100
    Sacramento, CA 95817
8   Telephone: (916) 442-1111
    Facsimile: (916) 448-1709
9

    Attorneys for defendants
10  TATUNG COMPANY; TATUNG COMPANY
    OF AMERICA, INC
11

12                  UNITED STATES DISTRICT COURT

13                  EASTERN DISTRICT OF CALIFORNIA

14

15  L.G. PHILLIPS LCD CO., LTD.,          )   CASE NO.
                                          )
16          Plaintiff,                    )   DECLARATION OF CHARLENE OH
                                          )   IN SUPPORT OF DEFENDANT
17  v.                                    )   TATUNG COMPANY AND TATUNG
                                          )   COMPANY OF AMERICA'S
18                                        )   MOTION FOR PROTECTIVE ORDER
    TATUNG COMPANY; TATUNG               )   LIMITING SCOPE OF THIRD PARTY
19  COMPANY OF AMERICA, INC.; AND        )   DEPOSITION AND SUBPOENA
    VIEWSONIC CORPORATION,               )
20                                        )   Date: March _____, 2007
            Defendant.                    )   Time: _____
21                                        )   Courtroom: _____
                                          )
22

23

24

25

26

27

28

                                    1

## DECLARATION OF CHARLENE OH

I, Charlene Oh, declare:

1.      I am an attorney licensed to practice before the Courts of the State of California.  I
am an associate with the law firm of Greenberg Traurig, LLP, counsel for Defendants
Tatung Company and Tatung Company of America, Inc.  I make this Declaration in
support of Defendants' Motion for a Protective Order Limiting Scope of Third Party
Deposition and Subpoena (the "Motion for Protective Order").

2.      The Motion for Protective Order concerns a deposition notice and third party
subpoena issued in this district in connection with a patent infringement lawsuit pending
in the United States District Court for the District of Delaware, C.A. No. 04-343-JJF (the
"Delaware Action").

3.      The following list identifies those products Plaintiff L.G. Philips LCD Co., Ltd.
has accused of infringement in the C.A. No. 04-343-JJF case.  The list is taken from
Plaintiff's Fifth Supplemental Response to Defendants' Interrogatory No. 1.

| |
|---|
| L17AMTN |
| L17UCCT |
| TLM1705 |
| Tatung ADMNC1LCD17 |
| American Dynamics ADMNC1LCD17 |
| Unidentified American Dynamics Product |
| P42HSMT |
| P46T |
| (Triview) TLM1505 |
| TriviewFST-1503RV-4B |
| TLM1703T |
| TLM1703 |
| TLM1903 |
| V23CLTT |
| V23DLWX-U12 |
| V27CMTT-U01 |
| V30CMTT-U62 |

126743326_1

| V30CMTT-U01 |
| HP RG556AA |
| IIoFCBT |
| Hitachi 37HDL52 |

4.     The Motion for Protective Order requests that this Court limit discovery from

third parties to deposition testimony and documents that relate to the above accused

products.


I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct. Executed on March 8, 2007 in Los Angeles, CA.

Charlene Oh

# EXHIBIT "D"

## Donald Fischbach - Pelco

**From:** Donald Fischbach
**To:** sklevens@mckennalong.com
**Date:** 3/14/2007 5:57 PM
**Subject:** Pelco

This morning I forwarded you an e-mail wherein I erroneously mentioned that the hearing on our motion to quash is on the 22nd. You know that it was moved by the court sua sponte to the 19th, not the 22nd, the day of the deposition of the Pelco representative. Also, we have just been provided with a copy of Tatung's motion for protective order and we are inclined to not produce documents until that is resolved. Our Rule 45 objections still stand and you did not file a motion in response, especially with respect to the sales documents you requested. I will be reviewing the Tatung motion and related documents tonight, and confer with my client tomorrow, after which I will call in order that we can discuss our status further. Thank you.

Donald Fischbach
BAKER, MANOCK & JENSEN
5260 North Palm, Suite 421
Fresno, CA 93704
Telephone (559) 432-5400
Facsimile (559) 432-5620
drf@bmj-law.com

---

This e-mail contains confidential, privileged information,
protected by the attorney-client privilege
and work product doctrine, intended only
for the use of the addressee. Do not read, copy
or disseminate this e-mail unless you are the
addressee. If you have received this e-mail
in error, please call us (collect) immediately
at (559) 432-5400 and ask to speak to the
message sender.

Please e-mail the message back to the sender
by using the reply feature of your e-mail system.
After replying to the sender, please immediately
delete this e-mail from your In Box and
empty your Trash folder. Thank you.

# EXHIBIT "E"

## Donald Fischbach - RE: Ex parte for order shortening time

**From:**      "Klevens, Shari" <sklevens@mckennalong.com>
**To:**        "Donald Fischbach" <DRF@bmj-law.com>
**Date:**      3/6/2007 5:48 PM
**Subject:**   RE: Ex parte for order shortening time

Don,

As I have mentioned in earlier correspondence, the Protective Order protects information marked as "Highly Sensitive Confidential" from being disclosed to the parties in the case. Thus, Pelco has no justification for withholding the sales information that LG seeks. If Pelco has decided to withhold sales and other documents pursuant to its confidentiality objection, then we agree that we are at an impasse. Moreover, in light of the deposition scheduled on March 22, we agree that an expedited hearing on these issue is appropriate.

Shari

Shari L. Klevens
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
tel 202.496.7612
fax 202.496.7756

---

**From:** Donald Fischbach [mailto:DRF@bmj-law.com]
**Sent:** Tuesday, March 06, 2007 6:10 PM
**To:** Klevens, Shari
**Subject:** Ex parte for order shortening time

We have reached the conclusion we will probably need a judge to resolve our dispute and we are preparing a motion to quash or modify your deposition subpena topics. We have already provided you with our objections to the subpena for documents pursuant to Rule 45. And your last e-mail mentioned having to seek court assistance, especially with respect to sales information. Thus, we need an order shortening time for the hearing, especially since we have moved the deposition date to March 22. Will you stipulate to an order shortening time in order that we can agree to a mutual date for the hearing? Thank you.

Donald Fischbach
BAKER, MANOCK & JENSEN
5260 North Palm, Suite 421
Fresno, CA 93704
Telephone (559) 432-5400
Facsimile (559) 432-5620
drf@bmj-law.com

---

This e-mail contains confidential, privileged information,
protected by the attorney-client privilege
and work product doctrine, intended only
for the use of the addressee. Do not read, copy
or disseminate this e-mail unless you are the
addressee. If you have received this e-mail
in error, please call us (collect) immediately

at (559) 432-5400 and ask to speak to the
message sender.

Please e-mail the message back to the sender
by using the reply feature of your e-mail system.
After replying to the sender, please immediately
delete this e-mail from your In Box and
empty your Trash folder.  Thank you.

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from
the law firm of McKenna Long & Aldridge LLP, and are
intended solely for the use of the named recipient or
recipients. This e-mail may contain privileged
attorney/client communications or work product. Any
dissemination of this e-mail by anyone other than an
intended recipient is strictly prohibited. If you are not a
named recipient, you are prohibited from any further
viewing of the e-mail or any attachments or from making any
use of the e-mail or attachments. If you believe you have
received this e-mail in error, notify the sender
immediately and permanently delete the e-mail, any
attachments, and all copies thereof from any drives or
storage media and destroy any printouts of the e-mail or
attachments.

# EXHIBIT "F"

| From: | "Klevens, Shari" <sklevens@mckennalong.com> |
|---|---|
| To: | "Veronica Kearney" <VEK@bmj-law.com> |
| Date: | 3/15/2007 9:18:46 AM |
| Subject: | RE: Pelco Subpoena |

Thank you for your message.  To be clear, LPL is not in "agreement" with Pelco's decision to withhold the documents, but rather, believes that the documents should be produced now in response to the Subpoena, as I communicated to Mr. Fischbach.  However, I understand Pelco's position that it will withhold the documents in light of Mr. Fischbach's conversation with Charlene Oh and the pending motion filed by Tatung.  Nonetheless, thank you for agreeing to have the documents ready on Monday in the event that the Judge orders them to be produced at that time.

Shari

-----Original Message-----
From: Veronica Kearney [mailto:VEK@bmj-law.com]
Sent: Thursday, March 15, 2007 12:10 PM
To: Klevens, Shari
Subject: Pelco Subpoena

            Shari, this is to confirm that we have reached the agreement that we will not be producing any documents until the hearing on Monday.  We will have available in the courtroom all documents requested by you, and provide them in accordance with what the judge orders.

            Thank you for your courtesies.

Donald R. Fischbach
BAKER, MANOCK & JENSEN
5260 North Palm, Suite 421
Fresno, CA  93704
Telephone (559) 432-5400
Facsimile (559) 432-5620
drf@bmj-law.com

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from the law firm of McKenna Long & Aldridge LLP, and are intended solely for the use of the named recipient or recipients. This e-mail may contain privileged attorney/client communications or work product. Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and permanently delete the e-mail, any

attachments, and all copies thereof from any drives or
storage media and destroy any printouts of the e-mail or
attachments.


**CC:**          <drf@bmj-law.com>

# EXHIBIT E

# Greenberg
# Traurig

February 27, 2007

**Via E-Mail and U.S. Mail**

Cormac T. Connor
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006

**Re:** *LG.Philips LCD Co., Ltd. v. Tatung Company et al.*
**U.S. District Court Case No. 04-343 JJF**

Dear Cormac:

I write in regard to LPL's subpoenas to Planar Systems, CTX Technologies, Tatung Science and Technology Inc., Edward Service, Ingram Micro, eMachines, Wal-Mart Stores Inc., Avnet Inc., Sensormatic, Tyco International, Tri-Ed Distribution, CLI, Medion USA, TMX Logistics, American Dynamics, Best Buy, Radio Shack, Safeway, Amazon.com Inc., Gateway Inc., Sam's Club, Tweeter Home Entertainment, CompUSA Inc., and Pelco (the "subpoenas").

As previously discussed, one of the issues currently pending before Special Master Poppiti is whether the Tatung Defendants are required to produce documents, including highly confidential agreements and communications with their customers, that do not pertain to the products LPL has accused in this case. While the Special Master has not yet rendered a decision on this issue, we do expect a decision from him shortly.

The subpoenas served by LPL are attempts to circumvent a potential ruling that may be favorable to the Tatung Defendants. LPL has subpoenaed the aforementioned entities for broad categories of confidential, commercially sensitive information relating to the Tatung Defendants' business relationships with these entities and has made no attempt to limit the information sought to the accused products at issue. As such, LPL's subpoenas to the Tatung Defendants' customers appear to serve no legitimate purpose and are merely calculated to harass. Please be advised that the Tatung Defendants object to all Topics and Document Requests on the grounds that they are not limited to the accused products and seek confidential, proprietary, trade secret information belonging to the Tatung Defendants. The deposition topics and document requests are overly broad and seek information that is not relevant to any claims or defenses and is not reasonably calculated to lead to the discovery of admissible evidence. The topics and document requests are also overly broad because they are not limited as to time.

Cormac T. Connor, Esq.
February 27, 2007
Page 2


Unless the parties can reach an immediate agreement regarding the scope of the subpoenas, we intend to file motions for protective orders. Please advise regarding your availability for a meet and confer. We are available in the late afternoon on Wednesday, February 28, 2007, or anytime on Thursday, March 1 or Friday, March 2, 2007.

Very truly yours,

Valerie W. Ho

cc:    Rel Ambrozy (via email)
       Lora Brzezynski (via email)
       Richard Kick (via email)
       Scott Miller (via email)
       Jeffrey Bove (via email)
       James Heisman (via email)
       Tracy Roman (via email)
       Anne Gaza (via email)
       Frank Merideth (via email)
       Mark Krietzman (via email)
       Steve Hassid (via email)

# EXHIBIT F

## Shelley Meyer

**From:**  HoV@GTLAW.com
**Sent:**  Wednesday, March 07, 2007 3:06 AM
**To:**  cconnor@mckennalong.com
**Cc:**  cchristenson@mckennalong.com; rambrozy@mckennalong.com; lbrzezynski@mckennalong.com; MeridethF@GTLAW.com; KrietzmanM@GTLAW.com; HassidS@gtlaw.com

**Subject:** Re: 3/5 meet-and-confer

Your suggestion that the Tatung Defendants have known about LPL's improper subpoenas since January is wrong. LPL did not serve its various batches of subpoenas until mid to late February. We never met and conferred regarding the subpoenas at issue in January because those subpoenas had not even been issued by LPL at the time. Your resentment aside, the record speaks for itself.

The case law you cite is irrelevant.

We will proceed with our motions.

Valerie Ho
--------------------------
Sent from my BlackBerry Wireless Handheld

----- Original Message -----
From: Connor, Cormac <cconnor@mckennalong.com>
To: Ho, Valerie W. (Shld-LA-LT)
Cc: Christenson, Cass <cchristenson@mckennalong.com>; Ambrozy, Rel <rambrozy@mckennalong.com>; Brzezynski, Lora <lbrzezynski@mckennalong.com>; Merideth, Frank (Shld-LA-LT); Krietzman, Mark H. (Shld-LA-IP); Hassid, Steve (Assoc-LA-IP); Ho, Valerie W. (Shld-LA-LT)

Sent: Tue Mar 06 08:49:18 2007
Subject: RE: 3/5 meet-and-confer

We obviously continue to disagree. LPL will not withdraw or modify its subpoenas as they are entirely proper and seek relevant material. Further, the subpoenas are not limited to discovery disputed by Tatung and seek substantial information that is separate and apart from any motions pending before the Special Master.

Also, your email was the second time yesterday that you insinuated that I am or LPL is somehow using the meet-and-confer process "merely as a delay tactic." As I told you during our call yesterday, I resent your baseless insinuation that I am or LPL is acting in bad faith, particularly as I have been asking you to provide legal authority to support your demands since at least our meet-and-confer on January 30, more than one month ago. Now, after your own delay and inaction, you are trying to use the press of our March 30 discovery deadline as an excuse to proceed against LPL on an ex parte basis. Further, although I specifically requested that you explain why Tatung thinks it should be permitted to file motions without first providing notice to LPL, you have not done so. (Your reference to the CDCA local rule concerning the formatting and process by which an ex parte submission is handled does not suffice.) Tatung is alone responsible for waiting so long to file the motions it has described and LPL rejects any suggestion that Tatung is entitled to proceed against any of LPL's subpoenas without providing LPL proper notice and an opportunity to be heard. If Tatung persists down this path, LPL will seek sanctions and all appropriate relief against Tatung.

As for the case citations that you have finally provided, I have reviewed your references and they are distinguishable from our situation in several ways. Tatung's position also is contrary to settled law. "Unless a party to an action can make claim to some personal right or privilege in respect to the subject matter of a subpoena duces tecum directed to a nonparty witness, the party to the action has no right to relief under Rule 45(b) or 30(b)." Dart Industries, Inc. v. Liquid Nitrogen Processing, 50 F.R.D. 286, 291 (D. Del. 1970); see Ponsford v. United States, 771 F.2d 1305, 1308 (9th Cir. 1985) (denying motion to quash for lack of standing); Nova Products, Inc. v. Kisma Video, Inc., 220 F.R.D. 238, 241 (S.D.N.Y. 2004) (denying motion to quash because no showing of personal right or privilege); Oliver B. Cannon and Son, Inc.

3/19/2007

v. Fidelity and Cas. Co. of New York, 519 F. Supp. 668, 680 (D. Del. 1981) (denying motion to quash because movant failed to prove documents sought were privileged). We do not find that Tatung has any basis to object to the information sought by LPL's subpoenas and, thus, we do not believe that Tatung has standing to move to quash any of LPL's subpoenas.

Further, you have generally objected that the subpoenas seek information that is confidential and not limited to U.S. products. We believe that these objections are unfounded. If you have a more specific proposal for narrowing certain issues, however, please let us know so that we can respond.

Cormac T. Connor

McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
tel. 202-496-7439
fax 202-496-7756
email: cconnor@mckennalong.com

---

From: HoV@GTLAW.com [mailto:HoV@GTLAW.com]
Sent: Monday, March 05, 2007 4:52 PM
To: Connor, Cormac
Cc: Christenson, Cass; Ambrozy, Rel; Brzezynski, Lora; MeridethF@GTLAW.com; KrietzmanM@GTLAW.com; HassidS@gtlaw.com
Subject: RE: 3/5 meet-and-confer

Dear Cormac,

During our meet and confer, you stated that you did not believe the Tatung Defendants have standing to bring motions for protective order in connection with the subpoenas issued by LPL to third party customers of the Tatung Defendants, which seek broad categories of confidential and trade secret information belonging to the Tatung Defendants that do not relate in any way to the accused products or patents-in-suit. In response to your request that we provide authority on this issue, we agreed to do so with the understanding that LPL may reconsider its position upon reviewing the authorities provided. Accordingly, in a good faith attempt to meet and confer and potentially obviate the need to file these motions (and in the hopes that LPL is not using the meet and confer process merely as a delay tactic), we agreed to provide you with the authorities requested on the condition that you inform us by the commencement of business (pacific time) tomorrow as to whether LPL will withdraw or narrow its subpoenas (as identified in my letter).

The authorities the Tatung Defendants are relying on include the following: FRCP 26(c); Visto Corp. v. Smartner Information Systems, Ltd., 2007 WL 218771 (N.D. Cal. 2007); Highland Tank & Mfg. Co. v. PS Int'l, Inc., 227 F.R.D. 374 (W.D. Pa. 2005); Micro Motion, Inc. v. Kane Steel Co., 894 F.2d 1318 (Fed. Cir. 1990); and Joy Technologies, Inc. v. Flakt, Inc., 772 F.Supp. 842, 849 (D.Del. 1991).

If we do not receive confirmation tomorrow morning that LPL is withdrawing or narrowing its subpoenas, we will move forward with the motions/applications for protective order.

As I mentioned during our meet and confer, we will be filing the applications/motions in the courts from which the subpoenas were issued. Due to the return dates of the subpoenas, the Tatung Defendants may not have sufficient time to file regularly noticed motions under the relevant local rules, and as a result, may have to move on an ex parte basis. See, e.g., Central District of California Local Rule 7-19. We, of course, will provide LPL with the appropriate ex parte notice.

3/19/2007

With respect to the issues raised in Cass' email from this weekend, I will respond separately as those issues are completely unrelated to the issues discussed during our meet and confer.


Valerie


---

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.


---

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to postmaster@gtlaw.com <mailto:postmaster@gtlaw.com> .


---

From: Connor, Cormac [mailto:cconnor@mckennalong.com]
Sent: Monday, March 05, 2007 12:15 PM
To: Ho, Valerie W. (Shld-LA-LT)
Cc: Christenson, Cass; Ambrozy, Rel; Brzezynski, Lora; Merideth, Frank (Shld-LA-LT); Krietzman, Mark H. (Shld-LA-IP); Hassid, Steve (Assoc-LA-IP); Ho, Valerie W. (Shld-LA-LT)

Subject: 3/5 meet-and-confer


Following up on our 2 pm EST meet-and-confer call today, this email will confirm that you have agreed to provide LPL with legal authority supporting Tatung's stated intention to file motions for protective orders with respect to several of LPL's third party subpoenas. (To that end, you noted that Tatung would not be filing any motions concerning the subpoena issued to CTX.) You said that you would provide that authority within the hour and I agreed to respond as to whether LPL will change its position based on those authorities by approximately noon EST tomorrow.

Additionally, you stated that Tatung intends to file its motions in the relevant courts on an ex parte basis. As I stated on the call, LPL objects to Tatung's efforts to file these motions. If this is the route that Tatung intends to take, please be sure to include citations to legal authority that would support Tatung's filing its proposed motions on an ex parte basis. If, as it seems to be, Tatung's intention is to file these motions without notice to LPL, then LPL strenuously objects. LPL demands that Tatung provide LPL with notice of any motions that it files with respect to any issue in this case, including motions pertaining to third party subpoenas. If you refuse to do so, LPL will raise the matter with the appropriate courts and with the Special Master.

Finally, please let us know where Tatung stands with respect to the discovery deficiencies identified in Cass Christenson's March 4 email to you.

Cormac T. Connor

McKenna Long & Aldridge LLP


3/19/2007

1900 K Street, NW
Washington, DC 20006
tel. 202-496-7439
fax 202-496-7756
email: cconnor@mckennalong.com

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from
the law firm of McKenna Long & Aldridge LLP, and are
intended solely for the use of the named recipient or
recipients. This e-mail may contain privileged
attorney/client communications or work product. Any
dissemination of this e-mail by anyone other than an
intended recipient is strictly prohibited. If you are not a
named recipient, you are prohibited from any further
viewing of the e-mail or any attachments or from making any
use of the e-mail or attachments. If you believe you have
received this e-mail in error, notify the sender
immediately and permanently delete the e-mail, any
attachments, and all copies thereof from any drives or
storage media and destroy any printouts of the e-mail or
attachments.

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from
the law firm of McKenna Long & Aldridge LLP, and are
intended solely for the use of the named recipient or
recipients. This e-mail may contain privileged
attorney/client communications or work product. Any
dissemination of this e-mail by anyone other than an
intended recipient is strictly prohibited. If you are not a
named recipient, you are prohibited from any further
viewing of the e-mail or any attachments or from making any
use of the e-mail or attachments. If you believe you have
received this e-mail in error, notify the sender
immediately and permanently delete the e-mail, any
attachments, and all copies thereof from any drives or
storage media and destroy any printouts of the e-mail or
attachments.

3/19/2007

# EXHIBIT G

# RICHARDS, LAYTON & FINGER

A PROFESSIONAL ASSOCIATION

ONE RODNEY SQUARE

920 NORTH KING STREET

WILMINGTON, DELAWARE 19801

(302) 651-7700

FAX (302) 651-7701

WWW.RLF.COM

FREDERICK L. COTTRELL, III
DIRECTOR

DIRECT DIAL
(302) 651-7509
COTTRELL@RLF.COM

March 2, 2007

## CONFIDENTIAL--FILED UNDER SEAL

## BY E-MAIL & HAND DELIVERY

The Honorable Vincent J. Poppiti

BLANK ROME LLP

Chase Manhattan Center

1201 Market Street, Suite 800

Wilmington, DE 19801

> **Re:**  *LG.Philips LCD Co., Ltd. v. ViewSonic Corp., et al.,* C.A. No. 04-343-JJF

Dear Special Master Poppiti:

In advance of the telephonic hearing scheduled for 11:00 EST today and in response to Mr. Kirk's letter of March 1, 2007 attaching certain correspondence concerning ongoing discovery discussions between Tatung and LPL, the Tatung Defendants respectfully submit a summary of the documents and information provided to LPL to assist Your Honor in evaluating the Tatung Defendants' compliance with their discovery obligations.

During the period from late January 2007 to the present, the Tatung Defendants have produced close to 10,000 pages of documents which include the following:

- Additional highly confidential Tatung America work instructions for *unaccused products*. Tatung America has produced all of the work instructions it could locate after performing a diligent search, including work instructions for sample products that have never been sold.
- Additional highly confidential Tatung exploded view drawings for *unaccused products*. Tatung has produced all of the exploded view drawings it could locate after performing a diligent search, including drawings for new products from this quarter (quarter 1, 2007).
- Highly confidential sales summaries from 2002 to the present containing model, price and quantity information for all of the visual display products identified in the Tatung Defendants' interrogatory responses. Notably, most of the sales data pertain to *unaccused products*.

RLF1-3121689-1

The Honorable Vincent J. Poppiti
March 2, 2007
Page 2

- Highly confidential Tatung CAD/CAM drawings of components for certain accused products.
- Additional highly confidential technical documents pertaining to certain accused products.
- Service manuals for certain accused products.
- Bills of materials/parts lists for certain accused products.
- Highly confidential OEM and ODM agreements with Tatung's customers.
- Documents relating to the Tatung Defendants' organizational structure.
- Tatung's annual reports.
- Highly confidential purchase orders, invoices and bills of lading for certain accused products.
- Highly confidential documents sufficient to identify the Tatung Defendants' customers and distributors.
- Highly confidential communications between Tatung and its customers regarding certain accused products.
- Brochures and advertisements.
- A correlation of Tatung model numbers to HP model numbers.
- Additional prior art related documents.

The documents identified above are responsive to a number of LPL Document Requests, including Nos. 6,7, 10, 13, 15, 16, 25, 51, 52, 57, 59, 61, 62, 64, 65, 67, 68, 69 and 70.

In addition, the Tatung Defendants have served amended and supplemental interrogatory responses identifying, among other things, additional products and prior art.

The Tatung Defendants have made available for inspection, and LPL has examined, disassembled and photographed, more than 40 monitor and television products.

Tatung also has provided to LPL an amended chart which identifies the exploded view drawing(s) (by bates number(s)) that cover particular series or groups of products. All of the products identified in Tatung's amended and supplemental interrogatory responses have been categorized. Altogether, Tatung produced at least 66 drawings covering 307 products. (*See* Amended Chart at Exhibit A.) After performing a diligent search, Tatung was unable to locate drawings for three products.

Finally, Tatung will be producing today so-called "Process Flow Charts" for certain accused products.

It is important to remember that what the Tatung Defendants agreed to produce during

The Honorable Vincent J. Poppiti
March 2, 2007
Page 3

the parties' December 2006 meet and confers and during the January 2007 hearing were 1) documents sufficient for LPL to evaluate infringement; 2) sales summaries; and 3) additional documents pertaining to the three previously identified accused products.   The Tatung Defendants have lived up to this agreement.   Until November 2006, LPL had accused only one Tatung product of infringing the patents-in-suit.   In November, LPL identified two additional accused products. *It was not until mid-January 2007 that LPL identified 14 additional accused products.*   As a result, the Tatung Defendants have been forced to engage in piecemeal supplementations and are still in the process locating additional responsive documents pertaining to some of the newly identified accused products.

Because LPL now has all of the information it needs to evaluate infringement (including the amended categorization chart, the exploded view drawings and the work instructions for all products), the Tatung Defendants respectfully request that Your Honor set a deadline by which LPL must identify all allegedly infringing Tatung and Tatung America products.

Respectfully,

Frederick L. Cottrell, III

FLC,III/afg
cc:     Clerk of Court (via CM/ECF)
        Richard Kirk, Esquire (via electronic mail)
        Cormac T. Connor, Esquire (via electronic mail)
        Lora Brzezynski, Esquire (via electronic mail)
        Mark Krietzman, Esquire (via electronic mail)
        Scott R. Miller, Esquire (via electronic mail)
        Jeffrey B. Bove, Esquire (via electronic mail)

# EXHIBIT A

# Greenberg Traurig

Valerie W Ho
Tel 310 586 7841
Fax 310 586 7800
HoV@gtlaw.com

March 1, 2007

**<u>Via E-Mail and U.S. Mail</u>**

Rel Ambrozy, Esq.
McKenna Long & Aldridge LLP
1900 K Street, N W.
Washington, D.C. 20006

Re: *LG Philips LCD Co , Ltd. vs. ViewSonic Corporation, et al.*
    Delaware District Court, Case No. 04-343 JJF

Dear Rel:

Attached is an updated chart regarding the exploded view drawings that have been produced for Tatung Company's products  This chart includes all of the products identified in Tatung's amended and supplemental responses to LPL's interrogatories nos  2 and 3. Please note that as previously discussed, only the products ending with a "U" designation are destined for North America. The other products are qualified and destined for other locations such as Europe and Asia. It remains our position that only the products destined for North America could be at issue potentially. However, for the sake of completeness, we have included even the non-North American products in the attached chart. The chart identifies by bates numbers the drawing(s) that corresponds to a particular group of products. The bolded items are the ones that were not included in the first chart provided as an attachment to Mr. Merideth's letter dated January 31, 2007. Tatung has now produced at least 66 drawings covering 307 products. It has produced all of the drawings it could locate after performing a diligent search.  A few of the recently produced drawings are for new products from the current quarter (First Quarter of 2007) and will be included in a further supplementation of the interrogatory responses.

Please feel free to call me if you have any questions

Very truly yours,

Valerie W. Ho

*LA 126735232v1 3/1/2007*

Greenberg Traurig, LLP | Attorneys at Law | Los Angeles Office | 2450 Colorado Avenue | Suite 400E | Santa Monica, CA 90404 | Tel 310 586 7700 | Fax 310 586 7800 | www.gtlaw.com

Rel Ambrozy, Esq
March 1, 2007
Page 2
_____

cc: Cass Christenson (via email)
  Lora Brzezynski (via email)
  Richard Kick (via email)
  Scott Miller (via email)
  Jeffrey Bove (via email)
  James Heisman (via email)
  Tracy Roman (via email)
  Frank Merideth (via email)
  Mark Krietzman (via email)
  Steve Hassid (via email)

HIGHLY SENSITIVE CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| L15BCVK-U03 | TDE006371 |
|---|---|
| L15BCVK-U13 | |

L15CCAE                                        TDE005010
    L15CCAE-U07
    L15CCAE-U17
    L15CCAE-U27
    L15ECAE
    L15ECAE-U27
    L15ECAE-U37

L15CCAT                                        TDE006372
    L15CCAT-U01
    L15CCAT-U05
    L15CCAT-U13
    L15CCAT-U23
    L15CCAT-U32
    L15CCAT-UA3
    L15CCAT-UB3

L15CCQT                                        TDE005012
    L15CCQT-U09
    L15CCQT-U19
    **L15DCAV-U16**

L15FCBT                                        TDE005006
    L15FCBT-U02
    L15FCBT-U09
    L15FCBT-U12

L17ACAE                                        TDE005024
    L17ACAE-U07
    L17ECAE-U07

**L17ACAH-J05 Non-North American product    TDE006375**

L17ACLN-U03                                    TDE005116, TDE005117
    L17ACLN-U13
    L17ACLN-UB3
    L17ACTN-U01
    L17ACTN-U23
    L17ACTN-U32
    L17ACTN-UC3
    L17ACTN-UD2

HIGHLY SENSITIVE CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

L17AMTN-U01                          TDE006385
    L17AMTN-U03
    L17AMTN-U22
    L17AMTN-U23
    L17AMTN-U32

**L17CCAT-U05**                      **TDE005026, TDE006376**
    L17CMAT-E05 Non-North American Product
    L17CM(Q)AT-E05 Non-North American Product
    L17CQAT-E05

**L17DSAV-U16**                      **TDE013138**

L17FCBT                              TDE005118, TDE005119
    L17FCBT-U02
    L17FCBT-U 12

L17FCMT                              TDE005115
    L17FCMT-U05

L17ECBQ-U08                          TDE0013140
    L17KCBQ-U08
    **L17EMBQ-U08**

**L17NCDT-U00**                      **TDE006379**

**L17PCAG**                          **TDE005120**
    **L17PCAG-U65**
    **L17PCAG-UA5**

L17PCBG                              TDE005121
    L17PCBG-U05
    L17PCBG-U15
    L17PCBG-UA5
    **L17PCBG-U25**
    **L17PCBG-U65**
    **L17PCBG-U75**
    **L17PCBG-UB5**

HIGHLY SENSITIVE CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**L17UCCT-U01**　　　　　　　　　　　　**TDE013007, TDE013157**
　　　**L17UCCT-U02**
　　　**L17UCCT-U12**
　　　**L17UCCT-U22**
　　　**L17UCCT-U25**
　　　**L17UCCT-U32**
　　　**L17UCCT-U42**
　　　**L17UCCT-U62**
　　　**L17UCCT-U72**
　　　**L17UCCT-U82**

**L17WCAG-U15**　　　　　　　　　　　　**TDE013141**

**L17WCBG-U05**　　　　　　　　　　　　**TDE013142**
　　　**L17WCBG-U15**

L19ACLN　　　　　　　　　　　　　　　TDE005113
　　　L19ACLN-U13

**L19ACTN-U23**　　　　　　　　　　　　**TDE005112**

**L19AMTN-U32**　　　　　　　　　　　　**TDE006380**

L19CMAT-U32　　　　　　　　　　　　　TDE006381
　　　L19CYAT-U05

L19FCBT　　　　　　　　　　　　　　　TDE005114
　　　L19FCBT-U12

**L19FCMT-U05**　　　　　　　　　　　　**TDE005115**

**L19NCDT-U00**　　　　　　　　　　　　**TDE013668**

**L20WCAQ-U19**　　　　　　　　　　　　**TDE013143, TDE013144**

**L22YMTT-U09**　　　　　　　　　　　　**TDE013139**

HIGHLY SENSITIVE CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

L5CDS                                      TDE005014, TDE006367
        L5CDSDP-C81 Non-North American Product
        L5CDSDP-D01 Non-North American Product
        L5CDSDP-D02 Non-North American Product
        L5CDSDP-D12 Non-North American Product
        L5CDSDP-J05 Non-North American Product
        L5CDSDP-J15 Non-North American Product
        L5CDSDP-J21 Non-North American Product
        L5CDSDP-J22 Non-North American Product
        L5CDSDP-J25 Non-North American Product
        L5CDSDP-J31 Non-North American Product
        L5CDSDP-J32 Non-North American Product
        L5CDSDP-S03 Non-North American Product
        L5CDSDP-U01
        L5CDSDP-U11
        L5CDSDP-U21
        L5CDSDP-U22
        L5CDSDP-U26
        L5CDSDP-U31
        L5CDSDP-U32
        L5CDSDP-U72
        L5CDSDP-U81
        L5CDSDP-U82
        L5CDSDP-U91
        L5CDSDP-U92
        L5CDTDP-D01 Non-North American Product
        L5CDTDP-D11 Non-North American Product
        L5CDTDP-E01 Non-North American Product
        L5CDTDP-E11 Non-North American Product
        L5CDTDP-E81 Non-North American Product
        L5CDTDP-J05 Non-North American Product
        L5CDTDP-J15 Non-North American Product
        L5TDS
        L5TDSDP-U01
        L5PDS
        L5PDSDP-U01

HIGHLY SENSITIVE CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**L5CES/T**                                    **TDE005016**

    L5CESDP-U81
    L5CESPP-U12
    L5CESPP-U20
    L5CESPP-U32
    L5CESPP-U41
    L5CESPP-U42
    L5CESPP-D42
    L5CESPP-E11 Non-North American Product
    L5CESPP-S01 Non-North American Product
    L5CESPP-U01
    L5CETPP-E02 Non-North American Product
    L5CETPP-E11 Non-North American Product
    L5CETPP-E22 Non-North American Product
    L5CETPP-E32 Non-North American Product
    L5CETPP-E42 Non-North American Product
    L5CETPP-E82 Non-North American Product
    L5CETPP-E92 Non-North American Product
    L5CETPP-S01 Non-North American Product
    L5PESPP
    L5PESPP-U01

L5CTSDP                                    TDE005019

    L5CTSDP-D01 Non-North American Product
    L5CTSDP-J05 Non-North American Product
    L5CTSDP-S04 Non-North American Product
    L5CTSDP-U01
    L5CTSDP-U03
    L5CTSDP-U05
    L5CTSDP-U06
    L5CTSDP-U13
    L5CTSDP-U22
    L5CTSDP-U32
    **L5CTSDP-U52**
    L5CTSDP-U62
    L5CTSDP-U81
    **L5CTSDP-U82**
    L5CTSDP-UA3

HIGHLY SENSITIVE CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

L5PHS                                          TDE005021, TDE013667
    L5PHSDP
    L5PHSDP-D09 Non-North American Product
    L5PHSDP-E09 Non-North American Product
    L5PHSDP-E39 Non-North American Product
    L5PHSDP-E49 Non-North American Product
    L5PHSDP-J09 Non-North American Product
    L5PHSDP-J19 Non-North American Product
    L5PHSDP-J29 Non-North American Product
    L5PHSDP-S09 Non-North American Product
    L5PHSDP-S19 Non-North American Product
    L5PHSDP-U09
    L5PHSDP-U19
    L5PHSDP-U29
    L5PHTDP
    L5PHTDP-E19 Non-North American Product
    L5PHTDP-E29 Non-North American Product

L5PVTPP                                        TDE005023, TDE006369
    L5PVTPP-J15 Non-North American Product
    L5PVTPP-U25
    L5SVTPP-U45

**L5XKTPP-U03**                                **TDE013145**

HIGHLY SENSITIVE CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**P42HFHH-U05**                                    **TDE015113**
    **P42HFHH-U06**
    **P42HFHH-U07**
    **P42HFHH-U08**
    **P42HFHH-U09**
    **P42HFHH-U10**
    **P42HFHH-U11**
    **P42HFHH-U12**
    **P42HFHH-U13**
    **P42HFHH-U14**
    **P42HFHH-U15**
    **P42HFHH-U16**
    **P42HFHH-U17**
    **P42HFHH-U18**
    **P42HFHH-U19**
    **P42HFHH-U20**
    **P42HFHH-U21**
    **P42HFHH-U22**
    **P42HFHH-U23**
    **P42HFHH-U24**
    **P42HFHH-U25**
    **P42HFHH-U26**
    **P42HFHH-U27**
    **P42HFHH-U28**
    **P42HFHH-U29**
    **P42HFHH-U30**
    **P42HFHH-U31**
    **P42HFHH-U32**
    **P42HFHH-U33**
    **P42HFHH-U34**
    **P42HFHH-U35**
    **P42HFHH-U36**
    **P42HFHH-U37**
    **P42HFHH-U38**
    **P42HFHH-U39**
    **P42HFHH-U40**
    **P42HFHH-U41**
    **P42HFHH-U42**
    **P42HFHH-U43**
    **P42HFHH-UB5**
    **P42HSHT-U09**
    **P42HSHT-U09H**

HIGHLY SENSITIVE CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**P46CCWV After a diligent search Tatung Co. has not been able to locate an**
**assembly drawing for this product.**
**P46CCWV-U01**
**P46CCWV-U02**

PTAB915DN0 Non-North American Product        TDE006384
        PTAB915DN01 Non-North American Product
        PTAB915DN02 Non-North American Product
        PTAB915DN03 Non-North American Product
        PTAB915DN04 Non-North American Product
        PTAB915DN07 Non-North American Product
        PTAB915DN09 Non-North American Product
        PTAB915DN10 Non-North American Product
        PTAB915DN11 Non-North American Product
        PTAB915DN12 Non-North American Product

TTABB10                                TDE006385
        TTABB10N01
        TTAB910N01 Non-North American Product
        **TTAB910N02 Non-North American Product**
        TTAB910N04 Non-North American Product
        RTABB10
        RTABB10S01 Non-North American Product
        TTAB510
        TTAB510N03 Non-North American Product

TTAB910E Non-North American Product        TDE006386
        TTAB910EA01 Non-North American Product
        TTAB910EG01 Non-North American Product
        TTAB910EN01 Non-North American Product
        TTAB910EN02 Non-North American Product

**TTAB915DN01 Non-North American Product After a diligent search Tatung Co.**
**has not been able to locate an assembly drawing for this product.**

HIGHLY SENSITIVE CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

TTABA12DB Non-North American Product        TDE006387
     TTABA12DB04 Non-North American Product
     TTABA12D Non-North American Product
     TTABA12DF02 Non-North American Product
     TTABA12DN04 Non-North American Product
     TTABA12DN06 Non-North American Product
     TTABB12DB Non-North American Product
     TTABB12DB15 Non-North American Product
     TTABB12DCN1 Non-North American Product
     TTABB12DCN1 Non-North American Product
     TTABB12DDN6 Non-North American Product
     TTABB12DH05 Non-North American Product
     TTABB12DJ06 Non-North American Product
     TTABB12DN0 Non-North American Product
     TTABB12DN01 Non-North American Product
     TTABB12DN02 Non-North American Product
     TTABB12DN03 Non-North American Product
     TTABB12DN04 Non-North American Product
     TTABB12DN07 Non-North American Product
     TTABB12DN10 Non-North American Product
     TTABB12DN12 Non-North American Product
     TTABB12DN14 Non-North American Product
     TTABB12DN15 Non-North American Product
     TTABB12DN16 Non-North American Product
     TTABB12DN18 Non-North American Product
     TWN5213K03V Non-North American Product
     TWN5213K20V Non-North American Product

**V15PCAP-U03**                        **TDE015115**

V17AFTW                                TDE006395
     V17AFTW-U01
     V17AFTW-U05

**V17ULAJ**                            **TDE006364**
     **V17ULAJ-U06**

HIGHLY SENSITIVE CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

V23CLTT                                    TDE006399, TDE015114,
    V23CLTT-U01                        TDE015116, TDE015117
    V23CLTT-U02
    V23CLTT-U05
    **V23CLTT-U62**
    V27CMTT-U01
    V30CMTT-U62
    **V30CMTT-U01**
    V30CMTT-U03
    V30CMTT-U05
    **V23DLWX-U12**

**V23ULAJ-U06 After a diligent search Tatung Co. has not been able to locate an
assembly drawing for this product.**

**V26ALAH-U15**                            **TDE013669**

**V32ALAH-U15**                            **TDE006400**

**V32FLBB-U21**                            **TDE006402**

VTAB830 Non-North American Product          TDE006403
    VTAB830-E01 Non-North American Product
    VTAB830-E02 Non-North American Product
    VTAB830-N01 Non-North American Product
    VTAB830-P05 Non-North American Product

# EXHIBIT H

# Greenberg Traurig

Valerie W. Ho
Tel. 310.586.7841
Fax 310.586.7800
HoV@gtlaw.com

March 1, 2007

**<u>Via E-Mail and U.S. Mail</u>**

Rel Ambrozy, Esq.
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006

Re:  *LG Philips LCD Co., Ltd. vs. ViewSonic Corporation, et al.*
     Delaware District Court, Case No. 04-343 JJF

Dear Rel:

Attached is an updated chart regarding the exploded view drawings that have been produced for Tatung Company's products. This chart includes all of the products identified in Tatung's amended and supplemental responses to LPL's interrogatories nos. 2 and 3. Please note that as previously discussed, only the products ending with a "U" designation are destined for North America. The other products are qualified and destined for other locations such as Europe and Asia. It remains our position that only the products destined for North America could be at issue potentially. However, for the sake of completeness, we have included even the non-North American products in the attached chart. The chart identifies by bates numbers the drawing(s) that corresponds to a particular group of products. The bolded items are the ones that were not included in the first chart provided as an attachment to Mr. Merideth's letter dated January 31, 2007. Tatung has now produced at least 66 drawings covering 307 products. It has produced all of the drawings it could locate after performing a diligent search. A few of the recently produced drawings are for new products from the current quarter (First Quarter of 2007) and will be included in a further supplementation of the interrogatory responses.

Please feel free to call me if you have any questions.

Very truly yours,

Valerie W. Ho

LA 126735232v1 3/1/2007

Rel Ambrozy, Esq.
March 1, 2007
Page 2

_____

cc:    Cass Christenson (via email)
       Lora Brzezynski (via email)
       Richard Kick (via email)
       Scott Miller (via email)
       Jeffrey Bove (via email)
       James Heisman (via email)
       Tracy Roman (via email)
       Frank Merideth (via email)
       Mark Krietzman (via email)
       Steve Hassid (via email)

HIGHLY SENSITIVE CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

L15BCVK-U03                              TDE006371
    L15BCVK-U13

L15CCAE                                  TDE005010
    L15CCAE-U07
    L15CCAE-U17
    L15CCAE-U27
    L15ECAE
    L15ECAE-U27
    L15ECAE-U37

L15CCAT                                  TDE006372
    L15CCAT-U01
    L15CCAT-U05
    L15CCAT-U13
    L15CCAT-U23
    L15CCAT-U32
    L15CCAT-UA3
    L15CCAT-UB3

L15CCQT                                  TDE005012
    L15CCQT-U09
    L15CCQT-U19
    **L15DCAV-U16**

L15FCBT                                  TDE005006
    L15FCBT-U02
    L15FCBT-U09
    L15FCBT-U12

L17ACAE                                  TDE005024
    L17ACAE-U07
    L17ECAE-U07

**L17ACAH-J05 Non-North American product    TDE006375**

L17ACLN-U03                              TDE005116, TDE005117
    L17ACLN-U13
    L17ACLN-UB3
    L17ACTN-U01
    L17ACTN-U23
    L17ACTN-U32
    L17ACTN-UC3
    L17ACTN-UD2

HIGHLY SENSITIVE CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

L17AMTN-U01                          TDE006385
    L17AMTN-U03
    L17AMTN-U22
    L17AMTN-U23
    L17AMTN-U32

**L17CCAT-U05**                      **TDE005026, TDE006376**
    L17CMAT-E05 Non-North American Product
    L17CM(Q)AT-E05 Non-North American Product
    L17CQAT-E05

**L17DSAV-U16**                      **TDE013138**

L17FCBT                              TDE005118, TDE005119
    L17FCBT-U02
    L17FCBT-U 12

L17FCMT                              TDE005115
    L17FCMT-U05

L17ECBQ-U08                          TDE0013140
    L17KCBQ-U08
    **L17EMBQ-U08**

**L17NCDT-U00**                      **TDE006379**

**L17PCAG**                          **TDE005120**
    **L17PCAG-U65**
    **L17PCAG-UA5**

L17PCBG                              TDE005121
    L17PCBG-U05
    L17PCBG-U15
    L17PCBG-UA5
    **L17PCBG-U25**
    **L17PCBG-U65**
    **L17PCBG-U75**
    **L17PCBG-UB5**

HIGHLY SENSITIVE CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **L17UCCT-U01** | **TDE013007, TDE013157** |
|     **L17UCCT-U02** | |
|     **L17UCCT-U12** | |
|     **L17UCCT-U22** | |
|     **L17UCCT-U25** | |
|     **L17UCCT-U32** | |
|     **L17UCCT-U42** | |
|     **L17UCCT-U62** | |
|     **L17UCCT-U72** | |
|     **L17UCCT-U82** | |
| | |
| **L17WCAG-U15** | **TDE013141** |
| | |
| **L17WCBG-U05** | **TDE013142** |
|     **L17WCBG-U15** | |
| | |
| L19ACLN | TDE005113 |
|     L19ACLN-U13 | |
| | |
| **L19ACTN-U23** | **TDE005112** |
| | |
| **L19AMTN-U32** | **TDE006380** |
| | |
| L19CMAT-U32 | TDE006381 |
|     L19CYAT-U05 | |
| | |
| L19FCBT | TDE005114 |
|     L19FCBT-U12 | |
| | |
| **L19FCMT-U05** | **TDE005115** |
| | |
| **L19NCDT-U00** | **TDE013668** |
| | |
| **L20WCAQ-U19** | **TDE013143, TDE013144** |
| | |
| **L22YMTT-U09** | **TDE013139** |

HIGHLY SENSITIVE CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

L5CDS                                              TDE005014, TDE006367
  L5CDSDP-C81 Non-North American Product
  L5CDSDP-D01 Non-North American Product
  L5CDSDP-D02 Non-North American Product
  L5CDSDP-D12 Non-North American Product
  L5CDSDP-J05 Non-North American Product
  L5CDSDP-J15 Non-North American Product
  L5CDSDP-J21 Non-North American Product
  L5CDSDP-J22 Non-North American Product
  L5CDSDP-J25 Non-North American Product
  L5CDSDP-J31 Non-North American Product
  L5CDSDP-J32 Non-North American Product
  L5CDSDP-S03 Non-North American Product
  L5CDSDP-U01
  L5CDSDP-U11
  L5CDSDP-U21
  L5CDSDP-U22
  L5CDSDP-U26
  L5CDSDP-U31
  L5CDSDP-U32
  L5CDSDP-U72
  L5CDSDP-U81
  L5CDSDP-U82
  L5CDSDP-U91
  L5CDSDP-U92
  L5CDTDP-D01 Non-North American Product
  L5CDTDP-D11 Non-North American Product
  L5CDTDP-E01 Non-North American Product
  L5CDTDP-E11 Non-North American Product
  L5CDTDP-E81 Non-North American Product
  L5CDTDP-J05 Non-North American Product
  L5CDTDP-J15 Non-North American Product
  L5TDS
  L5TDSDP-U01
  L5PDS
  L5PDSDP-U01

HIGHLY SENSITIVE CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**L5CES/T**                                                    **TDE005016**
    L5CESDP-U81
    L5CESPP-U12
    L5CESPP-U20
    L5CESPP-U32
    L5CESPP-U41
    L5CESPP-U42
    L5CESPP-D42
    L5CESPP-E11 Non-North American Product
    L5CESPP-S01 Non-North American Product
    L5CESPP-U01
    L5CETPP-E02 Non-North American Product
    L5CETPP-E11 Non-North American Product
    L5CETPP-E22 Non-North American Product
    L5CETPP-E32 Non-North American Product
    L5CETPP-E42 Non-North American Product
    L5CETPP-E82 Non-North American Product
    L5CETPP-E92 Non-North American Product
    L5CETPP-S01 Non-North American Product
    L5PESPP
    L5PESPP-U01

L5CTSDP                                                        TDE005019
    L5CTSDP-D01 Non-North American Product
    L5CTSDP-J05 Non-North American Product
    L5CTSDP-S04 Non-North American Product
    L5CTSDP-U01
    L5CTSDP-U03
    L5CTSDP-U05
    L5CTSDP-U06
    L5CTSDP-U13
    L5CTSDP-U22
    L5CTSDP-U32
    **L5CTSDP-U52**
    L5CTSDP-U62
    L5CTSDP-U81
    **L5CTSDP-U82**
    L5CTSDP-UA3

HIGHLY SENSITIVE CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

L5PHS                                    TDE005021, TDE013667
    L5PHSDP
    L5PHSDP-D09 Non-North American Product
    L5PHSDP-E09 Non-North American Product
    L5PHSDP-E39 Non-North American Product
    L5PHSDP-E49 Non-North American Product
    L5PHSDP-J09 Non-North American Product
    L5PHSDP-J19 Non-North American Product
    L5PHSDP-J29 Non-North American Product
    L5PHSDP-S09 Non-North American Product
    L5PHSDP-S19 Non-North American Product
    L5PHSDP-U09
    L5PHSDP-U19
    L5PHSDP-U29
    L5PHTDP
    L5PHTDP-E19 Non-North American Product
    L5PHTDP-E29 Non-North American Product

L5PVTPP                                  TDE005023, TDE006369
    L5PVTPP-J15 Non-North American Product
    L5PVTPP-U25
    L5SVTPP-U45

**L5XKTPP-U03**                          **TDE013145**

HIGHLY SENSITIVE CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**P42HFHH-U05**                                    **TDE015113**
    **P42HFHH-U06**
    **P42HFHH-U07**
    **P42HFHH-U08**
    **P42HFHH-U09**
    **P42HFHH-U10**
    **P42HFHH-U11**
    **P42HFHH-U12**
    **P42HFHH-U13**
    **P42HFHH-U14**
    **P42HFHH-U15**
    **P42HFHH-U16**
    **P42HFHH-U17**
    **P42HFHH-U18**
    **P42HFHH-U19**
    **P42HFHH-U20**
    **P42HFHH-U21**
    **P42HFHH-U22**
    **P42HFHH-U23**
    **P42HFHH-U24**
    **P42HFHH-U25**
    **P42HFHH-U26**
    **P42HFHH-U27**
    **P42HFHH-U28**
    **P42HFHH-U29**
    **P42HFHH-U30**
    **P42HFHH-U31**
    **P42HFHH-U32**
    **P42HFHH-U33**
    **P42HFHH-U34**
    **P42HFHH-U35**
    **P42HFHH-U36**
    **P42HFHH-U37**
    **P42HFHH-U38**
    **P42HFHH-U39**
    **P42HFHH-U40**
    **P42HFHH-U41**
    **P42HFHH-U42**
    **P42HFHH-U43**
    **P42HFHH-UB5**
    **P42HSHT-U09**
    **P42HSHT-U09H**

HIGHLY SENSITIVE CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**P46CCWV After a diligent search Tatung Co. has not been able to locate an assembly drawing for this product.**
    **P46CCWV-U01**
    **P46CCWV-U02**

PTAB915DN0 Non-North American Product    TDE006384
    PTAB915DN01 Non-North American Product
    PTAB915DN02 Non-North American Product
    PTAB915DN03 Non-North American Product
    PTAB915DN04 Non-North American Product
    PTAB915DN07 Non-North American Product
    PTAB915DN09 Non-North American Product
    PTAB915DN10 Non-North American Product
    PTAB915DN11 Non-North American Product
    PTAB915DN12 Non-North American Product

TTABB10    TDE006385
    TTABB10N01
    TTAB910N01 Non-North American Product
    **TTAB910N02 Non-North American Product**
    TTAB910N04 Non-North American Product
    RTABB10
    RTABB10S01 Non-North American Product
    TTAB510
    TTAB510N03 Non-North American Product

TTAB910E Non-North American Product    TDE006386
    TTAB910EA01 Non-North American Product
    TTAB910EG01 Non-North American Product
    TTAB910EN01 Non-North American Product
    TTAB910EN02 Non-North American Product

**TTAB915DN01 Non-North American Product After a diligent search Tatung Co. has not been able to locate an assembly drawing for this product.**

HIGHLY SENSITIVE CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

TTABA12DB Non-North American Product         TDE006387
    TTABA12DB04 Non-North American Product
    TTABA12D Non-North American Product
    TTABA12DF02 Non-North American Product
    TTABA12DN04 Non-North American Product
    TTABA12DN06 Non-North American Product
    TTABB12DB Non-North American Product
    TTABB12DB15 Non-North American Product
    TTABB12DCN1 Non-North American Product
    TTABB12DCN1 Non-North American Product
    TTABB12DDN6 Non-North American Product
    TTABB12DH05 Non-North American Product
    TTABB12DJ06 Non-North American Product
    TTABB12DN0 Non-North American Product
    TTABB12DN01 Non-North American Product
    TTABB12DN02 Non-North American Product
    TTABB12DN03 Non-North American Product
    TTABB12DN04 Non-North American Product
    TTABB12DN07 Non-North American Product
    TTABB12DN10 Non-North American Product
    TTABB12DN12 Non-North American Product
    TTABB12DN14 Non-North American Product
    TTABB12DN15 Non-North American Product
    TTABB12DN16 Non-North American Product
    TTABB12DN18 Non-North American Product
    TWN5213K03V Non-North American Product
    TWN5213K20V Non-North American Product

**V15PCAP-U03**                                **TDE015115**

V17AFTW                                        TDE006395
    V17AFTW-U01
    V17AFTW-U05

**V17ULAJ**                                    **TDE006364**
    **V17ULAJ-U06**

HIGHLY SENSITIVE CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

V23CLTT                                 TDE006399, TDE015114,
    V23CLTT-U01                     TDE015116, TDE015117
    V23CLTT-U02
    V23CLTT-U05
    **V23CLTT-U62**
    V27CMTT-U01
    V30CMTT-U62
    **V30CMTT-U01**
    V30CMTT-U03
    V30CMTT-U05
    **V23DLWX-U12**

**V23ULAJ-U06 After a diligent search Tatung Co. has not been able to locate an assembly drawing for this product.**

**V26ALAH-U15**                          **TDE013669**

**V32ALAH-U15**                          **TDE006400**

**V32FLBB-U21**                          **TDE006402**

VTAB830 Non-North American Product       TDE006403
    VTAB830-E01 Non-North American Product
    VTAB830-E02 Non-North American Product
    VTAB830-N01 Non-North American Product
    VTAB830-P05 Non-North American Product

1

2

3

4

5

6

7

8
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

9

10
LG PHILIPS LCD CO.,

No.

11
                              Plaintiff,

CERTIFICATE OF SERVICE`

12
              v.

13
TATUNG CO., TATUNG CO. OF
AMERICA INC.,
14
and VIEWSONIC CORP.,

15
                              Defendants.

16

17
        I certify that on this day I caused true and correct copies of

18
        1.      Reply To Lpl's Opposition To The Tatung Defendants' Motion For

19
Protective Order; and

20
        2.      Declaration of Charlene Oh

21
to be served upon:

22
//

23
//

24
//

25
//

26
//

CERTIFICATE OF SERVICE – Page 1

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**COUNSEL FOR LPL**

Richard D. Kirk
**The Bayard Firm**
222 Delaware Avenue # 900
Wilmington, DE 19899
rkirk@bayardfirm.com

**COUNSEL FOR LPL**

Gaspare J. Bono
gbono@mckennalong.com
Rel S. Ambrozy
rambrozy@mckennalong.com
Cass W. Christenson
cchristenson@mckennalong.com
Lora A. Brzezynski
lbrzezynski@mckennalong.com
**McKenna Long & Aldridge LLP**
1900 K Street, N.W.
Washington, DC 20006

**COUNSEL FOR DEFENDANT
VIEWSONIC CORPORATION**

Jeffrey B. Bove
jbove@cblh.com
James D. Heisman
jheisman@cblh.com
Jaclyn M. Mason
jmason@cblh.com
**Connolly Bove Lodge & Hutz LLP**
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

**COUNSEL FOR DEFENDANT
VIEWSONIC CORPORATION**

Tracy R. Roman
troman@raskinpeter.com
**Raskin Peter Rubin & Simon LLP**
1801 Century Park East, Suite 2300
Los Angeles, CA 90067

**COUNSEL FOR DEFENDANT
VIEWSONIC CORPORATION**

Scott R. Miller
smiller@cblh.com
**Connolly Bove Lodge & Hutz LLP**
355 South Grand Avenue, Suite 3150
Los Angeles, CA 90071

**COUNSEL FOR DEFENDANTS
TATUNG CO. & TATUNG CO. OF
AMERICA**

Frederick L. Cottrell, III
Cottrell@RLF.com
Anne Shea Gaza
Gaza@RLF.com
**Richards Layton & Finger, PA**
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

CERTIFICATE OF SERVICE – Page 2

1

2   **COUNSEL FOR DEFENDANTS**
    **TATUNG CO. & TATUNG CO. OF**
3   **AMERICA**

4   Frank E. Meredith, Jr.
    meredithf@gtlaw.com
5   Valerie W. Ho
    hov@gtlaw.com
6   Mark H. Krietzman
    krietzmanm@gtlaw.com
7   Steve P. Hassid
    hassids@gtlaw.com
8   **Greenberg Traurig LLP**
    2450 Colorado Avenue, Suite 400E
9   Santa Monica, CA 90404

10
    ☒ Via Email
11  ☐ Via Facsimile
    ☐ Via Federal Express
12  ☐ Via Hand Delivery
    ☐ Via U.S. Mail
13

14      I declare under penalty of perjury under the laws of the State of Washington that the

15  foregoing is true and correct.

16      DATED this 19th day of March, 2007, at Seattle, Washington.

17

18  *Shelley Meyer*
    Shelley Meyer
19  Legal Assistant

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE – Page 3

471.01 hc194802 3/19/07

1

2

3

4          UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
5                  AT SEATTLE

6

7    L.G. PHILIPS LCD CO., LTD.,

8                          Plaintiff,                    No. C07-398 MJP

9    v.                                                  ORDER

10   TATUNG CO., et al.,

11                        Defendants.

12

13          This matter comes before the Court on Defendant Tatung Company and Tatung Company of

14   America, Inc.'s motion for a protective order limiting the scope of a third-party deposition and

15   subpoena and request for an expedited hearing. (Dkt. No. 1).

16          This dispute involves a deposition notice and subpoena issued in this district and served on

17   third-party Amazon.com in connection with a patent infringement lawsuit pending in the United

18   States District Court for the District of Delaware.  Defendants filed a motion for protective order

19   limiting discovery from Amazon.com.  Plaintiff has requested that the Court formally transfer this

20   dispute to the District of Delaware.. (Dkt. No. 3 at 6-7).  In their Reply, Defendants state that they do

21   not oppose the transfer. (Dkt. No. 5 at 3).

22          The Court has the authority to transfer this matter to the court where the main action is

23   pending.  See In re Digital Equipment Corp., 949 F.2d 228, 231 (8th Cir. 1991); Fed. R. Civ. P. 26(c)

24   advisory committee's note ("The court in the district where the deposition is being taken may, and

25   frequently will, remit the deponent or party to the court where the action is pending.").  Because the

26   Delaware Court is in a better position to evaluate this dispute in light of the history of the discovery

     disputes between these parties and the facts at issue in the main case, and because neither party

ORDER - 1

1    opposes the transfer, the Court orders that this case be transferred to the United States District Court

2    for the District of Delaware.

3            The Clerk is directed to prepare all necessary materials and transfer them as expeditiously as

4    possible to the United States District Court for the District of Delaware.  The Clerk is also directed to

5    send copies of this order to all counsel of record.

6            Dated this 20th day of March, 2007.

7

8                                                    _____
                                                     Marsha J. Pechman

9                                                    United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER - 2

**UNITED STATES DISTRICT COURT**
WESTERN DISTRICT OF WASHINGTON
OFFICE OF THE CLERK

BRUCE RIFKIN
CLERK

700 STEWART ST. LOBBY LEVEL
SEATTLE, WASHINGTON 98101

March 20, 2007

Clerk, US District Court
District of Delaware
J. Cabel Boggs Federal Bldg.
844 N. King Street
Wilmington, DE 19801



RE:    L. G. Philips LCD Co. Vs. Tatung Co., et al    C07 - 398 mJP

Dear Clerk:                                                    07   180

Pursuant to the order transferring the above captioned case to your Court, enclosed are:

1. Certified copy of docket entries;

2. Certified copy of transfer order; and

3. Original case file documents on CD Disk.

Please acknowledge receipt of the above documents by returning the copy of this letter.

Very truly yours,

BRUCE RIFKIN, CLERK

By: _____
Mary Duett, Deputy Clerk

Enclosures

cc:    counsel of record
       file